1   ROBERT W. BROWNLIE (Bar No. 138793)
    robert.brownlie@dlapiper.com
2   JENNIFER M. FELDMAN (Bar No. 216645)
    jennifer.feldman@dlapiper.com
3   DLA PIPER US LLP
    401 B Street, Suite 1700
4   San Diego, CA 92101-4297
    Tel: 619.699.2700
5   Fax: 619.699.2701

6   NICK MORGAN (Bar No. 166441)
    nicolas.morgan@dlapiper.com
7   DLA PIPER US LLP
    1999 Avenue of the Stars, Suite 400
8   Los Angeles, CA 90067-6023
    Tel: 310.595.3000
9   Fax: 310.595.3300

10  Attorneys for Defendant
    DAVID G. FRANZ, JR.

11

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14

15  IN RE: SEMTECH CORPORATION          CASE NO. 2:07-CV-07114-CAS
    SECURITIES LITIGATION               (FMOX)

16
                                        **MEMORANDUM OF POINTS AND**
17                                      **AUTHORITIES IN SUPPORT OF**
                                        **MOTION TO DISMISS**
18                                      **CONSOLIDATED AMENDED**
                                        **CLASS ACTION COMPLAINT**
19
                                        Courtroom:  5, 2nd Floor
20                                      Judge:      Hon. Christina A. Snyder
                                        Date:       December 8, 2008
21                                      Time:       10:00 am

22

23

24

25

26

27

28

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

CASE NO. 2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ...................... 1

II.    SUMMARY OF PERTINENT ALLEGATIONS ........................... 2

III.   APPLICABLE LEGAL STANDARDS ................................... 6

IV.    PLAINTIFF'S CLAIM UNDER SECTION 10(b) FAILS............... 7

    A.    The Complaint Fails to Plead Misstatements With Particularity ......... 8

    B.    The Complaint Fails to Adequately Allege Scienter ......................... 11

        1.   The Complaint's Limited Allegations Pertaining to Franz Are Insufficient to Raise a Strong Inference of Scienter ......... 13

        2.   Allegations of the Report Do Not Give Rise to a Strong Inference of Scienter.................................................... 14

            a.   Allegations That Franz "Knew or Should Have Known" Do Not Give Rise to a Strong Inference of Scienter...................................................... 15

            b.   Allegations of the Report Lack the Requisite Particularity ........................................................ 16

        3.   Franz' Signature on SEC Filings Does Not Give Rise to a Strong Inference of Scienter.................................... 17

        4.   Franz' Signature on SOX Certifications Does Not Give Rise to a Strong Inference of Scienter........................ 18

        5.   Allegations of Accounting Fraud Do Not Give Rise to a Strong Inference of Scienter.................................... 18

        6.   Allegations That the Company Restated Its Financials Do Not Give Rise to a Strong Inference of Scienter ...................... 19

        7.   Franz' Corporate Position Does Not Give Rise to a Strong Inference of Scienter................................................ 20

        8.   Franz' Stock Sales Do Not Give Rise to a Strong Inference of Scienter................................................ 22

    C.    The Complaint Fails to Allege the Basis for Any of Its Information and Belief Allegations ......................................... 24

V.     PLAINTIFF'S CLAIM UNDER SECTION 20(a) FAILS............... 26

VI.    CONCLUSION ............................................................... 26

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

-i-

CASE NO.  2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page**

## CASES

*Andropolis v. Red Robin Gourmet Burgers, Inc.*,
505 F. Supp. 2d 662 (D. Colo. 2007) ................................................ 7

*Autodesk*,
527 F. Supp. 2d at 843-844 ................................................ 21, 22

*Balistreri v. Pacifica Police Dep't.*,
901 F.2d 696 (9th Cir. 1990) ................................................ 6

*Craftmatic Securities Litigation v. Kratsow*,
890 F.2d 628 (3d Cir. 1990) ................................................ 7

*DSAM Global Value Fund v. Altiris Software, Inc.*,
188 F.3d 385 (9th Cir. 2002) ................................................ 11

*DSAM Global Value Fund v. Altiris Software, Inc.*,
288 F.3d 385 (9th Cir. 2002) ................................................ 18

*Desaigoudar v. Meyercord*,
223 F.3d 1020 (9th Cir. 2000) ................................................ 8, 24

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005) ................................................ 8

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976) ................................................ 11, 15

*Goplen v. 51job, Inc.*,
453 F. Supp. 2d 759 (S.D.N.Y. 2006) ................................................ 17

*Havenick v. Network Exp., Inc.*,
981 F. Supp. 480 (E.D. Mich. 1997) ................................................ 10

*In re Apple Computer, Inc. Sec. Litig.*,
243 F. Supp. 2d 1012 ................................................ 12

*In re Apple Computer Sec. Litig.*,
886 F.2d 1109 (9th Cir. 1989) ................................................ 23

*In re Autodesk, Inc. Sec. Litig.*,
132 F. Supp. 2d 833 (N.D. Cal. 2000) ................................................ 9

*In re Bally Total Fitness Sec. Litig.*,
2006 WL 3714708 (N.D. Ill. Jul. 12, 2006) ................................................ 16, 17

*In re Copper Mountain Sec. Litig.*,
311 F. Supp. 2d 857 (N.D. Cal. 2004) ................................................ 21

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

-ii-

CASE NO.  2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

# TABLE OF AUTHORITIES
### (continued)

**Page**

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*,
  355 F. Supp. 2d 1069 (N.D. Cal. 2005) .................................................. 10, 11

*In re Ferro Corporation Sec. Litig.*,
  Nos. 1:04CV1440, 1:04CV1589, 2007 WL 1691358 (N.D. Ohio June
  11, 2007).................................................................................................. 10

*In re First Chicago Corporation Sec. Litig.*,
  769 F. Supp. 1444 (N.D. Ill. 1991) ............................................................ 7

*In re Hansen Natural Corp. Sec. Litig.*,
  527 F. Supp. 2d 1142 (C.D. Cal. 2007) ............................................. passim

*In re Invision Tech. Inc. Sec. Litig., C 04-03 181 MJJ*,
  2006 WL 538752 (N.D. Cal. Jan. 24, 2006) ............................................. 17

*In re Juniper Networks, Inc. Sec. Litig.*,
  542 F. Supp. 2d 1037 (N.D. Cal. 2008) .................................................... 21

*In re Peerless Sys. Corp. Sec. Litig.*,
  182 F. Supp. 2d 982 (S.D. Cal. 2002).................................................. 15, 21

*In re Ramp Networks, Inc. Sec. Litig.*,
  201 F. Supp. 2d 1051 (N.D. Cal. 2002) .................................................... 20

*In re Silicon Graphics Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999)............................................................... passim

*In re Sina Corp. Sec. Litig.*,
  No. 05 Civ. 2154(NRB), 2006 WL 2742048 (S.D.N.Y. Sep. 26, 2006) ...... 10

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
  160 F. Supp. 2d 1059 (N.D. Cal. 2001) ...................................................... 9

*In re Syntex Corp. Sec. Litig.*,
  855 F. Supp. 1086 (N.D. Cal. 1994), *aff'd*, 95 F.3d 922 (9th Cir. 1996)...... 26

*In re The Vantive Corp. Sec. Litig.*,
  283 F.3d 1079 (9th Cir. 2002)............................................................. passim

*In re U.S. Aggregates, Inc. Sec. Litig.*,
  235 F. Supp. 2d 1063 (N.D. Cal. 2002) .................................................... 18

*In re Verisign, Inc. Derivative Litig.*,
  531 F. Supp. 2d 1173 (N.D. Cal. 2007) .................................................... 19

*In re Worlds of Wonder Sec. Litig.*,
  35 F.3d 1407 (9th Cir. 1994), *cert. denied*, 516 U.S. 868 ............... 18, 20, 23

*May v. Borick*,
  1997 WL 314166 (C.D. Cal. Mar. 3, 1997).............................................. 25

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

CASE NO. 2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Medhekar v. United States Dist. Ct.,*
99 F.3d 325, 328 (9th Cir. 1996))...................................................................... 17

*Metzler Investment GMBH v. Corinthian Colleges, Inc.,*
2008 WL 2853402 (9th Cir. Jul. 25, 2008).................................................. 11, 22

*Panter v. Marshall Field & Co.,*
646 F.2d 271 (7th Cir. 1981), *cert. denied,* 454 U.S. 1092 (1981).................. 7

*Ronconi v. Larkin,*
253 F.3d 423 (9th Cir. 2001)............................................................................ 7

*Ross v. A.H. Robins Co.,*
607 F.2d 545 (2d Cir. 1979), *cert. denied,* 446 U.S. 946 (1980).................... 8

*Rudolph v. UTStarcom, No. C 07-04578 SI,*
2008 WL 1734763 (N.D. Cal. April 14, 2008)............................................... 20

*Santa Fe Industries, Inc. v. Green,*
430 U.S. 462 (1977)......................................................................................... 7

*Semegen v. Weidner,*
780 F.2d 727 (9th Cir. 1985)............................................................................ 8

*Shields v. Amoskeag Bank Shares, Inc.,*
766 F. Supp. 32 (D.N.H. 1991)........................................................................ 8

*Splash Tech. Holdings,*
2000 WL 17277337.......................................................................................... 24

*Superintendent of Insurance v. Bankers Life & Cas. Co.,*
404 U.S. 6 (1972)............................................................................................. 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
127 S. Ct. 2499 (2007)............................................................................... 11, 12

*Vantive,*
110 F. Supp. 2d 1209 (N.D. Cal. 2000) ...................................................... 24, 25

*Weiss v. Amkor Tech., Inc.,*
527 F. Supp. 2d 938 (D. Ariz. 2007)........................................................... 17, 18

*Weiss v. Amkor Tech, Inc.,*
577 F. Supp. at 948-49 .................................................................................... 19

*Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.,*
532 U.S. 588 (2001) ........................................................................................ 11

*Wiestschner v. Monterey Pasta Co.,*
294 F. Supp. 2d 1102 (N.D. Cal. 2003) .......................................................... 15

-iv-

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

CASE NO.  2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Yourish v. California Amplifier,*
  191 F.3d 983 (9th Cir. 1999)..........................................................................13

### STATUTES

15 U.S.C. § 7262 ............................................................................................18

15 U.S.C. § 78(t)............................................................................................26

15 U.S.C. § 78(u)-4(b)(1)(B)..........................................................................24

15 U.S.C. § 78u-4(b)(1)...................................................................................6

15 U.S.C. § 78u-5(c)(1)(B)...............................................................................8

15 U.S.C. § 78j.................................................................................................7

15 U.S.C. § 78t(a))...........................................................................................7

Fed. R. Civ. P. 9(b).................................................................................Passim

Federal R. Civ. P. 12(b)(6)...............................................................................6

### MISCELLANEOUS

2 Securities Law Handbook § 29.10 at 344....................................................20

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

-v-

CASE NO. 2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

David G. Franz, Jr. ("Franz"), former Chief Financial Officer ("CFO") of Semtech Corporation ("Semtech" or the "Company") moves to dismiss the Consolidated Amended Class Action Complaint ("Complaint") insofar as the Complaint attempts to allege a claim against him.

This case is one of literally hundreds of shareholder cases involving alleged stock option backdating.  While the vast majority of cases have alleged mismanagement and breach of fiduciary duty claims in the context of derivative suits — including cases involving Semtech and the very transactions alleged here — this case is one of the few that has attempted to twist what is at best a mismanagement claim into a federal securities claim.  As will be shown below, Plaintiff's bloated, repetitive and prolix complaint fails in its alchemistic effort to turn derivative claims into securities claims and, therefore, should be dismissed.

The Complaint attempts to allege claims under Section 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") against all defendants, including Mr. Franz, Jr.  Instead of alleging specific facts as required by the Private Securities Litigation Reform Act of 1995 ("PSLRA" or "Reform Act") and Rule 9(b) of the Federal Rules of Civil Procedure, Plaintiff's 142-page Complaint says very little about Mr. Franz and none of it is detailed or satisfies Plaintiff's burden to plead fraud with particularity.  Instead, the Complaint merely alleges that: Mr. Franz was the CFO of Semtech; he signed Semtech's quarterly and annual reports filed with the Securities and Exchange Commission ("SEC"); he signed the required Sarbanes-Oxley ("SOX") certifications; and after a large restatement, he resigned as CFO of Semtech.  None of these allegations show that Mr. Franz had any involvement with the option granting or approval process or that he had any knowledge of or involvement with the accounting for Semtech's stock option grants.  While the Complaint relies heavily on excerpts from a Special Committee Report described in the Company's Form 10-K/A for the fiscal year ending

-1-

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

CASE NO.  2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

1   January 29, 2006 (the "Report"), those excerpts, at most, show that Mr. Franz may

2   have known about the option granting process and accounting or that he merely

3   "should have known," which only shows negligence, not intent.  On its face, the

4   Report's superficial statements about Mr. Franz fall far short of establishing a

5   strong inference that he acted with fraudulent intent.  Moreover, the Report's

6   superficial and conclusory statements about Mr. Franz are no substitute for the

7   detailed facts that Plaintiff is required to allege.

8        In short, the Complaint fails to allege sufficient facts to state a valid claim

9   against Mr. Franz because it: fails to identified with particularity the specific

10  statements that Plaintiff claims were fraudulent and the reasons why each statement

11  was misleading; fails to allege detailed facts showing that Mr. Franz acted with

12  scienter; and fails to allege all facts on which Plaintiff's allegations made on

13  information and belief were based.  For each of these reasons, the Complaint should

14  be dismissed as against Mr. Franz.

15  **II.    SUMMARY OF PERTINENT ALLEGATIONS**

16       Semtech is a leading supplier of analog and mixed signal semiconductor

17  products.  (Complaint ¶ 16.)

18       The Complaint alleges that the Class Period began on August 27, 2002, the

19  day Semtech filed its Form 8-K with the SEC and issued a press release announcing

20  its earnings for the quarter ending July 28, 2002.  (¶ 56.)  The Complaint next

21  alleges that the Company's net income and EPS numbers were repeated in the

22  Form 10-Q for the quarter ending July 28, 2002, which was filed with the SEC on

23  September 11, 2002.  (¶ 56.)  The Complaint sets forth two paragraphs of block text

24  from the Form 10-Q, in which the Company represents that the unaudited financial

25  statements "present fairly the financial position" of the Company.  (¶ 57.)

26  Following this text, the Complaint alleges that the Form 10-Q was signed by

27  Defendants Poe and Franz, and that the signatures were followed by a disclosure

28  that based on their knowledge, the quarterly report "does not contain any untrue

WEST\21475469.2
361794-000001

1   statement of a material fact, or omit to state a material fact necessary to make the

2   statements made . . . not misleading." (¶ 58.)  The Complaint then presumes that

3   the statements in the Form 10-Q and the disclosure following Franz' signature were

4   materially false and misleading because "Semtech underreported its expense and

5   overstated net income" and the "undisclosed fraudulent and systemic backdating of

6   option grants had exposed the Company to material liabilities as set forth above."

7   (¶ 59.)

8        And so the Complaint continues, for more than sixty pages, doing nothing

9   more than setting forth block quotes of text from Semtech's quarterly and annual

10  reports filed with the SEC, followed by the language of the disclosure and, in

11  certain instances SOX certifications, signed by Franz, and the identical paragraph

12  quoted above (¶ 59), which includes the conclusory allegation that the statements

13  were materially false and misleading.  The Complaint continues this inadequate,

14  repetitive style of pleading for the following press releases and SEC filings:

15  • August 27, 2002 press release, Form 10-Q for the quarter ending July 28, 2002;

16  • November 25, 2002 press release, Form 10-Q for the quarter ending October 27,

17     2002;

18  • Form 10-K for 2002;

19  • May 27, 2003 press release, Form 10-Q for the quarter ending April  27, 2003;

20  • August 26, 2003 press release, Form 10-Q for the quarter ending July 27, 2003;

21  • November 27, 2003 press release, Form 10-Q for the quarter ending October 26,

22     2003;

23  • Form 10-K for 2003;

24  • May 25, 2004 press release, Form 10-Q for the quarter ending April 25, 2004;

25  • August 24, 2004 press release, Form 10-Q for the quarter ending July 25, 2004;

26  • November 29, 2004 press release, Form 10-Q for the quarter ending October 31,

27     2004;

28  • Form 10-K for 2004;

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

CASE NO.  2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

1   • May 31, 2005 press release, Form 10-Q for the quarter ending May 1, 2005;

2   • August 30, 2005 press release, Form 10-Q for the quarter ending July 31, 2005;

3   • November 29, 2005 press release, Form 10-Q for the quarter ending October 30,

4     2005; and

5   • Form 10-K for 2005.

6      Noticeably absent from this 142 page complaint are any particularized facts

7 demonstrating how any one of these statements, let alone each of them, was

8 misleading and any particularized facts demonstrating that Franz knew or was

9 reckless in not knowing that any one of these statements, let alone each of them,

10 was misleading.

11      The Complaint alleges the Class Period ends on July 19, 2006, the day before

12 the Company filed a Form 8-K with the SEC revealing that the Company

13 anticipated recording "additional noncash compensation expense" as a result of an

14 internal investigation regarding stock option practices and anticipated the amount of

15 such additional expense to be material. (¶ 132.)  The Complaint further alleges that

16 following the July 19, 2006 Form 8-K, the Company's stock price began a

17 downward spiral, and the Company announced a series of executive departures.

18 (¶¶ 134-137.)

19      The Complaint focuses on Semtech's Form 10-K/A, filed with the SEC on

20 March 29, 2007. (¶ 141.)  That SEC filing includes references to the Report, which

21 concluded that Franz "knew, or should have known" of the fraudulent backdating

22 scheme at Semtech. (¶ 142.)  The Complaint then dedicates a considerable amount

23 of space to large blocks of text from the 10-K/A, setting forth the improper

24 backdating of stock options at the Company.  These allegations include statements

25 that Franz was asked to resign, and that one of his grants was cancelled and the

26 remainder of his outstanding vested options were repriced. (¶ 150.)

27 /////

28 /////

DLA PIPER US LLP
SAN DIEGO
WEST\21475469.2
361794-000001
-4-
CASE NO. 2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

1    The Complaint's reliance on the Form 10-K/A and the Report described

2    therein are misleading.  The Complaint alleges that the Form 10-K/A "concedes the

3    options manipulation was intentional." (¶ 142.)  Not so.  The Report concludes

4    only that Franz *may* have known about the backdating of stock options, and the

5    Complaint does not include any specific facts about the Report to substantiate its

6    credibility or give rise to a strong inference that Franz acted intentionally with

7    respect to the backdating of stock options at Semtech.  In fact, the Complaint lacks

8    any factual support to indicate that Franz had anything to do with the issuance of

9    stock options at Semtech.  There are no allegations that he approved stock option

10    grants, that he reviewed stock option grants, that he considered the timing of stock

11    option grants or that he was ever involved in a decision to price or reprice any stock

12    option grants.  The lack of particularized facts demonstrating Franz' state of mind is

13    fatal to Plaintiff's alleged securities fraud claims.

14    The Complaint concludes by alleging certain "additional indicia of scienter"

15    and "undisclosed adverse facts," including violations of GAAP and SEC

16    regulations, SOX certifications, and insider sales. (¶¶ 154-195.)  As discussed in

17    detail below, none of these allegations regarding additional indicia or undisclosed

18    adverse facts satisfy the stringent pleading requirements set forth in the PSLRA.

19    These are conclusory, generalized allegations of mismanagement at Semtech, which

20    Plaintiff is attempting to bootstrap into allegations of securities fraud.  Plaintiff

21    must do more than simply go through the motions of alleging "indicia of scienter"

22    and "undisclosed adverse facts."  To satisfy the PSLRA, Plaintiff must specify each

23    statement that is allegedly misleading and sufficient specific facts to give rise to a

24    strong inference that Franz acted with scienter in connection with the alleged

25    backdating scheme at Semtech.  Plaintiff has failed to include the requisite facts and

26    particularity to satisfy these standards.  Instead Plaintiff has compiled a 142 page

27    complaint, in the hopes that passing the "weight test" will be a distraction from the

28    lack of substance.

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

-5-

CASE NO.  2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

## III.   APPLICABLE LEGAL STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted where a complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).

Claims under Section 10(b) of the Exchange Act must meet the particularity requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Claims under Section 10(b) must also meet the elevated pleading requirements set forth in the Reform Act because the Rule 9(b) particularity requirements proved ineffective by themselves at preventing the filing of unmeritorious and abusive securities class actions. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 977-78 (9th Cir. 1999). Consequently, Congress enacted the PSLRA "to reduce the volume of abusive federal securities litigation by erecting procedural barriers to prevent plaintiffs from asserting baseless securities fraud claims." *Silicon Graphics*, 183 F.3d at 977.

The PSLRA modified the pleading requirements set forth in Rules 12(b)(6) and 9(b) in three ways. First, "the complaint shall specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Second, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. *Id.* at subd. (b)(2). Third, "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Id.* at subd. (b)(1).

If the complaint fails to comply with any of these heightened pleading requirements, "the court shall, on the motion of any defendant, dismiss the complaint." *Id.* at § 78u-4(b)(3)(A). Given the rigorous level of particularity

-6-

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

CASE NO. 2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

1  required under the Reform Act's heightened pleading standards, a motion to

2  dismiss for failure to state a claim upon which relief can be granted is an extremely

3  powerful tool for protecting issuers and others from unwarranted securities fraud

4  claims. *See Ronconi v. Larkin*, 253 F.3d 423, 437 (9th Cir. 2001) ("In few other

5  areas are motions to dismiss for failure to state a claim upon which relief can be

6  granted so powerful.")

7       Here, the Complaint should be dismissed.  Plaintiff's attempt to allege two

8  claims for relief:  an alleged violation of Section 10(b) of the Exchange Act

9  (15 U.S.C. § 78j) and an alleged control person claim under Section 20(a) of the

10  Exchange Act (15 U.S.C. § 78t(a)).  The Complaint fails to comply with all three of

11  the procedural pleading barriers mandated by Congress in the Reform Act to apply

12  in Section 10(b)/Rule 10b-5 cases, and, thus, both claims fail.

## IV.    PLAINTIFF'S CLAIM UNDER SECTION 10(b) FAILS.

14       This case involves an effort by Plaintiff to transform a shareholder derivative

15  claim — a claim that has already been resolved by settlement — into a Section

16  10(b) claim.  "Congress by § 10(b) did not seek to regulate transactions which

17  constitute no more than internal corporate mismanagement." *Santa Fe Industries,*

18  *Inc. v. Green*, 430 U.S. 462, 479 (1977) (*quoting Superintendent of Insurance v.*

19  *Bankers Life & Cas. Co.*, 404 U.S. 6, 12 (1972)).  Consequently, allegations of

20  mismanagement cannot support a claim under Section 10(b) or Rule 10b-5. *See id.*

21  Not only are mismanagement claims outside the scope of Section 10(b) and Rule

22  10b-5, a plaintiff cannot "'bootstrap' allegations of fraud by asserting that a

23  defendant failed to disclose corporate mismanagement of breach of fiduciary duty."

24  *In re First Chicago Corporation Sec. Litig.*, 769 F. Supp. 1444, 1449 (N.D. Ill.

25  1991) (*citing Panter v. Marshall Field & Co.*, 646 F.2d 271, 288 (7th Cir. 1981),

26  *cert. denied*, 454 U.S. 1092 (1981)); *see also Craftmatic Securities Litigation v.*

27  *Kratsow*, 890 F.2d 628, 640 (3d Cir. 1990) (upholding the dismissal of alleged

28  failures to disclose mismanagement); *Andropolis v. Red Robin Gourmet Burgers,*

-7-

DLA PIPER US LLP
San Diego

WEST\21475469.2
361794-000001

CASE NO.  2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

1    *Inc.*, 505 F. Supp. 2d 662, 683 (D. Colo. 2007) ("Plaintiff may not bootstrap his

2    internal mismanagement claim into a federal securities action"); *Shields v.*

3    *Amoskeag Bank Shares, Inc.*, 766 F. Supp. 32, 36 (D.N.H. 1991) ("the failure to

4    disclose mismanagement is not actionable under Rule 10b-5.").

5         Moreover, Section 10(b) does "not provide investors with broad insurance

6    against market losses . . . ." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336,

7    345 (2005). Consequently, courts carefully scrutinize Section 10(b) claims "to

8    diminish the possibility that 'a plaintiff with a largely groundless claim (will be

9    able) to simply take up the time of a number of other people (by extensive

10   discovery), with the right to do so representing an *in terrorem* increment of the

11   settlement value, rather than a reasonably founded hope that the process will reveal

12   relevant evidence . . .'." *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 (2d Cir. 1979),

13   *cert. denied*, 446 U.S. 946 (1980) (citations omitted); *accord Semegen v. Weidner*,

14   780 F.2d 727, 731 (9th Cir. 1985).

15         As shown below, Plaintiff has failed to turn a mismanagement claim into a

16   Section 10(b) claim because it cannot even plead the most basic elements of a

17   Section 10(b) claim with the particularity required by the PSLRA and Rule 9(b).

18        **A.**     **The Complaint Fails to Plead Misstatements With Particularity.**

19         To state a claim for securities fraud under Section 10(b), Plaintiff must

20   "specify each statement alleged to have been misleading" and the "reason or

21   reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). *See*

22   *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1023 (9th Cir. 2000) (citing *Silicon*

23   *Graphics*, 183 F.3d at 996) (To plead falsity, the complaint must identify (1) each

24   statement alleged to have been misleading, (2) the reason or reasons why the

25   statement is misleading, and (3) all facts on which that belief is formed.) These

26   allegations must be factually detailed and specific and must show that Defendants'

27   statements were false when they were made. 15 U.S.C. § 78u-5(c)(1)(B); *In re The*

28   *Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1091 (9th Cir. 2002).

-8-

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

CASE NO. 2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

1   The Complaint fails to specify the reasons why each statement is alleged to

2   have been misleading.  Instead, the Complaint quotes large blocks of text from

3   Semtech's press releases, SEC filings and SOX certifications.  (*See* ¶¶ 57, 58, 61,

4   62, 65, 66, 68, 70, 71, 74, 75, 77, 79, 80, 82, 84, 85, 87, 89, 90, 92, 94, 96, 98, 99,

5   101, 103, 104, 106, 108, 109, 111, 113, 114, 116, 118, 119, 121, 123, 124, 126.)

6   Indeed, the Complaint dedicates an astonishing 61 pages and 70 paragraphs to

7   setting forth the language of press releases, filings and certifications from 2002 to

8   2006, and alleging — with identical conclusory language — that each statement

9   was materially misleading.  This style of pleading fails to comply with the Reform

10   Act.  *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1074-75

11   (N.D. Cal. 2001) ("In the context of securities class action complaints, courts have

12   repeatedly lamented plaintiffs' counsels' tendency to place 'the burden [] on the

13   reader to sort out the statements and match them with the corresponding adverse

14   facts to solve the "puzzle" of interpreting Plaintiffs' claims.'"); *In re Autodesk, Inc.*

15   *Sec. Litig.*, 132 F. Supp. 2d 833, 841-42 (N.D. Cal. 2000)("[a] complaint is not a

16   puzzle…and we are loathe to allow plaintiffs to tax defendants against whom they

17   have leveled very serious charges, with the burden of solving puzzles in addition to

18   the burden of formulating an answer to their complaint.")

19   *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142 (C.D. Cal.

20   2007) is instructive.  There, the court was faced with an unwieldy complaint similar

21   to the Complaint here.  The court held that the Plaintiff failed to allege

22   misstatements with the requisite particularity where the complaint included a

23   seventeen page segment covering five years and thirty-three public filings, and

24   followed that segment with one conclusory paragraph as to why all the statements

25   were false when made.

26   Similarly, here, the Court is faced with a Complaint that contains a 61 page

27   segment, setting forth fifteen public filings over a four year period.  Instead of

28   following the segment with one conclusory paragraph, Plaintiff has set forth the

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

-9-

CASE NO.  2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

1   identical conclusory paragraph fifteen times in the 61 page segment — once after

2   each public filing.  After quoting large blocks of text from the Company's press

3   releases, SEC filings and SOX certifications, Plaintiff makes the conclusory

4   allegation that the Company "underreported its expenses and overstated net

5   income" and that "undisclosed fraudulent and systemic backdating of option grants

6   had exposed the company to material liabilities." (¶¶ 59, 63, 67, 72, 76, 81, 86, 91,

7   95, 100, 105, 110, 115, 120, 125.) These conclusory allegations are wholly

8   insufficient; they fail to indicate specific reasons why any of the statements were

9   false when made.  Peppering the Complaint with the same conclusory paragraph

10  fifteen times does not turn general allegations into particular allegations.  *See In re*

11  *Ferro Corporation Sec. Litig.*, Nos. 1:04CV1440, 1:04CV1589, 2007 WL 1691358,

12  *20 (N.D. Ohio June 11, 2007) (holding that plaintiffs' attempt to plead why the

13  challenged statements were misleading "amounts to little more than a repetitive

14  series of vague, redundant, and conclusory allegations").

15      Moreover, the Complaint fails to identify precisely which statements that are

16  block quoted are the statements Plaintiff claims are false.  The PSLRA requires that

17  "the complaint shall specify each statement alleged to have been misleading."

18  15 U.S.C. § 78u-4(b)(1)(B).  Alleging lengthy block quotes fails to comply with

19  this requirement. *See In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 355

20  F. Supp. 2d 1069, 1080-81 (N.D. Cal. 2005); *Havenick v. Network Exp., Inc.*, 981

21  F. Supp. 480, 526 (E.D. Mich. 1997) ("[plaintiffs compiled] a long list of block

22  quotes, many of which contain statements that cannot seriously be regarded as false

23  or misleading, and they line these statements up against a conclusory list of

24  omissions and pronounce that fraud exists.  Any notion of particularity and an

25  underlying reason in light of the PSLRA certainly demands more than this."); *In re*

26  *Sina Corp. Sec. Litig.*, No. 05 Civ. 2154(NRB), 2006 WL 2742048, *6 (S.D.N.Y.

27  Sep. 26, 2006) ("Plaintiffs' allegations concerning the defendants' failure to

28  disclose material facts do not specifically identify how or why any particular

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

-10-

CASE NO.  2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

1  representations were misleading.  Instead, the complaint sets forth large block

2  quotes taken from public statements made by the Individual Defendants and from

3  SEC filings, followed by generalized explanations of why the statements

4  collectively misled the plaintiffs").  The PSLRA also requires that "the complaint

5  shall specify . . . the reason or reasons why the statement is misleading."  15 U.S.C.

6  § 78u-4(b)(1)(B).  This means that, after each specifically identified allegedly

7  misleading statement, Plaintiff must plead "the specific reasons why the statement

8  was false when made," which, as shown above, Plaintiff has failed to do.  *See*

9  *Cornerstone*, 355 F. Supp. 2d at 1080-81.

10  **B.      The Complaint Fails to Adequately Allege Scienter.**

11      "Scienter" is the "mental state embracing intent to deceive, manipulate, or

12  defraud."  *Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.*, 532 U.S. 588, 593

13  (2001) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-94 (1976)).  To

14  plead scienter under the PSLRA, Plaintiffs must "state with particularity facts

15  giving rise to a strong inference" that defendants acted with the intent to deceive or

16  with deliberate recklessness as to the possibility of misleading investors.  15 U.S.C.

17  § 78u-4(b)(2).  Thus, the Plaintiff must "plead, in great detail, facts that constitute

18  strong circumstantial evidence of deliberately reckless or conscious misconduct."

19  *Silicon Graphics*, 183 F.3d at 974; *see also DSAM Global Value Fund v. Altiris*

20  *Software, Inc.*, 188 F.3d 385, 388-389 (9th Cir. 2002).

21      For an inference to be strong, the evidence of scienter must be more than

22  merely "reasonable" or "permissible" — it must be "cogent" and "at least as

23  compelling as any opposing inference one could draw from the facts alleged."

24  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007); *see also*

25  *Metzler Investment GMBH v. Corinthian Colleges, Inc.*, 2008 WL 2853402, *11

26  (9th Cir. Jul. 25, 2008).  This is because "[a]n inference of fraudulent intent may be

27  plausible, yet less cogent than other, nonculpable explanations for the defendant's

28  conduct."  "A complaint will survive . . . only if a reasonable person would deem

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

-11-

CASE NO.  2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

1  the inference of scienter cogent and at least as compelling as any opposing

2  inference one could draw from the facts alleged." *Tellabs*, 127 S. Ct. at 2511.

3  Further, there must be specific facts, as to each defendant, that provide a

4  compelling inference of his scienter for a Section 10(b) claim to be stated against

5  that person. *Id.* at 2511 n.6.

6         In addition to setting forth a series of conclusory allegations regarding

7  Mr. Franz, Plaintiff relies on allegations pertaining to the "Individual Defendants"

8  as a group to establish a strong inference of scienter.  Plaintiff groups the Individual

9  Defendants together as follows: "because of their senior executive positions . . .

10 they each had access to adverse undisclosed information about Semtech's stock

11 option practices, compliance with GAAP, and internal controls." (¶ 22.)

12 Furthermore, Plaintiff alleges that the Individual Defendants, "because of their

13 positions of control and authority as senior officers and/or directors of the

14 Company, were able to and did control the content of the various SEC filings, press

15 releases and other public statements pertaining to the Company." (¶ 25.)

16        The Ninth Circuit has rejected the concept of "collective scienter." *In re*

17 *Apple Computer, Inc. Sec. Litig.*, 243 F. Supp. 2d 1012, 1023, 1028; *see also In re*

18 *Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1153-54 (C.D. Cal. 2007).

19 Such allegations fail to satisfy the PSLRA's strict pleading requirements that a

20 strong inference of scienter be demonstrated as to *each* individual defendant. *See*

21 *Tellabs*, 127 S. Ct. at 2511, n.6. ("This Court concludes the group pleading doctrine

22 can no longer be used in pleading cases under the PSLRA.")

23        The Complaint appears to attempt to plead scienter as to Mr. Franz three

24 different ways.  First, the Complaint alleges Mr. Franz' role with the Company.

25 Second, the Complaint alleges and places much reliance on the summary

26 conclusions from the Report.  Third, the Complaint alleges Mr. Franz' stock sales.

27 None of these attempts by themselves or collectively raise the requisite strong

28 inference of scienter.

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

CASE NO. 2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

1.     **The Complaint's Limited Allegations Pertaining to Franz Are Insufficient to Raise a Strong Inference of Scienter.**

The allegations in the Complaint that specifically pertain to Mr. Franz are limited.  With the exception of the excerpts from the Report and his stock sales, both of which will be discussed below, the Complaint merely alleges that:

- Mr. Franz "served as Semtech's Vice President of Finance and Chief Financial Officer ("CFO") from 1993 to 2006";

- "Franz' employment with the Company terminated on January 22, 2007";

- Mr. Franz "directly participated in, approved, and concealed the options backdating scheme . . . , and assisted in the preparation of Semtech's proxy statements, and its" SEC filings;

- Mr. Franz signed Semtech's reports on Form 10-Q and Form 10-K; and

- Mr. Franz signed the SOX certifications associated with those reports.

Aside from Plaintiff's generally conclusory allegations, none of these facts show the Mr. Franz had anything to do with initiating, approving, reviewing or accounting for Semtech's stock option grants.  Missing from the Complaint is a single specific allegation showing that Mr. Franz approved any particular option grant, that Mr. Franz was involved with the timing or dating of any particular stock option grants, that Mr. Franz was involved with the recording or accounting for any particular stock option grants.  Instead, the Complaint only alleges his title and tenure at Semtech and that he signed certain documents, which is routine for anyone in Mr. Franz's position. *See Yourish v. California Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (plaintiff must do more that allege a set of neutral facts).

Plaintiff's allegation that Mr. Franz "directly participated in, approved, and concealed the options backdating scheme . . . , and assisted in the preparation of Semtech's proxy statements, and its" SEC filings is conclusory in the extreme.  Not

-13-

DLA PIPER US LLP
SAN DIEGO
WEST\21475469.2
361794-000001
CASE NO.  2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

1    a single grant is identified nor is Mr. Franz' role as to any or even all of the grants

2    described.  This allegation lacks the particularity necessary to raise any inference of

3    scienter.  *Hansen*, 527 F. Supp. 2d at 1155.  "There is a total absence of factual

4    allegations that would permit a strong inference that" Defendant Franz participated

5    in an illegal stock option grant date backdating scheme; knew that his

6    representations with respect to stock option grant dates, compliance with GAAP, or

7    the adequacy of internal controls "were false or misleading when made, if they

8    were so[;] or that Franz acted in deliberately reckless disregard of its trust or

9    falsity." *Vantive Corp.*, 283 F.3d at 1089; *see also Hansen*, 527 F. Supp. 2d at

10   1155.  "Without any corroborating facts, it is impossible to conclude that such

11   allegations rest on more than hind-sight speculation." *Id.* (citing *Silicon Graphics*,

12   183 F.3d at 988).

13        There are no corroborating facts in the Complaint to support an allegation

14   that Franz acted with scienter with respect to the backdating scheme.  Absent such

15   corroborating facts, the only conclusion to be drawn is that these allegations amount

16   to nothing more than hind-sight speculation based on the statements in the 2006

17   10-K that Franz knew that the representatives in the press releases, SEC filings and

18   SOX certifications were false when made.  Such speculation should not be

19   condoned.

20        **2.    Allegations of the Report Do Not Give Rise to a Strong**

21   **Inference of Scienter.**

22        Plaintiff relies on the Report to establish scienter.  In fact, Plaintiff's sole

23   allegation with respect to Franz' state of mind is the Report and a small excerpt

24   from the Report which concludes that Franz "knew, or should have known" of the

25   alleged backdating scheme.  Plaintiff's reliance on the Report is faulty for two

26   reasons:  (1) the Report alleges Franz was negligent, and negligence is insufficient

27   to establish scienter; and (2) the Report fails to provide particularized factual details

28   to support its conclusion.

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

CASE NO.  2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

1

             a.    **Allegations That Franz "Knew or Should Have**

2 **Known" Do Not Give Rise to a Strong Inference of Scienter.**

3        The language of the Report, relied upon by Plaintiff to establish scienter,

4 actually defeats a showing of scienter. The allegation of the Report is only one of

5 negligence, which is insufficient to prove scienter. *Silicon Graphics*, 183 F.3d at

6 977; *Ernst & Ernst v. Hochfelder*, 425 U.S. at 198. While recklessness can be

7 satisfy the scienter requirement, it is a form of intentional conduct. *Id.* at 977

8 (citing *Hochfelder*, 425 U.S. at 193-94 n.12).

9        The Company's Form 10-K/A for the year ending January 29, 2006

10 references the Report, and with respect to Franz, concludes as follows:

11               that the CFO ("Former CFO") . . . at the time the Special
              Committee's report was issued knew, or should have

12               known, of the manipulation and initiated or participated in
              some manipulative acts.

13

14 (¶ 142.) Pleading in the disjunctive like this reveals Plaintiff's total lack of

15 information with respect to Franz' state of mind at the time of the statements in

16 question. The language used by Plaintiff here "knew, *or* should have known"

17 indicates that Plaintiff was guessing what Franz' state of mind was at the relevant

18 time. Similar language has been held to be insufficient to establish a strong

19 inference of scienter. In *Wiestschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102,

20 1115 (N.D. Cal. 2003), the court held that blanket statements regarding what

21 "Defendants knew or should have known" were insufficient to establish a strong

22 inference of scienter. Similarly, in *In re Peerless Sys. Corp. Sec. Litig.*, 182

23 F. Supp. 2d 982, 995 (S.D. Cal. 2002), the court concluded that the allegation that

24 defendant "must have known" about misstatements, omissions and improper

25 revenue recognition were insufficient to establish scienter. Plaintiff is guessing

26 with respect to Franz' state of mind. Such speculation does not give rise to any

27 inference of scienter, let alone a strong inference.

28

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

-15-

CASE NO. 2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

1              **b.**    **Allegations of the Report Lack the Requisite**

2 **Particularity.**

3         The Complaint relies almost exclusively on the language of the Report to

4 substantiate its fraud claim against Franz, but fails to plead any specific facts to

5 lend credibility to that Report.  "[A] proper complaint which purports to rely on the

6 existence of internal reports would contain at least some specifics from those

7 reports as well as facts as may indicate their reliability." *Silicon Graphics*, 183

8 F.3d at 985. *see also In re Bally Total Fitness Sec. Litig.*, 2006 WL 3714708, *7

9 (N.D. Ill. Jul. 12, 2006)( plaintiffs could not rely on statements of Audit Committee

10 as reported in company press release to support an inference of scienter where

11 statements of Audit Committee were vague and unspecific, unaccompanied by

12 particularized facts and essentially finds of negligence.)  Absent such specifics, we

13 cannot determine whether there is any basis for alleging that the officers knew that

14 their statements were false at the time they were made — a required element in

15 pleading fraud.  Plaintiff has not alleged how the Special Committee came to its

16 conclusion as set forth in the Report.  Did the Special Committee interview

17 witnesses?  If so, who?  Did any of those witnesses say that they had personal

18 knowledge that Franz knew that the Company's statements as contained in the press

19 releases and SEC filings were false when made?  Did the Special Committee review

20 documents?  If so, which documents?  Did any of those documents indicate that

21 Franz knew that the Company's statements as contained in the press releases and

22 SEC filings were false when made?  Plaintiff has not alleged what Franz knew,

23 when he knew it, how he learned it and how Plaintiff came to know that Franz

24 knew. *Id.*, at 985.  In the absence of greater particularity, there is no way of

25 distinguishing Plaintiff's allegations from the countless "fishing expeditions" which

26 /////

27 /////

28 /////

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

CASE NO.  2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

the PSLRA was designed to deter. *Id.*, at 988 citing H.R. Conf. Rep. 104-369, at 37. Congress enacted the PSLRA to put an end to the practice of pleading "fraud by hindsight." *Id.* (citing *Medhekar v. United States Dist. Ct.*, 99 F.3d 325, 328 (9th Cir. 1996)).

### 3.     Franz' Signature on SEC Filings Does Not Give Rise to a Strong Inference of Scienter.

Plaintiff alleges that Franz' signature on the Company's SEC filings during the Class Period gives rise to a strong inference of scienter. It is well established, however, that signing an SEC filing does not raise any inference of scienter, much less a strong inference. *Hansen*, 527 F. Supp. 2d at 1159; *see also In re Invision Tech. Inc. Sec. Litig.*, C 04-03 181 MJJ, 2006 WL 538752, *7 n.3 (N.D. Cal. Jan. 24, 2006) (signature on a public filing does not warrant any inference of scienter, much less a strong inference); *see also Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759, 775 (S.D.N.Y. 2006) (fact that officer "signed the SEC filing — without specific allegations of reasonably available facts that should have put him on notice that the reported financial results were false — does not give rise to a strong inference of scienter.") If that were true, "scienter would be established in every case where there was an accounting error or auditing mistake made by a publicly traded company, thereby eviscerating the pleading requirements for scienter set forth in the PSLRA." *Hansen*, at 1159 (citing *Central Laborers' Pension Fund v. Integrated Electrical Services, Inc.*, 497 F.3d 546, 555 (5th Cir. 2007)). Merely pleading that defendants signed annual 10-Ks, without specifically alleging that the defendants were aware of misrepresentations or omissions therein is not sufficient to properly allege scienter. *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 949-50 (D. Ariz. 2007).

Plaintiff has alleged that Franz signed fifteen of the Company's SEC filings during the Class Period. (¶¶ 58, 62, 65, 71, 75, 80, 84, 90, 94, 99, 103, 109, 114, 119, 123.) Noticeably absent from the Complaint, however, are any allegations that

-17-

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

CASE NO. 2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

1    Franz knew the SEC filings contained misstatements at the time he signed them.
2    Without such allegations, his signatures on the SEC filings do not give rise to a
3    strong inference of scienter.

4          **4.      Franz' Signature on SOX Certifications Does Not Give Rise**
5    **to a Strong Inference of Scienter.**

6          Plaintiff has alleged scienter on the basis of Franz' signature on certain SOX
7    certifications.  (¶¶ 68, 77, 82, 87, 92, 96, 101, 106, 111, 116, 121, 126.)  The
8    Complaint actually details the content of all certifications signed by Franz during
9    the Class Period.  But signing a SOX certification, pursuant to 15 U.S.C. § 7262,
10   thereby attesting to the accuracy of the company's financial statements and the
11   effectiveness of internal controls, does not warrant a cogent finding of scienter.
12   "SOX certifications may provide additional evidence of scienter if a plaintiff
13   alleges that not only were the certifications false and misleading, but also that the
14   defendants had actual knowledge of their false or misleading nature or were
15   deliberately reckless in issuing such statements at the time."  *Weiss v. Amkor Tech.,*
16   *Inc.*, 527 F. Supp. 2d at 950.  Plaintiff's allegations with respect to Franz' signature
17   on SOX certifications, without corresponding allegations that he knew those
18   certifications were false and misleading at the time he signed them, do not give rise
19   to a strong inference of scienter.

20         **5.      Allegations of Accounting Fraud Do Not Give Rise to a**
21   **Strong Inference of Scienter.**

22         Scienter is not established by the mere publication of inaccurate accounting
23   figures, or failure to follow generally accepted accounting procedures without
24   more.  *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994), *cert.*
25   *denied*, 516 U.S. 868); *In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d 1063,
26   1073 (N.D. Cal. 2002) ("even an obvious failure to follow GAAP does not give rise
27   to a strong inference of scienter"), citing *DSAM Global Value Fund v. Altiris*
28   *Software, Inc.*, 288 F.3d 385, 390-391 (9th Cir. 2002).  Instead the Complaint must

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

CASE NO.  2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

1    allege GAAP violations, and those "allegation[s] must be accompanied by a

2    statement of fraudulent intent." *Hansen*, 527 F. Supp. 2d at 1157 (citing *In re*

3    *Carter-Wallace Inc. Sec. Litig.*, 150 F.3d 153, 157 (2d Cir. 1998)).  Without

4    detailed information regarding the alleged GAAP violations, the Court cannot

5    determine "whether the alleged GAAP violations were minor or technical in nature,

6    or whether they constituted widespread and significant inflation of revenue." *Id.* at

7    1157.

8         Plaintiff's allegations of accounting fraud did not give rise to a strong

9    inference of scienter because Plaintiff failed to allege the GAAP violations were

10   committed with fraudulent intent.  Plaintiff alleges that had the backdated options

11   been properly accounted for, Semtech would have recognized "additional expenses

12   of $36.4 million, $13.4 million, $9.2 million, $5.6 million, and $1.5 million fiscal

13   years 2002-2006 respectively." (¶¶ 59, 63, 67, 72, 76, 81, 86, 91, 95, 100, 105,

14   110, 115, 120, 125.)  Plaintiff also sets forth a laundry list of fundamental principles

15   of GAAP allegedly violated by virtue of the fraudulent backdating scheme.

16   (¶ 178.)  These allegations are insufficient to give rise to a strong inference of

17   scienter because they fail to explain which line items of the statements were false,

18   why the statements were false, the amount by which the financial statements were

19   misstated, how those provisions were violated, and who was involved in the alleged

20   GAAP violations.  Significantly, there is no allegation that Franz knew of the

21   violations, was involved in the violations or understood their impact.

22        **6.    Allegations That the Company Restated Its Financials Do**

23   **Not Give Rise to a Strong Inference of Scienter.**

24        Plaintiff cannot allege scienter simply because the Company restated its

25   financials. *Weiss v. Amkor Tech, Inc.*, 577 F. Supp. at 948-49.  The mere fact that a

26   corporate entity restates its financial statements does not give rise to a strong

27   inference that any individual defendant acted with the requisite intent to defraud. *In*

28   *re Verisign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1207 (N.D. Cal. 2007).  A

-19-

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

CASE NO.  2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

1  restatement is not an admission that the Defendants knew the reports were false

2  when made. *See In re Ramp Networks, Inc. Sec. Litig.*, 201 F. Supp. 2d 1051, 1065

3  (N.D. Cal. 2002); 2 Securities Law Handbook § 29.10 at 344 (Harold S.

4  Bloomenthal ed., 2005). Furthermore, the company's admission in its restatement

5  that some options had been backdated is not sufficient to establish

6  scienter because it "could equally support the inference that stock options had been

7  backdated through innocent bookkeeping error." *Rudolph v. UTStarcom*, No. C 07-

8  04578 SI, 2008 WL 1734763 at *6 (N.D. Cal. April 14, 2008). Even in cases where

9  a company restates its previous financials (thus establishing they were in error), a

10 plaintiff must plead specific facts showing the defendants knew (or were

11 deliberately reckless in not knowing) that the accounting treatment was in fact

12 incorrect. *See, e.g., Worlds of Wonder*, 35 F.3d at 1426-27.

13      Plaintiff alleges that Semtech, as a result of the backdating scheme, was

14 forced to take $91 million in pre-tax stock option related adjustments. (¶ 141.)

15 This restatement does not, by itself, give rise to a strong inference of scienter.

16 There are no factual allegations to support Plaintiff's suggested conclusion that this

17 restatement evidences Franz' knowledge with respect to the prior public statements

18 of the Company. The restatement could equally support the conclusion that the

19 options had been backdated by mistake. The court cannot assume scienter based on

20 the restatement, without specific facts alleging that Franz knew the prior financials

21 were false.

22          **7.    Franz' Corporate Position Does Not Give Rise to a Strong**

23 **Inference of Scienter.**

24      The Complaint alleges no facts that Franz knew the options he received were

25 backdated or that he participated in the backdating scheme. Instead, Plaintiff

26 alleges that by virtue of his position as Chief Financial Officer of the Company,

27 Franz directly participated in management of the Company, was directly involved

28 in the day-to-day operations of the Company at the highest levels, and was involved

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

-20-

CASE NO. 2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

1   in drafting and disseminating false and misleading statements.  (¶ 23.)  The

2   Complaint further alleges that as a senior executive at the Company, Franz had

3   access to adverse undisclosed information about stock options practices and access

4   based on direct involvement in the options granting process.  (¶ 22.)

5           In the options backdating context, allegations that a defendant holds a high

6   executive position, without more, do not support a strong inference of scienter.  *In*

7   *re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037 (N.D. Cal. 2008).

8   Scienter cannot be pled on the basis of general allegations regarding a defendant's

9   high level executive position, involvement in day-to-day management of the

10  company, or access to unspecified non-public information, such as internal reports.

11  *See, e.g., Silicon Graphics*, 183 F.3d at 985 (allegations of "unsubstantiated internal

12  reports alone are insufficient to demonstrate [deliberate] recklessness"); *In re*

13  *Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 872 (N.D. Cal. 2004) (declining

14  to speculate on defendant's knowledge based on the positions they held); *Peerless*

15  *Sys.*, 182 F. Supp. 2d at 993 (general allegations regarding attendance at board

16  meetings, conversations, and access to internal reports insufficient).  Such

17  presumptions about an officer or director's knowledge have been rejected under the

18  PSLRA's heightened pleading requirements.  *Id.*

19          The court in *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, found that

20  allegations of defendants' "hands-on" management style, interaction with corporate

21  employees, attendance at management and board meetings, and receipt of weekly

22  reports were insufficient to establish scienter.  *Id.* at 1087.

23          In *Autodesk*, Plaintiff alleged that the individual defendants, by virtue of their

24  top executive positions, actually knew of adverse non-public information they

25  failed to disclose.  *Autodesk*, 527 F. Supp. 2d at 843-844.  The court held that

26  Plaintiff "must do more than allege that . . . key officers had the requisite

27  /////

28  /////

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

CASE NO.  2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

1  knowledge by virtue of their positions; a ruling to the contrary would eliminate the
2  necessity for specially pleading scienter as any corporate officer could be said to
3  possess the requisite knowledge by virtue of his or her position. *Id.* at 844.

4         In *Hansen*, plaintiff alleged that a strong inference of scienter arose from
5  allegations that the individual defendants held high-level positions in the company
6  and were able to and did control the content of the company's SEC filings and press
7  releases, and had access to adverse undisclosed information.  Because Plaintiff
8  failed to allege that the defendants "either know that the options they received were
9  backdated or that they were [sic] in any way participated in the backdating
10  scheme," the court found the allegations insufficient.

11         Plaintiff cannot base an inference of scienter on unspecified documents and
12  conversations, but that is precisely what Plaintiff has attempted to do here.  Plaintiff
13  has set forth allegations regarding Franz' corporate position almost identical to
14  those rejected by the courts in *Vantive, Autodesk,* and *Hansen.*  The allegations of
15  Franz' purported knowledge, based on his position at the Company, fail.  These are
16  allegations which presume that Franz because of his position had knowledge of the
17  backdating scheme and participated in that scheme knowingly.  Plaintiff cannot be
18  permitted to establish a strong inference of scienter without alleging specific
19  documents and conversations demonstrating Franz' actual knowledge at the time of
20  the alleged misstatements.  There are no such allegations in the Complaint.

21         **8.      Franz' Stock Sales Do Not Give Rise to a Strong Inference of**
22  **Scienter.**

23         The Complaint alleges that Franz sold stock during the Class Period and that
24  these insider sales are an indicia of scienter.  (¶ 161.)  With respect to stock sales,
25  "[i]nsider stock sales are not inherently suspicious." *Vantive,* 283 F.3d at 1092.
26  Sales of stock by an insider become "suspicious only when [they are] dramatically
27  out of line with prior trading practices at times calculated to maximize the personal
28  benefit from undisclosed inside information." *Metzler,* 2008 WL 2853402 at *12

-22-

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

CASE NO.  2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

1   (citing *Silicon Graphics*, 183 F.3d at 986); *see also Hansen*, 527 F. Supp. 2d at

2   1160 (citing *Ronconi v. Larkin*, 253 F.3d at 435). To determine if a stock sale by

3   an insider is suspicious, the Ninth Circuit has held that the relevant factors to be

4   examined include: (1) the amount and percentage of shares sold by insiders; (2) the

5   timing of the sales; and (3) whether the sales were consistent with the insider's

6   prior trading history. *Id.*; *see also Vantive*, 283 F.3d at 1092. Any inference of

7   scienter is defeated when an insider sells only a portion of his stock holdings and

8   "end[s] up reaping the same large losses as did" Plaintiff when the stock price

9   dropped. *Id.*

10         The fact that individual defendants sold so little stock could be construed as

11   negating the inference that there was fraud. *Worlds of Wonder*, 35 F.3d at 1425;

12   citing *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1117 (9th Cir. 1989).

13   When evaluating stock sales, courts have held that the proportion of shares actually

14   sold by an insider to the volume of shares he could have sold is probative of

15   whether the sale was unusual or suspicious. *Silicon Graphics*, 183 F.3d at 987

16   (citing *Worlds of Wonder*, 35 F.3d at 1427).

17         Here, the stock sale allegations with respect to Franz detract rather than

18   contribute to any inference of scienter. The Complaint alleges that Franz sold

19   130,500 shares of Semtech stock, for proceeds of nearly $2.9 million. (¶ 191.) The

20   Complaint does not allege that any of the stock sold during the Class Period was

21   acquired by the exercise of improperly priced options. The Complaint does not

22   allege any facts indicating that at the time of Franz' sale, he knew that options had

23   been improperly priced, or that Semtech's financial statements were inaccurate.

24   Furthermore, an allegation that he sold 130,500 shares of stock cannot, by itself, be

25   suspicious. There are no facts in the Complaint indicating Franz' trading practices,

26   making it impossible to determine if the insider sales alleged are dramatically out of

27   /////

28   /////

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

-23-

CASE NO. 2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

1  line with his prior trading practices, and thus suspicious.  Thus, Plaintiff's

2  allegation regarding Franz' insider sales cannot give rise to a strong inference of

3  scienter.

4      **C.**    **The Complaint Fails to Allege the Basis for Any of Its Information**

5      **and Belief Allegations.**

6      Although the Complaint passes the "weight test" — its sufficiency stops

7  there.  It appears that Plaintiff has attempted to substitute quantity for quality,

8  filling 142 pages with block text from public filings, press releases, and conclusory

9  allegations.  Noticeably absent in these 143 pages are any particularized facts

10  demonstrating the fraud allegation as required by the Reform act.

11      "Allegations are deemed to be made on information and belief until the

12  plaintiffs demonstrate that they have personal knowledge of the facts."  *Vantive*,

13  283 F.3d at 1085 n.3 (citing *Splash Tech. Holdings*, 2000 WL 17277337, at *12.

14  Here, there are no allegations in the complaint demonstrating that Plaintiff has any

15  personal knowledge of Franz' conduct and state of mind with regard to the

16  backdating scheme complained of.  The Complaint states that the allegations are

17  against the Individual Defendants are based on information and belief.  (¶ 1.)

18      When a pleading is based on information and belief, a plaintiff must state

19  with particularity all facts on which his belief is based.  15 U.S.C. § 78(u)-

20  4(b)(1)(B); *Vantive*, 110 F. Supp. 2d 1209, 1215 (N.D. Cal. 2000); *see Desaigoudar*

21  *v. Meyercord*, 223 F.3d at 1022-23.  This means alleging the specific content of the

22  documents upon which the plaintiff relied, identifying who prepared and who

23  reviewed them, and setting out "sources of . . . information with respect to the

24  reports."  *Vantive*, 110 F. Supp. 2d at 1215. "To meet these requirements, plaintiffs

25  must couple each separate allegation in the [complaint] with details identifying the

26  sources upon which such beliefs are based." *Id.*  Plaintiff also must allege specific

27  facts showing how he obtained or formulated his belief.  *Silicon Graphics*, 183 F.3d

28  at 984.  This requirement to plead the basis for each of his information and belief

-24-

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

CASE NO.  2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

1   allegations "is the Reform Act's single most important weapon against pleading

2   fraud by hindsight because it forces plaintiffs to reveal whether they base their

3   allegations on an inference or earlier knowledge drawn from later disclosures or

4   from contemporaneous documents or other facts." *Vantive*, 110 F. Supp. 2d at

5   1216.

6        Plaintiff's only allegations regarding Franz' knowledge as set forth in the

7   Report are based on his high-level position at the company and the information he

8   purportedly obtained by virtue of these positions.  These conclusory allegations are

9   not supported by any detailed facts such as the dates of specific meetings, who

10  attended them and what was discussed, the names of any specific reports, who

11  authored them and what they addressed, or the dates of any conversations with

12  whom they were and what was discussed.  Plaintiff has pled absolutely no facts

13  supporting his "belief" that Franz knew that the challenged statements were false or

14  misleading at the time they were made.  Nor has Plaintiff alleged specific facts

15  showing how he obtained or formulated his belief.

16       "A complaint can be long-winded, even prolix, without pleading with

17  particularity.  Indeed, such a garrulous style is not an uncommon mask for an

18  absence of detail." *Hansen*, 527 F. Supp. 2d at 1153; *May v. Borick*, 1997 WL

19  314166, *8 (C.D. Cal. Mar. 3, 1997).  Plaintiff has failed to allege the "who, what,

20  when, where and how" of the fraud allegation as required by the PSLRA and Rule

21  9(b).  While Plaintiff alleges the existence of an unlawful backdating scheme, he

22  does not set forth any of the factual allegations including when options were

23  backdated, how the options were backdated, who was involved in the backdating,

24  and what compensation expense was associated with the backdating.  *Hansen*, at

25  1153.  There are no specific allegations that Franz played any role whatsoever in

26  the preparation or dissemination of any allegedly false statements.

27  /////

28  /////

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

CASE NO.  2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

1    **V.     PLAINTIFF'S CLAIM UNDER SECTION 20(a) FAILS**

2           Section 20(a) imposes secondary liability for violations of the Exchange Act

3    on persons who, directly or indirectly, control any person liable under the Exchange

4    Act. 15 U.S.C. § 78(t)(a).  Unless the alleged controlled person is liable, the

5    control person can have no liability under Section 20(a).  *See, e.g., In re Syntex*

6    *Corp. Sec. Litig.*, 855 F. Supp. 1086, 1098 (N.D. Cal. 1994), *aff'd*, 95 F.3d 922 (9th

7    Cir. 1996).  Because the complaint fails to state a claim against the Company for

8    violations for the securities law.  For this reason, there can be no reason for

9    "controlling" person liability under Section 20(a).

10   **VI.    CONCLUSION**

11          For the reasons set forth above, Defendant Franz respectfully requests that

12   his motion to dismiss be granted.

13

14   Dated:  August 18, 2008

15                                              DLA PIPER US LLP

16

17                                              By:   /s/ Robert W. Brownlie
                                                    ROBERT W. BROWNLIE
18                                                  JENNIFER M. FELDMAN
                                                    NICK MORGAN
19                                                  Attorneys for Defendant
                                                    DAVID G. FRANZ, JR.

20

21

22

23

24

25

26

27

28

DLA PIPER US LLP
SAN DIEGO

WEST\21475469.2
361794-000001

-26-

CASE NO.  2:07-CV-07114-CAS (FMOX)
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS