**K&L GATES LLP**
10100 Santa Monica Boulevard
Seventh Floor
Los Angeles, California  90067
Telephone: 310.552.5000
Facsimile: 310.552.5001

Michael J. Quinn (SBN 198349)
(michael.quinn@klgates.com)
Kevin S. Asfour (SBN 228993)
(kevin.asfour@klgates.com)

Attorneys for John M. Baumann

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SEMTECH CORPORATION SECURITIES LITIGATION | Case No. 2:07-CV-07114-CAS (FMOX) |
| | **DEFENDANT JOHN BAUMANN'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| | Date:  December 8, 2008 |
| | Time:  10:00 a.m. |
| | Ctrm.:  5 (2nd Floor) |
| | Assigned to Hon. Christina A. Snyder |

**RECYCLED PAPER**

1   TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2           PLEASE TAKE NOTICE that on December 8, 2008, at 10:00 a.m., or as soon

3   thereafter as the matter may be heard, in Courtroom 5 (2nd Floor) of the United States

4   District Court for the Central District of California, located at 312 North Spring Street,

5   Los Angeles, California, 90012, Defendant John Baumann will and hereby does move

6   this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an

7   Order dismissing the Consolidated Amended Class Action Complaint against him for

8   failure to state a claim upon which relief may be granted.

9           This Motion is based upon this Notice; the accompanying Memorandum of

10  Points and Authorities; all papers, pleadings and documents on file with the Court; and

11  all such additional materials and arguments as may be presented to the Court at or

12  before the hearing on this matter.

13

14                                   K&L GATES LLP

15

16  Dated:  August 18, 2008              By:  _____

17                                            Michael J. Quinn
                                              Kevin S. Asfour
18                                            Attorneys for John M. Baumann

19

20

21

22

23

24

25

26

27

28

RECYCLED PAPER

## **TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................1

II.  SUMMARY OF ALLEGATIONS IN THE COMPLAINT ................................2

    A.   Generally ...................................................................................................2

    B.   Allegations Concerning Baumann ............................................................3

III. PLAINTIFF HAS FAILED TO PLEAD AN ADEQUATE CLAIM
    AGAINST BAUMANN UNDER SECTION 10(b) AND RULE 10b-5 ...........4

    A.   Standards Governing a Motion to Dismiss Under Rule 12(b)(6) ..............4

    B.   Elements of a Claim Under Section 10(b) and Rule 10b-5 .......................4

    C.   Plaintiff has Failed to Satisfy the Stringent Fraud-Pleading Standards
       Imposed by the PSLRA and Rule 9(b) .....................................................5

    D.   Plaintiff Has Not Alleged *Any* Misrepresentations by Baumann ..............8

    E.   Plaintiff Has Failed to Satisfy the Strict Requirements of Pleading
       Scienter ....................................................................................................10

       1.   In the Ninth Circuit, the Requisite Degree of Scienter is
          *Deliberate* Conduct ......................................................................10

       2.   Under the PSLRA, a Plaintiff Must Plead Facts Giving Rise to
          a "Strong Inference" of the Requisite State of Mind......................12

       3.   Plaintiff Has Failed to Plead Facts Giving Rise to a Strong
          Inference of Scienter ......................................................................13

          a.   Plaintiff's Sweeping, Conclusory Allegations Do Not
             Satisfy the PSLRA's "Strong Inference" Requirement .......13

          b.   Plaintiff Cannot Rely on Baumann's Position With The
             Company as a Substitute for Scienter .................................14

          c.   Plaintiff's Group-Based Allegations Fail to Satisfy the
             Scienter Requirement .........................................................15

          d.   Plaintiff's Accounting-Related Allegations Fail to Satisfy
             The Scienter Requirement ...................................................16

          e.   Plaintiff's Allegations Regarding the Special Committee
             Findings Actually *Undermine* a Showing of Scienter on
             the Part of Baumann ...........................................................17

f.    Plaintiff's Allegations Regarding Baumann's Stock Sales and Option Grants Do Not Give Rise to a Strong Inference of Scienter ...........................................................18

(i)    Stock Sales ..................................................18

(ii)    Option Grants..............................................19

F.    Plaintiff's Claims are Time-Barred...........................................20

IV.    PLAINTIFF HAS FAILED TO PLEAD AN ADEQUATE CLAIM AGAINST BAUMANN UNDER SECTION 20(a) ...........................................22

V.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE .............24

VI.    CONCLUSION .................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RECYCLED PAPER

Defendant Baumann's Motion to Dismiss

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page**

**Cases**

3

*Arthur Children's Trust v. Keim,*
994 F.2d 1390 (9th Cir. 1993) ................................................................. 23

*Balistreri v. Pacifica Police Dep't,*
901 F.2d 696 (9th Cir. 1990) .................................................................... 4

*Belova v. Sharp,*
2008 U.S. Dist. LEXIS 19880, at *27 (D. Or. Mar. 13, 2008) ............. 21

*Betz v. Trainer Wortham & Co.,*
519 F.3d 863 (9th Cir. 2008) ............................................................ 20, 21

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
511 U.S. 164 (1994) ................................................................................. 8

*DiLeo v. Ernst & Young,*
901 F.2d 624 (7th Cir. 1990) ................................................................. 18

*DSAM Global Value Fund v. Altris Software, Inc.,*
288 F.3d 385 (9th Cir. 2002) .......................................................... 12, 17

*Employers Teamsters Local v. The Clorox Co.,*
353 F.3d 1125 (9th Cir. 2004) ............................................................... 12

*Ernst & Ernst v. Hochfelder,*
425 U.S. 185, 96 S. Ct. 1375, 47 L. Ed. 2d 668 (1976) ....................... 11

*Gomper v. VISX, Inc.,*
298 F.3d 893 (9th Cir. 2002) ................................................................. 12

*Halkin v. VeriFone Inc. (In re VeriFone Sec. Litig.),*
11 F.3d 865 (9th Cir. 1993) ..................................................................... 5

*Hochfelder,*
425 U.S. at 193-94, n.12) ....................................................................... 11

*Hollinger v. Titan Capital Corp.,*
914 F.2d 1564 (9th Cir. 1990), *cert. denied*, 499 U.S. 976, 113 L. Ed. 2d
719, 111 S. Ct. 1621 (1991) ................................................................... 23

*Howard v. Everex Sys.,*
228 F.3d 1057 (9th Cir. 2000) ............................................................... 22

*In re Apple Computer, Inc., Sec. Litig.,*
243 F. Supp. 2d 1012 (N.D. Cal. 2002) ................................................ 16

*In re Audodesk, Inc. Sec. Litig.,*
132 F. Supp. 2d 833 (N.D. Cal. 2000) ................................................... 15

*In re Bally Total Fitness Sec. Litig.,*
2006 U.S. Dist. LEXIS 93986, at *23 (N.D. Ill. Jul. 12, 2006) ........... 18

*In re Hansen Natural Corp. Sec. Litig.,*
527 F. Supp. 2d 1142 (C.D. Cal. 2007) .......................................... passim

*In re Silicon Graphics, Inc. Sec. Litig.,*
183 F.3d 970 (9th Cir. 1999) .......................................................... passim

*In re Tibco Software Sec. Litig.,*
2006 U.S. Dist. LEXIS 36666, at *82 (N.D. Cal. May 25, 2006) ........ 10

*In re Vantive Corp. Sec. Litig.,*
283 F.3d 1079 (9th Cir. 2002) ................................................... 6, 8, 24, 25

*In re Zoran Corp. Derivative Litig.,*
511 F. Supp. 2d 986 (N.D. Cal. 2007) ............................................. 20, 21

*In re. Read-Rite Corp. Sec. Litig.,*
335 F.3d 843 (9th Cir. 2003) ........................................................ 13, 17, 25

*Kaplan v. Rose,*
49 F.3d 1363 (9th Cir. 1994) ................................................................. 23

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,*
501 U.S. 350, 115 L. Ed. 2d 321, 111 S. Ct. 2773 (1991) ................... 20

iii

RECYCLED PAPER

Defendant Baumann's Motion to Dismiss

*Lipton v. Pathogensis Corp.*,
   284 F.3d 1027 (9th Cir. 2002) ................................................................ 15, 19
*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008) ........................................................................ 4
*Nordstrom, Inc. v. Chubb & Son, Inc.*,
   54 F.3d 1424 (9th Cir. 1995) ....................................................................... 16
*Paracor Fin., Inc. v. GE Capital Corp.*,
   96 F.3d 1151 (9th Cir. 1996) ....................................................................... 23
*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001) ................................................................... 6, 19
*Sparling v. Daou (In re Daou Sys.)*,
   411 F.3d 1006 (9th Cir. 2005) ....................................................................... 5
*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*,
   128 S. Ct. 761 (2008) ............................................................................... 5, 10
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007) ............................................... 12
*United States v. SmithKline Beecham, Inc.*,
   245 F.3d 1048 (9th Cir. 2001) ..................................................................... 25
*Weiss v. Amkor*,
   527 F. Supp. 2d 938 (D. Ariz. 2007) .......................................................... 16
*Wiestchner v. Monterey Pasta Co.*,
   294 F. Supp. 2d 1102 (N.D. Cal. 2003) ...................................................... 18
*Yourish v. California Amplifier*,
   191 F.3d 983 (9th Cir. 1999) ......................................................................... 5

**Statutes**

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j .............. passim
15 U.S.C. § 78u-4 (b)(3)(A) .............................................................................. 5
15 U.S.C. § 78u-4(b)(1) ................................................................................. 6, 9
15 U.S.C. § 78u-4(b)(2) ...................................................................................... 6
15 U.S.C. § 78u-4(b)(3)(A) ................................................................................. 5
28 U.S.C. § 1658(b) .................................................................................... 20, 21
Private Securities Litigation Reform Act of 1995 .................................... passim
Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a) ............... 22

**Rules**

17 C.F.R. § 230.405 ....................................................................................... 23
17 C.F.R. § 240.10b-5 ........................................................................... 5, 10, 22
Federal Rule of Civil Procedure, Rule 12(b)(6) ............................................... 4
Federal Rules of Civil Procedure, Rule 9(b) .......................................... passim

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant John Baumann ("Baumann"), the former Treasurer of Semtech Corporation ("Semtech"), respectfully submits this Memorandum of Points and Authorities in support of his Motion to Dismiss Lead Plaintiff Mississippi Public Employees' Retirement System's ("Plaintiff") Consolidated Amended Class Action Complaint (the "Complaint").[1]

## I.    INTRODUCTION

The Complaint alleges causes of action under Section 10(b) and 20(a) of the Securities Exchange Act of 1934.  Plaintiff utterly fails to adequately allege claims against Baumann under the strict pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Rule 9(b) of the Federal Rules of Civil Procedure.  The Complaint fails to allege that Baumann made *any* misrepresentations at any time.  In fact, the Complaint does not allege any specific conduct on the part of Baumann whatsoever.  Baumann is identified by name or title in only 11 of the Complaint's 216 paragraphs, none of which allege any specific conduct or any factual basis for conclusions based on information and belief.

All of the Complaint's allegations against Baumann appear to stem from conclusions of the Special Committee Report discussed in Semtech's 2006 Form 10-K/A.  Specifically, the Report noted that Baumann was asked to submit his resignation (although Semtech also asked that he remain with the Company for approximately four more months) and concluded that at the time the Special Committee's Report was issued, Baumann "knew or should have known" of Semtech's stock option manipulation and initiated or participated in some manipulative acts.  Of course, what Baumann knew or should have known as of the time the Special Committee's Report was issued, long after any events in question and after the end of the class period, is wholly irrelevant.  Moreover, Plaintiff's reliance on the Report's conclusion that

---

[1] Baumann also joins in the motions to dismiss concurrently filed by Defendants Semtech, Franz, Poe, Carlson and Maheswaran.

RECYCLED PAPER

Defendant Baumann's Motion to Dismiss

1  Baumann "knew or should have known" negates any strong inference of scienter as

2  required by the PSLRA.  Indeed, based on that conclusion following its exhaustive

3  investigation, the Special Committee elected to take no action against Baumann.

4      The Complaint fails to state a cause of action against Baumann under Section

5  10(b) because it fails to plead misrepresentations with the requisite particularity, fails

6  to plead any factual basis for allegations made on information and belief, and fails to

7  plead facts sufficient to create a strong inference of scienter.  Plaintiff's Section 10(b)

8  claims are also barred by the statute of limitations.  The Complaint fails to state a cause

9  of action against Baumann under Section 20(a) because it fails to plead any facts

10  showing that Baumann can be held liable as a controlling person of Semtech.  For

11  these reasons, the Complaint should be dismissed as to Baumann.

12

13  **II.    SUMMARY OF ALLEGATIONS IN THE COMPLAINT**

14          **A.    Generally**

15      Semtech is a leading supplier of analog and mixed signal semiconductor

16  products.  Complaint, ¶ 16.  The Complaint alleges that Semtech manipulated the

17  terms of its stock options, including the strike price and grant date, to ensure that

18  options were "in the money" upon receipt, but failed to account for them properly.

19  Complaint, ¶¶ 4-6.  The Complaint identifies by date 16 specific options grants

20  Plaintiff alleges were manipulated, all of which occurred between January 1994 and

21  May 2002.  Complaint, ¶ 161.  The Complaint alleges that the Class Period began on

22  August 27, 2002, when Semtech filed its Form 8-K with the U.S. Securities and

23  Exchange Commission (the "SEC") and issued a press release announcing its quarterly

24  earnings for the quarter ending July 28, 2002.  Complaint, ¶ 56.  Plaintiff alleges that

25  because Semtech did not properly account for the purported backdated options, the

26  statements made in the Form 8-K were materially false and misleading in that they

27  underreported expenses and overstated earnings.  Complaint, ¶ 59.

28

RECYCLED PAPER

1      Plaintiff further alleges that the same misrepresentations were repeated in

2  Semtech's Form 10-Q for the quarter ended July 28, 2002, which was filed with the

3  SEC on September 11, 2002.  Complaint, ¶ 56.  The Complaint alleges that the former

4  Chief Executive Officer and the former Chief Financial Officer signed the Form 10-Q

5  affirming that based on their knowledge, the quarterly report did "not contain any

6  untrue statement of a material fact, or omit to state a material fact necessary to make

7  the statements made…not misleading."  Complaint, ¶ 58.

8      The Complaint then continues, for some sixty pages, quoting from Semtech's

9  quarterly and annual reports, with each quotation followed by Plaintiff's conclusory

10  allegation that the statements made therein were materially false and misleading.

11  Complaint, ¶¶ 56-126.

12      Plaintiff alleges that the truth was finally revealed in a series of public

13  announcements beginning in May 2006 and culminating on July 20, 2006, when

14  Semtech filed a Form 8K stating that it anticipated recording an "additional noncash

15  compensation expense" as a result of an internal investigation regarding the company's

16  options granting practices.  Complaint, ¶ 132.  Finally, the Complaint alleges that

17  Semtech's public statements about the backdating investigation had a negative impact

18  on its stock price causing Plaintiff's damages.  Complaint, ¶¶ 134-136.

19     **B.**    **Allegations Concerning Baumann**

20      Plaintiff's Complaint is remarkably sparse with respect to allegations specific to

21  Baumann.  For example, the Complaint's 216 paragraphs do not allege that Baumann

22  made *any* misrepresentations.  In fact, the Complaint does not allege any specific

23  conduct on the part of Baumann.  Baumann is specifically identified by name or title in

24  only 11 of the Complaint's 216 paragraphs, none of which contains any allegations of

25  a misrepresentation or any specific conduct on the part of Baumann.  Even those 11

26  paragraphs, however, merely cite language from Semtech's public filings that refer to

27  Baumann and/or state conclusions without any factual support.  For example, in

28  conclusory fashion, the Complaint alleges, "Baumann directly participated in,

3

1 approved, and concealed the options backdating scheme at issue in this case, and

2 assisted in the preparation of Semtech's proxy statements, and its quarterly and annual

3 reports." Complaint, ¶ 21. No specific facts, however, are pleaded as a factual basis

4 supporting any such conclusion that Baumann participated in, approved or concealed

5 anything – relating to stock options or anything else.

6      Instead, the Complaint's sole basis for alleging claims against Baumann appears

7 to be language in Semtech's 2006 Form 10-K/A noting conclusions of the Special

8 Committee, specifically, that Baumann was asked to resign as Treasurer, and that "at

9 the time the Special Committee's Report was issued," he "knew or should have known,

10 of the manipulation and initiated or participated in some manipulative acts."

11 Complaint, ¶¶ 143, 150. In 10 additional paragraphs, Baumann is identified as part of

12 the generic group "Individual Defendants" but again, no specific conduct is attributed

13 to him. In short, the Complaint fails to attribute any specific conduct to Baumann to

14 support causes of action under Sections 10(b) or 20(a).

15 **III. PLAINTIFF HAS FAILED TO PLEAD AN ADEQUATE CLAIM**

16       **AGAINST BAUMANN UNDER SECTION 10(b) AND RULE 10b-5**

17      **A.   Standards Governing a Motion to Dismiss Under Rule 12(b)(6**

18      Federal Rule of Civil Procedure 12(b)(6) permits this Court to dismiss Plaintiff's

19 complaint if it "lacks a cognizable legal theory" or it fails to allege "sufficient facts to

20 support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d

21 1097, 1104 (9th Cir. 2008), citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699

22 (9th Cir. 1990). Plaintiff's Complaint should be dismissed because it fails to allege

23 facts sufficient to support any of the causes of action purportedly stated against

24 Baumann.

25      **B.   Elements of a Claim Under Section 10(b) and Rule 10b-5**

26      Section 10(b) of the Securities Exchange Act of 1934 makes it "unlawful for any

27 person… [t]o use or employ, in connection with the purchase or sale of any security…

28 any manipulative or deceptive device or contrivance in contravention of such rules and

regulations as the Commission may prescribe…in the public interest or for the protection of investors." 15 U.S.C. § 78j.  Pursuant to Section 10(b), the SEC promulgated Rule 10b-5, which, *inter alia*, makes it unlawful to "make any untrue statement of a material fact or to omit to state a material fact… or to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit… in connection with the purchase or sale of any security."  17 CFR § 240.10b-5.

"In a typical § 10(b) private action a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761, 768 (2008).

**C.    Plaintiff has Failed to Satisfy the Stringent Fraud-Pleading Standards Imposed by the PSLRA and Rule 9(b)**

To successfully state a claim for violation of Section 10(b), Plaintiff must satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA. Rule 9(b) requires allegations of fraud to be pleaded with particularity.  *Sparling v. Daou (In re Daou Sys.)*, 411 F.3d 1006, 1013 (9th Cir. 2005); *Halkin v. VeriFone Inc. (In re VeriFone Sec. Litig.)*, 11 F.3d 865, 868 (9th Cir. 1993) ("Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").  Under Rule 9(b), the complaint must aver with particularity the circumstances constituting the fraud; this requires a plaintiff to set forth what is false or misleading about a statement, and why it is false.  *Yourish v. California Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999).  In other words, the plaintiff must set forth an explanation as to *why* the statement or omission complained of was false or misleading.  *See id.*

The PSLRA imposes additional heightened standards for pleading a securities fraud claim, beyond even those of Rule 9(b).  15 U.S.C. § 78u-4 (b)(3)(A).  First, the

1   complaint must set forth "each statement alleged to have been misleading, the reason

2   or reasons why the statement is misleading, and, if an allegation . . . is made on

3   information and belief, the complaint shall state with particularity all facts on which

4   that belief is formed." 15 U.S.C. § 78u-4(b)(1).  Second, a plaintiff must state with

5   particularity facts giving rise to a "strong inference" that the defendant acted with the

6   required state of mind with respect to each act or omission alleged to be a violation of

7   the securities laws. 15 U.S.C. § 78u-4(b)(2).

8          Plaintiff's Complaint here, in relevant part, is based exclusively on information

9   and belief.  "Allegations are deemed to have been made on information and belief until

10  the plaintiffs demonstrate that they have personal knowledge of the facts." *In re*

11  *Vantive Corp. Sec. Litig*., 283 F.3d 1079, 1085 n.3 (9th Cir. 2002).  Plaintiff concedes

12  that only allegations "as to it and its own acts" are based on personal knowledge and

13  that all other allegations are based upon information and belief.  Complaint, ¶ 1.

14  Accordingly, Plaintiff is required to "state with particularity" all facts on which its

15  belief as to each alleged false or misleading statement is formed.  *See Ronconi v.*

16  *Larkin*, 253 F.3d 423, 429 (9th Cir. 2001) (citing 15 U.S.C. § 78u-4(b)(1)).

17         To do so, Plaintiff "must provide, in great detail, all the relevant facts forming

18  the basis of [its] belief." *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th

19  Cir. 1999).  Plaintiff's Complaint does not meet this heightened requirement for

20  pleading on information and belief.  Instead, Plaintiff offers a single paragraph at the

21  beginning of the Complaint stating that its information and belief is based on facts

22  obtained through an investigation of its counsel.  Complaint, ¶ 2.  The paragraph

23  vaguely describes the investigation:

24              Lead Plaintiff's information and belief is based upon all of the

25              facts set forth below, which were obtained through an

26              investigation by and through Lead Counsel, which has

27              included, *inter alia,* (i) a review and analysis of [Semtech's]

28              filings with the [SEC]; (ii) interviews with former Semtech

                                    6

1    employees; (iii) a review and analysis of other publicly
2    available information and data concerning Semtech and its
3    historical stock option practices and (iv) discussions with, and
4    review of studies prepared by, various experts. Lead Plaintiff
5    believes that substantial additional evidentiary support will
6    exist for the allegations set forth below after a reasonable
7    opportunity for discovery.
8  Complaint, ¶ 2.
9        In *Silicon Graphics*, the Ninth Circuit rejected an almost identical paragraph as
10 an insufficient attempt to satisfy the heightened information and belief pleading
11 standard.  There, the plaintiffs pleaded the following:
12    Plaintiffs have alleged the foregoing based upon the
13    investigation of their counsel, which included a review of SGI's
14    SEC filings, securities analysts reports and advisories about the
15    Company, press releases issued by the Company, media reports
16    about the Company and discussions with consultants, and
17    believe that substantial evidentiary support will exist for the
18    allegations after a reasonable opportunity for discovery.
19 *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d at 985.  The Ninth Circuit held, "This
20 paragraph is an insufficient basis for fraud allegations because it fails to state 'with
21 particularity all facts on which [her] belief is formed.'"  *Id.*  The court continued, "It is
22 not sufficient for a plaintiff's pleadings to set forth a belief that certain unspecified
23 sources will reveal, after appropriate discovery, facts that will validate her claim.  In
24 this case, [plaintiff's] complaint does not include adequate corroborating details."  *Id.*
25       Plaintiff's Complaint here alleges a nearly identical basis for Plaintiff's
26 information and belief and should fare no better.  Merely describing the investigation
27 conducted by counsel is no substitute for "stating with particularity all facts"
28 uncovered in that investigation that provide the basis for the belief.  Plaintiff makes no

RECYCLED PAPER
Defendant Baumann's Motion to Dismiss

1    further attempt beyond Paragraph 2 to satisfy the requirements of the PSLRA to state

2    with particularity all facts on which its belief in the falsity or misleading nature of each

3    alleged statement is based.  More is clearly required.  "To meet these requirements,

4    plaintiffs must couple each separate allegation in the [complaint] with details

5    identifying the sources upon which such beliefs are based."  *In re Hansen Natural*

6    *Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1152 (C.D. Cal. 2007) (quoting *In re Vantive*

7    *Corp. Sec. Litig.*, 110 F. Supp. 2d 1209, 1215-16 (N.D. Cal. 2000)).  Plaintiff here

8    makes no attempt to do so.

9         Absent such supporting facts stated with particularity, Plaintiff has not

10   adequately alleged under the PSLRA that any defendant made any false or misleading

11   statements.  More particularly with respect to Baumann, Plaintiff fails to allege that he

12   made *any* statements at all.

13        **D.     Plaintiff Has Not Alleged *Any* Misrepresentations by Baumann**

14        The most glaring omission from Plaintiff's Complaint is the complete absence

15   of a single allegation that Baumann ever made any misrepresentations.  Indeed, the

16   section of the Complaint entitled, "Defendants' Materially False and Misleading

17   Statements" is 61 pages containing 71 paragraphs of alleged misrepresentations.

18   Complaint, ¶¶ 56-126.  In that entire section, not only is Baumann not alleged to have

19   made any statements to anyone, but he is not even *referenced* a single time.  Moreover,

20   Baumann is not alleged to have made any statements whatsoever anywhere in the

21   Complaint.  Absent some allegation that Baumann made some false or misleading

22   statement, Plaintiff cannot meet the strict pleading requirements of the PSLRA and

23   Rule 9(b).

24        A defendant must actually make a false or misleading statement in order to be

25   held liable under Section 10(b) .  *Central Bank of Denver, N.A. v. First Interstate Bank*

26   *of Denver, N.A.*, 511 U.S. 164, 177 (1994).  Plaintiff here has utterly failed to allege

27   Baumann made any false or misleading statement.  The Ninth Circuit has interpreted

28   this limitation to mean that "an individual may become a primary violator through

1    'substantial participation or intricate involvement in the preparation of fraudulent

2    statements.'" *Hansen*, 527 F. Supp. 2d at 1153 n.3 (citations omitted). However,

3    Plaintiff here has made no attempt to allege any facts even remotely suggesting that

4    Baumann had "substantial participation or intricate involvement in the preparation of

5    fraudulent statements." Accordingly, Plaintiff has not met even its initial burden of

6    alleging that Baumann made a false or misleading statement.

7        The sole basis for Plaintiff naming Baumann in the Complaint appears to be

8    nothing more than the language in Semtech's 2006 Form 10-K/A noting the

9    conclusions of the Special Committee. With respect to Baumann, the conclusion was

10   that "at the time the Special Committee's report was issued, [he] knew or should have

11   known, of the manipulation and initiated or participated in some manipulative acts."

12   Complaint, ¶ 150. As discussed more thoroughly below, this allegation cannot satisfy

13   the PSLRA's strict scienter pleading requirements, but it also cannot take the place of

14   Plaintiff's obligations to plead an actual false or misleading statement.

15       In fact, only 11 of the Complaint's 216 paragraphs reference Baumann by name

16   or title. Complaint, ¶¶ 6, 7, 21, 22, 24, 40, 140, 142, 143, 150 and 191. None of the 11

17   paragraphs, however, allege any specific conduct on the part of Baumann. Paragraph

18   21 is a prime example. Paragraph 21 identifies Baumann as a defendant in the case. In

19   conclusory fashion, the paragraph alleges, "Baumann directly participated in,

20   approved, and concealed the options backdating scheme at issue in this case, and

21   assisted in the preparation of Semtech's proxy statements, and its quarterly and annual

22   reports." Complaint, ¶ 21. Plaintiff fails, however, in any of the 215 remaining

23   paragraphs of the Complaint to allege any factual basis for this conclusion. As

24   discussed above, if allegations are made on information and belief, Plaintiff "must

25   state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-

26   4(b)(1). The Complaint contains no further factual basis whatsoever to support the

27   conclusory allegation and, accordingly, the allegation is insufficient.

28

RECYCLED PAPER

1  In addition to the 11 paragraphs identifying Baumann specifically by his name

2  or title, Plaintiff also attempts (impermissibly) to allege that the "Individual

3  Defendants" participated in various conduct.  Complaint, ¶¶ 4, 23, 24, 25, 183, 203,

4  207, 214, 215, 216.  Numerous courts in the 9th Circuit have held that so-called "group

5  pleading" contravenes the PSLRA.  *See, e.g., In re Hansen Natural Corp. Sec. Litig.*,

6  527 F. Supp. 2d at 1153-54 (C.D. Cal. 2007); *In re Tibco Software Sec. Litig.*, 2006

7  U.S. Dist. LEXIS 36666, at *82 (N.D. Cal. May 25, 2006).  Grouping defendants

8  together in such a fashion, in effect alleging that statements are the collective action of

9  the defendants, plainly fails to allege misstatements with the requisite particularity.

10  *See Hansen*, 527 F. Supp. 2d at 1153-54.  Plaintiff's attempt to group Baumann with

11  other defendants only further highlights the Complaint's utter failure to allege any

12  specific conduct on the part of Baumann.  Based on this failure alone, the Complaint

13  cannot survive a motion to dismiss.

14  **E.    Plaintiff Has Failed to Satisfy the Strict Requirements of Pleading**

15  **Scienter**

16  As set forth above, Rule 9(b), the PSLRA, and the relevant case law impose

17  strict requirements for pleading a securities fraud claim.  Among these is the

18  requirement that the plaintiff plead facts (and the source of such facts) giving rise to a

19  "strong inference" of the requisite state of mind on the part of the defendant, i.e., that

20  he acted with *fraudulent intent*.  Plaintiff here has failed to plead any such facts with

21  respect to Baumann, which alone necessitates dismissal of the Complaint against him.

22  **1.    In the Ninth Circuit, the Requisite Degree of Scienter is**

23  ***Deliberate* Conduct**

24  Federal courts have uniformly recognized scienter—a defendant's *state of mind*

25  in committing allegedly fraudulent acts—as an essential element of a private right of

26  action under Section 10(b)  of the Exchange Act and Rule 10b-5 thereunder.  *See, e.g.,*

27  *Stoneridge*, 128 S. Ct. at 768; *Silicon Graphics*, 183 F.3d at 975 ("The Supreme Court

28  has defined 'scienter' in the context of § 10(b) as a 'mental state embracing intent to

1  deceive, manipulate, or defraud.'" (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185,

2  193-94 n.12, 96 S. Ct. 1375, 47 L. Ed. 2d 668 (1976)).

3       As established by the seminal case of *Silicon Graphics*, in the Ninth Circuit the

4  requisite state of mind for a Section 10(b) defendant is, "at a minimum, **deliberate**

5  recklessness." *Silicon Graphics*, 183 F.3d at 977 (emphasis added).  In reaching this

6  conclusion, the Ninth Circuit examined a history of Supreme Court and prior Ninth

7  Circuit rulings, and determined that "recklessness only satisfies scienter under § 10(b)

8  to the extent that it reflects some degree of intentional or conscious misconduct.  To

9  repeat, recklessness in the § 10(b) context is, in the words of the Supreme Court, a

10 form of intentional conduct." *Id.* (citing *Hochfelder*, 425 U.S. at 193-94, n.12).

11      In so holding, the Ninth Circuit explicitly *rejected* Second Circuit holdings

12 allowing a plaintiff to satisfy the scienter pleading requirement with allegations of

13 mere "recklessness" coupled with motive and opportunity.  Rather, held the Ninth

14 Circuit, a plaintiff must effectively plead *actual intent*:

15            "[T]he legislative history supports our conclusion that the

16            PSLRA pleading standard is higher than the standard of the

17            Second Circuit.  We find that because the joint committee

18            expressly rejected the 'motive and opportunity' and

19            'recklessness' tests when raising the standard, Congress must

20            have intended a standard that lies beyond the Second Circuit

21            standard. Had Congress merely sought to adopt the Second

22            Circuit standard, it easily could have done so. It did not do so.

23            Instead, Congress adopted a standard more stringent than the

24            Second Circuit standard. It follows that plaintiffs proceeding

25            under the PSLRA can no longer aver intent in general terms of

26            mere 'motive and opportunity' or 'recklessness,' but rather,

27            must state specific facts indicating **no less than a degree of**

28            **recklessness that strongly suggests <u>actual</u> intent**."

1    *Silicon Graphics*, 183 F.3d at 979 (emphasis added); *see also DSAM Global Value*

2    *Fund v. Altris Software, Inc.*, 288 F.3d 385, 389 (9th Cir. 2002).

3        **2.**    <u>**Under the PSLRA, a Plaintiff Must Plead Facts Giving Rise to**</u>

4            <u>**a "Strong Inference" of the Requisite State of Mind**</u>

5         The PSLRA further requires a Section 10(b) plaintiff to "state with particularity

6    *facts* giving rise to a *strong inference* that the defendant acted with the required state of

7    mind." 15 U.S.C. § 78u-4 (emphasis added). The Supreme Court recently elaborated

8    upon the parameters of this "strong inference" requirement, holding that an inference

9    of fraudulent intent drawn from a set of pleaded facts must be *at least as plausible* as

10   any competing, nonfraudulent inference:

11         "[T]o determine whether a complaint's scienter allegations can

12         survive threshold inspection for sufficiency, a court governed

13         by [the PSLRA] must engage in a comparative evaluation; it

14         must consider, not only inferences urged by the plaintiff…but

15         also competing inferences rationally drawn from the facts

16         alleged. An inference of fraudulent intent may be plausible, yet

17         less cogent than other, nonculpable explanations for the

18         defendant's conduct. To qualify as 'strong' within the

19         intendment of [the PSLRA], we hold, an inference of scienter

20         must be more than merely plausible or reasonable—it must be

21         cogent and at least as compelling as any opposing inference of

22         nonfraudulent intent."

23   *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2404-05, 168 L. Ed. 2d

24   179 (2007); *see also Employers Teamsters Local v. The Clorox Co.*, 353 F.3d 1125,

25   1134 (9th Cir. 2004); *Gomper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002).

26

27

28

RECYCLED PAPER

1   **3.   Plaintiff Has Failed to Plead Facts Giving Rise to a Strong**
2   **Inference of Scienter**

3   As set forth above, Plaintiff is required to plead specific facts giving rise to a

4   strong inference that Baumann acted with deliberate, fraudulent intent.  Plaintiff has

5   not done so.

6   **a.   Plaintiff's Sweeping, Conclusory Allegations Do Not**
7   **Satisfy the PSLRA's "Strong Inference" Requirement**

8   The complaint is devoid of specific *factual* allegations giving rise to any

9   inference of scienter on the part of Baumann.  Plaintiff first mentions defendant

10  Baumann early in the complaint, alleging, in conclusory fashion, that he "directly

11  participated in, approved and concealed the options backdating scheme at issue in this

12  case, and assisted in the preparation of Semtech's proxy statements, and its quarterly

13  and annual reports."  Complaint, ¶ 21.

14  Nowhere in the complaint are facts alleged that demonstrate or detail any of this

15  alleged "participation," "approval," or "concealment," as would be required in order to

16  meet the PSLRA's scienter-pleading requirement.  *See, e.g., In re Read-Rite Corp.*

17  *Sec. Litig.*, 335 F.3d 843, 846 (9th Cir. 2003) ("The requirement to plead all the facts

18  with particularity means that a plaintiff must provide a list of *all relevant*

19  *circumstances in great detail*. To meet this pleading requirement, the complaint must

20  contain allegations of specific 'contemporaneous statements or conditions' that

21  demonstrate the intentional or the deliberately reckless false or misleading nature of

22  the statements when made.") (emphasis added).

23  Plaintiff has not alleged what, exactly, Baumann did in the way of

24  "participation"; how, when, and in what form he delivered his "approval" of the

25  alleged scheme; what steps he took in the way of "concealment"; any facts whatsoever

26  indicating that he had contemporaneous knowledge of the alleged impropriety of

27  Semtech's options granting practices; or any other details regarding his role in the

28  alleged "backdating scheme."  Under these circumstances, the PSLRA demands

RECYCLED PAPER

1   dismissal of the complaint.  *See, e.g., Hansen*, 527 F. Supp. 2d at 1153 (holding that

2   allegations of an "unlawful backdating scheme" must include, "at a minimum, the

3   'who, what when, where, and how'…as required by the PSLRA and Rule 9(b)").

       **b.**     **Plaintiff Cannot Rely on Baumann's Position With The**

           **Company as a Substitute for Scienter**

6         Apparently cognizant of the complaint's lack of *facts* demonstrating scienter,

7   Plaintiff has resorted to Baumann's corporate *title*, and a corresponding presumption of

8   "access to information," in an effort to satisfy the scienter requirement.  This is

9   impermissible under the PSLRA.

10        The complaint collectively defines defendants Poe, Carlson, Maheswaran, Franz

11  and Baumann as the "Individual Defendants."  Complaint, ¶ 22.  Plaintiff then

12  proceeds to allege, "*Because of their senior executive positions* at the Company, *they*

13  *each had access* to adverse undisclosed information about Semtech's stock option

14  practices, compliance with GAAP, and internal controls."  *Id.* (emphasis added); *see*

15  *also* Complaint, ¶¶ 23 ("the Individual Defendants, *by virtue of their positions*, directly

16  participated in the management of Semtech, were directly involved in the day-to-day

17  operations of the Company at the highest levels, and were privy to confidential

18  proprietary information"), 25 ("The Individual Defendants, *because of their positions*

19  of control and authority as senior officers and/or directors of the Company, were able

20  to and did control the content of the various SEC filings, press releases and other

21  public statements pertaining to the Company during the Class Period."), 207 ("each of

22  these Defendants, *by virtue of his responsibilities and activities as a senior officer*

23  *and/or director* of the Company, was privy to and participated in the creation,

24  development and reporting of the Company's internal budgets, plans, projections

25  and/or reports"), 215 ("each of the Individual Defendants had direct and supervisory

26  involvement in the day-to-day operations of the Company and, therefore, is *presumed*

27  to have had the power to control or influence the particular transactions giving rise to

28  the securities violations as alleged herein") (emphasis added).

1   The relevant case law makes plain, however, that referencing an individual's

2   corporate rank, and extrapolating from it a presumption of "awareness," does not

3   satisfy the scienter requirement.  As the *Hansen* court observed, a plaintiff "must do

4   more than allege that . . . key officers had the requisite knowledge by virtue of their

5   'hands on' positions; a ruling to the contrary would eliminate the necessity for

6   specially pleading scienter as any corporate officer could be said to possess the

7   requisite knowledge by virtue of his or her position."  *Hansen*, 527 F. Supp. 2d at 1159

8   (quoting *In re Audodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 844 (N.D. Cal. 2000)).

9   Similarly, Baumann's alleged access to nebulous, "adverse undisclosed

10  information" (Complaint, ¶ 22) and "confidential propriety information" (*id.*, ¶ 23) is

11  far too vague even to hint at scienter, let alone provide a "strong inference."  *See, e.g.,*

12  *Silicon Graphics*, 183 F.3d at 985; *Lipton v. Pathogensis Corp.*, 284 F.3d 1027, 1036

13  (9th Cir. 2002) ("As we held in *Silicon Graphics*, negative characterizations of reports

14  relied on by insiders, without *specific reference to the contents* of those reports, are

15  insufficient to meet the heightened pleading requirements of the PSLRA.") (emphasis

16  added).

17             **c.**    **Plaintiff's Group-Based Allegations Fail to Satisfy the**

18                     **Scienter Requirement**

19  In various places in the Complaint, Plaintiff has attempted to "lump together"

20  the individual defendants and plead a "collective consciousness," of sorts.  *See, e.g.,*

21  Complaint ¶¶ 25 ("each of the Individual Defendants is responsible for the accuracy of

22  the false and misleading statements detailed herein and is therefore primarily liable for

23  the misrepresentations and omissions contained therein"), 183 ("The Company's total

24  failure to maintain effective internal controls regarding its stock option procedures—

25  dating as far back as 1996, if not earlier—demonstrates a conscious awareness or a

26  high degree of recklessness on the part of…the Individual Defendants, each of whom

27  were responsible for ensuring that Semtech's internal controls were adequate with

28  respect to its stock option practices."), 207 ("each of these Defendants enjoyed

1  significant personal contact and familiarity with the other Defendants and was advised
2  of and had access to other members of the Company's management team, internal
3  reports and other data and information about the Company's finances, operations, and
4  sales at all relevant times; and…each of these Defendants was aware of the Company's
5  dissemination of information to the investing public which they knew or recklessly
6  disregarded was materially false and misleading.").

7      Such "collective" allegations, however, cannot satisfy the PSLRA's strict
8  requirement of pleading facts demonstrating a strong inference of scienter on the part
9  of each individual defendant, including Baumann.  Indeed, the *Hansen* court explicitly
10  found that the PSLRA abolished the so-called "group-pleading" doctrine, by which
11  various plaintiffs had previously attempted to satisfy the scienter requirement.
12  *Hansen*, 527 F. Supp. 2d at 1153-54; *see also In re Apple Computer, Inc., Sec. Litig.*,
13  243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002) ("the Ninth Circuit has rejected the
14  concept of 'collective scienter'") (citing *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d
15  1424, 1435-36 (9th Cir. 1995)).

16      **d.**    **Plaintiff's Accounting-Related Allegations Fail to Satisfy**
17      **The Scienter Requirement**

18      Under the banner of "Additional Evidence of Scienter," Plaintiff cites a number
19  of GAAP provisions, and then proceeds to allege, in sweeping fashion:  "As
20  demonstrated by the long-term, pervasive nature of the backdating scheme, Defendants
21  wholly failed to adopt sound accounting policies and to maintain internal controls
22  designed to ensure that the Company's public filings were fairly presented."
23  Complaint, ¶ 167; *see also* Complaint ¶¶ 162-183.  These alleged accounting
24  deficiencies, without more, do not and cannot support a strong inference of scienter
25  (for reasons separate and apart from their overly general, group-based character).  *See*
26  *Weiss v. Amkor*, 527 F. Supp. 2d 938, 949 (D. Ariz. 2007) ("the misapplication of
27  accounting rules to a particular company's stock option grants cannot be construed as a
28  glaring example of scienter because the measurement date criteria embodied in APB

1  No. 25 are far from obvious"); *see also DSAM*, 288 F.3d at 390 ("the mere publication

2  of inaccurate accounting figures, or a failure to follow GAAP, without more, does not

3  establish scienter").

4          e.    **Plaintiff's Allegations Regarding the Special Committee**

5                  **Findings Actually *Undermine* a Showing of Scienter on**

6                  **the Part of Baumann**

7        Plaintiff's complaint relies extensively on the alleged findings of the Company's

8  Special Committee, as reflected in the Company's 2006 Form 10-K/A filed with the

9  SEC.  Indeed, Plaintiff asserts that the Special Committee's conclusions are "perhaps

10  most damning," and alleges that they amounted to a decision that "the Company's

11  senior executives had acted purposefully and with full knowledge of the nature of their

12  impropriety."  Complaint, ¶ 150.  Plaintiff's *own complaint*, however, reveals that the

13  Special Committee made *no such conclusion* with respect to Baumann:

14             "[T]he Special Committee concluded that the evidence supports

15             a finding of intentional manipulation of stock option grant dates

16             directed by the Former CEO, that a former human resources

17             executive who was with the Company from October 1999

18             through May 2002 ('Former HR VP') participated in this

19             conduct, and that the Chief Financial Officer ('Former CFO')

20             and the Treasurer ('Former Treasurer') [Baumann] at the time

21             the Special Committee's report was issued **knew, or should**

22             **have known**, of the manipulation and initiated or participated

23             in some manipulative acts."

24  Complaint, ¶ 150 (emphasis added); *see also id.*, ¶ 142.

25        To begin, the foregoing quoted statements are *conclusions*—not facts, as

26  required by the PSLRA.  *See, e.g., Read-Rite*, 335 F.3d at 846.  Moreover, the Special

27  Committee's conclusion regarding Baumann, even taken at face value, is that he *knew*

28  *or should have known*—i.e., a textbook description of **negligence**, which plainly falls

1    well short of the deliberateness required by *Silicon Graphics* and its progeny.  *See*

2    *Silicon Graphics*, 183 F.3d at 979.  Further, pleading that Baumann "knew" *or* "should

3    have known," in the disjunctive, is a clear concession that the Complaint lacks facts

4    giving rise to a strong inference of scienter—Plaintiff is simply speculating.  *See*

5    *Wiestchner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1115 (N.D. Cal. 2003)

6    (plaintiffs failed to plead scienter by way of "blanket statements as to what Defendants

7    knew or should have known").  Finally, any alleged Special Committee findings

8    regarding Baumann's state of mind were explicitly restricted to "at the time the Special

9    Committee's report was issued" (Complaint, ¶ 150)—i.e., *after* the class period had

10   ended.  *C.f. In re Bally Total Fitness Sec. Litig.*, 2006 U.S. Dist. LEXIS 93986, at *23

11   (N.D. Ill. Jul. 12, 2006) (with respect to audit committee report alleged in complaint,

12   holding that "the findings are simply hindsight conclusions. They do not assist in

13   determining the state of mind behind the misstatements *at the time they were made*.")

14   (emphasis added) (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 628 (7th Cir. 1990)

15   ("There is no 'fraud by hindsight.'. . .")).

16        Thus, Plaintiff's "most damning" allegations regarding Baumann point to, at

17   most, a *negligent* mindset, held *after* the class period (and lack corroborating factual

18   allegations, in any event).

           **f.    Plaintiff's Allegations Regarding Baumann's Stock Sales**
19
                   **and Option Grants Do Not Give Rise to a Strong**
20
                   **Inference of Scienter**
21

22        Plaintiff has endeavored to portray Baumann's personal sales of stock and

23   receipt of options as indicative of scienter—i.e., that he (and the other defendants)

24   sought to "cash in" on the alleged backdating "scheme."  This theory of fraudulent

25   intent collapses under the barest scrutiny.

26                         **(i)    Stock Sales**

27        As observed in *Hansen*, "Sales of stock by an insider becomes 'suspicious only

28   when it is dramatically out of line with prior trading practices at times calculated to

1   maximize the personal benefit from undisclosed inside information.'" *Hansen*, 527 F.

2   Supp. 2d at 1160 (quoting *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001)); *see*

3   *also Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036-36 (9th Cir. 2002).

4          Here, the only allegation regarding class-period stock sales by Baumann is an

5   assertion that he sold a total 35,000 shares of stock, for *proceeds* of approximately

6   $728,000.  Complaint, ¶¶ 21, 191.  The Complaint does not allege when these sales

7   occurred, or the number of transactions they encompassed.  As such, it is impossible to

8   ascertain from the allegations of the Complaint whether Baumann's sale(s) of stock

9   were "dramatically out of line," or whether they were conducted "at times calculated to

10  maximize the personal benefit."  *Hansen*, 527 F. Supp. 2d at 1160.  Moreover, the

11  complaint nowhere alleges that Baumann acquired *any* of these 35,000 shares by

12  exercising backdated options.  Indeed, the alleged figure of $728,000 represents

13  *proceeds*—not profits—and thus it cannot even be concluded from the complaint that

14  Baumann profited at all from these transactions.

15                    **(ii)**     **Option Grants**

16         Similarly, the Complaint's allegations regarding Baumann's receipt of stock

17  options provide no inference of scienter.  The Complaint alleges the Special

18  Committee's conclusion that the aggregate intrinsic value of all options granted to five

19  different executives (including Baumann) was approximately $4.8 million.  Complaint,

20  ¶ 150 (p. 104:25-105:4).  The Complaint goes on to allege, however, that only "5% of

21  the intrinsic value related to grants to these five individuals has been realized through

22  exercise of the options."  Complaint, ¶ 150 (p. 105:12-14).  In other words, the

23  executives failed to take advantage of **95% of the alleged intrinsic value** of the in-

24  the-money options—simply leaving those gains "on the table."  *Id.*; *see also*

25  Complaint, ¶ 151 ("Will Not be Realized: … 95%").  This allegation is directly at odds

26  with the notion that the defendants conspired to perpetrate a "scheme" to backdate

27

28

1    options for personal gain, and certainly cannot give rise to a "strong inference" that
2    they did so.[2]

3    ## F.    Plaintiff's Claims are Time-Barred

4        Separate and apart from Plaintiff's fatal pleading deficiencies set forth above,
5    the Court should dismiss the complaint because the claims alleged therein are barred
6    by the applicable statute of limitations.

7        The statute of limitations for federal securities fraud claims is the earlier of
8    1) two years after the discovery of the facts constituting the violation; or 2) five years
9    after the violation.  28 U.S.C. § 1658(b).  With respect to the two-year limitations
10   period, the Ninth Circuit recently held that "inquiry notice, and not merely actual
11   notice, can cause the statute of limitations for securities fraud to begin to run." *Betz v.*
12   *Trainer Wortham & Co.*, 519 F.3d 863, 869 (9th Cir. 2008).  Moreover, the five-year
13   period begins to run immediately upon the alleged violation, and serves as an absolute,
14   "outside limit," not subject to any form of tolling.  *See Lampf, Pleva, Lipkind, Prupis*
15   *& Petigrow v. Gilbertson*, 501 U.S. 350, 363, 115 L. Ed. 2d 321, 111 S. Ct. 2773
16   (1991); *In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1013 (N.D. Cal.
17   2007) ("The outer limitations period in a Section 10(b) claim serves as a statute of
18   repose in lieu of equitable tolling.").

19       The initial complaint in this action was filed on August 10, 2007.  *See* Docket,
20   *Middlesex County Retirement System v. Semtech Corp.*, U.S. Dist. Ct., S.D.N.Y., Case
21   No. 07 CIV 7183.  As such, to the extent Plaintiff seeks recovery for conduct that
22   occurred prior to August 10, 2002 (i.e., five years prior to the date of filing), the case is
23   time-barred.  The basis of this action is Defendants' alleged improper "back-dating" of
24   stock options.  Plaintiff alleges that it examined 76 stock option grants by Semtech

25   ———————————————

26   [2] Moreover, Baumann held a relatively miniscule share of the alleged $4.8 million of
     in-the-money options (95% of which were never realized).  Of this $4.8 million,
27   approximately 42% was held by the former CEO and approximately 41% was held by
     the former CFO.  Complaint, ¶ 151.  Defendant Baumann's holdings in this regard—
28   *combined* with the holdings of two other executives—collectively amounted to only
     16.4% of the options.  *Id.*

RECYCLED PAPER

Defendant Baumann's Motion to Dismiss

1  from the period of 1994 to 2007. Complaint, ¶ 159. Of these, Plaintiff only

2  specifically identifies 16 "manipulated" grants—all of which occurred *before* August

3  10, 2002 (the most recent of which took place in May of 2002). *See* Complaint, ¶ 161.

4  Accordingly, *none* of the allegedly back-dated stock option grants are actionable.[3]

5  28 U.S.C. § 1658(b)(2).

6      Plaintiff has attempted to plead around the statute of limitations bar by alleging

7  that various Semtech financial statements filed during the class period constitute

8  independent "misrepresentations." This tactic fails for multiple reasons. First, courts

9  have rejected similar efforts by plaintiffs to prolong the limitations period. *See, e.g.,*

10 *Belova v. Sharp*, 2008 U.S. Dist. LEXIS 19880, at *27 (D. Or. Mar. 13, 2008) ("this

11 case was filed on February 28, 2007, so the shareholders cannot base a § 10(b) claim

12 on alleged backdating that occurred before February 28, 2002, regardless of when they

13 first learned of the alleged backdating scheme"); *Zoran*, 511 F. Supp. 2d at 1014 ("the

14 statute of limitations accrues as of when the violation itself occurs, not when the last

15 violation in a series of alleged violations occur").

16     Secondly, and as set forth in detail in Section III(D), *supra*, **none** of the alleged

17 class period misrepresentations are attributed to Baumann. Thus, even assuming

18 *arguendo* that the class-period disclosures are sufficient to save Plaintiff's claims from

19 the time-bar, Plaintiff's claims against Baumann would *still* be barred by the statute of

20 limitations.

---

[3] Moreover, Plaintiff's claims are also barred by virtue of the two-year "inquiry notice" limitations period of 28 U.S.C. § 1658(b)(1); *Betz*, 519 F.3d at 869. Plaintiff's allegations of grant-date manipulation are based in large part upon documents filed with the SEC contemporaneously with the alleged improper grants, as well as the company's historical stock prices—i.e., information that was *publicly available*. *See* Complaint, ¶ 155. Given that the most recent grant-date identified by Plaintiff was May 7, 2002, and that Plaintiff was on inquiry notice at that time of the facts giving rise to its allegations of impropriety, Plaintiff had until May 7, 2004, at the latest, to file its complaint.

RECYCLED PAPER

## IV.   PLAINTIFF HAS FAILED TO PLEAD AN ADEQUATE CLAIM AGAINST BAUMANN UNDER SECTION 20(A)

Plaintiff claims that Baumann is secondarily liable for Semtech's alleged Rule 10b-5 violations because he is a "controlling person" under Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a).  Section 20(a) provides:

> Every person who, directly or indirectly, controls any person
> liable under any provision of this chapter or of any rule or
> regulation thereunder shall also be liable jointly and severally
> with and to the same extent as such controlled person to any
> person to whom such controlled person is liable, unless the
> controlling person acted in good faith and did not directly or
> indirectly induce the act or acts constituting the violation or
> cause of action.

To state a claim under Section 20(a) , a plaintiff must allege: "(1) a primary violation of the federal securities laws; and (2) that the defendant exercised actual power or control over the primary violator." *See Hansen*, 527 F. Supp at 1163 (citing *Howard v. Everex Sys.*, 228 F.3d 1057, 1065 (9th Cir. 2000)).

As more thoroughly discussed above, as well as in Defendant Semtech's and the other Individual Defendants' moving papers, Plaintiff has failed to state an adequate claim for a primary violation of the securities laws.  Therefore, this Court should dismiss the Section 20(a) claim alleged against Baumann.  Even if this Court were to find that Plaintiff has adequately pleaded Semtech's alleged 10b-5 violations, Plaintiff has failed to allege that Baumann exercised the requisite control for a Section 20(a) claim.  Indeed, Plaintiff has failed to allege any facts even remotely suggesting that Baumann is a "controlling person" within the ambit of Section 20(a).

Whether Baumann is a controlling person involves "scrutiny of [his] participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions." *Id.*, citing *Kaplan v. Rose*, 49 F.3d 1363, 1382 (9th Cir.

1    1994).  The SEC defines "control" as "[t]he possession, direct or indirect, of the power

2    to direct or cause the direction of the management and policies of a person, whether

3    through ownership of voting securities, by contract, or otherwise." 17 C.F.R. §

4    230.405.  Here, Plaintiff has not alleged, and cannot allege, any facts demonstrating

5    Baumann's exercise of control over the "management and policies" of Semtech, or that

6    he directed its day-to-day affairs in any sense – in connection with stock options or

7    otherwise.

8         Instead, Plaintiff's complaint contains only vague allegations that the Individual

9    Defendants' Section 20(a) liability, as a whole, stems from (1) their positions as high-

10   level executives and/or directors at the Company during the Class Period, (2) their

11   responsibilities and activities as a senior officers and/or directors of the Company, (3)

12   their personal contact and familiarity with the other Defendants and access to other

13   members of the Company's management team, and (4) their knowledge that the

14   information the Company disseminated to the investing public was false.  *See*

15   Complaint, ¶¶ 207 and 214.

16        Plaintiff's conclusory allegations against the Individual Defendants as a group

17   are insufficient to state a cause of action under Section 20(a) against Baumann.  As

18   discussed above, "group pleading" is not sufficient in the Ninth Circuit.  *See Hansen,*

19   527 F. Supp. 2d at 1153.  Moreover, courts have consistently held that merely being an

20   officer or director of a company is not sufficient to prove control.  *Arthur Children's*

21   *Trust v. Keim*, 994 F.2d 1390, 1397 (9th Cir. 1993) (a person's position as a director or

22   officer does not create a presumption of control); *Paracor Fin., Inc. v. GE Capital*

23   *Corp.*, 96 F.3d 1151, 1163 (9th Cir. 1996); *accord Kaplan,* 49 F.3d at 1382.

24        To establish "controlling person" liability, Plaintiff, at a minimum, must allege

25   that he "directly or indirectly" controlled the Company.  *See Hollinger v. Titan Capital*

26   *Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990), *cert. denied*, 499 U.S. 976, 113 L. Ed. 2d

27   719, 111 S. Ct. 1621 (1991).  Plaintiff has plainly failed to do so.  Plaintiff has not

28   pleaded any *facts* in support of its conclusory allegation that Baumann controlled the

RECYCLED PAPER

1    corporation in any way.  This Court should, therefore, dismiss Plaintiff's cause of

2    action under Section 20(a) against Baumann.

3

4    **V.     THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE**

5        Plaintiff cannot amend its Complaint to state an adequate cause of action against

6    Baumann and so it should be dismissed with prejudice.  As discussed above, Plaintiff's

7    claim against Baumann appears to be based exclusively on the conclusions of the

8    Special Committee.  Those conclusions followed a lengthy and comprehensive

9    investigation.  In Plaintiff's own words, "*the most damning*" conclusion with respect to

10    Baumann was that, "at the time the Special Committee's report was issued, [he] knew,

11    or should have known, of the manipulation and initiated or participated in some

12    manipulative acts."  Complaint, ¶ 150 (emphasis added).  Even more important,

13    however, is that based on this conclusion, "The Special Litigation Committee took no

14    action with respect to the Former Treasurer [Baumann]."  Complaint, ¶ 150 (at page

15    107) (citing 2006 Form 10-K/A).  After such an exhaustive investigation, much more

16    extensive than Plaintiff has conducted or can conduct, the Special Litigation

17    Committee elected to take *no action* against Baumann.  It did not sue him, it did not

18    cancel or rescind *any* of his options, and it did not re-price *any* of his options.  It took

19    *no action* against him.

20        Leave to amend "need not be granted when an amendment would be futile."

21    *Vantive*, 283 F.3d at 1097.  Because Plaintiff's allegations are based on the Special

22    Committee's comprehensive investigation, and the Committee concluded that no

23    action should be taken against Baumann, there are no facts that Plaintiff can add to its

24    Complaint to state a claim against Baumann.  Amendment would be futile.  It would

25    also be futile in light of the fact that the claims are barred by the statute of limitations.

26    In such an instance, the Court should dismiss without leave to amend.  Leave to amend

27    is properly denied when a "pleading could not possibly be cured by the allegation of

28

RECYCLED PAPER

1   other facts." *Read-Rite*, 335 F.3d at 845 (quoting *United States v. SmithKline*

2   *Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001)).

3        Moreover, Plaintiff has already amended its Complaint once, which is further

4   evidence that it simply does not possess sufficient facts, because they do not exist, to

5   state a cause of action against Baumann.  "The district court's discretion to deny leave

6   to amend is particularly broad where plaintiff has previously amended the complaint."

7   *Read-Rite*, 335 F.3d at 845 (quoting *Vantive*, 283 F.3d 1097-98).

8        For all of these reasons, Plaintiff's Complaint should be dismissed with

9   prejudice as to Baumann.

10

11   **VI.   CONCLUSION**

12        For all of the foregoing reasons, the Court should dismiss the entirety of

13   Plaintiff's Complaint against Baumann.

14

15

16                       Respectfully submitted,

17                       K&L GATES LLP

18

19   Dated:  August 18, 2008      By:   /s/ Michael J. Quinn

20                             Michael J. Quinn
                               Kevin S. Asfour

21                             Attorneys for John M. Baumann

22

23

24

25

26

27

28

                                      **RECYCLED PAPER**

Defendant Baumann's Motion to Dismiss