THOMAS A. ZACCARO (SB# 183241)
(thomaszaccaro@paulhastings.com)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
515 South Flower Street, Twenty-Fifth Floor
Los Angeles, CA  90071-2228
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

CHRISTOPHER H. McGRATH (SB# 149129)
(chrismcgrath@paulhastings.com)
COLLEEN E. HUSCHKE (SB# 191402)
(colleenhuschke@paulhastings.com)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
3579 Valley Centre Drive
San Diego, CA  92130
Telephone:  (858) 720-2500
Facsimile:  (858) 720-2555

EDWARD HAN (SB# 196924)
(edwardhan@paulhastings.com)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
55 Second Street, Twenty-Fourth Floor
San Francisco, CA  94105-3441
Telephone:  (415) 856-7000
Facsimile:  (415) 856-7100

Attorneys for Defendants
*Jason L. Carlson and Mohan R. Maheswaran*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IN RE SEMTECH CORPORATION SECURITIES LITIGATION | CASE NO.  2:07-CV-07114-CAS(FMOx) **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT BY DEFENDANTS JASON L. CARLSON AND MOHAN R. MAHESWARAN** **Jury Trial Demanded** Date:        December 8, 2008 Time:       10:00 a.m. Ctrm.:      5, 2nd Floor Judge:      Hon. Christina A. Snyder |

1

## **<u>TABLE OF CONTENTS</u>**

2

<u>Page</u>

3

4  I.  INTRODUCTION ...................................................................................... 1

5  II.  BRIEF FACTUAL SUMMARY REGARDING MAHESWARAN
6      AND CARLSON ....................................................................................... 2

7  III.  THE REFORM ACT SIGNIFICANTLY ELEVATED PLEADING
      REQUIREMENTS IN SECURITIES FRAUD CLASS ACTIONS ............ 3

8  IV.  THE CAC FAILS TO STATE A CLAIM AGAINST DEFENDANTS
      MAHESWARAN AND CARLSON UNDER SECTION 10(B) .................. 5

9      A.  The CAC Does Not Meet The Stringent Pleading Requirements
10         Necessary For A Section 10(b) Cause Of Action ................................. 5

11     B.  Plaintiff Fails To Allege Facts That Establish A Strong
          Inference Of Scienter ........................................................................... 6

12            1.  The Form 10-K/A Does Not Establish A Strong Inference
13                Of Scienter ................................................................................ 7

14            2.  Maheswaran And Carlson's Positions With Semtech Do
                  Not Demonstrate Scienter ...................................................... 10

15            3.  Merely Signing Financial Statements And SOX
16                Certifications Does Not Give Rise To A Strong Inference
                  Of Scienter .............................................................................. 10

17            4.  Allegations Regarding Failure To Follow GAAP And
18                Lack Of Internal Controls Do Not Support A Strong
19                Inference Of Scienter .............................................................. 12

20            5.  Absence Of Alleged Stock Sales By Either Carlson Or
                  Maheswaran Negates Scienter ................................................ 13

21            6.  The Confidential Witness Allegations Are Insufficient .......... 13

22            7.  The "Group Pleading Doctrine" Did Not Survive The
                  Reform Act .............................................................................. 15

23     C.  Plaintiff Fails To Demonstrate That The Alleged
24         Misrepresentations Caused Any Purported Loss ................................ 16

25            1.  There Was No Causal Connection Alleged During The
                  Class Period ............................................................................. 17

26            2.  The Post-Class Period Causal Connection Cannot Provide
27                The Basis For Liability ............................................................ 20

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS
### (continued)

| | | | Page |
|---|---|---|---|
| | D. | No Actionable Misrepresentations Are Attributed To Maheswaran Or Carlson | 21 |
| | E. | Plaintiff Fails To Plead Reliance | 22 |
| | | 1. Plaintiff's Allegations Of Direct Reliance Are Insufficient | 22 |
| | | 2. The Fraud-On-The-Market Presumption Is Unavailable Because The Plaintiff Fails To Plead The Existence Of An Efficient Market | 22 |
| V. | | THE CAC FAILS TO STATE A CLAIM AGAINST MAHESWARAN AND CARLSON UNDER SECTION 20(A) | 24 |
| VI. | | CONCLUSION | 25 |

LEGAL_US_W # 59732140.1

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

## <u>CASES</u>

4

*Allison v. Brooktree Corp.*,
   999 F. Supp. 1342 (S.D. Cal. 1998) ............................................................... 16

5

*Basic, Inc. v. Levinson*,

6
   485 U.S. 224 (1988) .......................................................................... 20, 22

7
*Binder v. Gillespie*,
   184 F.3d 1059 (9th Cir. 1999) ........................................................... 22

8
*Cammer v. Bloom*,
   711 F. Supp. 1264 (D. N.J. 1989) ..................................................... 22, 23

9
*Coates v. Heartland Wireless Commc'ns, Inc.*,

10
   26 F. Supp. 2d 910 (N.D. Tex. 1998) ................................................. 21

11
*DSAM Global Value Fund v. Altris Software, Inc.*,
   288 F.3d 385 (9th Cir. 2002) ............................................................. 12

12
*Dura Pharms. Inc. v. Broudo*,
   544 U.S. 336 (2005) ....................................................................*passim*

13
*Eshelman v. Orthoclear Holdings, Inc.*,
   2008 WL 171059 (N.D. Cal. Jan. 18, 2008) ..................................... 4, 22

14
*Fin. Acquisition Partners L.P. v. Blackwell*,
   440 F.3d 278 (5th Cir. 2006) ............................................................. 15

15
*Gompper v. VISX, Inc.*,

16
   298 F.3d 893 (9th Cir. 2002) ............................................................... 6

17
*Heliotrope Gen., Inc. v. Ford Motor Co.*,
   189 F.3d 971 (9th Cir. 1999) ........................................................... 5, 24

18
*Higginbotham v. Baxter Int'l, Inc.*,
   495 F.3d 753 (7th Cir. 2007) ............................................................. 14

19
*Hockey v. Medheker*,
   30 F. Supp. 2d 1209 (N.D. Cal. 1998) .............................................. 12

20
*Howard v. Everex Sys., Inc.*,

21
   228 F.3d 1057 (9th Cir. 2000) ............................................................ 24

22
*Huddleston v. Herman & MacLean*,
   640 F.2d 534 (5th Cir. 1981) ............................................................. 16

23
*In re Advanta Corp. Sec. Litig.*,
   180 F.3d 525 (3d Cir. 1999) ................................................................. 4

24
*In re Amgen Inc. Sec. Litig.*,
   544 F. Supp. 2d 1009 (C.D. Cal., 2008) ............................................ 15

25
*In re Bally Total Fitness Sec. Litig.*,

26
   2006 WL 3714708 (N.D. Ill. July 12, 2006) ..................................... 11

27
*In re Clearly Canadian Sec. Litig.*,
   875 F. Supp. 1410 (N.D. Cal. 1995) .................................................. 21

28

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3    *In re CNET Networks, Inc. Deriv. Litig.*,
       483 F. Supp. 2d 947 (N.D. Cal. 2007)..................................................................9

4    *In re Cornerstone Propane Partners, L.P. Sec. Litig.*,
       355 F. Supp. 2d 1069 (N.D. Cal. 2005).............................................................5

5

6    *In re Daou Sys., Inc. Sec. Litig.*,
       411 F.3d 1006 (9th Cir. 2005) ...................................................... 16, 17, 18, 20

7    *In re Foxhollow Technologies Inc., Sec. Litig.*,
       2008 WL 2220600 (N.D. Cal. May 27, 2008) ................................................ 14

8    *In re Glenfed, Inc. Sec. Litig.*,
       42 F.3d 1541 (9th Cir. 1994) ........................................................................... 3

9    *In re Great Atlantic & Pacific Tea Co., Inc. Sec. Litig.*,
       103 Fed. Appx. 465 (3d Cir. 2004) ................................................................ 11

10

11   *In re Gupta Corp. Sec. Litig.*,
       900 F. Supp. 1217 (N.D. Cal. 1994).............................................................. 25

12   *In re Hansen Natural Corp. Sec. Litig.*,
       527 F. Supp. 2d 1142 (C.D. Cal. 2007)...................................................*passim*

13   *In re Hypercom Corp. Sec. Litig.*,
       2006 WL 1836181 (D. Ariz. July 5, 2006) ................................................11, 12

14

15   *In re IBM Sec. Litig.*,
       163 F.3d 102 (2d Cir. 1998) ........................................................................... 21

16   *In re Impac Mortgage Holdings, Inc. Sec. Litig.*,
       554 F. Supp. 2d 1083 (C.D. Cal. 2008)......................................................16, 21

17   *In re Interpool, Inc. Sec. Litig.*,
       2005 WL 2000237 (D. N.J. Aug. 17, 2005)..................................................... 11

18   *In re Invision Techs., Inc. Sec. Litig.*,
       2006 WL 538752 (N.D. Cal. Jan. 24, 2006) ................................................... 11

19

20   *In re Juniper Networks, Inc. Sec. Litig.*,
       542 F. Supp. 2d 1037 (N.D. Cal. 2008)......................................................... 10

21   *In re Linear Tech. Corp. Deriv. Litig.*,
       2006 WL 3533024 (N.D. Cal. Dec. 7, 2006) ....................................................9

22   *In re Loudeye Corp. Sec. Litig.*,
       2007 WL 2404626 (W.D. Wash. Aug. 17, 2007) ........................................... 13

23   *In re Northpoint Comm. Grp., Inc., Sec. Litig.*,
       184 F. Supp. 2d 991 (N.D. Cal. 2001)............................................................ 14

24

25   *In re Oak Tech. Sec. Litig.*,
       1997 WL 448168 (N.D. Cal. Aug. 1, 1997)................................................... 10

26   *In re Read-Rite Corp. Sec. Litig.*,
       335 F.3d 843 (9th Cir. 2003) .............................................................................6

27   *In re Silicon Graphics Inc. Sec. Litig.*,
       183 F.3d 970 (9th Cir. 1999) ..................................................................... 3, 5, 6

28

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

*In re Silicon Graphics, Inc. Sec. Litig.*,
 970 F. Supp. 746 (N.D. Cal. 1997)....................................................21

4

*In re Software Toolworks Inc.*,
 50 F.3d 615 (9th Cir. 1994).............................................................12

5

*In re Turbodyne Techs., Inc. Sec. Litig.*,
 2002 U.S. Dist. LEXIS 25738 (C.D. Cal. Mar. 13, 2002) ...........23, 24

6

*In re Vantive Corp. Sec. Litig.*,
 283 F.3d 1079 (9th Cir. 2002) ............................................................3

7

*In re Watchguard Sec. Litig.*,
 2006 WL 2038656 (W.D. Wash. Apr. 21, 2006) ...............................11

8

*In re Wet Seal, Inc., Sec. Litig.*,
 518 F. Supp. 2d 1148 (C.D. Cal. 2007)..............................................13

9

*In re Worlds of Wonder Sec. Litig.*,
 35 F.3d 1407 (9th Cir. 1994)............................................................13

10

*Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*,
 __ F.3d __, 2008 WL 2894793 (5th Cir. July 29, 2008)...................13

11

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
 437 F.3d 588 (7th Cir. 2006), *rev'd on other grounds*, __ U.S. __,
 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007) .......................................15

12

*Morgan v. AXT, Inc.*,
 2005 WL 2347125 (N.D. Cal. Sept. 23, 2005)...................................11

13

14

*Nach v. Baldwin*,
 2008 WL 410261 (N.D. Cal. Feb. 12, 2008).......................................9

15

*Robbins v. Koger Props, Inc.*,
 116 F.3d 1441 (11th Cir. 1997) .........................................................20

16

*Ronconi v. Larkin*,
 253 F.3d 423 (9th Cir. 2001) ..........................................................3, 4

17

*Rudolph v. UTStarcom*,
 2008 WL 1734763 (N.D. Cal. Apr. 14, 2008) ..............................14, 19

18

*Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*,
 365 F.3d 353 (5th Cir. 2004)............................................................15

19

*Steinberg v. Chem-Tronics, Inc.*,
 786 F.2d 1429 (9th Cir. 1986)...........................................................21

20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 ___ U.S. ___, 127 S. Ct. 2499 (2007) .........................................*passim*

21

*Weiss v. Amkor Tech., Inc.*,
 527 F. Supp. 2d 938 (D. Ariz. 2007)............................................*passim*

22

23

*Winer Family Trust v. Queen*,
 503 F.3d 319 (3d Cir. 2007) ............................................................15

24

25

26

27

28

1

# TABLE OF AUTHORITIES
## (continued)

2

<u>Page</u>

3

## STATUTES, RULES AND REGULATIONS

15 U.S.C.

    Section 77z-1 ...................................................................................4

    Section 77z-2 ...................................................................................4

    Section 78t ....................................................................................24

    Section 78u-4 ..................................................................................4

    Section 78u-4(b)(1)(B) ..................................................................4, 5

    Section 78u-4(b)(2) .......................................................................4, 6

    Section 78u-4(b)(3)(A) ......................................................................5

    Section 78u-5 ..................................................................................4

Federal Rules of Civil Procedure

    Rule 9(b) ......................................................................................3, 4

Securities Exchange Act of 1934

    Section 10(b) ............................................................................*passim*

    Section 20(a) ..................................................................................24

    Rule 10b-5 ...................................................................................3, 22

Generally Accepted Accounting Principles

    APB No. 25 ....................................................................................12

Private Securities Litigation Reform Act of 1995 ........................................*passim*

## OTHER AUTHORITIES

Joint Explanatory Statement of the Committee of Conference, H.R.
    Conf. Rep. No. 104-369, 104th Cong., 1st Sess. 31 (1995) ................................4

1    Defendants Jason L. Carlson and Mohan R. Maheswaran respectfully submit

2    the following memorandum of points and authorities in support of their motion to

3    dismiss the Consolidated Amended Class Action Complaint ("CAC").[1]

4    **I.    INTRODUCTION**

5    Plaintiff's putative securities fraud claims against Defendants Mohan R.

6    Maheswaran and Jason L. Carlson fail to state a claim under the heightened

7    pleading standards imposed by the Private Securities Litigation Reform Act of 1995

8    ("Reform Act") and subsequent controlling precedent.  It is uncontroverted that

9    Defendant Maheswaran did not even join Semtech until April 2006, years after the

10   last option grant alleged by plaintiff to be problematic occurred in August 2002.

11   Not surprisingly, plaintiff utterly fails to furnish any facts linking Maheswaran with

12   any alleged wrongful conduct at Semtech.  The CAC is similarly deficient as to

13   Carlson, whose alleged tenure at Semtech as CEO and a director between October

14   2003 and October 2005 also necessarily post-dates the August 2002 option grant.

15   Notwithstanding the Reform Act's pleading specificity requirements,

16   Defendants Carlson and Maheswaran are only mentioned a handful of times in the

17   143 page CAC.  The CAC concedes that Maheswaran did not join Semtech until

18   April 2006, years after the option practices at issue, and he is only mentioned in 5

19   paragraphs of the 216 paragraph Complaint.[2]  Carlson is only specifically identified

20   in 19 paragraphs and the vast majority of the references to Carlson merely confirm

21   ―――――――――――――――
[1]      As more fully described in the motion to dismiss concurrently filed by
22   Semtech Corporation ("Semtech" or "Company"), claims based upon any
     underpayment to the Company in connection with its past option grant practices
23   belong to Semtech, not plaintiff.  These derivative claims already have been
     pursued in state and federal court and are in the process of being settled in an action
24   pending before this Court.  Thus, this plaintiff's effort to manufacture a distinct
     securities fraud claim in order to pursue an additional but redundant lawsuit in the
25   inappropriate form of a class action should be rejected for lack of standing.  Messrs.
     Carlson and Maheswaran rely upon and incorporate by reference the motion to
26   dismiss and supporting papers concurrently filed by Semtech in this action.  *See*
     Memorandum of Points and Authorities in Support of Motion to Dismiss
27   Consolidated Amended Class Action Complaint by Defendant Semtech
     Corporation.

28   [2]      *See* CAC ¶¶ 19, 22, 24, 123, 188.

LEGAL_US_W # 59732140.1

his signature on certain filings with the Securities and Exchange Commission ("SEC").[3]  Under the pleading requirements of the Reform Act, among other elements, plaintiff is obligated to plead particularized facts establishing not only that these individuals made statements which were false at the time made, but also specific facts demonstrating these Defendants knew of the statements' falsity at the time made or were deliberately reckless with respect to the false statements. Nowhere in the CAC does plaintiff plead facts establishing knowledge or responsibility by Maheswaran or Carlson with respect to the option practices at issue, or any related accounting determinations relevant to the Company's SEC filings.

Independently compounding the defective nature of the CAC is its failure to demonstrate that any alleged misrepresentation caused a "loss" to the putative shareholder class.  The disclosures which plaintiff alleges purportedly revealed the "truth" were made after the end of the putative class period, and, in any event, fail to establish the requisite causal link under the seminal United States Supreme Court decision in *Dura Pharms. Inc. v. Broudo*, 544 U.S. 336 (2005).  Finally, plaintiff fails to plead the requisite element of reliance, and its continued purchases of Semtech shares beyond the supposed "corrective" disclosures provide yet another basis for dismissal.  The CAC should be dismissed.[4]

## II.   BRIEF FACTUAL SUMMARY REGARDING MAHESWARAN AND CARLSON

Semtech, a Delaware corporation with its headquarters in Camarillo, California, is a leading supplier of high-quality analog and mixed-signal semiconductor products.  CAC ¶ 16.  In fiscal year 2008, Semtech made approximately $285 million in worldwide sales revenue and employed

---

[3]    *Id.* ¶¶ 18, 22, 24, 80, 84, 86, 90-91, 94-95, 99-103, 105, 109-110, 114-115, 188.

[4]    Defendants Maheswaran and Carlson join in the positions which also apply to them advanced by the other individual defendants.

approximately 781 people.  Carlson is alleged to have served as CEO and director of the Company from October 2003 through October 2005.  *Id.* at ¶ 18. Maheswaran joined Semtech in April 2006, merely three months before the end of the four-year putative class period (ending July 19, 2006), as President, CEO, and a member of the Board of Directors.  *Id.* at ¶¶ 3, 19.

The Special Committee efforts to investigate the Company's historical stock option practices referenced by plaintiff in the CAC make no reference to either Carlson or Maheswaran.  *See id.* at ¶¶ 148-150.  Furthermore, the last stock option grant specifically identified by plaintiff took place in August 2002, and occurred prior to either Carlson or Maheswaran joining the Company.  *Id.* at ¶¶ 18, 19, 148.

## III.   THE REFORM ACT SIGNIFICANTLY ELEVATED PLEADING REQUIREMENTS IN SECURITIES FRAUD CLASS ACTIONS

Courts have long held that claims brought under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder are subject to dismissal unless the elements for such a claim are alleged with the heightened specificity required by Federal Rule of Civil Procedure 9(b).  *See*, *e.g.*, *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1545 (9th Cir. 1994).  Upon enactment of the Reform Act, standards even more demanding than Rule 9(b) govern these types of lawsuits. "'[P]rompted by significant evidence of abuse in private securities lawsuits,'" the Reform Act was enacted to strengthen Rule 9(b)'s particularity requirements for pleading securities fraud and to establish more stringent pleading requirements.  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 977-78 (9th Cir. 1999); *see also In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084-85 (9th Cir. 2002); *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001).

Congress passed the Reform Act in 1995 following findings of specific abusive practices such as:  (1) the routine filing of "cookie cutter" complaints after a drop in a stock's price without regard to an issuer's culpability and with only a "faint hope" that later discovery might lead to a "plausible cause of action"; (2) the

-3-

1  targeting of "deep pocket defendants" without regard to culpability solely for

2  settlement value; (3) discovery practices designed to impose "massive costs'"

3  making it more economic for defendants to settle than to litigate; and (4) the

4  manipulation by plaintiffs' lawyers of persons they purport to represent.  *See* Joint

5  Explanatory Statement of the Committee of Conference, H.R. Conf. Rep. No. 104-

6  369, 104th Cong., 1st Sess. 31 (1995) ("Conf. Rep.") at 31-32; *see also In re*

7  *Advanta Corp. Sec. Litig*., 180 F.3d 525, 531 (3d Cir. 1999).[5]

8      Thus, the Reform Act imposes a substantially higher pleading burden on

9  those who seek recovery for securities fraud.  *See* 15 U.S.C. §§ 78u-4, 78u-5, 77z-1,

10  77z-2.  Because of the significant public policies prompting the Reform Act, the

11  statute's stringent requirements "are an unusual deviation from the usually lenient

12  requirements of federal rules pleading."  *Ronconi*, 253 F.3d at 437; *Eshelman v.*

13  *Orthoclear Holdings, Inc.*, 2008 WL 171059, *3 (N.D. Cal. Jan. 18, 2008) ("In

14  order to limit the number of frivolous private securities lawsuits, Congress enacted

15  the [Reform Act] . . . and created heightened pleading standard for such lawsuits.");

16  *Advanta*, 180 F.3d at 531.

17      Under the Reform Act, complaints must "specify each statement alleged to

18  have been misleading [and] the reason or reasons why the statement is misleading. .

19  . ."  15 U.S.C. § 78u-4(b)(1)(B).  As to *each* defendant, a plaintiff must also "state

20  with particularity facts giving rise to a strong inference that the defendant acted with

21  the required state of mind."  15 U.S.C. § 78u-4(b)(2).  The Ninth Circuit articulated

22  a plaintiff's heightened pleading burden as requiring "in great detail, facts that

23  ─────────────────

[5]     In passing the Reform Act, Congress announced its clear intent to raise the

24  pleading bar much higher than Rule 9(b) had previously required because that
    standard had been inadequate to deter meritless lawsuits:

25          [Rule 9(b)] has not prevented the abuse of the securities laws
            by private litigants. . . .  The House and Senate hearings on

26          securities litigation reform included testimony on the need to
            establish uniform and more stringent pleading requirements

27          to curtail the filing of meritless lawsuits.

28  *See* Conf. Rep. at 41.

LEGAL_US_W # 59732140.1

1  constitute strong circumstantial evidence of deliberately reckless or conscious

2  misconduct." *Silicon Graphics*, 183 F.3d at 974; *see also Tellabs, Inc. v. Makor*

3  *Issues & Rights, Ltd.*, ___ U.S. ___, 127 S. Ct. 2499, 2504 (2007) (holding that the

4  Reform Act "requires plaintiffs to state with particularity both the facts constituting

5  the allege violation, and the facts evidencing scienter, i.e., the defendant's intention

6  to deceive, manipulate, or defraud." (internal quotations and citations omitted)).  If a

7  plaintiff alleges on "information and belief" (as the plaintiff does here), the plaintiff

8  must state with particularity all facts on which the belief is formed.[6]  15 U.S.C. §

9  78u-4(b)(1)(B).  "This means that a plaintiff must provide, in great detail, all the

10 relevant facts forming the basis of [his] belief."  *Heliotrope Gen., Inc. v. Ford*

11 *Motor Co.*, 189 F.3d 971, 979 (9th Cir. 1999) (quotation omitted).  Finally, a

12 plaintiff must also adequately allege that the defendant's misrepresentation caused a

13 loss.  *Dura*, 544 U.S. at 345-46.

14        Failure to comply with any of these heightened pleading requirements

15 mandates dismissal.  15 U.S.C. § 78u-4(b)(3)(A).  As discussed below, plaintiff has

16 not come close to satisfying its pleading burden as required.

17 **IV.    THE CAC FAILS TO STATE A CLAIM AGAINST DEFENDANTS**
**MAHESWARAN AND CARLSON UNDER SECTION 10(b)**
18

19        **A.    The CAC Does Not Meet The Stringent Pleading Requirements**
**Necessary For A Section 10(b) Cause Of Action**

20        The elements of a Section 10(b) claim are:  (1) a material misrepresentation;

21 (2) made with scienter; (3) in connection with the purchase or sale of a security;

22 (4) reliance by the plaintiffs; (5) causation or connection between the material

23 misrepresentation and the alleged loss; and (6) damages.  *See Dura*, 544 U.S. at

24 341-42; *see also In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142,

25 1152 (C.D. Cal. 2007).  Under the Reform Act, each of these elements must be pled

26 _____

27 [6]      "Allegations are deemed to be held on information and belief, and thus
subject to the particularity requirement, unless plaintiffs have personal knowledge
of the facts."  *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d
28 1069, 1076 (N.D. Cal. 2005).

LEGAL_US_W # 59732140.1

1  with particularity.

2
      **B.    Plaintiff Fails To Allege Facts That Establish A Strong Inference Of Scienter**

3
4       In order to plead a violation under Section 10(b), the plaintiff must "state

5  with particularity facts giving rise to a strong inference that the defendant acted

6  with the required state of mind."  15 U.S.C. § 78u-4(b)(2); *Gompper v. VISX, Inc.*,

7  298 F.3d 893, 895 (9th Cir. 2002).  The Supreme Court recently held that in

8  determining whether the allegations give rise to a "strong" inference of scienter,

9  courts "must take into account plausible opposing inferences."  *Tellabs*, 127 S. Ct.

10 at 2509.

11      In the Ninth Circuit, "stat[ing] with particularity" requires that plaintiffs

12 "plead, in great detail, facts that constitute strong circumstantial evidence of

13 deliberately reckless or conscious misconduct."  *Silicon Graphics*, 183 F.3d at 973-

14 74; *see also In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 846 (9th Cir. 2003)

15 (plaintiff must allege specific contemporaneous statements or conditions, known to

16 defendant, that demonstrate intentional or deliberately reckless false or misleading

17 nature of statements when made).  Again, under the Reform Act, complaints must

18 specify as to *each* defendant with "particularity facts giving rise to a strong

19 inference of scienter."  15 U.S.C. § 78u-4(b)(2).

20      The plaintiff completely fails to allege such facts against Defendants Carlson

21 and Maheswaran.  There are no allegations that either Maheswaran or Carlson knew

22 of any purported accounting errors relating to misdated stock options.  Nor does

23 plaintiff allege how either Maheswaran or Carlson were involved in any decision

24 making concerning the relevant stock options grants, including the manner in which

25 the Company accounted for the options.  The only allegations which name either

26 Maheswaran or Carlson by name, with the exception of the general introductory

27 allegations, refer in numbingly repetitive fashion to their respective signing of the

28 Company's various SEC filings.  *See* CAC ¶¶ 80, 84, 86, 90, 91, 94, 95, 99, 100,

1   103, 105, 109, 110, 114, 115, 123, 125, 188.[7]  The CAC notably lacks any

2   particularized facts showing that these two individuals knew of any accounting

3   errors at the time they signed SEC filings, or even any facts that could have put

4   them on notice of any purportedly fraudulent conduct.

5          Instead, the plaintiff relies solely on the supposed "admission" of fraudulent

6   conduct in Semtech's March 29, 2007 Form 10-K/A for the fiscal year ending

7   January 29, 2006 ("Form 10-K/A"), Carlson's and Maheswaran's executive

8   positions in the Company, their signing of a certain limited number of financial

9   statements and accompanying SOX certifications during the putative class period,

10  and the alleged violations of Generally Accepted Accounting Principles ("GAAP")

11  leading to the restatement.  As demonstrated below, these allegations, taken

12  separately, or in the aggregate, fail to establish any inference of scienter against

13  Defendants Maheswaran and Carlson, let alone the required strong inference.

<b>1.      The Form 10-K/A Does Not Establish A Strong Inference Of Scienter</b>

14
15
16         Hoping to evade the requirement to plead particularized facts as to each

17  defendant's scienter, plaintiff seizes upon the Form 10-K/A's discussion of the

18  results of the internal review and the Company's restatement as a supposed

19  "admission" that the "Company's senior executives had acted purposefully and

20  with full knowledge of the nature of their impropriety."  CAC ¶ 150.  Plaintiff

21  provides no support for this grandiose and temporally untethered generalization,

22  and identical pleading gambits have been rejected.  *See Weiss v. Amkor Tech., Inc.*,

23  527 F. Supp. 2d 938, 948-49 (D. Ariz. 2007) (rejecting attempt by plaintiff to make

24  an end run around the scienter requirement by relying on special committee

25  findings).

26         In *Weiss*, the plaintiff failed to allege particularized facts as to each

[7]      The vast majority of the CAC consists of charts and block quotes from
27  Semtech's various SEC filings.  *See* CAC, *en passim*.  While lengthy repeated
    quotes and graphs not drawn to scale fill pages, they are no substitute for details as
28  to how or why either Carlson or Maheswaran can be liable for securities fraud.

1   defendant's state of mind regarding the granting of stock options, but instead

2   simply relied upon and quoted from the company's announcement of its special

3   committee's finding "of intentional manipulation of stock-option pricing" by one

4   former executive.  527 F. Supp. 2d at 949.  The court concluded that this

5   announcement did not implicate any of the defendants because there were "no

6   factual allegations linking that finding to any" defendant.  *Id*.  Indeed, the court

7   observed that no such link could be made to certain of the defendants because they

8   were not even executive officers at the time certain stock options were granted.  *Id*.

9   As with *Weiss*, no factual allegations are made in the CAC which link, in any way,

10   adverse inferences from the Special Committee report with either Carlson or

11   Maheswaran.  *See* CAC ¶ 142 (allegations in brackets added by plaintiff concede

12   that neither Carlson nor Maheswaran were mentioned by the Special Committee).

13      Moreover, such a link would be factually impossible in this case because, as

14   in *Weiss*, neither Carlson nor Maheswaran are alleged to have been served as CEO

15   when the stock options at issue identified by date were granted.   Maheswaran

16   joined the Company in April 2006, well after the last identified option grant.  *See*

17   *id.* at ¶ 19 (Maheswaran served as the president, CEO and director of the Company

18   since April 2006).  With respect to Carlson, the last alleged misdated stock option

19   grant identified by the Special Committee occurred in August 2002, before his

20   tenure as CEO even commenced.  *See id.* at ¶ 18 (Carlson served as the CEO and

21   director from October 2003 to October 2005).

22      Six separate and distinct categories of stock option grants are discussed in the

23   Form 10-K/A.  CAC ¶ 148.  *See* RJN, Exh. I at p.65-68.  Specifically, the first two

24   categories of stock option grants identified by the Special Committee, "(A) Grants

25   made by Former Chief Executive Officer John D. Poe ("Former CEO") from April

26   1997 to May 2002 to continuing employees" and "(B) Grants to new employees,"

27   which concern "grant practices to new hires from April 1997 to August 2002,"

28   predate Carlson's and Maheswaran's respective CEO roles at the Company.  Thus,

1   these two categories of allegedly misdated grants cannot implicate either one of
2   them.  Although the range of dates involved in the remaining four categories is not
3   clearly specified, the Special Committee attributed the incorrect dating of three of
4   the remaining four stock option grant categories ("(C) Grant lacking evidence of
5   Compensation Committee approval"; "(D) Grants modified after ratification by the
6   Compensation Committee"; and "(F) Pricing exceptions") to "administrative
7   issues" or "administrative errors."  *See* CAC ¶ 148.  As to the last stock option
8   grant category ("(E) Post-termination arrangements"), the Special Committee was
9   neutral on the cause of the incorrect dating.  *Id.*  There is nothing in the Form 10-
10  K/A that supports any claim that Defendants Carlson or Maheswaran knew of, or
11  participated in, any misdating of Semtech stock options.[8]  The Form 10-K/A
12  discussion did ***not*** identify Carlson and Maheswaran as having any link to the
13  misdating of options and thus supports the inference that neither individual was
14  involved in any such behavior.  *Tellabs*, 127 S. Ct. at 2510 (courts must consider
15  opposing inferences and "must consider plausible nonculpable explanations for the
16  defendant's conduct").  Plaintiff furnishes no additional facts, specific or non-
17  specific, identifying any wrongful conduct by Maheswaran or Carlson in
18  connection with any category of grants.

19

20  ───────────────
    [8]    Plaintiff's so-called "statistical analysis" is of no use to remedy the fatal
21  defect in the CAC's failure to address the state of mind of each defendant. CAC ¶¶
    154-161.  Moreover, the methodology supposedly employed by the statistical
22  analysis is opaque.  It appears to make no distinction between the various categories
    of option grants encompassed in the restatement and discussed in the Form 10-K/A,
23  and, in fact, appears to contradict the findings of the Special Committee concerning
    certain grants found to be the product of "administrative issues" (Grant C) or
24  "administrative error" (Grants D and F).  CAC ¶ 148.  There is no explanation for
    the time period employed, the supposed "findings" relating to certain subsets of
25  grants are incomprehensible, and the charts add no clarity.  Such faulty analysis has
    been rejected by multiple courts when proffered by plaintiffs for the purpose of
26  demonstrating a pattern of stock option backdating in the derivative context.  *See In
    re CNET Networks, Inc. Deriv. Litig.*, 483 F. Supp. 2d 947, 957 (N.D. Cal. 2007)
27  (plaintiff's methodology does not demonstrate whether the stock option grants were
    the result of backdating or bookkeeping errors); *Nach v. Baldwin*, 2008 WL
28  410261, *5-6 (N.D. Cal. Feb. 12, 2008); *In re Linear Tech. Corp. Deriv. Litig.*,
    2006 WL 3533024, *3 (N.D. Cal. Dec. 7, 2006).

-9-

### 2. Maheswaran And Carlson's Positions With Semtech Do Not Demonstrate Scienter

The plaintiff also attempts to demonstrate a strong inference of scienter through allegations concerning Maheswaran's and Carlson's mere status as officers of Semtech. *See also* CAC ¶¶ 22, 24. Generalized statements of Carlson's and Maheswaran's respective roles at the Company, however, do not satisfy the Reform Act's pleading requirements. *Hansen*, 527 F. Supp. 2d at 1157 (finding that failure "to plead any facts related to the role or knowledge of any of the Individual Defendants or any Individual Defendant's involvement in the alleged backdating scheme is fatal to Plaintiff's showing of scienter"). "In the option backdating context, allegations that a defendant holds a high executive position, without more, do not support a strong inference of scienter." *In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037 (N.D. Cal. 2008); *see also Hansen*, 527 F. Supp. 2d at 1158 (allegations of alleged intentional backdating dismissed based in part because "the high rank of various Individual Defendants within Hansen is insufficient, without more, to infer a strong inference of scienter"); *In re Oak Tech. Sec. Litig.*, 1997 WL 448168, *11 (N.D. Cal. Aug. 1, 1997) (allegations of knowledge based on positions within a company are "insufficient to establish liability for alleged misstatements").

### 3. Merely Signing Financial Statements And SOX Certifications Does Not Give Rise To A Strong Inference Of Scienter

The plaintiff's catch-all potpourri of "Additional Scienter Allegations," which suggests that Carlson and Maheswaran acted with scienter when they signed the Company's financial statements "by virtue of their receipt of information reflecting the truth regarding Semtech, their control over, and/or receipt and/or modification of Semtech's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information" (CAC ¶ 192), is clearly deficient. *Weiss*, 527 F. Supp. 2d

1   at 948, n.1 (finding similar allegation "obviously vague"); *see also Hansen*, 527 F.

2   Supp. 2d at 1159 (holding that allegations of defendants' access to unidentified

3   documents and information were insufficient to establish scienter).  The fact that

4   Carlson signed certain Company's public filings and accompanying SOX

5   certifications between December 10, 2003 and September 9, 2005, and that

6   Maheswaran signed *one* of the Company's public filings and the *one*

7   accompanying SOX certification on April 14, 2006 at the end of the Class Period in

8   no way gives rise to a strong inference of scienter.  *Compare* CAC ¶¶ 80, 84, 86,

9   90, 91, 94, 95, 99, 100, 103, 105, 109, 110, 114, 115, 123, 125, 188 *with Hansen*,

10  527 F. Supp. 2d at 1160 ("Without allegations that each of the individual

11  Defendants that signed various Hansen public filings knew those public filings

12  contained misstatements, the Individual Defendants' signatures on those public

13  filings alone does not give rise to a strong inference of scienter"); *In re Interpool,*

14  *Inc. Sec. Litig.*, 2005 WL 2000237, at *16 (D. N.J. Aug. 17, 2005) ("the fact that

15  Defendants signed financial disclosures indicating that they complied with GAAP

16  does not imply that they made misstatements with scienter"); *In re Great Atlantic &*

17  *Pacific Tea Co., Inc. Sec. Litig.*, 103 Fed. Appx. 465, 470 (3d Cir. 2004) (signature

18  on financial disclosures stating that defendants complied with GAAP does not show

19  that they knew procedures violated GAAP).[9]

20          No specific facts are offered concerning the circumstances surrounding the

21  signing of these documents by either Carlson or Maheswaran, or demonstrating

22  

23  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [9]      "[S]igning of quarterly certifications of financial statements mandated by the
    Sarbanes-Oxley Act does not, without more, support an inference of scienter."
24  *Weiss*, 527 F. Supp. 2d at 950; *see also In re Bally Total Fitness Sec. Litig.*, 2006
    WL 3714708 (N.D. Ill. July 12, 2006) (SOX certifications not sufficient to establish
25  scienter even where internal investigation concluded the former CEO and CFO
    "were responsible for multiple accounting errors"); *In re Hypercom Corp. Sec.*
26  *Litig.*, 2006 WL 1836181, *11 (D. Ariz. July 5, 2006) ("an incorrect Sarbanes-
    Oxley certification does not, by itself, create a strong inference of scienter"); *In re*
27  *Invision Techs., Inc. Sec. Litig.*, 2006 WL 538752, *7 n.3 (N.D. Cal. Jan. 24, 2006);
    *In re Watchguard Sec. Litig.*, 2006 WL 2038656, *11 (W.D. Wash. Apr. 21, 2006);
28  *Morgan v. AXT, Inc.*, 2005 WL 2347125, *15 (N.D. Cal. Sept. 23, 2005).

-11-

1    how either individual supposedly knew such documents contained alleged

2    misrepresentations.

3    **4.    Allegations Regarding Failure To Follow GAAP And Lack Of Internal Controls Do Not Support A Strong Inference Of Scienter**

4

5    Plaintiff also relies upon purported violations of GAAP and the Company's

6    lack of adequate internal controls concerning the granting of stock options to

7    demonstrate scienter.  CAC ¶¶ 162-183.  However, "the mere publication of

8    inaccurate accounting figures, or a failure to follow GAAP, without more, does not

9    establish scienter.'"  *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d

10    385, 390 (9th Cir. 2002) (quoting *In re Software Toolworks Inc.*, 50 F.3d 615, 627

11    (9th Cir. 1994)); *see also Hockey v. Medheker*, 30 F. Supp. 2d 1209, 1224 (N.D.

12    Cal. 1998) ("Merely alleging that fraudulent accounting practices have occurred,

13    without more, does not create a strong inference of scienter.").  In this action this is

14    especially true because APB 25, which is the accounting principle governing the

15    correct measurement date for the granting of stock options, has been recognized as

16    "complex and requir[ing] accounting expertise and judgment. . . [T]he

17    misapplication of accounting rules to a particular company's stock option grants

18    cannot be construed as a glaring example of scienter because the measurement date

19    criteria embodied in APB No. 25 are far from obvious."  *Weiss*, 527 F. Supp. 2d at

20    946 (finding scienter insufficiently pled where alleged GAAP violations were the

21    result of incorrect stock option dating).

22    Additionally, courts recognize that a company will often cite lack of internal

23    controls when there has been a restatement but that such an acknowledgement does

24    not go to the key issue of any particular defendant's scienter.  *See Hypercom*, 2006

25    WL 1836181, at *9 ("the fact that Hypercom issued a press release recognizing a

26    lack of effective internal controls, is not overly probative as to whether [defendant]

27    intentionally misclassified the leases.  Presumably every company that issues a

28    financial restatement because of GAAP errors will cite as a reason lack of effective

-12-

controls."); *In re Loudeye Corp. Sec. Litig.*, 2007 WL 2404626, \*7-8 (W.D. Wash. Aug. 17, 2007) ("allegations that Defendants had deficient internal controls during the class period does not create a strong inference that Defendants knowingly [made] false or misleading statements.").  Nor do such allegations of a lack of internal controls concerning the granting of stock options address the fundamental deficiency in factual allegations pertaining to each defendant's state of mind.  *See Hansen*, 527 F. Supp. 2d at 1157 (stock option backdating case wherein GAAP violations and lack of internal controls related to the improper accounting of options was not, in and of itself, sufficient to show scienter).

### 5.  Absence Of Alleged Stock Sales By Either Carlson Or Maheswaran Negates Scienter

Although plaintiff attempts to bootstrap allegations of scienter based upon generic insider sales allegations against other individual defendants, neither Carlson nor Maheswaran is alleged to have sold any stock during the class period or to have received any allegedly misdated stock options.  CAC ¶¶ 40, 191.  The absence of such sales negates any inference of scienter.  *See In re Wet Seal, Inc., Sec. Litig.*, 518 F. Supp. 2d 1148 (C.D. Cal. 2007) (lack of insider sales weighs against a finding of scienter); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1424-25 (9th Cir. 1994) (scienter rebutted where defendant "held on to most of [his] stock").

### 6.  The Confidential Witness Allegations Are Insufficient

Although the information attributed to the lone "Confidential Witness" referenced by the CAC fails to bolster any of plaintiff's theories, it clearly offers no linkage to Maheswaran or Carlson.  *See* CAC ¶¶ 184-186.  First, recent court decisions have cast doubt upon whether anonymous confidential witnesses can be relied upon at all for the purposes of the Reform Act.  *See*, *e.g.*, *Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, __ F.3d __, 2008 WL 2894793 (5th Cir. July 29, 2008) ("Following *Tellabs*, courts must discount allegations from confidential sources.  Such sources afford no basis for drawing the plausible

competing inferences required by *Tellabs*"); *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753 (7th Cir. 2007) ("hard to see how information from anonymous sources could be deemed compelling" under *Tellabs*).  Second, no dates for the confidential witness/alleged employee's supposed tenure at the Company are provided, thus making her account inherently unreliable.  *See Rudolph v. UTStarcom*, 2008 WL 1734763, *7 (N.D. Cal. Apr. 14, 2008) ("At the very least, plaintiff must describe the witnesses' period of employment, what the witnesses' job duties were, their expertise and how they had access to the information being provided").  We have no way of knowing when she worked there and whether she overlapped at all with Maheswaran or Carlson's tenure as CEO.  Even if this supposed witness did overlap with Carlson or Maheswaran, there is no allegation of any communications between them or any factual basis to conclude the Confidential Witness could testify to any direct knowledge or relevant information concerning these individuals.

Third, the assertion that the Confidential Witness was a "trained court reporter and legal secretary" does not bolster the conclusion that she was "aware of an option granting and pricing problem" at Semtech.  *See* CAC ¶ 186.  Not only does the plaintiff concede that the Confidential Witness was only under an "impression" of how to date options (*id.*), there is no factual link offered that connects legal secretarial knowledge to option granting and pricing and related accounting determinations.  *See In re Foxhollow Technologies Inc., Sec. Litig.*, 2008 WL 2220600, *30 (N.D. Cal. May 27, 2008) (finding confidential witness allegations insufficient to support a finding of scienter where "apart from asserting that these witnesses had 'direct knowledge' of general subject areas, plaintiff provides no details about these witnesses confirming that they were in a position to know what plaintiff claims they knew"); *In re Northpoint Comm. Grp., Inc., Sec. Litig.*, 184 F. Supp. 2d 991, 1001 (N.D. Cal. 2001) (finding use of eight confidential witnesses could not overcome Reform Act's particularity requirement where the

-14-

1    complaint did not describe the witnesses' duties or how they learned of the

2    information in the complaint).

3            There is nothing in this Confidential Witness's account of an alleged

4    conversation with Defendant Poe (CAC ¶ 186) that demonstrates how or why the

5    Confidential Witness knew of option granting issues at all, much less how such

6    knowledge might have ever been conveyed to Carlson or Maheswaran.  Speculation

7    based on a purported unspecified conversation that (1) did not involve Carlson and

8    Maheswaran and (2) may have taken place years ago, if ever, does not constitute

9    specificity under the Reform Act.

10                   **7.    The "Group Pleading Doctrine" Did Not Survive The
                            Reform Act**

11

12           Having failed to allege particularized facts against either Maheswaran or

13   Carlson, plaintiff instead resorts to the discredited "group pleading" doctrine to

14   imply scienter.[10]  Such a collective approach to pleading scienter is contrary to the

15   Reform Act's requirements for specific allegations as to each defendant.  All of the

16   Circuit Courts that have directly addressed this issue have held that the group

17   pleading doctrine was abolished by the Reform Act.[11]  *Winer Family Trust v.*

18   *Queen*, 503 F.3d 319, 334-37 (3d Cir. 2007); *Fin. Acquisition Partners L.P. v.*

19   *Blackwell*, 440 F.3d 278, 287 (5th Cir. 2006) (citing *Southland Sec. Corp. v.*

20   *INSpire Ins. Solutions Inc.*, 365 F.3d 353, 364 (5th Cir. 2004)); *Makor*, 437 F.3d at

21   602-03.  Many lower courts, including those in the Central District, have also held

22   that the group pleading doctrine did not survive the Reform Act.  *See*, *e.g.*, *In re*

23   *Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009 (C.D. Cal., 2008); *In re Impac*

24   *Mortgage Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1092-93 (C.D. Cal.

25   _____

     [10]     CAC ¶¶ 4, 6, 22-25, 141, 183.

26   [11]     In *Tellabs*, the Supreme Court declined to overturn the Seventh Circuit's
     determination in *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 602-03
27   (7th Cir. 2006), *rev'd on other grounds*, __ U.S. __, 127 S. Ct. 2499, 168 L. Ed. 2d
     179 (2007), that the group pleading doctrine did not survive the Reform Act.
28   *Tellabs*, 127 S. Ct. at 2511 n.6.

1   2008); *Allison v. Brooktree Corp.*, 999 F. Supp. 1342, 1350 (S.D. Cal. 1998).  The
2   result here should be no different.

### C.   Plaintiff Fails To Demontrate That The Alleged Misrepresentations Caused Any Purported Loss

The element of causation ensures that Section 10(b) does not become "an insurance plan for the cost of every security purchased in reliance upon a material misstatement or omission."[12] *Huddleston v. Herman & MacLean*, 640 F.2d 534, 549 (5th Cir. 1981); *see also Dura*, 544 U.S. at 345 (securities laws are "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause.").  There must be some "causal connection . . . between that loss and the misrepresentation. . . ." *Dura*, 544 U.S. at 347.  "To 'touch upon' a loss is not to *cause* a loss, and it is the latter that the law requires."  *Id.* at 343 (emphasis in original).

Recognizing that many factors can affect a company's stock price, the Supreme Court in *Dura* analyzed the loss causation element, and, in a unanimous opinion, held that a plaintiff who alleges securities fraud must adequately plead and prove that the defendant's fraud caused an economic loss.  *Id.* at 346.  The Supreme Court explained that "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss" because factors such as "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events . . . separately or together account for some or all of that lower price."  *Id.* at 342-43.  Accordingly, under *Dura*, a thorough examination is required into the sufficiency of the causation allegations and whether a defendant's alleged fraud actually caused a loss.  *See Daou*, 411 F.3d at 1025-27 (in reviewing the pleading adequacy of loss causation, the Ninth Circuit

---

[12]   As noted in *Dura*, there are two types of causation:  transaction causation and loss causation.  544 U.S. at 341-42.  Transaction causation is akin to reliance.  *Id.*; *see also In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1025 (9th Cir. 2005).  The argument in this section focuses on the loss causation element of a securities fraud claim.

1    scrutinized multiple press releases, the subject matter and disclosures in the

2    releases, and what effect the announcements bore on the stock price).

3           Plaintiff's causation allegations in this case do not approach, let alone meet,

4    the necessary showing required under *Dura* and *Daou*.  411 F.3d at 1025 ("plaintiff

5    must demonstrate a causal connection between the deceptive acts that form the basis

6    for the claim of securities fraud and the injury suffered by the plaintiff" and noting

7    "establishing 'loss causation' is a more difficult task").  In attempting to establish

8    loss causation, the plaintiff reverts to its pleading modus operandi in this action –

9    regurgitate allegations and hide behind misleading labels.  In the section of the CAC

10   entitled "Loss Causation," the plaintiff simply repeats, in summary form, allegations

11   concerning the Company's historic option granting practices pled throughout the

12   CAC without explaining ***how*** such practices ***caused*** a loss.  *See* CAC ¶¶ 196-197.

13   Plaintiff also attempts to establish loss causation by repeatedly lumping together a

14   series of announcements that took place over a five-week period and then relying on

15   Semtech's downward trending stock price movement during that same period of

16   time to show a "loss."  *See id.* at ¶¶ 7-10; 127-136; *Dura*, 544 U.S. at 342-43

17   (Supreme Court recognized that many factors such as "changed economic

18   circumstances, changed investor expectations, new industry-specific or firm-specific

19   facts, conditions, or other events . . . separately or together account for" declining

20   stock prices).

21                        **1.    There Was No Causal Connection Alleged During The Class
                                  Period**
22

23          Although Semtech's historic option granting practice is clearly the

24   underlying alleged misconduct in the CAC, the "misrepresentations" that plaintiff

     cites to support its Section 10(b) claim are the Company's net income and EPS
25

     figures.  *See* CAC ¶¶ 69, 73, 78, 83, 88, 93, 97, 102, 107, 112, 117, and 122.
26

27   Plaintiff fails to establish, however, any class period disclosures that those net

     income or EPS figures were false.  Plaintiff fails to demonstrate how the May 16,
28

1   2006 CFRA article, while identifying Semtech as one of numerous companies that

2   may have option issues, ***revealed*** that Semtech's previously stated net income or

3   EPS figures could be inaccurate.  *See* CAC ¶¶ 7, 127; *Daou*, 411 F.3d at 1025

4   ("plaintiff must demonstrate a causal connection between the deceptive acts that

5   form the basis for the claim of securities fraud and the injury suffered by the

6   plaintiff").[13]

7          Similarly, plaintiff has not established how the initiation of the SEC inquiry,

8   disclosed via press release after the close of the stock market on May 22, 2006,

9   ***indicated*** that net income or EPS figures were incorrect.  *See* CAC ¶¶ 7, 128; RJN,

10  Exh. C (May 22, 2006 Press Release).  After this announcement, Semtech stock

11  only closed 9 cents lower (from $15.36 to $15.27), and in the week and a half

12  immediately following rose almost 2 dollars (from $15.27 to $17.22) before

13  reverting to its prior downward trend.  *See* RJN, Exh. A.

14         After the close of the market on June 9, 2006, the Company announced that it

15  requested an extension for the filing of its Form 10-Q and that it was also

16  conducting an internal review.  CAC ¶ 129; RJN, Exh. D.  Plaintiff fails to

17  demonstrate how this press release revealed any falsity of previous net income or

18  EPS figures.  *Id.*  Although the stock price closed a little lower (from $15.61 to

19  $15.12), the volume of trading was relatively low.  *See* RJN, Exh. A.

20         The next two announcements, issued after the close of the market on June 14

21  and June 20, 2006, respectively, noted that Semtech's Form 10-Q was still not filed

22  and that the Company could be delisted from NASDAQ because of that late SEC

23  filing.  CAC ¶¶ 130-131; RJN, Exhs. E (June 14, 2006 Press Release), F (June 20,

24  ───────────────────

[13]     In addition, the Company's stock price rose after that article and actually
25  closed higher than the day before.  *See* RJN, Exh. A (Historical Daily Stock Chart)
    (Semtech closed at $16.27 on May 15th, and then higher at $16.38 on May 16th).
26  This article, therefore, does not appear to provide the requisite causal connection
    for plaintiff's purposes.  *See Weiss*, 527 F. Supp. 2d at 945 ("to properly plead loss
27  causation in a fraud claim, a plaintiff must allege that the price fell after the truth
    came to light about a misrepresentation, and that the plaintiff suffered damages as a
28  result").

-18-

1    2006 Press Release).  In addition, the June 14th press release also disclosed the

2    derivative lawsuits that were filed in relation to the Company's option granting

3    practices.  RJN, Exh. E.  Plaintiff again fails to show, however, how this constituted

4    **notice** of or revealed the "truth" concerning Semtech's previous EPS or net income

5    figures.  The stock price continued its downward trend but only fell slightly after

6    these two announcements (from $14.89 to $14.60 after the June 14th release, and

7    from $14.01 to $14.00 after the June 20th release).  RJN, Exh. A.  *See Weiss*, 527 F.

8    Supp. 2d at 945 ("to properly plead loss causation in a fraud claim, a plaintiff must

9    allege that the price fell after the truth came to light about a misrepresentation, and

10   that the plaintiff suffered damages as a result"); *Hansen*, 527 F. Supp. 2d at 1162

11   (finding loss causation inadequately pled as none of the disclosures contained "a

12   disclosure of wrongdoing"); *Rudolph*, 2008 WL 1734763, at *4 (finding that "prior

13   to any revelation by defendants of actual backdating, the 'true nature of [the

14   company's] financial condition had not yet been disclosed'").

15          In *Weiss*, the plaintiffs filed an action for violations of federal securities laws

16   based upon claims that the defendants made misrepresentations about historic

17   option grants.  *Weiss*, 527 F. Supp. 2d at 941.  In reviewing the causation

18   allegations, the court analyzed a series of alleged "relevant disclosures" that the

19   plaintiffs claimed provided the causal connection.  *Id.* at 945-47.  The court

20   disagreed with the plaintiffs and found that, although certain disclosures mentioned

21   the stock option matter and the initiation of an internal review, only the disclosures

22   that announced a restatement were truly "corrective" and could provide a causal

23   link.  *Id.*  The same rationale should be applied here.

24          Significantly, the plaintiff continued to purchase Semtech stock after these

25   supposed disclosures.  RJN, Exh. J (Certification of lead Named Plaintiff)

26   (identifying purchase of 19,500 shares on June 26, 2006 and 13,900 shares on June

27   27, 2006).  Under plaintiff's theory, if the "truth" of the alleged fraud were truly

28   revealed by these class period announcements, then the plaintiff's continued

-19-

1    purchases negate any liability because there plainly was no reliance.  *See Basic, Inc.*

2    *v. Levinson*, 485 U.S. 224, 248-49 (1988) (holding that "if, despite [the defendants']

3    allegedly fraudulent attempt to manipulate market price, news of the merger

4    discussions credibly entered the market and dissipated the effects of the

5    misstatements, those *who traded Basic shares **after** the corrective statements would*

6    *have **no direct or indirect connection** with the fraud*." (emphasis added)).  Under

7    either theory, plaintiff's continued purchases negate its securities fraud claim.  If

8    the "truth" was not revealed during the class period, then plaintiff suffered no loss

9    under *Dura*.  544 U.S. at 342.

              2.      **The Post-Class Period Causal Connection Cannot Provide**
10                    **The Basis For Liability**

11          On July 20, 2006, the ***day after the end of the putative class period***, Semtech

12   made its first announcement that a restatement was expected.  CAC ¶¶ 3, 10, 132-

13   133; RJN, Exh. G (July 20, 2006 Press Release).  As Semtech's internal review was

14   still ongoing at that time, there was no indication as to the magnitude of any

15   potential restatement.  *Id.*  Instead, that release only indicated that the Company

16   would "restate its financial statements for fiscal years 2002 through 2006" in order

17   "to record additional non-cash compensation expense."  CAC ¶ 132; RJN, Exh. G.

18   The first announcement that actually discussed any potential impact to Semtech's

19   previous EPS and net income figures was made on March 29, 2007, when the

20   Company completed its accounting review and filed its restated financials.  CAC ¶

21   141; RJN, Exhs. H (March 29, 2007 Press Release), I.  The stock only dropped 1

22   penny (from $13.49 to $13.48) after that announcement, and in the following week

23   then rose ***higher*** to $13.71.  RJN, Exh. A.  In other words, these post-class period

24   announcements do not provide the causal connection required under *Dura* and

25   *Daou*.  *See Dura*, 544 U.S. at 347; *Daou*, 411 F.3d at 1025; *see also Robbins v.*

26   *Koger Props, Inc.*, 116 F.3d 1441, 1444-45, 1447-48 (11th Cir. 1997) (no loss

27   causation where accounting errors that were the subject of plaintiff's fraud claim

28

LEGAL_US_W # 59732140.1

were revealed only after the close of the class period).

Moreover, the alleged class period is *between August 27, 2002 and July 19, 2006*.  CAC ¶ 3.  There can be *no liability* associated with this post-class period statement.  *In re Clearly Canadian Sec. Litig.*, 875 F. Supp. 1410, 1420 (N.D. Cal. 1995) ("As the class period defines the time during which defendants' fraud was allegedly alive in the market, statements made or insider trading allegedly occurring before or after the purported class period are irrelevant to plaintiffs' fraud claims."); *In re IBM Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998) ("[A] defendant, however, is liable only for those statements made during the class period."); *In re Silicon Graphics*, *Inc. Sec. Litig.*, 970 F. Supp. 746, 759 (N.D. Cal. 1997) (noting that only statements made during the class period are actionable); *Steinberg v. Chem-Tronics, Inc.*, 786 F.2d 1429, 1431 (9th Cir. 1986) (affirming trial court's ruling prohibiting admission of evidence of post-class period disclosures for the purpose of establishing liability).

### D.  No Actionable Misrepresentations Are Attributed To Maheswaran Or Carlson

"[W]ith regard to allegedly false and misleading statements, only speakers may properly be held liable."  *Silicon Graphics*, 970 F. Supp. at 759.  "Plaintiffs in securities actions must distinguish among those they sue and identify with particularity the role each defendant played in the alleged fraud."  *Impac Mortgage*, 554 F. Supp. 2d at 1093.  The CAC, however, does not attribute a single false or misleading statement to Maheswaran or Carlson, but instead simply alleges that these individuals signed certain SEC filings that contained some financials which were later restated.  CAC ¶¶ 80, 84, 86, 90-91, 94-95, 99-100, 103, 105, 109-110, 114-115, 123, 188.  By itself, the signing of a financial statement does not constitute the making of a statement.  *See Coates v. Heartland Wireless Commc'ns, Inc.*, 26 F. Supp. 2d 910, 916 (N.D. Tex. 1998) (finding assertion that individual defendants signed prospectus that allegedly contained misstatements was

1  insufficient to prevent dismissal).

2       **E.**    **Plaintiff Fails To Plead Reliance**

3          **1.**    **Plaintiff's Allegations Of Direct Reliance Are Insufficient**

4       Although reliance is a necessary element for the Section 10(b) claim, the

5  plaintiff's allegations relating to this element appear to be an afterthought, cut-and-

6  pasted from prior complaints in other actions.  *See Eshelman*, 2008 WL 171059, at

7  *7 ("Supreme Court has held that reliance is a necessary element of a Rule 10b-5

8  cause of action").  The only allegations of direct reliance is the blanket assertion

9  that "Plaintiffs [sic] and the other members of the Class" relied "directly or

10  indirectly on the false and misleading statements made by Defendants."  CAC ¶

11  209.  Upon which specific misrepresentations did the plaintiff rely?  Were these

12  misrepresentations heard or read?  When?  How did the plaintiff rely?  Why?

13  Without answers to these basic questions, plaintiff's direct reliance claims are

14  patently insufficient.  *Eshelman*, 2008 WL 171059, at *7.

15          **2.**    **The Fraud-On-The-Market Presumption Is Unavailable**
16               **Because The Plaintiff Fails To Plead The Existence Of An Efficient Market**

17       The plaintiff apparently realizes the weakness in its direct reliance claims,

18  and attempts to support the CAC with the use of a presumption of reliance under

19  the fraud-on-the-market theory.  *See* CAC ¶¶ 193 (alleging that plaintiff "acquired

20  Semtech securities relying upon the integrity of the market and market information

21  relating to Semtech"); 198-199; 209.  This presumption "is available only when a

22  plaintiff alleges that a defendant made material representations or omissions

23  concerning a security that is actively traded in an 'efficient market.'"  *Binder v.*

24  *Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999) (citing *Basic*, 485 U.S. at 247).

25  Plaintiff's allegations regarding the Semtech market are deficient and do not

26  support the use of this presumption.

27       The existence of an efficient market is determined by considering five factors

28  first articulated in *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D. N.J. 1989).

1    These factors are: (1) whether the stock trades at a high weekly volume;

2    (2) whether securities analysts follow and report on the stock; (3) whether the stock

3    has market makers and arbitrageurs; (4) whether the company is eligible to file an

4    SEC registration Form S-3; and (5) whether there are "empirical facts" showing

5    causation between corporate events or releases and an immediate response in the

6    stock price. *Id.* at 1286-87; *see also In re Turbodyne Techs., Inc. Sec. Litig.*, 2002

7    U.S. Dist. LEXIS 25738, at *4 (C.D. Cal. Mar. 13, 2002).

8          The plaintiff fails to plead sufficient facts that demonstrate the existence of

9    each of the five *Cammer* factors. Instead, the plaintiff only alleges the existence of

10   one factor: that securities analysts reported on the stock. CAC ¶ 198(d). There are

11   no allegations at all, however, regarding the other four factors. Rather than allege

12   such facts, the plaintiff simply relies on several generalized conclusions that are

13   insufficient as a matter of law to demonstrate the existence of an efficient market.

14         First, the plaintiff alleges that Semtech stock "was listed and traded on the

15   NASDAQ, a highly efficient market" and that Semtech filed periodic public reports

16   with the SEC and the NASDAQ. CAC ¶¶ 198(a), 198(b). However, as this Court

17   (Judge Morrow) has held previously, "[n]either the market on which a stock trades,

18   nor the fact that a company files periodic reports with the SEC, is sufficient to show

19   the existence of an efficient market." *Turbodyne*, 2002 U.S. Dist. LEXIS 25738, at

20   *49. Second, the plaintiff's assertion that "Semtech regularly communicated with

21   public investors via established market communication mechanisms" (CAC ¶

22   198(c)) is not even one of the *Cammer* factors approved by this Court, and is

23   irrelevant to the determination of the existence of an efficient market. Finally, even

24   assuming that the plaintiff's statement that stock prices reflected information

25   communicated to the market was somehow sufficient to satisfy the fifth *Cammer*

26   factor, the plaintiff would still only have satisfied two of the five factors. This

27   Court has previously granted a motion to dismiss holding that pleading two of five

28   factors was insufficient to demonstrate the existence of an efficient market such that

LEGAL_US_W # 59732140.1

the fraud-on-the-market theory was unavailable.  *See Turbodyne*, 2002 U.S. Dist. LEXIS 25738, at *52.  The result here should be no different.

## V.   THE CAC FAILS TO STATE A CLAIM AGAINST MAHESWARAN AND CARLSON UNDER SECTION 20(a)

In addition to attempting to allege a primary violation of Section 10(b) against several individual defendants, including Carlson and Maheswaran, the plaintiff also claims that these individuals are all secondarily liable as "controlling persons" under Section 20(a) of the Exchange Act.  *See* CAC ¶¶ 213-216.  Section 20(a) imposes liability on those who "control" an entity or persons that violated other sections of the Exchange Act.  15 U.S.C. § 78t.  As plaintiff has not stated a primary violation of Section 10(b), these control person claims must correspondingly be dismissed.  *See Heliotrope*, 189 F.3d at 978 (because plaintiff failed to show primary liability under the Exchange Act, defendants could not be held liable under Section 20(a)).

Moreover, even ignoring the failure to plead a primary violation, plaintiff's control person claims against Carlson and Maheswaran can independently be dismissed because the plaintiff fails to allege that either individual "exercised actual power or control over the primary violator."  *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065-66 (9th Cir. 2000); *Hansen*, 527 F. Supp. 2d at 1163.  For a Section 20(a) count, the plaintiff must allege facts demonstrating:  (1) a primary violation of the securities laws by a controlled person or entity; and (2) that the individual defendants exercised power over the controlled person or entity.  *See Howard*, 228 F.3d at 1065; *Hansen*, 527 F. Supp. 2d at 1163.  The CAC contains no such allegations.

Rather than provide such allegations, the plaintiff simply alleges that the "Individual Defendants" as a group were "controlling persons of Semtech . . . [b]y virtue of their high-level positions," as well as their "supervisory involvement in the day-to-day operations of the Company."  *See* CAC ¶¶ 214-215.  Without going

1    into any detail on such claims *or furnishing any temporal nexus*, the plaintiff only

2    provides blanket legal conclusions alleging "control or influence." *Id.* at ¶ 215.

3    There are, however, no allegations that either individual was involved in, let alone

4    controlled, any inappropriate option granting practices.[14]

5          In addition, after introducing Defendants Maheswaran and Carlson and their

6    respective positions with the Company, the only facts alleged specifically about

7    either individual are that they signed certain SEC filings and owned stock in the

8    Company.  CAC ¶¶ 18, 19, 80, 84, 86, 90, 91, 94, 95, 99, 100, 103, 105, 109, 110,

9    114, 115, 123, 125, 188.  After paragraph 22, Carlson is mentioned only 17 times

10   over the remaining 130 pages, and Maheswaran is mentioned only 3 times.  *Id.* at ¶¶

11   24, 80, 84, 86, 90-91, 94-95, 99-100, 103, 105, 109-110, 114-115, 188.  Although

12   both individuals, among many other managers and directors, were responsible for

13   SEC filings and held stock in the Company, facts relating merely to their job duties

14   and stock ownership do not show that they actually exercised control.  *See Hansen*,

15   527 F. Supp. 2d at 1163; *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1243

16   (N.D. Cal. 1994).

17   **VI.    CONCLUSION**

18         For the foregoing reasons, Defendants Carlson and Maheswaran respectfully

19   request that their motion to dismiss be granted.

20   DATED:  August 18, 2008        PAUL, HASTINGS, JANOFSKY
                                     &amp; WALKER LLP
21
22                                   By:       /s/Christopher H. McGrath
                                            CHRISTOPHER H. McGRATH
23
                                     Attorneys for Defendants
24                                   *Jason L. Carlson and Mohan R. Maheswaran*

---

25   [14]    In fact, Maheswaran did not join Semtech until April 2006 – three months
     prior to the end of the almost four-year putative class period, and **long after** any
26   purportedly inappropriate option grant identified in the CAC.  *Compare* RJN, Exh.
     B and CAC ¶ 19; *with* CAC ¶¶ 3, 148, 161, 180 (identifying misdated grants as
27   occurring only prior to fiscal year 2003).  The CAC fails to account for the
     temporal impossibility of Maheswaran or Carlson exercising control over allegedly
28   inappropriate options practices that occurred before.