1  Robert E. Gooding, Jr. (SBN 50617)
   (goodingr@howrey.com)
2  Roman E. Darmer (SBN 212578)
   (darmerr@howrey.com)
3  Todd W. Smith (SBN 223423)
   (smithodd@howrey.com)
4  HOWREY LLP
   4 Park Plaza, Suite 1700
5  Irvine, CA  92614
   Telephone:  (949) 721-6900
6  Facsimile:  (949) 721-6910

7  Bart H. Williams (SBN 134009)
   (bart.williams@mto.com)
8  Jacob S. Kreilkamp (SBN 248210)
   (jacob.kreilkamp@mto.com)
9  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue, 35th Floor
10 Los Angeles, CA  90071
   Telephone:  (213) 683-9100
11 Facsimile:  (213) 687-3702

12 Attorneys for Defendant
   JOHN D. POE

13

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16                      WESTERN DIVISION

17 IN RE: SEMTECH CORPORATION          ) Master Case No. CA 2:07-CV-07114-
   SECURITIES LITIGATION               ) CAS (FMOx)
18                                     )
                                       )
19                                     ) CLASS ACTION
                                       )
20 This Document Relates To:           ) **DEFENDANT JOHN D. POE'S**
                                       ) **MEMORANDUM OF POINTS AND**
21 ALL ACTIONS                         ) **AUTHORITIES IN SUPPORT OF**
                                       ) **MOTION TO DISMISS THE**
22                                     ) **CONSOLIDATED AMENDED CLASS**
                                       ) **ACTION COMPLAINT**
23                                     )
                                       ) Courtroom:  5
24                                     ) Judge:     Hon. Christina Snyder
                                       ) Date:      December 8, 2008
25 _____ ) Time:      10:00 a.m.

26

27

28

HOWREY LLP

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ............................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ........................... 2

    A.   The March 29, 2007 Restatement Announcement. ...................... 3

    B.   Cancellation of Mr. Poe's Outstanding Options. ......................... 4

    C.   Related Derivative and Class Action Litigation. ......................... 5

III.   ARGUMENT ..................................................................................... 5

    A.   The CAC is Subject to the Heightened Pleading
       Requirements of Both the Reform Act and Rule 9(b). ................ 6

    B.   Plaintiff Fails to State a Claim Under Section 10(b). ................. 7

        1.   Plaintiff Fails to Plead Particularized Facts Giving
           Rise to a Strong Inference of Scienter. ............................ 8

           a.   Plaintiff Does Not Raise an Inference of
              Scienter By Merely Parroting the Special
              Committee's Assertions. ....................................... 9

           b.   Plaintiff Has Utterly Failed to Establish that
              Mr. Poe Understood the Complex
              Accounting Rules Governing "In-the
              Money" Stock Options Grants. ............................ 10

           c.   Plaintiff's "Additional Indicia of Scienter"
              Fail to Establish that Mr. Poe Intended to
              Defraud Investors. ............................................... 13

              (1)   Plaintiff's "Statistical Analysis" of
                  Selected Option Dates Does Not
                  Establish Scienter. ..................................... 13

              (2)   Mr. Poe's Corporate Position and
                  Signature on Public Filings Does Not
                  Raise a Strong Inference of Scienter. ......... 14

              (3)   Plaintiff's Solitary and Inconclusive
                  Confidential Witness Statement Does
                  Not Establish Scienter. .............................. 16

              (4)   Mr. Poe's Stock Sales During the
                  Putative Class Period Do Not
                  Demonstrate Scienter. ............................... 17

HOWREY LLP

(5) The Alleged Deficiencies in the Company's Internal Controls Do Not Raise an Inference of Scienter....................................... 18

2. Plaintiff's Section 10(b) Claim Should Be Dismissed Because It Does Not Sufficiently Allege Loss Causation. .................................................................. 19

a. Plaintiff Has Failed to Establish Loss Causation as to Any of the Putative Class Period Disclosures. ..................................... 19

b. Plaintiff Has Failed to Establish Loss Causation as to Post- Putative Class Period Disclosures........................................................ 21

C. Plaintiff Fails to State a Claim Under Section 20(a)................................. 22

D. Plaintiff's Claims Are Barred by the Applicable Statutes of Limitations ............................................................. 23

IV. CONCLUSION ...................................................... 25

HOWREY LLP

Master Case No.  CA 2:07-CV-07114-CAS (FMOx)
DEF. JOHN D. POE'S MEMORANDUM OF POINTS
AND AUTHORITIES ISO MOTION TO DISMISS

1

## <u>TABLE OF AUTHORITIES</u>

2

### CASES

3
4
5
*Bartwin v. Occam Networks, Inc.*, No. CV-07-2750, 2008 WL. 2676364 (C.D. Cal. July 1, 2008), *citing Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ................................................................................. 6

6
7
*Basic Inc. v. Levinson*, 485 U.S. 224 (1988) ........................................................................... 21

8
*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ........................................................................ 5

9
10
*Belova v. Sharp*, No. CV 07-299-MO, 2008 U.S. Dist. LEXIS 19880 (D. Or. Mar. 13, 2008) ...................................... 24

11
12
*Betz v. Trainer Wortham & Co.*, 519 F.3d 863 (9th Cir. 2008) ................................................................ 24

13
14
*In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833 (N.D. Cal. 2000) ........................................... 14, 15

15
16
*In re Bally Total Fitness Sec. Litig.*, 2006 U.S. Dist. LEXIS 93986 (N.D. Ill. July 12, 2006) ..................................... 9

17
18
*In re Clearly Canadian Sec. Litig.*, 875 F. Supp. 1410 (N.D. Cal. 1995) ................................................. 21

19
20
*In re CornerStone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069 (N.D. Cal. 2005) ............................................ 15

21
*DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002) ................................................................ 8

22
23
*In re Daou Sys. Inc. Sec. Litig.*, 411 F.3d 1006 (9th Cir. 2005) .................................................... 16, 19

24
25
*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) ........................................................... 7, 19, 20

26
27
*Durning v. Citibank, Intl.*, 990 F.2d 1133 (9th Cir. 1993) ......................................................... 24

28

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ............................................................6

*Falkowski v. Imation Corp.*,
309 F.3d 1123 (9th Cir. 2002) ...........................................................24

*Fidel v. Farley*,
392 F.3d 220 (6th Cir. 2004) ..............................................................9

*Howard v. Everex System Inc.*,
228 F.3d 1057 (9th Cir. 2000) ...........................................................22

*In re GlenFed, Inc. Sec. Litigation*,
42 F.3d 1541 (9th Cir. 1994) ..............................................................7

*In re Hansen Natural Corp. Sec. Litig.*,
527 F. Supp. 2d 1142 (C.D. Cal. 2007) ..........................6, 13, 15, 17, 18, 20, 23

*In re Heritage Bond Liti.*,
289 F. Supp. 2d 1132 (C.D. Cal. 2003) ..............................................23

*In re ICN Pharm., Inc. Sec. Litig.*,
299 F. Supp. 2d 1055 (C.D. Cal. 2004) ..............................................10

*In re Intelligroup Sec. Litig.*,
468 F. Supp. 2d 670 (D.N.J. 2006) .....................................................22

*In re Mercury Interactive Corp. Sec. Litig.*, No. C05-3395, 2007 U.S. Dist.
LEXIS 59171 (N.D. Cal. July 30, 2007) ............................................14

*In re Read-Rite Corp. Sec. Litig.*,
115 F. Supp. 2d 1181 (N.D. Cal. 2000), *aff'd*, 335 F.3d 843 (9th Cir. 2003). 9, 14

*In re Read-Rite Corp. Sec. Litig.*,
335 F.3d 843 (9th Cir. 2003) .......................................................8, 9, 14

*In re Semtech Corp. Derivative Litig.*, Master File No. VC-06003510-CAS
(FMOx) ...........................................................................................5

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999) .........................................................6, 21

*In re Silicon Storage Tech.*, No. C 05-0295, 2006 U.S. Dist. LEXIS 14790 (N.D.
Cal. Mar. 10, 2006),...................................................................7, 8

*In re Sportsline.com Sec. Litig,*
   366 F. Supp. 2d 1159 (S.D. Fla. 2004) ............................................................... 11

*Sprewell v. Golden State Warriors*
   266 F.3d 979 (9th Cir. 2001) ................................................................................ 6

*In re The Vantive Corp. Sec. Litig.,*
   283 F.3d 1079 (9th Cir. 2002), *In re* ...................................................... 6, 10, 17

*In re Worlds of Wonder Sec. Litig.,*
   35 F.3d 1407 (9th Cir. 1994) ................................................................................ 8

*In re Zoran Corp. Derivative Litig.,*
   511 F. Supp. 2d 986 (N.D. Cal. 2007) ...................................................... 10, 12, 24

*Metzler Inv. GMBH v. Corinthian Colls., Inc.,* No. 06-55826,
   2008 U.S. App. LEXIS 15935 (9th Cir. July 25, 2008) .............................. 11, 20

*Paracor Fin. Inc. v. GE Capital Corp.,*
   96 F.3d 1151 (9th Cir. 1996) .............................................................................. 23

*Patel v. Parnes,* No. CV 07-05364,
   2008 U.S. Dist. LEXIS 46630 (C.D. Cal. May 19, 2008) .................................. 15

*Reiger v. Price Waterhouse Coopers LLP,*
   117 F. Supp. 2d 1003 (S.D. Cal. 2000) ................................................................ 8

*Rudolph v. UTStarcom, No.,*
   C07-045782008 WL. 1734763 (N.D. Cal. Apr. 14, 2008) ................................. 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
   127 S. Ct. 2499 (2007) .................................................................................... 3, 8

*Vess v. Ciba-Geigy Corp. USA,*
   317 F.3d 1097 (9th Cir. 2003) .............................................................................. 7

*Weiss v. Amkor Tech., Inc.,*
   527 F. Supp. 2d 938 (D. Ariz. 2007) ............................................ 9, 10, 11, 15, 19

**STATUTES**

15 U.S.C. § 78u-4(b)(1) ........................................................................................ 6, 7

15 U.S.C. §78u-4(b)(2) ........................................................................................... 7, 8

28 U.S.C. § 1658(b) ................................................................................................. 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Fed. R. Civ. P. 9(b) ...................................................................................6

HOWREY LLP

-vii-                    Master Case No.  CA 2:07-CV-07114-CAS (FMOx)
DEF. JOHN D. POE'S MEMORANDUM OF POINTS
AND AUTHORITIES ISO MOTION TO DISMISS

# I.    INTRODUCTION

In its 144-page Consolidated Amended Class Action Complaint ("CAC"), filled mostly with block quotations from Semtech's public filings, Plaintiff attempts to transform the March 2007 restatement into a securities fraud claim.  But Plaintiff's boilerplate allegations do not come close to satisfying the exacting requirements of the Private Securities Litigation Reform Act of 1995 ("Reform Act").  Unable to allege any contemporaneous facts establishing management's purported "fraudulent scheme" to backdate stock options, Plaintiff pins its hopes on the after-the-fact conclusions of a Special Committee's investigation into historical stock option practices, along with Plaintiff's own analysis of a few carefully selected grant dates and a short, inconclusive statement from an unnamed human resources employee.  Even accepting the truth of these allegations for the purposes of this motion, they do not come close to establishing securities fraud.  Rather, they reveal a company that, like hundreds of other young and growing public companies, at times employed an inconsistent, and sometimes flawed, methodology for granting and accounting for stock options.

Plaintiff contends that over a span of nearly four years (from August 27, 2002 to July 19, 2006) (the "Putative Class Period"), every Form 10-Q and 10-K filed with the SEC, as well as certain Form 8-K's and press releases, were inaccurate because Semtech did not properly account for the non-cash expense related to stock option grants.  Absent from the CAC, however, are any allegations that Mr. Poe understood the accounting implications related to stock options, including the complexities of Accounting Principles Board Opinion No. 25 ("APB 25"), the relevant accounting principle applicable at the time.  Without demonstrating such knowledge, Plaintiff cannot possibly establish the "strong inference" of scienter required to allege securities fraud under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").  Moreover, Plaintiff's concession that the vast majority of options granted to Mr. Poe were not even repriced by the Company further refutes the notion that he was somehow involved in a multi-year conspiracy to defraud investors.

HOWREY LLP

-1-    Master Case No.  CA 2:07-CV-07114-CAS (FMOx)
DEF. JOHN D. POE'S MEMORANDUM OF POINTS
AND AUTHORITIES ISO MOTION TO DISMISS

1    Nor does Plaintiff sufficiently link its alleged loss to any public disclosure

2    revealing the purportedly fraudulent scheme.  While Plaintiff contends that the

3    "backdating scheme" was revealed in a series of Company announcements between

4    May 2006 and July 2006, this theory is refuted by the fact that Plaintiff continued to

5    purchase Semtech's stock even *after* those allegedly corrective disclosures were issued.

6    Moreover, the very modest investor reaction to these announcements, indisputably

7    reflected in the minimal stock price movement on these dates, defeats any suggestion

8    that these disclosures caused Plaintiff any economic loss.

9    Perhaps most telling, Plaintiff does not identify a single stock option grant that

10   allegedly was backdated during the Putative Class Period.  Instead, the focus of the

11   restatement, including the assertions of manipulation by management, is directed at

12   conduct that occurred from 1997 to May 2002.  While Plaintiff attempts to plead around

13   the applicable statute of limitations by pointing to later-filed disclosures, it cannot avoid

14   the fact that the gravamen of the alleged misconduct, *i.e.*, the purported backdating,

15   occurred squarely outside the limitations period.  Thus, in addition to falling well short

16   of the strict pleading requirements of the Reform Act and Rule 9(b), Plaintiff's claims

17   are time-barred in their entirety.

18   **II.    FACTUAL AND PROCEDURAL BACKGROUND**

19   Semtech (also referred to herein as "the Company") is a leading supplier of

20   analog and mixed-signal semiconductor products headquartered in Camarillo.  CAC,

21   ¶ 16.  The Company's stock is publicly traded on NASDAQ.  *Id.*

22   Defendant John D. Poe served as Semtech's Chief Executive Officer ("CEO") for

23   approximately eighteen years, from October 1985 to October 2003, when he retired.  *Id.*

24   at ¶ 17.  At the request of the Board of Directors ("Board"), Mr. Poe returned as interim

25   CEO from September 2005 to April 2006.  *Id.*  He also served as Chairman of the Board

26   from 1998 until August 2006.  *Id.*

27   In the spring of 2006, a series of publications suggested that "corporations

28   throughout the United States" had granted "in the money" stock options without

1  properly accounting for them in their financial statements.  CAC, ¶¶ 48-52.  In May

2  2006, a report issued by the Center for Financial and Research Analysis ("CFRA")

3  named Semtech as one of the companies "at risk" for backdated stock options.  *Id.*,

4  ¶ 127; *see also* Ex. S.[1]

5        Thereafter, between May 22 and June 20, 2006, the Company released a series of

6  announcements related to investigations of its historical stock option granting practices,

7  including an informal inquiry by the SEC, commencement of an internal review by the

8  Company, a delay in filing of its Form 10-Q for the first quarter of fiscal 2006, a

9  delisting notice from NASDAQ as a result of the delayed filing, and the receipt of a

10  federal grand jury subpoena.  CAC, ¶¶ 128-131.  Notably, none of these announcements

11  disclosed that Semtech had improperly backdated or accounted for stock options.

12  Exs. F-I.  On July 20, 2006, the Company announced that a Special Committee of the

13  Board had completed the initial phase of an internal investigation and that it expected to

14  record additional non-cash compensation expense based on application of new

15  measurement dates to certain historical stock option grants "primarily during fiscal

16  years 1998 through 2003."  *Id.*, ¶ 132; Ex. J.

17        On August 17, 2006, Mr. Poe took a voluntary leave of absence as a director and

18  stepped down as Chairman of the Board.  CAC, ¶ 150; Ex. K.  On April 16, 2007, Mr.

19  Poe resigned as a director.   Ex. M.

20        **A.      The March 29, 2007 Restatement Announcement.**

21        On March 29, 2007, the Company filed a Form 10-K/A amending the 10-K for

22  the fiscal year ended January 29, 2006 and announcing an additional pre-tax non-cash

23  _____

24  [1]  All references to "Ex.__" are to exhibits attached to the Declaration of Todd W. Smith
25  in support of this motion and are the subject of the Request for Judicial Notice filed
    concurrently herewith.  The CFRA report and other documents referenced in the CAC
26  are properly considered on a motion to dismiss.  *See Tellabs, Inc. v. Makor Issues &
    Rights, Ltd.,* 127 S. Ct. 2499, 2509 (2007) (In ruling on a motion to dismiss under Rule
27  12(b)(6), "[C]ourts must consider . . . documents incorporated into the complaint by
    reference, and matters of which a court may take judicial notice.").

28

stock-based compensation expense of $91 million.  Ex. L at 39.  Notably, the restatement arose from "stock options granted or modified primarily during fiscal years 1996 to 2003."  *Id.*  The restatement resulted from conduct occurring almost exclusively *before* the Putative Class Period, which began on August 27, 2002.  CAC, ¶ 3.  The year-by-year restatement amounts confirm that the vast majority of additional compensation expense ($74.6 million) was attributable to fiscal years 1996 to 2003.  CAC, ¶ 152; Ex. L at 47.

The Company's restatement adjustments fell into the following six categories: (i) grants made from April 1997 to May 2002 to continuing employees; (ii) grants to new employees; (iii) grants lacking evidence of Compensation Committee approval as a result of "administrative issues"; (iv) grants modified after Compensation Committee ratification (most of which were the result of "administrative error" and were deemed "not significant"); (v) grants made in connection with post-termination arrangements; and (vi) miscellaneous "pricing exceptions" (the majority of which resulted in pricing *unfavorable* to the employee and were the result of "administrative errors").  CAC, ¶ 148; Ex. L at 42-44.

With respect to grants made to continuing employees from April 1997 to May 2002, the Special Committee alleged intentional manipulation of certain grant dates, although neither the Company nor Plaintiff have pointed to any specific grants that were manipulated or how such manipulation allegedly occurred.  CAC, ¶ 148; Ex. L at 42-43.  Nevertheless, it is undisputed that the allegedly manipulated grant dates occurred between April 1997 and May 2002, well before the Putative Class Period began on August 27, 2002.  *Id.*

## B.    Cancellation of Mr. Poe's Outstanding Options.

In the wake of its restatement, the Board formed a Special Litigation Committee ("SLC"), composed of two directors who joined the Board in October 2006, to evaluate potential claims against former Semtech employees.  CAC, ¶ 150.  At the behest of the SLC, the Company unilaterally canceled and rescinded *all* of Mr. Poe's outstanding

HOWREY LLP

-4-        Master Case No.  CA 2:07-CV-07114-CAS (FMOx)
DEF. JOHN D. POE'S MEMORANDUM OF POINTS
AND AUTHORITIES ISO MOTION TO DISMISS

options (over 1.2 million in total), irrespective of whether such options were allegedly backdated.  Ex. L at 46.  The Company conceded that the overwhelming majority of Mr. Poe's cancelled options (approximately 81%) had no intrinsic value at all (meaning that the Special Committee concluded that the options did not require repricing).  *Id*.

### C.   Related Derivative and Class Action Litigation.

As detailed in the Company's motion to dismiss, a flurry of litigation followed the Company's restatement.[2]  Beginning in May 2006, derivative actions were filed in both state and federal court, including the consolidated case *In re Semtech Corporation Derivative Litigation*, Master File No. VC-06003510-CAS (FMOx), which is currently pending before this Court.  Notably, the parties to the various consolidated state and federal court derivative actions have reached a settlement in principle, the terms of which are to be presented to this Court for review and approval.

On August 10, 2007 and October 5, 2007, plaintiffs Middlesex County Retirement System and Lawrence Chayt filed putative class action complaints in the Southern District of New York against Semtech and certain of its former officers and directors.  Those cases were transferred to this Court and, on March 31, 2008, were consolidated into the present action.  Plaintiff filed its CAC on May 30, 2008.

## III.   ARGUMENT

To survive a motion under Rule 12(b)(6), Plaintiff must provide more than just "labels and conclusions," rather, it must provide the grounds of its entitlement to relief. *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) ("formulaic recitation of the elements of a cause of action will not do").  Furthermore, while the Court in reviewing a motion to dismiss under Rule 12(b)(6) must accept as true all material allegations in the CAC, it need not accept as true "unreasonable inferences or conclusory legal allegations

---

[2] Mr. Poe joins in that portion of the Company's Motion to Dismiss addressing the fact that Plaintiff is improperly attempting to twist what is, at best, a derivative claim for mismanagement into a securities fraud claim. *See* Semtech's Memorandum of Points and Authorities in support of its Motion to Dismiss ("MTD"), at Section III.

cast in the form of factual allegations." *Bartwin v. Occam Networks, Inc.*, No. CV-07-2750, 2008 WL 2676364, at *7 (C.D. Cal. July 1, 2008), *citing Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

**A.    The CAC is Subject to the Heightened Pleading Requirements of Both the Reform Act and Rule 9(b).**

Plaintiff's claims for securities fraud under the Exchange Act are subject to the stringent pleading requirements imposed by the Reform Act, as well as the heightened particularity and specificity standards for pleading fraud mandated by Rule 9(b). *See In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1150 (C.D. Cal. 2007); Fed. R. Civ. P. 9(b). Additionally, because the CAC is based on "information and belief," Plaintiff has the additional burden of alleging the facts forming the basis of its belief. [3] CAC, ¶ 1.

Congress enacted the Reform Act in 1995 to "eliminate abusive securities litigation and particularly to put an end to the practice of pleading 'fraud by hindsight.'" *In re The Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084-85 (9th Cir. 2002), *citing In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 988 (9th Cir. 1999). "The Reform Act requires a plaintiff to plead a complaint for securities fraud with an unprecedented degree of specificity and detail…[t]his is not an easy standard to comply with – it was not intended to be – and plaintiff must be held to it." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1053 (9th Cir. 2003). The Reform Act requires that a plaintiff identify with precision "each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Additionally, the Reform Act mandates that the CAC "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of

---

[3] On this issue, Mr. Poe joins in the Motions to Dismiss filed by Defendants Franz and Baumann. *See* Def. Franz's MTD, at Section IV.C; Def. Baumann's MTD, at Section III.C.

Master Case No.  CA 2:07-CV-07114-CAS (FMOx)
DEF. JOHN D. POE'S MEMORANDUM OF POINTS
AND AUTHORITIES ISO MOTION TO DISMISS

1  mind."  15 U.S.C. §78u-4(b)(2) (emphasis added).  If a complaint does not satisfy these

2  pleading requirements, the Court must dismiss it.  15 U.S.C. § 78u-4(b)(3)(A).

3       Plaintiff must also satisfy the demanding pleading requirements of Rule 9(b).  To

4  meet this heavy burden, Plaintiff must allege "specific facts regarding the fraudulent

5  activity, such as the time, date, place, and content of the alleged fraudulent

6  representation, [and] how or why the representation was false or misleading." [4]  *In re*

7  *Silicon Storage Tech.*, No. C 05-0295, 2006 U.S. Dist. LEXIS 14790, at *3 (N.D. Cal.

8  Mar. 10, 2006), *citing In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-49 (9th Cir.

9  1994).  Where a plaintiff "fail[s] to satisfy the heightened pleading requirements of Rule

10  9(b), a district court may dismiss the complaint or claim."  *Vess v. Ciba-Geigy Corp.*

11  *USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

12       **B.**    **Plaintiff Fails to State a Claim Under Section 10(b).**

13       In order to plead a cause of action under Section 10(b) of the Exchange Act,

14  Plaintiff must allege the following elements with the particularity and specificity

15  described above:  (1) a material misrepresentation (or omission); (2) scienter, *i.e.*, a

16  wrongful state of mind; (3) a connection of the material misrepresentation or omission

17  to the purchase or sale of a security; (4) reliance, often referred to in cases involving

18  public securities markets (fraud-on-the-market cases) as "transaction causation"; (5)

19  economic loss; and (6) "loss causation," *i.e.*, a causal connection between the material

20  misrepresentation and the loss.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-

21  42 (2005).

22       For all of the reasons set forth below, Plaintiff cannot meet the exacting

23  requirements imposed by the Reform Act and Rule 9(b) for pleading a securities fraud

24  claim under Section 10(b).

25  _____

26  [4] Because Plaintiff fails to allege misstatements with any level of specificity, much less
the heightened particularity required by Rule 9(b), Mr. Poe joins in the Motion to

27  Dismiss filed by Defendant Franz on this issue.  *See* Defendant Franz's MTD, at Section
IV.A.

28

1    **1.    Plaintiff Fails to Plead Particularized Facts Giving Rise to a
2    Strong Inference of Scienter.**

3         The Reform Act requires that Plaintiff state with "particularity facts giving rise to

4    a *strong inference* that defendant acted with the required state of mind." 15 U.S.C.

5    § 78u-4(b)(2) (emphasis added).  "To determine whether the plaintiff has alleged facts

6    that give rise to the requisite 'strong inference' of scienter, a court must consider

7    plausible *nonculpable* explanations for the defendant's conduct, as well as inferences

8    favoring the plaintiff." *Tellabs*, 127 S. Ct. at 2510 (emphasis added).  The inference of

9    scienter must be "more than merely reasonable or permissible," rather, it must be

10   "cogent and compelling" and "strong in light of other explanations." *Id.* (quotations

11   omitted).  Additionally, rather than plead fraud by hindsight, the CAC must allege

12   "specific *contemporaneous* statements or conditions that demonstrate the intentional or

13   deliberately reckless false or misleading statements *when made*." *In re Read-Rite Corp.*

14   *Sec. Litig.*, 335 F.3d 843, 846 (9th Cir. 2003) (emphasis added).  Here, Plaintiff's sole

15   reliance on the Company's restatement, including a lengthy and nearly verbatim

16   regurgitation of the assertions of the Special Committee, does not come close to

17   satisfying the stringent pleading requirements and particularity demands of the Reform

18   Act and Rule 9(b).

19        As a preliminary matter, it is well settled that mere allegations of a restatement or

20   a failure to follow GAAP do not establish scienter.  *DSAM Global Value Fund v. Altris*

21   *Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002); *In re Worlds of Wonder Sec. Litig.*, 35

22   F.3d 1407, 1426 (9th Cir. 1994); *Silicon Storage*, 2006 U.S. Dist. LEXIS 14790, at *20

23   ("scienter requires more than a misapplication of accounting principles").  This is true

24   regardless of the magnitude of the alleged GAAP errors or the size of the restatement.

25   *See Reiger v. Price Waterhouse Coopers LLP*, 117 F. Supp. 2d 1003, 1013 (S.D. Cal.

26   2000) ("To travel from magnitude of fraud to evidence of scienter, the court must blend

27   hindsight, speculation and conjecture to forge a tenuous chain of inferences.").

28   Permitting an inference of scienter based on the magnitude of the alleged fraud "would

HOWREY LLP

-8-    Master Case No.  CA 2:07-CV-07114-CAS (FMOx)
DEF. JOHN D. POE'S MEMORANDUM OF POINTS
AND AUTHORITIES ISO MOTION TO DISMISS

1  eviscerate the principle that accounting errors alone cannot justify a finding of scienter."

2  *Fidel v. Farley*, 392 F.3d 220, 231 (6th Cir. 2004).

3            **a.    Plaintiff Does Not Raise an Inference of Scienter By**
                   **Merely Parroting the Special Committee's Assertions.**
4

5            Plaintiff cannot avoid dismissal simply by pointing to the Special Committee's

6  assertion that Mr. Poe manipulated certain stock option grant dates between April 1997

7  and May 2002.  CAC, ¶ 148.  In essence, Plaintiff alleges that because the Company

8  restated its financial statements in connection with historical stock option grants, and

9  because the Special Committee has asserted intentional manipulation of certain of those

10 grant dates (all prior to May 2002), Defendants must have intended to defraud investors

11 when they signed subsequent public disclosures.  The restatement and the Special

12 Committee's assertions, however, are not contemporaneous facts or conditions.  Rather,

13 they are after-the-fact contentions of professional service providers hired and paid for

14 by the Company years after the alleged conduct.  Plaintiff's "fraud by hindsight"

15 approach, based solely on tenuous inferences from announcements made years after the

16 alleged misconduct, is precisely the type of conclusory pleading that the Reform Act

17 was designed to prevent.  *See In re Bally Total Fitness Sec. Litig.*, 2006 U.S. Dist.

18 LEXIS 93986, at **22-23 (N.D. Ill. July 12, 2006) (characterizing audit committee's

19 findings of misconduct by former executives as "simply hindsight conclusions" that "do

20 not assist in determining the state of mind behind the misstatements at the time they

21 were made."); *Read-Rite*, 335 F.3d at 847-49 (rejecting scienter allegations based on

22 post-class period, after the fact statements because they do not raise a strong inference

23 that the Defendant acted with deliberate recklessness suggesting an intent to defraud.).

24         Even where a special committee has found intentional manipulation of stock

25 option grants, the heightened pleading standards still mandate dismissal if a plaintiff

26 cannot otherwise allege sufficient contemporaneous facts to establish scienter.  *See, e.g.*,

27 *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 949 (D. Ariz. 2007) (dismissing

28 complaint where plaintiffs had "mistakenly relied" on the special committee's

1   conclusions to prove scienter rather than setting forth "corroborating details and facts

2   supporting allegations of each defendant's knowledge" of the alleged fraud).  The CAC,

3   which fails to allege *any* contemporaneous details or facts evidencing Mr. Poe's state of

4   mind, should be dismissed for the same fundamental deficiency.

5            **b.**        **Plaintiff Has Utterly Failed to Establish that Mr. Poe**

6                         **Understood the Complex Accounting Rules Governing**

7                         **"In-the Money" Stock Options Grants.**

8        The crux of the CAC is that the Company improperly accounted for certain stock

9   option grants made between 1996 and 2003 under APB 25 and, thus, its subsequent

10  public filings understated the applicable compensation expense for such grants and

11  overstated its reported net income. [5]  CAC, ¶ 6.   Yet, Plaintiff has failed to allege facts

12  showing that Mr. Poe knew of or understood APB 25 or any accounting implications of

13  granting stock options, much less any facts showing that Mr. Poe knew that the

14  Company's subsequent disclosures were false when made.  *See Vantive*, 283 F.3d at

15  1085 (plaintiff must "allege specific contemporaneous conditions known to the

16  defendants that would strongly suggest that the defendants understood" that Company's

17  accounting for stock options was improper); *see also In re ICN Pharm., Inc. Sec. Litig.*,

18  299 F. Supp. 2d 1055, 1065 (C.D. Cal. 2004).

19       As demonstrated by the numerous companies caught up in the so-called stock

20  option "backdating epidemic," as well as the recent and extensive SEC guidance as to

21  its application, APB 25 is an indisputably complex and opaque accounting rule.  *See*

22

23  ―――――――――――――――――

24  [5] APB 25 states that a Company must record a compensation expense to the extent the option's purchase price (also know as the "exercise price") is lower than the stock's

25  market price on the measurement date.  CAC, ¶ 42.  "The measurement date is the date on which the following three items of information are known:  (1) the number of

26  options; (2) the options' recipients; and (3) the option or purchase price."  *In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1003 (N.D. Cal. 2007).  Thus, accurately

27  determining the measurement date pursuant to APB 25 is "critical for determining whether or not the company must recognize a compensation expense."  *Id.*

28

1  CAC, ¶ 48 -55; Ex. N (SEC guidance regarding APB 25); *see also In re Sportsline.com*

2  *Sec. Litig.*, 366 F.Supp. 2d 1159, 1168-69 (S.D. Fla. 2004) ("the measurement date

3  criteria embodied in APB No. 25 are far from obvious.").  Plaintiff has not alleged that

4  Mr. Poe, as CEO and Chairman of the Company, had any personal experience in the

5  application of APB 25 or any of the accounting rules applicable to stock options.  Nor

6  does the CAC allege that he acted in a finance or accounting capacity at the Company.

7  To the contrary, Mr. Poe reasonably relied on the expertise and judgment of the

8  Company's outside auditors and internal finance and accounting personnel for such

9  issues. [6]  *See Weiss*, 527 F. Supp. 2d at 949 (APB 25 is "complex" and "require[s]

10  accounting expertise and judgment").  Indeed, during each year of the Putative Class

11  Period, Semtech's independent auditors issued unqualified audit opinions that

12  Semtech's financial statements presented the Company's financial position fairly and in

13  conformity with GAAP. *See* Exs. A-D.  Given that even the Company's own auditors,

14  after numerous audits of its financial statements, did not raise any questions about the

15  Company's stock option accounting under APB 25, it is unreasonable to infer that Mr.

16  Poe somehow understood that those financial statements were inaccurate.  *See Metzler*

17  *Inv. GMBH v. Corinthian Colls., Inc.*, No. 06-55826, 2008 U.S. App. LEXIS 15935, at

18  *45 (9th Cir. July 25, 2008) (inference of scienter not established where external

19  auditors failed to counsel against allegedly improper accounting practices).

20       Of course, the mere allegation that the Company did not satisfy APB 25 in

21  accounting for certain stock option grants does not, in itself, demonstrate that the

22  Company or any member of management intended to defraud investors, much less

23

24  _____

25  [6] The Company acknowledges that, at least during the period from April 1997 to May
    2002 (the period during which the "intentional manipulation" took place), each grant

26  was submitted to the Compensation Committee for approval.  Ex. L at 42.  Tellingly,
    nowhere in the Complaint is it alleged that any member of the Compensation

27  Committee, or anyone else, ever informed Mr. Poe that any of the grant dates during
    this time were incorrect.

28

1  satisfy the requirement of a particularized showing of scienter by Mr. Poe.  *See Zoran*,

2  511 F. Supp. 2d at 1004 (recognizing that "an incorrect measurement date for stock

3  options could be the result of innocent but sloppy accounting practices" rather than

4  fraud).  For example, the Company's restatement cites several instances of

5  "administrative error" in selecting measurement dates, and even several pricing

6  exceptions that were "unfavorable" to the employee.  Ex. L at 44.  Thus, far from

7  creating a strong inference that management deliberately intended to defraud the

8  investing public, the allegations more reasonably suggest a Company and management

9  team that struggled to apply a complex accounting principle and, in hindsight, did so

10  imperfectly.

11  Similarly unpersuasive is Plaintiff's unsupported contention that the allegedly

12  backdated grants "failed to comport" with the Company's stock option plans, and thus

13  Mr. Poe and the other individual defendants should have been aware of their supposed

14  impropriety.  CAC, ¶ 35-40.  First, Plaintiff has not alleged any facts showing deviation

15  from the stock option plans in effect during the relevant period, each of which has

16  varying provisions relating to the determination of an option's exercise price.  Under the

17  1994 Long Term Stock Incentive Plan, for example, the exercise price could be set as

18  low as 85% of the fair market value on the grant date, depending on the type of option

19  being granted.  *Id.*, ¶ 37.  The 1998 Long Term Stock Incentive Plan simply states that

20  the exercise price shall be the average traded price "on the date as determined by the

21  Plan Administrator."  *Id.*  Here, Plaintiff has failed to plead with specificity *any*

22  allegedly backdated option grant during the relevant time period, much less the

23  particular plan under which any option was granted, the type of grant at issue, and how

24  any grant "failed to comport" with the respective plan.  Thus, Plaintiff's recitation of

25  selected provisions of the various stock option plans adds nothing to the scienter

26  analysis.

27

28

HOWREY LLP

1

c.   **Plaintiff's "Additional Indicia of Scienter" Fail to Establish that Mr. Poe Intended to Defraud Investors.**

2

3   Nor is Plaintiff's failure to plead scienter saved by pointing to other so-called

4   "indicia of scienter," which include a patently biased presentation of selected option

5   grant dates; Mr. Poe's corporate position and signature on certain public filings and

6   certifications; a brief and inconclusive statement of a low-level confidential source; Mr.

7   Poe's periodic stock sales during the 4-year Putative Class Period; and the allegedly

8   insufficient internal controls at the Company.  CAC, ¶¶ 154-191.  None of those

9   allegations, standing alone or collectively, is sufficient to establish the requisite strong

10  inference of scienter on the part of Mr. Poe.

11

(1)   **Plaintiff's "Statistical Analysis" of Selected Option Dates Does Not Establish Scienter.**

12

13  While the CAC references a "statistical analysis" performed by an expert witness

14  Plaintiff paid to analyze Semtech's stock option grants, this self-serving array of

15  statistics does not satisfy Plaintiff's burden to allege contemporaneous *facts*

16  demonstrating Mr. Poe's role in the alleged backdating scheme, much less the requisite

17  showing of scienter.  CAC, ¶¶ 4, 154-61.  While Plaintiff purports to analyze grants

18  made "between 1994 and 2007," the only grants identified in the CAC occurred

19  between January 1994 and May 2002 and, thus, fall well outside the Putative Class

20  Period.  *Id.*, ¶ 161.  Indeed, stripped of its statistical hyperbole, this "analysis" is nothing

21  more than a repackaging of the allegations giving rise to the Company's restatement and

22  does nothing to establish that Mr. Poe acted with the requisite scienter.

23  In any event, even where a company has acknowledged backdating stock options,

24  a plaintiff still must establish scienter as to each individual defendant. [7]  *See Hansen*,

25  _____

26  [7] Because the "group pleading" doctrine did not survive the Reform Act, Plaintiff bears
    the burden of pleading particularized facts sufficient to demonstrate scienter on behalf
27  of each defendant.  Mr. Poe therefore joins in the Motions to Dismiss of Defendants
    Carlson and Maheswaran, as well as Defendant Baumann, on this issue.  *See* Def.
28
                                                                    (Continued...)

HOWREY LLP

-13-   Master Case No.  CA 2:07-CV-07114-CAS (FMOx)
DEF. JOHN D. POE'S MEMORANDUM OF POINTS
AND AUTHORITIES ISO MOTION TO DISMISS

527 F. Supp. 2d at 1157 ("Even when backdating is 'almost certain,' claims against individual defendants must be dismissed unless the complaint provides 'adequate detail regarding their role and knowledge of the alleged backdating.'"); *see also In re Mercury Interactive Corp. Sec. Litig.*, No. C05-3395, 2007 U.S. Dist. LEXIS 59171, at * 10 (N.D. Cal. July 30, 2007) (dismissing claims on scienter grounds in spite of company's finding of backdated options). Thus, Plaintiff's statistical analysis, even had it identified stock option grants within the Putative Class Period, still fails to establish that Mr. Poe acted with the requisite intent to defraud investors.

> **(2)** **Mr. Poe's Corporate Position and Signature on Public Filings Does Not Raise a Strong Inference of Scienter.**

The CAC's failure to adequately plead scienter cannot be rescued by the allegation that Mr. Poe was formerly the Company's CEO and Chairman of the Board. Under the Reform Act's stringent pleading standards, courts repeatedly have refused to infer a defendant's state of mind based on his or her position with the company. *See, e.g.*, *In re Read-Rite Corp. Sec. Litig.*, 115 F. Supp. 2d 1181, 1184 (N.D. Cal. 2000), *aff'd*, 335 F.3d 843 (9th Cir. 2003) (rejecting presumption that a corporate officer or director "must have known" or "could have known" about alleged fraud by virtue of his or her position). Indeed, to infer scienter based on a corporate position "would eliminate the necessity for specially pleading scienter, as any corporate officer could be said to possess the requisite knowledge by virtue of his or her position." *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 844 (N.D. Cal. 2000). Hence, Plaintiff's boilerplate allegations that, by virtue of his position with Company, Mr. Poe had access to unspecified "undisclosed" and "confidential proprietary" information are wholly

---

(...Continued)

Carlson/Maheswaran's MTD, at Section IV.B.7; Def. Baumann's MTD, at Sections III.C and IV.

HOWREY LLP

-14-                    Master Case No.  CA 2:07-CV-07114-CAS (FMOx)
                       DEF. JOHN D. POE'S MEMORANDUM OF POINTS
                       AND AUTHORITIES ISO MOTION TO DISMISS

1   insufficient to create any inference of scienter, let alone the strong inference required to

2   survive a motion to dismiss.[8]  CAC, ¶¶ 22 – 25.

3       Nor can Plaintiff establish scienter by alleging that Mr. Poe signed various public

4   filings and Sarbanes-Oxley ("SOX") certifications that were the subject of the

5   restatement.  *See id.*, ¶¶ 17; 56-126; 187-190.  This identical argument was soundly

6   rejected by the court in *Hansen*, which held that unless a complaint alleges facts

7   establishing that each defendant *knew* the public filings contained misstatements, a

8   defendant's signature on public filings alone does not give rise to a strong inference of

9   scienter.  *Hansen*, 527 F. Supp. 2d at 1159 (further stating that if such an inference were

10  permitted, "scienter would be established in every case where there was an accounting

11  error or auditing mistake made by a publicly traded company, thereby eviscerating the

12  pleading requirements for scienter set forth in the PSLRA.") (internal quotations

13  omitted).  Similarly, a defendant's signature on allegedly inaccurate SOX certifications

14  does not raise a strong inference of scienter.[9]  *See Patel v. Parnes*, No. CV 07-05364,

15  2008 U.S. Dist. LEXIS 46630, at **94-95 (C.D. Cal. May 19, 2008) (rejecting

16  plaintiff's assertion that signature on SOX certifications gives rise to an inference of

17  scienter); *see also Weiss*, 527 F.Supp. 2d at 950.  Where, as here, Plaintiff alleges no

---

19  [8] Plaintiff concedes that Mr. Poe was not the CEO for the majority of the Putative Class
20  Period, having retired from that position in October 2003.  CAC, ¶ 17.  He later acted as
    interim CEO for a short period of time between September 2005 and April 2006.  *Id.*
21  Moreover, Mr. Poe's resignation from the Company does not create a strong inference
    of scienter.  *In re CornerStone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069,
22  1093 (N.D. Cal. 2005) ("[W]hether [the defendants] were terminated or resigned, these
    notable departures are not in and of themselves evidence of scienter" because "most
23  major stock losses are often accompanied by management departures.").

24  [9] Further undermining Plaintiff's claim that Mr. Poe's signature on allegedly inaccurate
25  public filings and related certifications establishes scienter is the fact that, in most
    instances, Mr. Poe's certifications *specifically* were "based on [his] knowledge" at the
26  time.  *See, e.g.*, CAC, ¶¶ 58, 62, 65, 71, 75, and 119.  As Plaintiff has failed to allege
    sufficient facts to demonstrate that Mr. Poe knew that any of the relevant public filings
27  were false at the time they were made, Mr. Poe's certification of such statements to the
    best of his knowledge at the time certainly does not support an inference of scienter.

HOWREY LLP

-15-     Master Case No.  CA 2:07-CV-07114-CAS (FMOx)
         DEF. JOHN D. POE'S MEMORANDUM OF POINTS
         AND AUTHORITIES ISO MOTION TO DISMISS

1  additional contemporaneous or corroborating facts, the bare allegation that Mr. Poe

2  signed certain of the allegedly false public filings or certifications fails to establish

3  scienter.

**(3)     Plaintiff's Solitary and Inconclusive Confidential
         Witness Statement Does Not Establish Scienter.**

6      Plaintiff's reliance on the statement of a lone confidential witness ("CW") fails

7  because it does not include even the most basic corroborating details, such as when the

8  employee worked at Semtech, to support a finding of scienter.  *See Rudolph v.*

9  *UTStarcom*, No. C07-045782008 WL 1734763, at *7 (N.D. Cal. Apr. 14, 2008) ("At the

10 very least, plaintiff must describe the witnesses' period of employment, what the

11 witnesses' job duties were, their expertise and how they had access to the information

12 being provided."); *see also In re Daou Sys. Inc. Sec. Litig.*, 411 F.3d 1006, 1015 (9th

13 Cir. 2005) (confidential witness description must include "adequate corroborating

14 details").  The CW's purported statement is silent as to whether her employment and her

15 alleged interactions with Mr. Poe took place before, during, or sometime after the

16 Putative Class Period.  CAC, ¶¶ 185-86.  Without these basic facts, it is impossible to

17 determine whether the CW's statement is even relevant to the allegations of the CAC.

18     In addition to the lack of basic corroborating information, the substance of the

19 CW's alleged statement adds nothing to this Court's scienter analysis.  Even if true, her

20 statement that Mr. Poe informed her that she had "made a mistake" by using the Board

21 of Directors' approval date rather than the date of hire does not even remotely indicate a

22 culpable state of mind.  *Id.*, ¶ 186.  To the contrary, the contention that Mr. Poe told the

23 CW to date the option as of the employee's start date is entirely *consistent* with the

24 Compensation Committee's stated methodology at the time that all new hire option

25 grants were to be granted as of the employee's start date. *Id.*, ¶ 148 at p. 95 ("In April

26 1997, the Compensation Committee stated that all option grants communicated via an

27 offer letter would be granted to each employee on his or her start date.").  At worst, the

28 CW's statement shows that the Company and its Board employed a flawed

1   methodology relating to new hire grants and that its employees were unclear as to the

2   processes to be followed.  It does not, however, raise an inference of scienter by Mr.

3   Poe or anyone else.

4                     **(4)   Mr. Poe's Stock Sales During the Putative Class**
                             **Period Do Not Demonstrate Scienter.**
5

6          Plaintiff's allegations that Mr. Poe sold Semtech stock during the nearly 4-year

7   Putative Class Period, without any information regarding his prior trading practices or

8   overall stock ownership, does not establish scienter.  CAC ¶¶ 17, 191.  The Ninth

9   Circuit has held that "[i]nsider stock sales…become [suspicious] only when the level of

10  trading is 'dramatically out of line with prior trading practices at times calculated to

11  maximize the personal benefit from undisclosed inside information."  *Vantive*, 283 F.3d

12  at 1092 (citation omitted).  As an initial matter, missing from the CAC is any allegation

13  as to Mr. Poe's prior trading practices or the percentage of his overall stock ownership

14  sold during the Putative Class Period.  Without these fundamental reference points, it is

15  impossible to draw any inference from Mr. Poe's stock sales during the period, much

16  less a strong inference of scienter.[10]  This is especially true given the unusually long

17  Putative Class Period of approximately 203 weeks.  *See Vantive*, 283 F.3d at 1092

18  (finding that plaintiff's "unusually long" class period of 63 weeks was obviously for the

19  purpose of "sweep[ing] as many stock sales into their totals as possible" in order to

20  make them seem more suspicious).

21

22  _____

23  [10] Public filings demonstrate that at the end of the Putative Class Period, Mr. Poe still
    owned 1,527,802 shares of Semtech stock (not including the 1.2 million unexercised
24  options that the Company rescinded and cancelled in March 2007).  Ex. O at 199.
    Plaintiff does not explain why Mr. Poe, who purportedly engaged in a "fraudulent
25  scheme" to artificially inflate the stock price, failed to sell a substantial portion of his
    stock holdings or exercise a substantial number of his stock options at these allegedly
26  inflated prices.  *See Hansen*, 527 F. Supp. 2d at 1160 ("[A]ny inference of scienter is
    defeated when an insider sells only a portion of his stock holdings and 'end[s] up
27  reaping the same large losses as did' Plaintiff when the stock price dropped.").

28

HOWREY LLP

-17-          Master Case No.  CA 2:07-CV-07114-CAS (FMOx)
             DEF. JOHN D. POE'S MEMORANDUM OF POINTS
             AND AUTHORITIES ISO MOTION TO DISMISS

1   Nor has Plaintiff even attempted to link any sale by Mr. Poe to any of the alleged

2   misstatements, as required to establish scienter.  *See Hansen*, 527 F. Supp 2d at 1160,

3   *citing Vantive*, 283 F.3d at 1093 (stock sales only helpful when they are "related to the

4   challenged statements").  Indeed, the last reported sale by Mr. Poe during the Putative

5   Class Period occurred in January 2006, several months before any allegedly corrective

6   disclosure was issued.  *See* Ex. E.  The fact that Mr. Poe sold a portion of his stock

7   during the nearly 4-year Putative Class Period, without any contextual information

8   about the timing of the sales or his overall stock ownership, simply does not give rise to

9   an inference of scienter. [11]

10   **(5)      The Alleged Deficiencies in the Company's Internal**
11   **Controls Do Not Raise an Inference of Scienter.**

12   Relying again on cut and paste excerpts from the Company's restatement,

13   Plaintiff alleges that the Company's failure to maintain effective internal controls

14   regarding its stock option practices somehow shows scienter on the part of the

15   individual defendants.  CAC, ¶¶ 179-183.  A mere allegation of insufficient internal

16   controls during the class period, however, "does not create a strong inference that

17   Defendants knowingly [made] false or misleading statements."  *Hansen*, 527 F. Supp.

18   2d at 1158 ("Presumably every company that issues a financial restatement because of

19   GAAP errors will cite as a reason lack of effective controls.") (internal citations

20   omitted).  Plaintiff offers nothing to suggest that Mr. Poe was aware of the purported

21   deficiencies in Semtech's internal controls, or that any employee, auditor or regulator

22

23   _____

24   [11] While the Company took the extreme measure of canceling and rescinding Mr. Poe's
     1.2 million outstanding stock options, the overwhelming majority of those options

25   (81%) had no intrinsic value at all (meaning that the Company concluded they were
     correctly priced). CAC, ¶ 150 at p. 106.  Even for those relatively few options granted to

26   Mr. Poe that were repriced, the Company conceded that Mr. Poe exercised very few of
     those options, netting only $19,000.  *Id*, ¶ 151.  It strains credulity to believe that Mr.

27   Poe would engage in a multi-year scheme to defraud investors, thereby exposing
     himself to significant liability, in exchange for this minimal level of personal gain.

28

HOWREY LLP

1  ever brought the alleged inadequacies to his attention.  Instead, Plaintiff contends that,

2  by virtue of his former corporate position, Mr. Poe "must have known" about the

3  alleged internal control deficiencies.  Absent any contemporaneous or corroborating

4  facts, however, this contention does not establish a strong inference of scienter.  *See*

5  *supra* Section III.B.1.

6          **2.**     **Plaintiff's Section 10(b) Claim Should Be Dismissed Because It**

7                  **Does Not Sufficiently Allege Loss Causation.**

8         To state a Section 10(b) claim, Plaintiff must demonstrate that it suffered an

9  economic loss, and that such loss was proximately caused by the Company's alleged

10  misrepresentations.  *Dura*, 544 U.S. 336 at 341-42 (merely alleging that the stock price

11  was artificially inflated on the date of purchase is not enough).  *Dura* requires Plaintiff

12  to demonstrate that the decline in stock price was caused by the revelation of the alleged

13  misrepresentations rather than by "changed economic circumstances, changed investor

14  expectations, new industry-specific or firm-specific facts, conditions, or other events,

15  which, taken separately or together account for some or all of that lower price."  *Id.* at

16  342-43; *Daou*, 411 F.3d at 1025-27 (plaintiff must show that alleged fraud is

17  "sufficiently linked" to damages).  In other words, Plaintiff must allege both a public

18  statement that corrects the prior alleged misstatements *and* a decline in the market price

19  after that disclosure.  *See Weiss*, 527 F. Supp. 2d at 946 (plaintiff must allege that "the

20  fraudulent statement or omission concealed something from the market that, when

21  disclosed, negatively affected the value of the security").

22          **a.**     **Plaintiff Has Failed to Establish Loss Causation as to Any**

23                  **of the Putative Class Period Disclosures.**

24         Plaintiff generally alleges that, over the course of a nearly 4-year period, certain

25  of Semtech's public filings were false because they understated compensation expense

26  related to stock option grants.  Under *Dura* and its progeny, then, Plaintiff has the

27  burden of alleging a disclosure that corrected the purportedly misstated compensation

28  expense in the prior public filings and, in doing so, proximately caused a decline in

HOWREY LLP

-19-      Master Case No.  CA 2:07-CV-07114-CAS (FMOx)
DEF. JOHN D. POE'S MEMORANDUM OF POINTS
AND AUTHORITIES ISO MOTION TO DISMISS

1   stock price.  While the CAC's allegations on this issue are hopelessly vague, Plaintiff

2   appears to contend that a series of announcements, beginning with the May 16, 2006

3   CFRA report and ending with the Company's June 20, 2006 Form 8-K, corrected the

4   Company's prior financial disclosures, thereby causing the stock price to drop.  CAC,

5   ¶¶ 127-136.

6          As to the announcements made during the Putative Class Period, however,

7   Plaintiff has failed to establish that any of them even *address*, much less correct, the

8   Company's prior disclosures.  The May 16, 2006 CFRA report, for example, says

9   nothing about the accuracy of Semtech's prior financial statements or disclosures.

10  Rather, the report simply lists Semtech as being "at risk" for stock options backdating

11  based on the analysis of four of Semtech's option grants, all of which occurred years

12  *before* the start of the Putative Class Period.[12]  Ex. S at 289.  Plaintiff also has failed to

13  demonstrate that any of the Company's Putative Class Period announcements corrected

14  an earlier filed financial statement.  In particular, Plaintiff points to announcements on

15  May 22, June 9, June 14, and June 20, 2006, which disclosed, among other things, an

16  informal SEC inquiry, the Company's internal review of its historical stock option

17  grants, a belated Form 10-Q filing, and a NASDAQ delisting notice.  CAC, ¶¶ 127-131;

18  Exs. F-I.  Yet, these disclosures, which are not corrective in nature and do not disclose

19  any wrongdoing, are precisely the type that courts have deemed insufficient for

20  establishing loss causation.  *See Metzler*, at 27-28 (affirming dismissal where

21  company's announcements did not disclose the alleged wrongdoing); *Hansen*, 527 F.

22  Supp. 2d at 1162.

23         The CAC also fails to allege that the very modest stock price movement on these

24  disclosure dates was caused by the Company's announcement as opposed to broader

25  _____

26  [12] In any event, the CFRA report (which was not issued by the Company, but rather by a
     third party) does not purport to be authoritative; instead, it acknowledges the limitations

27  of its analysis in stating that "we are not able to conclusively state whether or not
     backdating occurred."  Ex. S at 276.

28

HOWREY LLP

-20-        Master Case No.  CA 2:07-CV-07114-CAS (FMOx)
            DEF. JOHN D. POE'S MEMORANDUM OF POINTS
            AND AUTHORITIES ISO MOTION TO DISMISS

1  market or industry news.  *See Dura* 544 U.S. 336 at 345 (Securities laws are not

2  designed "to provide investors with broad insurance against market losses, but to protect

3  them against those economic losses that misrepresentations actually cause.").  Indeed,

4  on May 16, 2006 (the date of the CFRA report), Semtech's stock price actually

5  *increased* over the prior day's closing price.  Ex. P at 261.  On the other alleged

6  disclosure dates, the stock price dropped only a negligible amount:  May 22, 2006 (4.3%

7  drop); June 9, 2006 (0.38% drop); June 14, 2006 (0.07 % drop); June 20, 2006 (1.75 %

8  drop).  Ex. P at 262.  Plaintiff also omits the fact that on many of these disclosure dates,

9  the broader technology market, as well as other stocks within the semiconductor

10  industry, also experienced substantial downward movements.  *See* Exs. Q and R

11  (reflecting the closing prices of the NASDAQ Composite Index and Standard & Poor's

12  500 Semiconductor Index).  Given the minimal reaction of Semtech's stock price to

13  these announcements, especially when viewed in the context of the performance of the

14  broader technology market and semiconductor industry, Plaintiff has not adequately

15  alleged that it suffered any economic loss attributable to such disclosures. [13]

16          **b.**    **Plaintiff Has Failed to Establish Loss Causation as to Post-**

17                **Putative Class Period Disclosures.**

18          Nor has Plaintiff established loss causation by pointing to the Company's July 20,

19  2006 announcement regarding the preliminary conclusions of the Special Committee's

20  investigation.  CAC, ¶ 132-136. As an initial matter, statements made outside the class

21  period (which, in this case, ended on July 19, 2006) cannot form the basis of a securities

22  fraud claim.  *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 988 (9th Cir.

23

---

24  [13] Putting the final nail in the "loss causation" coffin is the fact that Plaintiff continued
to purchase Semtech's stock up through at least June 27, 2006.  Ex. T at 307, 310.

25  Hence, Plaintiff cannot in good faith argue that these announcements "revealed the
fraudulent scheme" to the market when it continued to purchase Semtech stock *after*

26  such announcements were made.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 248-89

27  (1988) (presumption of reliance rebutted where purchases made after corrective
disclosure issued).

28

1   1999); *In re Clearly Canadian Sec. Litig.*, 875 F. Supp 1410, 1420 (N.D. Cal. 1995)

2   ("As the class period defines the time during which defendants' fraud was allegedly

3   alive in the market, statements made or insider trading allegedly occurring before or

4   after the class period are irrelevant to plaintiffs' fraud claims.").

5          In addition, as with the Putative Class Period disclosures above, Plaintiff has

6   failed to establish that the modest stock price drop on July 20, 2006 (6.2%) was caused

7   by the announcement and not by broader market or industry news. [14]  Ex. P at 262; Exs.

8   Q and R (On July 20, 2006, NASDAQ closed down 1.98% and S&P 500 Semiconductor

9   Index closed down 3.79%).  Further belying any assertion that the "revelation" of the

10  alleged backdating scheme caused any damage to investors, the stock price promptly

11  rebounded after this announcement, trading over its July 19, 2006 closing price (the pre-

12  disclosure price) on August 30, 2006 and several days thereafter.  Ex. P at 262-63; *see*

13  *also Metzler*, at *29 (pointing to stock's prompt recovery after "modest 10% drop" on

14  date of disclosure as a factor negating loss causation).

15         **C.     Plaintiff Fails to State a Claim Under Section 20(a).**

16         Plaintiff's Section 20(a) claim against Mr. Poe for control person liability, like its

17  Section 10(b) claim, must be dismissed.  To state a claim under Section 20(a) of the

18  Exchange Act, Plaintiff must show (1) a primary violation of federal securities laws, and

19  (2) that the defendant exercised actual power or control over the primary violators.  *See*

20  *Howard v. Everex Sys. Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).  Because Plaintiff has

21  failed to state a primary violation under Section 10(b), as demonstrated above and in the

22

23  ───────────────

24  [14] The July 20, 2006 disclosure also announced that the Company had been served with
    a third derivative action related to stock option practices.  Ex. J.  Yet, Plaintiff has not

25  even attempted to allege that the minimal stock price drop was attributable to the
    disclosure of the investigation rather than another potentially expensive and distracting

26  lawsuit.  *See In re Intelligroup Sec. Litig.*, 468 F. Supp. 2d 670, 693-94 (D.N.J. 2006)
    (Where other news was included in the press release announcing the restatement, Court

27  dismissed the complaint under *Dura* because plaintiff had failed to plead an actual
    causal connection between the alleged loss and the challenged misrepresentation).

28

HOWREY LLP

-22-     Master Case No.  CA 2:07-CV-07114-CAS (FMOx)
DEF. JOHN D. POE'S MEMORANDUM OF POINTS
AND AUTHORITIES ISO MOTION TO DISMISS

accompanying motions to dismiss of the other defendants, its Section 20(a) claim fails as a matter of law.

In addition, the Section 20(a) claim fails because Plaintiff has failed to plead with particularity facts showing that Mr. Poe possessed the requisite control over a primary violator.  In vague and boilerplate allegations, Plaintiff contends that, "[b]y virtue of their high-level positions, and their ownership and contractual rights, substantial participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements," the individual defendants, including Mr. Poe, had the power to control the decision-making of the Company.  CAC, ¶ 214.  The Court in *Hansen*, however, rejected a Section 20(a) claim based on nearly identical allegations.  *Hansen*, 527 F. Supp 2d at 1163 (dismissing Section 20(a) claim without leave to amend because "this boilerplate allegation is insufficient to state a claim for control person liability").  Nor is the fact that Mr. Poe was CEO during a portion of the Putative Class Period sufficient to demonstrate the necessary control.  "Even a CEO is not automatically a 'controlling person' under Section 20(a)."  *Id.*, citing *Paracor Fin. Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1163 (9th Cir. 1996) (plaintiff must allege that the CEO exercised control over the transaction in question).

### D.   Plaintiff's Claims Are Barred by the Applicable Statutes of Limitations

The statute of limitations for claims under Sections 10(b) and 20(a) of the Exchange Act is the earlier of two years after the discovery of the violation, but no more than five years from the alleged violation.  28 U.S.C. § 1658(b); *see also In re Heritage Bond Litig.*, 289 F. Supp. 2d 1132, 1149 (C.D. Cal. 2003) (statute of limitations analysis for Section 10(b) claims applies equally to Section 20(a) claims). Plaintiff's claims are barred under both the applicable five-year and two-year statutes of limitation.

HOWREY LLP

-23-        Master Case No.  CA 2:07-CV-07114-CAS (FMOx)
DEF. JOHN D. POE'S MEMORANDUM OF POINTS
AND AUTHORITIES ISO MOTION TO DISMISS

1    With respect the outer five-year limitations period, the initial complaint here was

2    filed on August 10, 2007.[15]  Thus, to the extent plaintiff's claims are based on alleged

3    backdating of option grants which occurred before August 10, 2002, such claims are

4    time barred.  Here, the only specific grants identified in the complaint range from

5    January 6, 1994 to May 7, 2002 and, thus, occurred *before* August 10, 2002.  CAC,

6    ¶ 161 (series of option grants which purport to demonstrate options granted at "low or

7    near low points" in the Company's stock price).  Similarly, the only option grants for

8    which the Special Committee found intentional manipulation were those grants made

9    "from April 1997 to May 2002."  Ex. L at 42-43.  Accordingly, because the gravamen

10   of the CAC is the alleged backdating that occurred *before* August 10, 2002, the

11   applicable five-year statute of limitations bars plaintiff's claims in their entirety.[16]

12    Plaintiff's claims are similarly time barred under the two-year statute of

13   limitations.  The Ninth Circuit recently resolved a circuit split and held that either

14   inquiry notice or actual notice is sufficient to trigger the statute of limitations on a

15   federal securities fraud claim.  *Betz v. Trainer Wortham & Co.*, 519 F.3d 863, 872 (9th

16   Cir. 2008) (adopting an "inquiry-plus-reasonable diligence standard").  Here, as Plaintiff

17   acknowledges, much of the information upon which its claims are based is publicly

18   available and has been for many years.  *See* CAC, ¶ 155 (purported analysis of option

---

[15] The five-year period is an absolute bar prohibiting any claims brought more than five years after the challenged conduct, in this case the alleged backdating of stock options, occurred.  *See Durning v. Citibank, Int'l*, 990 F.2d 1133, 1136 (9th Cir. 1993) (noting that a cause of action accrues at the completion of the sale of the instrument); *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1130 (9th Cir. 2002) (describing the grant of an option as "a purchase or sale" under the Securities Litigation Uniform Standards Act); *Belova v. Sharp*, No. CV 07-299-MO, 2008 U.S. Dist. LEXIS 19880, at *27 (D. Or. Mar. 13, 2008) ("The initial Complaint…was filed on February 28, 2007, so the shareholders cannot base a § 10(b) claim on alleged backdating that occurred before February 28, 2002, regardless of when they first learned of the alleged backdating scheme.").

[16] Nor can plaintiff revive its stale claims by combining them with later financial disclosures, as Plaintiff purports to do in the CAC.  "[T]he statute of limitations accrues as of when the violation itself occurs, not when the last violation in a series of alleged violations occur."  *Zoran*, 511 F. Supp. 2d at 1014 (rejecting plaintiff's argument that each alleged misstatement was part of on ongoing backdating scheme).

HOWREY LLP

grants was based on "various SEC filings, including Semtech securities filed on Forms 4 and 5, and Semtech's annual proxy statements filed on Forms 14A."). Notwithstanding the wealth of publicly available information available to Plaintiff, the CAC is devoid of any allegations regarding any steps taken by plaintiff to investigate the alleged fraud, which Plaintiff contends goes back as far as 1994, much less any showing of reasonable diligence. Accordingly, to the extent the five-year statute of limitations does not bar all of plaintiff's claims, any claims based on alleged misconduct pre-dating August 10, 2005 are barred by the two-year discovery rule.

## IV.   CONCLUSION

For all of the reasons set forth above, Plaintiff has failed to allege facts sufficient to state a claim against Defendant John D. Poe under Sections 10(b) or 20(a) of the Exchange Act. Accordingly, the Court should grant this motion and dismiss the Consolidated Amended Class Action Complaint with prejudice pursuant to Rule 12(b)(6).

Dated:  August 18, 2008          HOWREY LLP


By: /s/ Roman E. Darmer
      ROMAN E. DARMER


MUNGER TOLLES & OLSON LLP
Bart H. Williams
Jacob S. Kreilkamp

Attorneys for Defendant
      JOHN D. POE

HOWREY LLP

-25-          Master Case No.  CA 2:07-CV-07114-CAS (FMOx)
DEF. JOHN D. POE'S MEMORANDUM OF POINTS
AND AUTHORITIES ISO MOTION TO DISMISS