1  ROBERT W. BROWNLIE (Bar No. 138793)
   robert.brownlie@dlapiper.com
2  JENNIFER M. FELDMAN (Bar No. 216645)
   jennifer.feldman@dlapiper.com
3  DLA PIPER US LLP
   401 B Street, Suite 1700
4  San Diego, CA  92101-4297
   Tel:  619.699.2700
5  Fax:  619.699.2701

6  NICK MORGAN (Bar No. 166441)
   nicolas.morgan@dlapiper.com
7  DLA PIPER US LLP
   1999 Avenue of the Stars, Suite 400
8  Los Angeles, CA  90067-6023
   Tel:  310.595.3000
9  Fax:  310.595.3300

10  Attorneys for Defendant
    DAVID G. FRANZ, JR.

11

12                UNITED STATES DISTRICT COURT

13                CENTRAL DISTRICT OF CALIFORNIA

14

15  IN RE:  SEMTECH CORPORATION        CASE NO.  2:07-CV-07114-CAS
    SECURITIES LITIGATION              (FMOX)
16
                                       REPLY MEMORANDUM OF
17                                     POINTS AND AUTHORITIES IN
                                       SUPPORT OF DEFENDANT DAVID
18                                     G. FRANZ, JR.'S MOTION TO
                                       DISMISS CONSOLIDATED
19                                     AMENDED CLASS ACTION
                                       COMPLAINT
20
                                       Courtroom:  5, 2nd Floor
21                                     Judge:      Hon. Christina A. Snyder
                                       Date:       December 8, 2008
22                                     Time:       10:00 a.m.

23

24

25

26

27

28

DLA PIPER US LLP
SAN DIEGO

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................... 1

II.     PLAINTIFF'S CLAIM UNDER SECTION 10(B) FAILS. ........................... 2

    A.      The Opposition Fails to Show That the Complaint Pleads
    Misstatements with Particularity ............................................................. 3

    B.      The Opposition Fails to Show That the Complaint Adequately
    Alleges Scienter. .................................................................................... 4

        1.      Backdating by Itself Does Not Raise a Strong Inference of
        Scienter. ...................................................................................... 4

        2.      The Statistical Data with Respect to the Grant Dates Do
        Not Establish That Franz Acted with Scienter. .......................... 6

            a.      Allegations That Franz "Knew or Should Have
            Known" Do Not Give Rise to a Strong Inference of
            Scienter. .......................................................................... 8

            b.      Allegations of the Summary Lack the Requisite
            Particularity. ................................................................... 10

        3.      Franz' Signature on SEC Filings and SOX Certifications
        Does Not Give Rise to a Strong Inference of Scienter. ............. 11

        4.      Franz's Receipt of Restated Options Does Not Establish
        Scienter. .................................................................................... 12

        5.      Allegations That the Company Restated Its Financials Do
        Not Give Rise to a Strong Inference of Scienter. ..................... 13

        6.      Franz' Corporate Position Does Not Give Rise to a Strong
        Inference of Scienter. ................................................................ 15

        7.      Franz' Stock Sales Do Not Give Rise to a Strong
        Inference of Scienter. ................................................................ 15

III.    PLAINTIFF'S CLAIM UNDER SECTION 20(A) FAILS. ......................... 16

IV.     CONCLUSION ........................................................................................ 17

DLA PIPER LLP (US)
SAN DIEGO

WEST\21577055.1
361794-000001

-i-

CASE NO.  2:07-CV-07114-CAS (FMOX)
REPLY MEMO OF P'S & A'S ISO DEFENDANT FRANZ'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Berson v. Applied Signal Tech, Inc.*,
  527 F.3d 982 (9th Cir. 2008) ........................................................................... 15

*Chill v. Gen. Elec. Co.*,
  101 F.3d 263 (2d Cir. 1996) .............................................................................. 14

*Desaigoudar v. Meyercord*,
  223 F.3d 1020 (9th Cir. 2000) ............................................................................ 4

*Hall v. Children's Place Retail Stores, Inc.*,
  _ F. Supp. 2d _ , No. 07 CV 8252 (SAS), 2008 WL 2791526 (S.D.N.Y. July 18, 2008) ...... 14

*Hayes v. Gross*,
  982 F.2d 104 (3d Cir. 1992) ................................................................................ 2

*In re Adaptive Broadband Sec. Litig.*, No. C 01-1092 SC, 2002 WL 989478 (N.D. Cal.
  Apr. 2, 2002) .................................................................................................. 9

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*,
  355 F. Supp. 2d 1069 (N.D. Cal. 2005) ................................................................ 9

*In re First Chicago Corp. Sec. Litig.*,
  769 F. Supp. 1444 (N.D. Ill. 1991) .................................................................. 2, 3

*In re Hansen Natural Corp. Sec. Litig.*,
  527 F. Supp. 2d 1142 (C.D. Cal. 2007) ......................................................... 11, 14

*In re Invision Tech. Inc. Sec. Litig.*,
  No. C 04-03181 MJJ, 2006 WL 538752 (N.D. Cal. Jan. 24, 2006) .......................... 11

*In re Juniper Networks Deriv. Litig.*,
  542 F. Supp. 2d 1037 (N.D. Cal. 2008) ........................................................ 12, 15

*In re McKesson HBOC, Inc. Sec. Litig.*,
  126 F. Supp. 2d 1248 (C.D. Cal. 2000) ........................................................... 8, 9

*In re Peerless Sys. Corp. Sec. Litig.*,
  182 F. Supp. 2d 982 (S.D. Cal. 2002) ................................................................ 10

*In re Silicon Graphics Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) ..................................................................... passim

*In re Splash Tech. Holdings Inc. Sec. Litig.*,
  160 F. Supp. 2d 1059 (N.D. Cal. 2001) ............................................................. 10

-ii-

DLA PIPER LLP (US)
SAN DIEGO

WEST\21577055.1
361794-000001

CASE NO.  2:07-CV-07114-CAS (FMOX)
REPLY MEMO OF P'S & A'S ISO DEFENDANT FRANZ'S MOTION TO DISMISS

# TABLE OF CONTENTS
## (continued)

**Page**

*In re Syntex Corp. Sec. Litig.*,
    855 F. Supp. 1086 (N.D. Cal. 1994), *aff'd*, 95 F.3d 922 (9th Cir. 1996)................................ 17

*In re Take-Two Interactive Sec. Litig.*,
    551 F. Supp. 2d 247 (S.D. N.Y. 2008)................................................................... 11

*In re Vantive Corp. Sec. Litig.*,
    283 F.3d 1079 (9th Cir. 2002)......................................................................... 4

*In re the Vantive Corp. Sec. Litig.*,
    783 F.3d 1079 (9th Cir. 2002)........................................................................ 16

*In re Worlds of Wonder Sec. Litig.*,
    35 F.3d 1407 (9th Cir. 1994).......................................................................... 15

*In re Zoran Corp. Derivative Litig.*,
    511 F. Supp. 2d 986 (N.D. Cal. 2007) ................................................................. 12

*Krim v. pcOrder.com, Inc.*,
    402 F.3d 489 (5th Cir. 2005)........................................................................ 6, 7

*Middlesex Retirement Sys. v. Quest Software Inc.*,
    527 F. Supp. 2d 1164 (C. D. Cal. 2007) ...................................................... 12, 13, 16

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003)......................................................................... 15

*Plymouth County Retirement Ass'n v. Schroeder*,
    _ F. Supp. 2d _, No. 07-CV-04772 (ADS)(ETB), 2008 WL 4254151
    (E.D.N.Y. Sep. 5, 2008) ............................................................................. 14

*Wiestchner v. Monterey Pasta Co.*,
    294 F. Supp. 2d 1102 (N.D. Cal. 2003) ............................................................... 10

*Yourish v. Cal. Amplifier*,
    191 F.3d 983 (9th Cir. 1999)......................................................................... 12

### STATUTES

15 U.S.C. §78u-4(8)(1) ................................................................................. 4

15 U.S.C. §78u-4(b)(1) ................................................................................. 3

15 U.S.C. §78u-4(b)(2) ................................................................................. 4

Fed. R. Civ. P. Rule 9(b) ...................................................................... 1, 2, 3, 7, 10

-iii-

DLA Piper LLP (US)
SAN DIEGO

WEST\21577055.1
361794-000001

CASE NO.  2:07-CV-07114-CAS (FMOX)
REPLY MEMO OF P'S & A'S ISO DEFENDANT FRANZ'S MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS
## (continued)

Page

Fed. R. Civ. P. Rule 10b-5 ........................................................................................................ 2

Fed. R. Civ. P. Rule 12(b)(6) .................................................................................................... 2

Securities Act of 1933 ............................................................................................................... 7

DLA Piper LLP (US)
San Diego

## I.    INTRODUCTION

Plaintiff's Omnibus Opposition to Defendants' Motion to Dismiss (the "Opposition" or "Opp.") fails to show that the Consolidated Class Action Complaint ("Complaint") alleges a valid claim.  The Complaint does not allege that Defendant David G. Franz, Jr.  ("Franz") engaged in the backdating of options at Semtech Corporation ("Semtech" or the "Company"), nor does it allege that he acted with scienter with respect to the backdating of options at Semtech.  The 127 page Complaint relied almost exclusively on a summary of a Special Committee Report that was publicly disclosed in the Company's Form 10-K/A for the fiscal year ending January 29, 2006 (the "Summary"); the 60 page Opposition attempts to recast the Summary as the Company's "admission" that its employees, including Franz, intentionally backdated option grants.  (Opp. 18: 9-22, 19:10.)  However, neither the Complaint nor the Summary supports Plaintiff's current spin, which does not even cure the flaws in the Complaint.  As shown in Franz' Memorandum of Points and Authorities in Support of Motion to Dismiss (the "Motion" or "Mot."), the Complaint fails to identify with particularity the statements that Plaintiff claims were fraudulent and the reasons why each statement was misleading; it fails to allege detailed facts showing that Franz acted with scienter; and it fails to allege all facts upon which Plaintiff's allegations made on information and belief were based.

The Opposition does nothing more than add insult to injury, topping the 127 page, bloated and repetitive complaint with 60 additional pages of conclusory assertions.  Verbosity is not a substitute for particularity and does not enable the Complaint to meet the heightened pleading standards of Fed. R. Civ. P. Rule 9(b) and the Private Securities Litigation Reform Act of 1995 (the "Reform Act" or "PSLRA").  Therefore, the Complaint should be dismissed.

/////

/////

DLA PIPER US LLP
SAN DIEGO

WEST\21577055.1
361794-000001

-1-

CASE NO.  2:07-CV-07114-CAS (FMOX)
REPLY MEMO OF P'S & A'S ISO DEFENDANT FRANZ'S MOTION TO DISMISS

1   **II.    PLAINTIFF'S CLAIM UNDER SECTION 10(B) FAILS.**

2         As shown in the Motion, this case is a thinly veiled attempt to transform a

3   shareholder derivative claim – a claim that has already been resolved by settlement

4   – into a Section 10(b) claim. (Mot. 7:14-19.)  Plaintiff, relying on *Hayes v. Gross*,

5   982 F.2d 104 (3d Cir. 1992), claims this is a paradigm case of a violation of §10(b)

6   and Rule 10b-5, involving manipulation and deception, not just mismanagement.

7   (Opp. 49:20 - 50:3.)  Plaintiff is wrong.

8         In *Hayes v. Gross*, the court found that a paradigm case of a violation of

9   §10(b) and Rule 10b-5 exists if plaintiff can prove (1) defendant made an assertion,

10   such as that loan loss reserves were adequate, the loan portfolio well secured, or

11   asset quality high; (2) such assertion was false; (3) that the defendant knew it to be

12   false or acted with reckless indifference as to the falsity of the assertion ("scienter");

13   and (4) that plaintiff thereafter suffered a loss by purchasing stock.  *Hayes*, 982 F.2d

14   at 107.  Unlike the plaintiff in *Hayes*, as shown in the Motion and further shown

15   below, Plaintiff here has not alleged particularized facts that demonstrate Franz

16   acted with scienter, which is necessary to plead a securities fraud claim.

17         Plaintiff argues that *In re First Chicago Corp. Sec. Litig.*, 769 F. Supp. 1444

18   (N.D. Ill. 1991), cited by Franz, lends support to Plaintiff's claim that this action is

19   properly brought as a direct claim and not a derivative action because it involved

20   manipulation and deception, as opposed to mere corporate mismanagement.  *First*

21   *Chicago*, however, shows that although the plaintiff's claims survived dismissal

22   based on Rule 12(b)(6), they did not survive dismissal under Rule 9(b).  Compare

23   *id.* at 1449-50 (sufficiently alleged scienter under Fed. R. Civ. P. 12(b)(6)) *id.* at

24   1454-55 ("To distinguish their claim that the VMS loan was risky and that the

25   failure to disclose the problems constitutes fraud from an allegation of mere

26   mismanagement or fraud by hindsight, then, plaintiffs here must allege some facts

27   that would permit an inference that defendants knew that the loan had been initiated

28   without adequate collateral, guarantees, or assurances that it could be syndicated, or

-2-

DLA PIPER US LLP
SAN DIEGO

WEST\21577055.1
361794-000001

CASE NO.  2:07-CV-07114-CAS (FMOX)
REPLY MEMO OF P'S & A'S ISO DEFENDANT FRANZ'S MOTION TO DISMISS

1   that it had become unduly risky."; "Despite the extensive compilation of quotations

2   in the complaint, plaintiffs' allegations simply do not offer enough information to

3   establish that their claims of fraud are not baseless. Mindful of the Seventh Circuit's

4   apparent strict interpretation of rule 9(b) as reflected in its *DiLeo* opinion, we must

5   dismiss Count I of plaintiffs' complaint…".)  Therefore, if anything, that *First*

6   *Chicago* involved manipulation and deception, which Plaintiff claims is alleged in

7   the case *sub judice*, strengthens Mr. Franz's position that dismissal is proper here.

8       Plaintiff's final attempt to justify this action as a direct claim is by reference

9   to a laundry list of other options backdating suits which have been brought as direct

10  claims and "favorably resolved on similar allegations."  (Opp. 50:5-8.)  Mere

11  reference to a list of other backdating cases that have been properly brought as

12  direct actions, all of which can be distinguished on some grounds, does not further

13  Plaintiff's argument that *this* case is properly brought as a direct claim.  Franz did

14  not suggest in the Motion, nor does he assert here that it is never appropriate to

15  bring a backdating case as a direct action, but rather that in this instance, where the

16  allegations paint a classic portrait of mismanagement, a direct claim is not stated.

17      A.    **The Opposition Fails to Show That the Complaint Pleads**

18  **Misstatements with Particularity.**

19      The Opposition glosses over Plaintiff's failure to allege each statement

20  claimed to have been misleading and the reason or reasons why each such statement

21  is misleading.  15 U.S.C. §78u-4(b)(1).  Plaintiff relies on large blocks of text from

22  the Company's press releases, SEC filings and SOX certifications to support the

23  conclusory allegation that the Company "underreported its expenses and overstated

24  net income" and that "undisclosed fraudulent and systemic backdating of option

25  grants had exposed the company to material liabilities." (Mot. 9:1-5.)  The

26  Opposition contends that by alleging that the backdating "inflated net income" and

27  hid compensation expense, Plaintiff has fulfilled its obligation under the Reform

28  Act to plead misstatements with particularity.  (Opp. 31: *fn.* 42.)  Not so.  Plaintiff

DLA PIPER US LLP
SAN DIEGO

WEST\21577055.1
361794-000001

-3-

CASE NO.  2:07-CV-07114-CAS (FMOX)
REPLY MEMO OF P'S & A'S ISO DEFENDANT FRANZ'S MOTION TO DISMISS

1   cannot allege a valid section 10(b) claim through the conclusory statement that net

2   income was inflated and compensation expense was hidden.  *See Desaigoudar v.*

3   *Meyercord*, 223 F.3d 1020, 1023 (9th Cir. 2000)(citing *In re Silicon Graphics Inc.*

4   *Sec. Litig.*, 183 F.3d 970, 996 (9th Cir. 1999)).  To adequately plead falsity, the

5   Complaint had to identify not only each statement alleged to have been misleading,

6   and the reason or reasons why the statement is misleading, but also all facts upon

7   which that belief is informed.  15 U.S.C. §78u-4(8)(1);  *In re Vantive Corp. Sec.*

8   *Litig.*, 283 F.3d 1079, 1085 (9th Cir. 2002).  Plaintiff has failed to do this.

9           **B.      The Opposition Fails to Show That the Complaint Adequately**

10   **Alleges Scienter.**

11          Plaintiff has failed to adequately allege facts giving rise to a strong inference

12   that Franz acted with the intent to deceive or with deliberate recklessness as to the

13   possibility of misleading investors.  (Opp. 11:18-21), citing *Berson v. Applied*

14   *Signal Tech, Inc.*, 527 F.3d 982, 987 (9th Cir. 2008).  Under the PSLRA's strict

15   pleading requirements, Plaintiff must "state with particularity facts giving rise to a

16   strong inference" that defendants acted with the intent to deceive or with deliberate

17   recklessness as to the possibility of misleading investors.  15 U.S.C. §78u-4(b)(2).

18   Plaintiff contends that it has adequately alleged scienter because backdating is

19   intentional by its nature, statistical data demonstrates the improbability of these

20   grant dates being "fortunate", and the Company has admitted that Defendants acted

21   intentionally.  (Opp. 19:20-22.)  None of these arguments overcomes the

22   deficiencies of the Complaint with respect to scienter.

23           **1.      Backdating by Itself Does Not Raise a Strong Inference of**

24   **Scienter.**

25          Plaintiff argues that it has raised a strong inference that Franz had the

26   requisite scienter because backdating, by its nature, is intentional conduct.  (Opp.

27   13:5.)  The Opposition claims that by intentionally backdating an option, one

28   reveals his knowledge of the option accounting rules and his intent to subvert them.

DLA PIPER US LLP
SAN DIEGO
WEST\21577055.1
361794-000001
-4-
CASE NO.  2:07-CV-07114-CAS (FMOX)
REPLY MEMO OF P'S & A'S ISO DEFENDANT FRANZ'S MOTION TO DISMISS

1    (Opp. 14:9-10.)  The Opposition then makes a startling leap of logic and concludes

2    that when a plaintiff adequately pleads that a defendant intentionally backdated

3    options, it has adequately alleged that defendant's intent to commit securities fraud.

4    (Opp. 14:12-12.)

5         This logic fails for two reasons.  First, Plaintiff has failed to allege that Franz

6    engaged in backdating.  There are no allegations in the Complaint containing

7    particularized facts showing that Franz actually participated in the option granting

8    process at Semtech.  Even the Special Committee's Summary says nothing specific

9    about Franz's involvement in alleged backdating at the Company.  Statements that

10   he "knew or should have known" and "initiated or participated" in the conduct

11   merely describe the possibility that Franz "initiated or participated" or that he

12   "knew or should have known."  The statement of such possibilities is insufficient to

13   establish what Franz did or his state of mind.  *In re Silicon Graphics Inc. Sec.*

14   *Litig.*, 183 F.3d 970, 988 (9th Cir. 1999).

15        Second, Plaintiff assumes, without alleging specific facts, that someone

16   intentionally backdated options at Semtech.  Plaintiff has attempted to substitute his

17   burden to allege specific facts with a regurgition of the Summary.  Plaintiff,

18   however, fails to recognize what the Summary or the work of the Special

19   Committee involved.  The Special Committee conducted a hindsight analysis to

20   determine whether sufficient evidence existed at the time of the Special

21   Committee's investigation to support Semtech's use of the recorded option grant

22   dates as the "measurement date" for stock option accounting purposes.  APB 25, the

23   controlling accounting standard, shows that the grant date and measurement date

24   can diverge for many reasons other than intentional backdating.[1]  Plaintiff has not

---

[1] A September 19, 2006 letter from the Office of Chief Accountant of the SEC outlines several different scenarios in which adjustments to an option grant's measurement date may be required, such as: (1) when administrative delays cause the company to use a measurement date other than the date all of the granting required actions have been completed, (2) when option grants are made to new hires prior to the commencement of their employment, and (3) when documentation is incomplete or cannot be located.  *See* http://www.sec.gov/info/accountants/staffletters/fei_aicPA091906.htm.

DLA PIPER US LLP
SAN DIEGO

WEST\21577055.1
361794-000001

CASE NO.  2:07-CV-07114-CAS (FMOX)
REPLY MEMO OF P'S & A'S ISO DEFENDANT FRANZ'S MOTION TO DISMISS

1    alleged facts which raise any inference that Franz acted with scienter and just
2    repeats the mere possibility that Franz either initiated or participated in option
3    grants that were restated because the Special Committee determined in hindsight
4    that the use of the recorded grant dates as the measurement dates could not be
5    substantiated.

6         **2.      The Statistical Data with Respect to the Grant Dates Do Not**
7    **Establish That Franz Acted with Scienter.**

8         The Opposition relies on a statistical analysis prepared by Plaintiff's expert
9    that concludes that the odds of Defendants having dated the option grants at issue
10   by chance is 1 in 35 trillion.  (Opp. 16:8-9.)  This reliance is misplaced.  Plaintiff's
11   self-styled probability of fortuitous option grants cannot be used as a substitute for
12   particular allegations showing that Franz participated in that backdating.  The only
13   allegations of the Complaint with respect to Franz's alleged participation are from
14   the block quotes of the Summary that Franz "knew or should have known" and
15   "initiated or participated" in the conduct at issue.  This allegation is nothing more
16   than a speculation as to both Franz's conduct and his mental state.  Merely alleging
17   that he initiated or participated in the conduct does not tell us what Franz did
18   exactly.  Did he suggest option grants?  Did he approve option grants?  Did he
19   oversee the granting process?  Did he make decisions about when and to whom
20   options should be granted?  Not one of these questions is answered with
21   particularized facts in the Complaint.  Plaintiff cannot use statistical data as a
22   substitute for particularized facts alleging his actual conduct, let alone his mental
23   state with respect to that conduct.  *See Krim v. pcOrder.com, Inc.*, 402 F.3d 489
24   (5th Cir. 2005).

25        In *Krim v. pcOrder.com, Inc.*, investors brought suit against the corporation,
26   individual directors, controlling shareholders and investment bankers alleging false
27   registration statements.  Those buyers attempted to demonstrate standing by
28   showing a very high probability that they each had at least one share of the tainted

-6-

DLA PIPER US LLP
SAN DIEGO

WEST\21577055.1
361794-000001

CASE NO.  2:07-CV-07114-CAS (FMOX)
REPLY MEMO OF P'S & A'S ISO DEFENDANT FRANZ'S MOTION TO DISMISS

stock.  The court held that the aftermarket buyer's statistical evidence showing a high probability that at least some of their stock was traceable to the public offering in question was insufficient to confer standing under the Securities Act of 1933.  *Id.* at 502.  The court held that a plaintiff could not rely exclusively the statistical probability that an event occurred in the absence of any positive evidence to support the claim.  *Id.* at 501.

Here, as in *pcOrder.com*, Plaintiff is attempting to use probabilities as a substitute for specific facts showing that Franz had anything to do with those option grants or that he had the requisite scienter in doing so.  As in *pcOrder.com*, this attempt fails.

**3.     The Quotes from the Summary Do Not Give Rise to a Strong Inference of Scienter.**

The Complaint merely quotes the Summary which speculates that Franz knew or should have known of the backdating and that he initiated or participated in the option grants.  Ignoring Plaintiff's defective allegation, the Opposition has recharacterized the quotes from the Summary as being "the Company's admissions of intentional backdating of stock option grants."  (Opp. 18:9-14.)  Plaintiff's attempt to transmogrify the Summary and his Complaint fails to show that he has adequately alleged scienter.

The Company did not admit anything.  Instead, the Summary sets forth conclusory opinions about certain individuals at the Company and their alleged involvement in the option grants.  With respect to Franz in particular, the Summary is vague at best, speculating only that he knew or should have known of the backdating, and initiated or participated in the conduct.  The Complaint does not supply the missing specific factual support to show that Franz did anything with the requisite state of mind to meet the pleading standards of the PSLRA and Rule 9(b).

/////

/////

DLA PIPER US LLP
SAN DIEGO

WEST\21577055.1
361794-000001

-7-

CASE NO.  2:07-CV-07114-CAS (FMOX)
REPLY MEMO OF P'S & A'S ISO DEFENDANT FRANZ'S MOTION TO DISMISS

1

       **a.**     **Allegations That Franz "Knew or Should Have**

2

**Known" Do Not Give Rise to a Strong Inference of Scienter.**

3

     The allegation of the Complaint that Franz "knew or should have known" of

4

the manipulation and "initiated or participated in some manipulative acts" fails to

5

establish that Franz engaged in backdating and if so, that he had the requisite

6

mental state at the time of engaging in that backdating.  This allegation establishes

7

only what he might have done and what his mental state might have been at the

8

time – which does nothing to meet the requirements of the Reform Act for

9

adequately pleading scienter.

10

     Recognizing the Complaint's lack of particularity, the Opposition asserts that

11

the Summary was based on contemporaneous evidence of the fraud, including

12

emails, correspondence, personnel records, accounting ledgers and other option-

13

related documents.  (Opp. 19:4-7.)  However, this is not alleged in the Complaint.

14

The Complaint does not allege a single specific fact to corroborate Plaintiff's

15

conclusory allegations with respect to Franz.  *Silicon Graphics,* 183 F.2d  at 985

16

("[A] proper complaint which purports to rely on the existence of internal reports

17

would contain at least some specifics from those reports as well as such facts as

18

may indicate their reliability.")  Plaintiff fails to allege how the Special Committee

19

reached its conclusions, what witnesses it interviewed, if any, what documents it

20

reviewed, if any, and most significantly, whether any of those witnesses or

21

documents demonstrated that Franz acted with scienter.

22

     Plaintiff's reliance on *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp.

23

2d 1248 (C.D. Cal. 2000) is misplaced.  *McKesson HBOC*  is inapposite.

24

*McKesson HBOC* is not a backdating case, but instead a case involving the

25

widespread practice of accompanying contracts with side letters that revealed

26

contingencies not disclosed on the face of the contract, and the improper

27

recognition of those contingent sales as revenue.  Investigators in that case

28

concluded that four executives intentionally overstated revenue, and the complaint

-8-

DLA PIPER US LLP
SAN DIEGO

WEST\21577055.1
361794-000001

CASE NO.  2:07-CV-07114-CAS (FMOX)
REPLY MEMO OF P'S & A'S ISO DEFENDANT FRANZ'S MOTION TO DISMISS

1   detailed all the facts leading the investigators to that conclusion.  *Id.* at 1273.  That

2   evidence included segregation of side letters from contracts, deletion of critical

3   computer files, and harsh statements by the company and its representatives

4   regarding the four executives and the fact that they were "dismissed for cause."  On

5   defendant's motion to dismiss, the court held that the complaint adequately alleged

6   the existence of a fraudulent scheme to inflate revenue by recognizing the

7   contingent transactions.  *Id.* at 1274.  The court relied on the fact that the improper

8   revenue recognition was so widespread that senior management must have known

9   of its practice in addition to much more direct evidence of scienter, consisting of the

10  investigator's conclusions *and* the detailed facts that led the investigators to those

11  conclusions.  *Id.*

12         There are no such allegations here.  The Special Committee did not conclude

13  that Franz acted intentionally.  The Complaint is not replete with particularized

14  facts the Special Committee relied upon in reaching the conclusions set forth in the

15  Summary.  To the contrary, Plaintiff here has failed entirely to allege how the

16  Special Committee reached its conclusions, and who they talked to or what

17  documents they reviewed to reach those conclusions.

18         The Opposition also argues that scienter can be inferred from the fact that

19  certain executives left the Company, relying on *In re Adaptive Broadband Sec.*

20  *Litig.*, No. C 01-1092 SC, 2002 WL 989478 (N.D. Cal. Apr. 2, 2002).  Departures

21  of high-level executives in the wake of a restatement and internal investigation are

22  unsurprising, and cannot support a strong inference of scienter.  *See In re*

23  *Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069 (N.D. Cal.

24  2005) (investors brought securities fraud class action against publicly-traded limited

25  partnership, and several of its top executives and directors; on defendant's motion

26  to dismiss, the court found that whether they were terminated or resigned, the

27  notable departures of certain high-level executives were "not in and of themselves

28  evidence of scienter"; "[m]ost major stock losses are often accompanied by

DLA PIPER US LLP
SAN DIEGO

WEST\21577055.1
361794-000001

CASE NO.  2:07-CV-07114-CAS (FMOX)
REPLY MEMO OF P'S & A'S ISO DEFENDANT FRANZ'S MOTION TO DISMISS

1   management departures, and it would be unwise for courts to penalize directors for

2   these decisions").

3     Plaintiff's attempt to distinguish *Wiestchner v. Monterey Pasta Co.*, 294 F.

4   Supp. 2d 1102 (N.D. Cal. 2003), and *In re Peerless Sys. Corp. Sec. Litig.*, 182 F.

5   Supp. 2d 982 (S.D. Cal. 2002) fails. Plaintiff's quotes of conclusory statements

6   from the Summary are no different than the conclusory allegations in *Wiestchner*

7   and *Peerless*. Simply because the Special Committee made the conclusory

8   statements does not make them sufficiently particular to meet the standards set forth

9   in PSLRA or Rule 9(b). As *Wietschner* and *Peerless* held, blanket, generalized

10   allegations as to what a defendant knew or should have known are insufficient to

11   impute any knowledge or deliberate recklessness, and are "clearly insufficient to

12   establish a 'strong inference' of scienter." *Wietschner*, 294 F. Supp.2d at 1115,

13   citing *In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 848-49 (9th Cir. 2003);

14   *Peerless*, 182 F. Supp. 2d at 903-05*; In re Splash Tech. Holdings Inc. Sec. Litig.*,

15   160 F. Supp. 2d 1059, 1079 (N.D. Cal. 2001)(finding such bald allegations of

16   inside knowledge insufficient under the PSLRA).

17        **b.**  **Allegations of the Summary Lack the Requisite**

18   **Particularity.**

19     The Complaint and the Opposition do not allege what Franz knew, when he

20   knew it, how he learned it, and how Plaintiff came to know what Franz knew. "[A]

21   proper complaint which purports to rely on the existence of internal reports would

22   contain at least some specifics from those reports as well as such facts as may

23   indicate their reliability." *Silicon Graphics*, 183 F.3d at 985. Plaintiff has provided

24   no specifics as a basis for alleging that Franz knew or should have known of the

25   backdating or that he initiated or participated in the option grants – only the

26   conclusion of the Summary that he may have done so. There are no allegations of

27   how the Special Committee came to its conclusion. As the Motion points out, the

28   Complaint fails to indicate whether the Special Committee interviewed witnesses,

DLA Piper US LLP
SAN DIEGO

WEST\21577055.1
361794-000001

CASE NO. 2:07-CV-07114-CAS (FMOX)
REPLY MEMO OF P'S & A'S ISO DEFENDANT FRANZ'S MOTION TO DISMISS

1  whether it identified anyone with personal knowledge of Franz's knowledge that

2  the company's statements as contained in the press releases and SEC filings were

3  false when made, whether the Special Committee reviewed documents, and

4  whether any of those documents indicated that Franz knew the company's

5  statements as contained in the press releases and SEC filings were false.  The

6  Opposition now claims that the Special Committee relied on some unidentified

7  "contemporaneous evidence" and speculates that it included emails,

8  correspondence, personnel records, accounting ledgers and other option-related

9  documents without identifying anything with particularity.  (Opp. 19:4-7.)  *See*

10 *Silicon Graphics*, 183 F.3d at 985.

11        **3.      Franz' Signature on SEC Filings and SOX Certifications**

12 **Does Not Give Rise to a Strong Inference of Scienter.**

13        The allegations to which the Opposition points in support of this supposed

14 basis for scienter contain no specifics about what Franz did, or knew, in signing

15 SEC filings and SOX certifications.  The Complaint alleges little more than what

16 can be gleaned from the documents themselves; namely, that Franz signed them.

17 The Opposition argues that the certifications signed by Franz included false

18 assurances that the company maintained adequate internal controls so that its public

19 financial reports were true and accurate.  (Opp. 24:15-21.)

20        If signing financial statements alone gave rise to a strong inference of

21 scienter, "scienter would be established in every case where there was an

22 accounting error or auditing mistake made by a publicly traded company, thereby

23 eviscerating the pleading requirements for scienter set forth in the PSLRA."  *In re*

24 *Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1159 (C.D. Cal.

25 2007)(quotation omitted); *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d

26 247, 304 (S.D. N.Y. 2008) ("[T]he mere existence of allegedly misleading language

27 in a group-published document does not compel a conclusion that all of the

28 signatories were aware that it was misleading."(quotation omitted)); *In re Invision*

DLA Piper US LLP
San Diego

WEST\21577055.1
361794-000001

CASE NO.  2:07-CV-07114-CAS (FMOX)
REPLY MEMO OF P'S & A'S ISO DEFENDANT FRANZ'S MOTION TO DISMISS

1   *Tech. Inc. Sec. Litig.*, No. C 04-03181 MJJ, 2006 WL 538752, at *7 n.3 (N.D. Cal.

2   Jan. 24, 2006) (signature on a public filing does not warrant any inference of

3   scienter, much less a strong inference).

4       *In re Juniper Networks Deriv. Litig.,* 542 F. Supp. 2d 1037, 1047 (N.D. Cal.

5   2008), cited by Plaintiff on this point, stated that allegations that particular

6   individuals signed SEC filings while they had responsibilities concerning options

7   "may" support an inference of scienter, but that signing SEC filings alone did not

8   suffice.  Here, the Complaint merely alleges that Franz signed SEC filings, but it

9   does not allege any specific facts showing whether or what responsibility Franz

10  may have had for the option granting process at Semtech.  As *Zoran* explained,

11  scienter is not alleged unless the complaint alleges false statements and the

12  defendant's close involvement in the preparation of those statements.  (Opp. 24:22 -

13  25:1)(citing *In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1013 (N.D.

14  Cal. 2007).  Here, the Complaint has alleged merely that Franz signed public filings

15  and SOX certifications which in hindsight were determined to contain false

16  statements.  Absent is any evidence of Franz's close involvement in the preparation

17  of those statements.  Signing SOX certifications is a neutral fact, generic to Franz's

18  position as Chief Financial Officer, and cannot support a strong inference of

19  scienter.  *See Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999)(plaintiff

20  must do more than allege a set of neutral facts).

21          **4.    Franz's Receipt of Restated Options Does Not Establish**

22  **Scienter.**

23      The Opposition argues that scienter is established by virtue of the fact that

24  Franz received "thousands of options that were patently in-the-money" when issued

25  to him, and therefore he must have known of the backdating of those option grants.

26  (Opp. 24:10-13.)  Plaintiff cites *Middlesex Retirement Sys. v. Quest Software Inc.*,

27  527 F. Supp. 2d 1164 (C. D. Cal. 2007)[hereinafter *Quest*], where defendants were

28  the recipients of millions of  options grants, and the court found it incomprehensible

DLA PIPER US LLP
SAN DIEGO

WEST\21577055.1
361794-000001

CASE NO.  2:07-CV-07114-CAS (FMOX)
REPLY MEMO OF P'S & A'S ISO DEFENDANT FRANZ'S MOTION TO DISMISS

1  that with such large grants the defendants would not have been keenly aware of the

2  measurement date and the resulting value. *Id.* at 1183.

3      Plaintiff's reliance on *Quest* and his argument in the Opposition presupposes

4  a significant fact – one not alleged in the Complaint and not supported by the

5  Company's public filings – that Franz received thousands of options that were

6  patently in-the-money.  The Complaint's allegations about Franz' receipt of option

7  grants are vague at best.  Semtech's Form 10-K/A for the fiscal year ending January

8  29, 2006 contains a chart summarizing the intrinsic value associated with the option

9  grants to five Semtech executives, including Franz.  (Semtech Corp. Form 10-K/A

10  FYE Jan. 29, 2006, filed Mar. 29, 2007, p. 8.)  That chart indicates that Franz's

11  options have a 41.4% intrinsic value.  The Opposition references the Proxy

12  Statements from 1995 to 2003 to conclude that Franz received approximately

13  164,466 backdated grants.  (Opp. 5: *fn.* 7.)  It is only with hindsight that Plaintiff

14  reaches this conclusion, and the fact of receipt of this number of options has no

15  bearing on an analysis of Franz's mental state.  The number of allegedly backdated

16  options received is a mere fraction of the millions of options received by the

17  defendants in *Quest*.  Unlike the individual defendants in *Quest*, the mere receipt by

18  Franz of some options that were the subject of the restatement do not raise a strong

19  inference of scienter.

20      **5.    Allegations That the Company Restated Its Financials Do**

21  **Not Give Rise to a Strong Inference of Scienter.**

22      The Opposition makes the argument that Plaintiff has not alleged that the

23  mere presence of the restatement demonstrates scienter, but that within the

24  restatement, Defendants have admitted elements of the claims.  (Opp. 30:19-22.)

25  The Opposition claims that the Company admitted that Defendants Poe backdated

26  options for nearly a decade with the assistance of Franz, Defendant Baumann, and

27  another former executive.  (Opp. 30:23-24.)  Not so.

28  /////

DLA PIPER US LLP
SAN DIEGO

WEST\21577055.1
361794-000001

-13-

CASE NO.  2:07-CV-07114-CAS (FMOX)
REPLY MEMO OF P'S & A'S ISO DEFENDANT FRANZ'S MOTION TO DISMISS

1   The Company has not admitted anything.  Instead, the Summary includes
2   conclusory opinions about certain executives and their involvement with stock
3   option grants.  With respect to Franz, the Summary does nothing more than
4   speculate about whether and how he engaged in the option grants, and whether he
5   had the requisite mental state to establish scienter.

6   Plaintiff claims that because "books don't cook themselves" the GAAP
7   violations referenced in the Complaint support an inference of scienter here.  This
8   trite expression is not a substitute for Plaintiff's obligation to plead with
9   particularity.  Plaintiff ignores that there are no particularized facts alleged in the
10  Complaint that show what specifically Franz did or did not do.  Even if there were
11  such allegations, allegations that a defendant violated accounting principles, such as
12  by underreporting expense do not raise a strong inference of scienter.  *Chill v. Gen.*
13  *Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996) ("Allegations of a violation of GAAP
14  provisions or SEC regulations, without corresponding fraudulent intent, are not
15  sufficient to state a securities fraud claim."); *In re Hansen Natural Corp.*, 527 F.
16  Supp. 2d at 1155 (no inference of scienter where allegations of GAAP violations
17  not accompanied by particularized allegations of fraudulent intent).  Moreover,
18  unless Mr. Franz was actually involved in reporting expenses and net income,
19  imputing accounting knowledge to him is improper.  *See Plymouth County*
20  *Retirement Ass'n v. Schroeder*, _ F. Supp. 2d _, No. 07-CV-04772 (ADS)(ETB),
21  2008 WL 4254151, at *18 (E.D.N.Y. Sep. 5, 2008) (holding scienter requirement
22  met because, inter alia, "Board members were more than passive signatories to
23  financial documents and disclosures, but were primarily responsible for recording
24  and reporting the Company's compensation expenses"); *Hall v. Children's Place*
25  *Retail Stores, Inc.*, _ F. Supp. 2d _ , No. 07 CV 8252 (SAS), 2008 WL 2791526, at
26  *4 (S.D.N.Y. July 18, 2008)("[m]ere allegations that the defendants should have
27  anticipated future events and made certain disclosures earlier than they actually did
28  do not suffice to make out a claim of securities fraud.")

DLA PIPER US LLP
SAN DIEGO

WEST\21577055.1
361794-000001

-14-

CASE NO.  2:07-CV-07114-CAS (FMOX)
REPLY MEMO OF P'S & A'S ISO DEFENDANT FRANZ'S MOTION TO DISMISS

1        **6.      Franz' Corporate Position Does Not Give Rise to a Strong**

2    **Inference of Scienter.**

3        The Opposition claims that Franz's position is germane to the analysis of

4    scienter because it demonstrates his control over the granting of options at Semtech.

5    Not so.  Moreover, Plaintiff's reliance on *In re Juniper Networks, Inc. Sec. Litig.*,

6    542 F. Supp. 2d 1037 (N.D. Cal. 2008) is misplaced.

7        Unlike *Juniper*, the Complaint alleges no specific facts showing that Franz

8    engaged in backdating.  There are no allegations that Franz approved option grants,

9    that he oversaw the options granting process or was involved at all, let alone

10   intimately, in decisions about when and to whom options would be granted.

11       Plaintiff's reliance on *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982 (9th

12   Cir. 2008)[hereinafter *Applied Signal*] and *No. 84 Employer-Teamster Joint*

13   *Council Pension Trust Fund v. Am. West Holding Corp.*, 320 F.3d 920 (9th Cir.

14   2003)[hereinafter *America West*] is also misplaced.  Those cases involved

15   misrepresentations concerning the core operations of the respective companies.

16   Here, Semtech was not in the business of granting stock options.  Stock options

17   were merely one among many of the benefits and compensation provided to

18   Semtech's employees.  A component of employee compensation in no way rises to

19   the level of core operations found in *Applied Signal* and *America West*.

20       **7.      Franz' Stock Sales Do Not Give Rise to a Strong Inference of**

21   **Scienter.**

22       Plaintiff cites the Complaint's stock allegations in purported support of their

23   Section 10(b) claim.  All these allegations plead is that Franz sold stock during the

24   alleged class period.

25       With respect to stock sales, Plaintiff urges the Court to eschew the legion of

26   Ninth Circuit decisions from *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407,

27   1425 (9th Cir. 1994)(the fact that individual defendants sold so little stock could be

28   construed as negating the inference that there was fraud), to *Silicon Graphics*, 183

-15-

DLA PIPER US LLP
SAN DIEGO

WEST\21577055.1
361794-000001

CASE NO.  2:07-CV-07114-CAS (FMOX)
REPLY MEMO OF P'S & A'S ISO DEFENDANT FRANZ'S MOTION TO DISMISS

1   F.3d at 986 ("the proportion of shares actually sold by an insider to the volume of

2   shares he could have sold is probative of whether the sale was unusual or

3   suspicious"), to *In re the Vantive Corp. Sec. Litig.*, 783 F.3d 1079, 1092 (9th Cir.

4   2002) ("insider stock sales are not inherently suspicious; they become so only when

5   the level of trading is 'dramatically out of line with prior trading practices at times

6   calculated to maximize the personal benefit from undisclosed inside information.")

7   on the use of stock sales for establishing scienter and instead follow *Quest.*

8          No Ninth Circuit case creates a special scienter analysis for alleged

9   backdating cases.  Moreover, the foundation of the *Quest* decision is suspect.  It

10  assumes that participants in stock option backdating, which did not even register in

11  the national conscious until it showed up in the press in 2006 as a possibility, are

12  more concerned about getting caught than participants in other securities fraud

13  cases that have been the focus of criminal, regulatory, and civil cases since at least

14  1934 when the Section 10(b) became the law of the land.  *See Quest*, 527 F. Supp.

15  2d at 1185.  Moreover, even if *Quest* supplemented the Ninth Circuit cases on stock

16  sales, Franz's stock sales do not show scienter under *Quest*.  While Franz may have

17  exercised options and sold stock, the Complaint is devoid of any allegation showing

18  that the options that Franz exercised were backdated.  *See id.* at 1182-83.  Even the

19  Special Committee only found that some, but not all, of Semtech's option grants

20  should be restated.  (Semtech Corp. Form 10-K/A FYE Jan. 29, 2006, filed Mar.

21  29, 2007, p. 4-6.) If the reasoning in *Quest* should be followed, it should only be

22  applied to sales of stock that have roots in backdated options, not all option awards

23  and stock sales.

24  **III.   PLAINTIFF'S CLAIM UNDER SECTION 20(A) FAILS.**

25         The Complaint fails to allege a valid claim under Section 20(a) of the

26  Exchange Act.  The Opposition points to allegations of the Complaint about

27  Franz's position at the Company and the Company's "admission" of intentional

28  backdating by its executives to support its conclusion that Defendants, including

-16-

DLA PIPER US LLP
SAN DIEGO

WEST\21577055.1
361794-000001

CASE NO.  2:07-CV-07114-CAS (FMOX)
REPLY MEMO OF P'S & A'S ISO DEFENDANT FRANZ'S MOTION TO DISMISS

Franz, controlled the alleged backdating scheme at Semtech.  Plaintiff has failed to state a valid claim against the Company for violations of securities laws, there can be no controlling person liability under Section 20(a).  *See, e.g., In re Syntex Corp. Sec. Litig.*, 855 F. Supp. 1086, 1098 (N.D. Cal. 1994), *aff'd*, 95 F.3d 922 (9th Cir. 1996).

## IV.   CONCLUSION

As shown above and in the moving papers, the Complaint fails to allege a valid claim by any standard.  Therefore, Franz respectfully requests that the Court grant their motion to dismiss in all respects.

Dated:  November 3, 2008

DLA PIPER US LLP

By:   /s/ Robert W. Brownlie
ROBERT W. BROWNLIE
JENNIFER M. FELDMAN
NICK MORGAN
Attorneys for Defendant
DAVID G. FRANZ, JR.

DLA PIPER US LLP
SAN DIEGO

WEST\21577055.1
361794-000001

-17-

CASE NO.  2:07-CV-07114-CAS (FMOX)
REPLY MEMO OF P'S & A'S ISO DEFENDANT FRANZ'S MOTION TO DISMISS