1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**K&L GATES LLP**
10100 Santa Monica Boulevard
Seventh Floor
Los Angeles, California  90067
Telephone: 310.552.5000
Facsimile: 310.552.5001

Michael J. Quinn (SBN 198349)
(michael.quinn@klgates.com)
Kevin S. Asfour (SBN 228993)
(kevin.asfour@klgates.com)

Attorneys for John M. Baumann

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SEMTECH CORPORATION SECURITIES LITIGATION | Case No. 2:07-CV-07114-CAS (FMOX) <br><br> **DEFENDANT JOHN BAUMANN'S REPLY TO PLAINTIFF'S OMNIBUS OPPOSITION TO DEENDANTS' MOTION TO DISMISS** <br><br> *[Filed concurrently with Defendant John Baumann's Objections to Plaintiff's Request for Judicial Notice]* <br><br> Date:  December 8, 2008 <br> Time:  10:00 a.m. <br> Ctrm.:  5 (2nd Floor) <br><br> Assigned to Hon. Christina A. Snyder |

**RECYCLED PAPER**

**Defendant Baumann's Reply to Opposition to Motion to Dismiss**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ......................................................................................1

II. PLAINTIFF CONCEDES THAT THE COMPLAINT FAILS TO ALLEGE ANY MISREPRESENTATIONS BY BAUMANN ......................2

III. THE SPECIAL COMMITTEE'S FINDINGS CANNOT SUBSTITUTE FOR PLEADING MISREPRESENTATIONS AND DO NOT SUPPORT AN INFERENCE OF SCIENTER ...................................................3

IV. THE SPECIAL COMMITTEE'S FINDINGS SUPPORT, AT MOST, AN INFERENCE OF NEGLIGENCE ............................................................4

V. BAUMANN'S RECEIPT OF OPTIONS AND SALE OF STOCK DO NOT SUPPORT AN INFERENCE OF SCIENTER ....................................6

    A. Receipt of Options.............................................................................. 6

    B. Sale of Stock...................................................................................... 8

VI. PLAINTIFF'S RELIANCE ON BAUMANN'S CORPORATE POSITION IS INADEQUATE TO SUPPORT AN INFERENCE OF SCIENTER .....................................................................................................9

VII. PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS .......................................................................................12

VIII. PLAINTIFF HAS NOT ADEQUATELY ALLEGED A CLAIM FOR CONTROL PERSON LIABILITY UNDER SECTION 20(a).....................13

IX. CONCLUSION .......................................................................................14

**RECYCLED PAPER**
Defendant Baumann's Reply to Opposition to Motion to Dismiss

# TABLE OF AUTHORITIES

**Page**

## Cases

*Arthur Children's Trust v. Keim*,
   994 F.2d 1390 (9th Cir. 1993) ................................................................................14

*Berson v. Applied Signal Tech, Inc.*,
   527 F.3d 982 (9th Cir. 2008) ................................................................................11

*Howard v. Everex*,
   228 F.3d 1057 (9th Cir. 2000) ...............................................................................2

*In re Hansen Natural Corp. Sec. Litig.*,
   527 F. Supp. 2d 1142 (C.D. Cal. 2007) ...................................................................13

*In re Juniper Networks, Inc. Sec. Litig.*,
   542 F. Supp. 2d 1037 (N.D. Cal. 2008) ..............................................................10, 14

*In re McKesson HBOC, Inc. Sec. Litig.*,
   126 F. Supp. 2d 1248 (N.D. Cal. 2000) .................................................................5, 6

*In re Vantive Corp. Sec. Litig.*,
   283 F.3d 1079 (9th Cir. 2002) ..............................................................................10

*In re Zoran Corp. Derivative Litig.*,
   511 F. Supp. 2d 986 (N.D. Cal. 2007)......................................................................12

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
   501 U.S. 350, 111 S. Ct. 2773, 115 L. Ed. 2d 321 (1991) ......................................12

*Middlesex Retirement Sys. v. Quest Software, Inc.*,
   527 F. Supp. 2d 1164 (C.D. Cal. 2007) ..................................................................7, 8

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West
   Holding Corp.*,
   320 F.3d 920 (9th Cir. 2003) ................................................................................11

*Paracor Fin., Inc. v. GE Capital Corp.*,
   96 F.3d 1151 (9th Cir. 1996) ................................................................................14

*South Ferry LP, #2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) ...............................................................................10

*Stoneridge Investment Partners, LLC v. Scientific Atlanta, Inc.*
   128 S. Ct. 761 (2008).................................................................................................2

## Statutes

15 U.S.C. § 78j(b) ......................................................................................................3, 12

15 U.S.C. § 78t(a) ..........................................................................................................13

15 U.S.C. § 78u-4............................................................................................................9

28 U.S.C. § 1658(b) ..................................................................................................12, 13

## Rules

Federal Rules of Civil Procedure  9(b) .............................................................................1

**RECYCLED PAPER**

Defendant Baumann's Reply to Opposition to Motion to Dismiss

1    Defendant John Baumann ("Baumann"), the former Treasurer of Semtech

2 Corporation ("Semtech"), respectfully submits this Reply to Lead Plaintiff Mississippi

3 Public Employees' Retirement System's ("Plaintiff") Omnibus Opposition to

4 Defendants' Motions to Dismiss the Consolidated Amended Class Action Complaint

5 (the "Complaint").

6 **I.    INTRODUCTION**

7    Plaintiff's opposition effectively concedes that its claims against Baumann are

8 based exclusively on his position with the Company and the conclusions of the Special

9 Committee, as well as his sales of a relatively small amount of stock that the

10 Complaint does not link to backdated options.  Plaintiff concedes that it has not alleged

11 any specific conduct on the part of Baumann anywhere in the Complaint's 216

12 paragraphs.

13    Indeed, Baumann is not even *mentioned* anywhere within the 71 paragraphs

14 entitled "Defendants' Materially False and Misleading Statements."  The Complaint

15 does not allege that Baumann signed any of the financial statements at issue, nor has

16 Plaintiff alleged any facts even remotely suggesting that Baumann participated or had

17 any involvement in the preparation of fraudulent financial statements.

18    Nonetheless, Plaintiff contends that its allegations as to Baumann are sufficient

19 because based on his position as Treasurer and the Special Committee's conclusions,

20 he must have been somehow involved in backdating.  Plaintiff points to the Special

21 Committee's conclusion that Baumann either "initiated or participated in some

22 manipulative acts" as "evidence that he was at a minimum deliberately reckless."

23 Without any specific supporting facts as required by the PSLRA and Rule 9(b),

24 however, this conclusory allegation supports no more than mere strict liability.

25    Although not alleged in the Complaint, Plaintiff also cites to Baumann's

26 position as the press contact on earnings releases that Plaintiff alleges are false and

27 argues specifically that this "role and position placed him at the forefront of Semtech's

28 backdating" making abundantly clear Plaintiff's strict reliance on Baumann's mere

1

1   position as a basis for alleging scienter.  Again, without specific facts, the allegations

2   are wholly inadequate, and thus the Court should grant Baumann's motion.

3   II.     **PLAINTIFF CONCEDES THAT THE COMPLAINT FAILS TO**

4           **ALLEGE ANY MISREPRESENTATIONS BY BAUMANN**

5           Plaintiff's opposition does not dispute that the Complaint fails to allege that

6   Baumann made any misrepresentations or omissions.  Indeed, Plaintiff cannot do so

7   because the Complaint, in fact, does not allege any specific conduct on the part of

8   Baumann.  Instead, Plaintiff asserts what Baumann readily acknowledged in his

9   motion—that substantial participation or intricate involvement in the preparation of

10  fraudulent financial statements can be sufficient.  Opposition at p. 26.  Plaintiff notes

11  that the Supreme Court has rejected the argument that a defendant must make "a

12  specific oral or written statement" to be liable and that "conduct itself can be

13  deceptive."  Opposition at p. 26 (citing *Stoneridge Investment Partners, LLC v.*

14  *Scientific Atlanta, Inc*. 128 S. Ct. 761, 769, 773-74 (2008)).  Plaintiff misses the point.

15  Plaintiff has not alleged any "conduct" on the part of Baumann.  Not only has Plaintiff

16  not alleged any "specific oral or written statement" by Baumann in any of the

17  Complaint's 216 paragraphs, including the 71 entitled "Defendants' Materially False

18  and Misleading Statements," but it has also not alleged any "conduct" by Baumann—

19  "deceptive" or otherwise.  The Complaint alleges no specific acts even remotely

20  suggesting substantial participation or intricate involvement in the preparation of

21  fraudulent financial statements.

22          Plaintiff goes on to note that "an actor is reckless if he had reasonable grounds

23  to believe material facts existed that were misstated or omitted, but nonetheless failed

24  to obtain and disclose such facts although he could have done so without extraordinary

25  effort."  Opposition at p. 26 (citing *Howard v. Everex*, 228 F.3d 1057, 1064 (9th Cir.

26  2000)).  Again, however, Plaintiff has not alleged any facts supporting such a

27  conclusion.  The Complaint does not allege facts supporting an assertion that Baumann

28  "had reasonable grounds to believe material facts existed that were misstated or

1    omitted," that he "nonetheless failed to obtain and disclose such facts," or that "he

2    could have done so without extraordinary effort."  It is simply not enough for Plaintiff

3    to make these sweeping assertions in opposition to a motion to dismiss when no facts

4    were pleaded in the Complaint to support them, and this is precisely why Plaintiff fails

5    to cite to its Complaint in support of such arguments.  Accordingly, Plaintiff has

6    utterly failed to allege the primary, most basic element of a cause of action under

7    Section 10(b)—that Baumann made any misrepresentations.

8    **III.    THE SPECIAL COMMITTEE'S FINDINGS CANNOT SUBSTITUTE**

9    **FOR PLEADING MISREPRESENTATIONS AND DO NOT SUPPORT**

10   **AN INFERENCE OF SCIENTER**

11   Plaintiff brushes aside the fact that the Complaint does not allege any

12   misrepresentations or omissions on the part of Baumann and instead asserts that "the

13   Committee's finding that [Baumann] 'initiated or participated in manipulative acts,' []

14   is evidence that he was at a minimum deliberately reckless."  Opposition at p. 25.  This

15   misstatement of the law is baffling.

16   For "initiated or participated in manipulative acts" to be sufficient to establish

17   scienter, the requisite degree of scienter would have to be strict liability.  Plaintiff's

18   assertion is essentially that "if he engaged in the conduct, then he had sufficient

19   scienter."  This is obviously not the law in the Ninth Circuit or any other Circuit.  The

20   assertion is ironic indeed in light of the fact that in its 216-paragraph complaint,

21   Plaintiff has not alleged any specific conduct, or any manipulative acts, in which

22   Baumann allegedly initiated or participated.

23   Plaintiff attempts to conceal its strict reliance on the Special Committee's bare

24   conclusions by bolstering them with inapplicable descriptive phrases.  Plaintiff asserts

25   that, as admitted by the Special Committee Report, Baumann "at the very least"

26   "initiated or participated in deceptive acts."  Opposition at p. 26.  Plaintiff has pleaded

27   no facts to support the bare conclusion that Baumann initiated or participated in any

28   manipulative acts, let alone any additional conduct justifying its "at the very least"

3

RECYCLED PAPER

1    modifier.  Indeed, in light of the total absence of any supporting factual averments, a

2    more appropriate modifier is "at the very most" since Plaintiff cannot even plead facts

3    to support the conclusion as stated by the Special Committee.

4    IV.    **THE SPECIAL COMMITTEE'S FINDINGS SUPPORT, AT MOST, AN**

5           **INFERENCE OF NEGLIGENCE**

6           Plaintiff cannot avoid the clear implication that the Special Committee's finding

7    that "at the time of the Special Committee's report" Baumann "knew or should have

8    known" of the backdating suggests, at most, a negligent state of mind, insufficient to

9    establish scienter in the Ninth Circuit, or any other Circuit.

10          Plaintiff fails to address at all, and therefore presumably concedes, that in any

11   event, the finding relates to Baumann's state of mind at a wholly irrelevant time—at

12   the time of the Special Committee's report—long after any events in question and after

13   the end of the class period, and therefore is of little or no value in determining

14   Baumann's degree of scienter.  Plaintiff asserts that the argument that the Special

15   Committee's "findings were made in hindsight" is not persuasive because "every

16   investigation looks at evidence in hindsight."  Opposition at p. 19.  Plaintiff again

17   misses the point.  Baumann's argument at page 18 of his motion to dismiss is that the

18   Special Committee's finding was that "at the time of the Special Committee's report,"

19   Baumann knew or should have known of the backdating.  *See* Motion at p. 18,

20   Complaint, ¶ 150.  Baumann does not complain that the investigation was after the fact

21   but rather that the Special Committee's finding as to Baumann's knowledge is

22   specifically limited to a time period long after the fact.  Plaintiff cannot overcome this

23   hurdle.

24          Moreover, Plaintiff goes on to assert, without citation, that "the Special

25   Committee's findings were based on compelling contemporaneous evidence of

26   Defendants' fraud, including emails, correspondence, personnel records, accounting

27   ledgers and other option-related documents."  Opposition at p. 19.  The Complaint,

28   however, articulates none of this detail and none is attributed to Baumann.  Plaintiff

4                                    **RECYCLED PAPER**

1    then notes, inaccurately, that "based on this evidence and a thorough investigation that

2    took a year to complete, Semtech announced that some current and former Semtech

3    executives committed fraud." *Id.*  However, to be clear, following its thorough year-

4    long investigation, the Special Committee "took no action with respect to [Baumann]."

5    Complaint, ¶ 150 (at p. 107:1-7).  Accordingly, the Special Committee's findings

6    cannot support an inference of scienter as to Baumann.

7         Notwithstanding these gaping holes in Plaintiff's argument, Plaintiff contends

8    that "knew or should have known" is sufficiently indicative of scienter under *In re*

9    *McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1273-74 (N.D. Cal. 2000).

10   *McKesson*, however, does not support Plaintiff's position.  First, the company's

11   statement in *McKesson* that employees "should have known or did know" of

12   accounting problems was one of several statements that the court noted collectively

13   constituted strong circumstantial evidence of fraud.  *Id.* at 1274.  Here, this is the *only*

14   statement Plaintiff can rely upon.  Second, the court combined those statements by the

15   company with substantial additional indicia of scienter to find the complaint sufficient,

16   including the complaint's "particularly specific" allegations of "red flags."  *Id.* at 1274.

17   Indeed, the court noted that the plaintiff had "alleged substantial evidence that

18   improper recognition was so widespread at HBOC that senior management must have

19   known of the practice."  *Id.* at 1273.  Plaintiff here has not alleged any specific

20   evidence regarding Baumann other than the sole conclusory finding by the Special

21   Committee.

22        Third, and perhaps most telling, is that the company's statement that the

23   employees "should have known or did know" of accounting problems was

24   accompanied by an announcement that the employees had been "dismissed

25   immediately for cause" and barred from the company's premises.  *Id.* at 1273-74.

26   Baumann was not dismissed immediately for cause or barred from the premises—far

27   from it.  Semtech asked Baumann for his resignation and at the same time asked him to

28   remain, and he did remain, with the Company for several months to assist the

RECYCLED PAPER

**Defendant Baumann's Reply to Opposition to Motion to Dismiss**

1   Company in preparing the restatement of the very financial statements that Plaintiff

2   alleges he is liable for misrepresenting.  Complaint at ¶¶ 143, 150.  That Baumann was

3   asked to stay with the Company to assist with the restatement is, in the words of the

4   *McKesson* court, "strong circumstantial evidence" of less than intentional conduct and,

5   in fact, supports an inference that Baumann is far less culpable than the defendants in

6   *McKesson*.

7   **V.     BAUMANN'S RECEIPT OF OPTIONS AND SALE OF STOCK DO NOT**

8   **SUPPORT AN INFERENCE OF SCIENTER**

9          A.     Receipt of Options

10         The Complaint alleges only that Baumann sold 35,000 shares of Semtech stock

11   for proceeds of $728,000.  Complaint, ¶¶ 21, 191.  The Complaint does not allege that

12   any of these shares were linked to backdated options.  Moreover, it only alleges

13   Baumann's *proceeds* from the sales and nothing suggesting that Baumann even

14   profited from the sales.  Plaintiff now attempts to plead new facts in its opposition

15   brief.  For the first time, Plaintiff asserts in its opposition that Baumann received

16   19,000 backdated options.  Opposition at p. 25.  Plaintiff does not and cannot cite to

17   the Complaint for this assertion.  Instead, Plaintiff cites to Exhibit 8 of its Request for

18   Judicial Notice ("RJN"), which contains a summary of data accumulated by its paid

19   consultant, purportedly from publicly available sources.  *Id.*  This document, however,

20   cannot substitute for the requirement to plead specific facts in the complaint.

21         First, as set forth more fully in Baumann's objections to Plaintiff's RJN (filed

22   concurrently herewith), the document is not one of which the Court may properly take

23   judicial notice, and should not be considered in connection with this motion.

24   Moreover, even if the Court were to take judicial notice of Plaintiff's Exhibit 8, the

25   document does not state that Baumann received 19,000 backdated options.  Not only is

26   such a conclusion an ultimate question of fact, to be determined by the trier of fact, the

27   document does not even contain such a conclusion.  The document merely identifies

28   option grants that Plaintiff alleges Baumann received over a 10-year period from 1996

6                                                                                **RECYCLED PAPER**

1   through 2006.  Presumably, some additional analysis, with reference to some

2   additional documents prepared by Plaintiff's paid consultant, would be necessary even

3   to identify such a conclusion.

4          Plaintiff next takes this new fact that Baumann allegedly received backdated

5   options, combines it with his position as Treasurer, and contends that it all "strongly

6   suggests his knowledge of the backdating fraud and its intended impact."  Opposition

7   at p. 25.  This is the very definition of a conclusory allegation devoid of any specific

8   facts.  To support the conclusory allegation, itself based on facts not alleged in the

9   Complaint, Plaintiff relies on *Middlesex Retirement Sys. v. Quest Software, Inc.*, 527 F.

10  Supp. 2d 1164, 1183-84 (C.D. Cal. 2007), which does not support Plaintiff's

11  contention.  The *Quest* defendants (1) all held more senior positions than Treasurer;

12  (2) all were alleged to have signed Quest public filings and/or related certifications;

13  and (3) were alleged to have received anywhere from 40,000 to 1.6 million option

14  grants.  *Id*. at 1169-70, 1172,  1173-74.  Baumann, on the other hand, is not alleged to

15  have, and did not, sign any Semtech filings, is not alleged in the Complaint to have

16  received any options and is first alleged in Plaintiff's opposition to have received less

17  than 19,000 option grants.

18         Indeed, the *Quest* case makes clear that Plaintiff here has not adequately alleged

19  scienter as to Baumann.  The *Quest* court stated, "when the absence of detrimental

20  measurement dates is combined with the fact that Defendants were some of the

21  primary beneficiaries of the backdated options, and also held key positions to control

22  the measurement dates, the conclusion is the Defendants likely influenced the grant

23  dates, and thus likely knew of the improper backdating"—which the court then

24  acknowledged is "insufficient for purposes of the PSLRA." *Id.* at 1183.  Plaintiff's

25  Complaint here contains no allegations that Baumann was a "primary beneficiary," and

26  indeed, he was not, nor that he held a "key position to control the measurement dates,"

27  and indeed, he did not.  There was never a finding or even remote suggestion by the

28  Special Committee—and it is certainly not alleged by Plaintiff—that Baumann played

**RECYCLED PAPER**

**Defendant Baumann's Reply to Opposition to Motion to Dismiss**

1  any role whatsoever in setting or controlling grant dates, measurement dates, option

2  prices, recipients of grants, prices of grants, or numbers of option grants.

3         Plaintiff's allegations do make clear, however, that Baumann was not a "primary

4  beneficiary" of backdated options.  The Complaint alleges the Special Committee's

5  conclusion that the aggregate intrinsic value of all options granted to five different

6  executives (including Baumann) was approximately $4.8 million (95% of which was

7  never realized).  Complaint, ¶ 150 (p. 104:25-105:4, 105:12-14).  Of this $4.8 million,

8  Baumann's holdings—combined with the holdings of two other executives—

9  collectively amounted to only 16.4% of those options.  *Id.*  Moreover, these grants to

10  officers, of which Baumann had such a small percentage, were themselves but a small

11  percentage of the grants alleged to have been backdated.  Plaintiff readily admits that

12  "[a]s the Special Committee found, the vast majority of backdated options were those

13  issued to newly hired employees."  Opposition at p. 34 (citing Complaint, ¶ 147).

14         B.    Sale of Stock

15         Plaintiff also contends that Baumann's class period stock sales support a strong

16  inference of scienter.  In this regard, Plaintiff again improperly groups individual

17  defendants and asserts, "[i]n all, Defendants sold more than $21 million worth of stock

18  during the Class Period."  Opposition at p. 29.  As noted above, however, the

19  Complaint alleges that Baumann only sold 35,000 shares of Semtech stock for

20  proceeds of $728,000.  Complaint, ¶¶ 21, 191.  Plaintiff again cites to the *Quest* case,

21  this time to support the proposition that "the prototypical guidelines regarding the

22  relevance of a defendant's stock sales to scienter [] are not applicable to backdating

23  cases."  Opposition at p. 28 (citing *Quest*, 527 F. Supp. 2d at 1184-87).  For a number

24  of reasons, however, the *Quest* case does not support Plaintiff's allegations as to

25  Baumann.

26         First, the plaintiff in *Quest* "listed the precise number of shares sold, the dates on

27  which the shares were sold, the price for which the shares were sold, and the resulting

28  earnings by each Defendant."  *Quest*, 527 F. Supp. 2d at 1185.  Here, Plaintiff has

8

**Defendant Baumann's Reply to Opposition to Motion to Dismiss**

1  merely alleged the number of shares and total proceeds over the four-year class

2  period—noting neither the date nor price of any sales nor linking any of the sales to

3  backdated options.  Second, Plaintiff asserts that under *Quest*, "the only consideration

4  is whether these sales are large enough to raise suspicion."  Opposition at p. 29 (citing

5  *Quest*, 527 F. Supp. 2d at 1185).  Plaintiff has cited no facts from which the Court can

6  determine that Baumann's sales were "large enough to raise suspicion."  Compared to

7  the total alleged sales amongst Defendants of almost 1 million shares for total proceeds

8  of $21 million, Baumann's sales are not "large enough to raise suspicion."  Complaint,

9  ¶ 191.  Similarly, compared to the total alleged sales in *Quest* of 2.7 million shares for

10  total proceeds of over $38 million, Baumann's sales cannot be considered "large

11  enough to raise suspicion."  *Quest*, 527 F. Supp. 2d at 1184.  Plaintiff has alleged no

12  additional facts regarding Baumann's sales of stock upon which the Court can base a

13  determination that Baumann's sales were "large enough to raise suspicion" and for this

14  reason, *Quest* does not support Plaintiff's contention as to Baumann's stock sales.

15  **VI.   PLAINTIFF'S RELIANCE ON BAUMANN'S CORPORATE POSITION**

16  **IS INADEQUATE TO SUPPORT AN INFERENCE OF SCIENTER**

17  Plaintiff continues to rely heavily on Baumann's position with the Company as a

18  basis to allege scienter.  In fact, rather than citing to its Complaint in support of facts

19  asserted in support of a finding of scienter, Plaintiff repeatedly cites to Semtech's

20  Bylaws (attached to a request for judicial notice) and a description of the duties of the

21  Treasurer.  Opposition at p. 26.  Plaintiff argues that by virtue of these duties,

22  "investors had a right to expect he would protect against improprieties."  *Id.*  Nothing

23  could make it more clear that Plaintiff is relying on Baumann's corporate position as a

24  basis for alleging scienter than citing to his job description as evidence of what he must

25  have done or knew.  Moreover, describing what Plaintiff believes investors could

26  expect based on such a job description does not substitute for the PSLRA's

27  requirement that Plaintiff "state with particularity facts giving rise to a strong inference

28  that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4.

RECYCLED PAPER

**Defendant Baumann's Reply to Opposition to Motion to Dismiss**

1    The same applies to Plaintiff's assertion that by virtue of being identified as the

2    press contact on quarterly earnings releases, Baumann was not only responsible for the

3    content of the releases (which Plaintiff asserts without basis or citation) but also acted

4    with the required degree of scienter.  Opposition at p. 27.  Plaintiff urges that

5    Baumann's "role and position" in this regard "placed him at the forefront of Semtech's

6    backdating." *Id.*  This assertion is mystifying.  Being identified as a press contact to

7    discuss earnings releases does not create any inference whatsoever of knowledge or

8    scienter with respect to backdated options that may have resulted in those earnings

9    numbers being inaccurate.  Obviously, the press releases said nothing of backdated

10   options and even the data supporting those numbers would not have reflected

11   backdated options.  This is yet another clear indication that Plaintiff is improperly

12   relying almost exclusively on Plaintiff's position with the company to establish

13   scienter.[1]  *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1087 (9th Cir. 2002).

14   Plaintiff's opposition itself demonstrates the Complaint's insufficiency.

15   Plaintiff acknowledges that Defendants correctly assert that allegations of scienter

16   based solely on a defendant's position are insufficient but notes, "on the other hand,

17   allegations that the defendant signed false financial documents, approved options

18   grants, oversaw the option granting process, or was intimately involved in deciding

19   when and to whom options would be granted may support a strong inference of

20   scienter." Opposition at p. 32 (citing *In re Juniper Networks, Inc. Sec. Litig.*, 542 F.

21   Supp. 2d 1037, 1047 (N.D. Cal. 2008)).  Plaintiff here has not alleged, and cannot

22   allege, that Baumann signed any financial documents, that he approved any option

---

[1] Indeed, the opinion in *South Ferry LP, #2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008)—upon which Plaintiff relies in its opposition—explicitly observes that reliance on presumptive knowledge associated with a defendant's corporate position is insufficient to establish scienter:  "Where a complaint relies on allegations that management had an important role in the company but does not contain **additional detailed allegations about the defendants' actual exposure to information**, it will usually fall short of the PSLRA standard.  In such cases the inference that defendants had knowledge of the relevant facts will not be much stronger, if at all, than the inference that defendants remained unaware." *South Ferry*, 542 F.3d at 784 (emphasis added).

**RECYCLED PAPER**
**Defendant Baumann's Reply to Opposition to Motion to Dismiss**

1    grants, that he oversaw the option granting process, or that he was at all involved in

2    deciding when and to whom options would be granted.  According to Plaintiff's own

3    argument, therefore, it cannot allege facts sufficient to create a strong inference of

4    scienter.

5         Plaintiff next relies on *Berson v. Applied Signal Tech, Inc.*, 527 F.3d 982, 987-

6    88 (9th Cir. 2008), and *No. 84 Employer-Teamster Joint Council Pension Trust Fund v.*

7    *America West Holding Corp.*, 320 F.3d 920 (9th Cir. 2003), for the proposition that

8    corporate officers and directors must have known of information that was critical to a

9    company's core business.  Opposition at p. 32-33.  Plaintiff notes the importance of

10   stock options to Semtech's attracting and retaining employees and then concludes that

11   all of the Individual Defendants must, therefore, have known of backdated options.

12   Opposition at p. 33-34.  Plaintiff's analysis makes a critical assumption—that

13   knowledge of the importance of options to the Company's success equals knowledge

14   that options were being backdated.  Without any specific facts showing such

15   knowledge, this assumption is unsupported and Plaintiff's argument fails.

16        Finally, Plaintiff argues the importance of signing the allegedly false and

17   misleading financial statements to a finding of a strong inference of scienter.

18   Opposition at p. 35-36.  Baumann never signed any financial statements or other

19   certifications.  Apparently realizing this fundamental flaw in its theory as to Baumann,

20   Plaintiff throws in as an afterthought, ". . . or in the case of Baumann, were [sic] the

21   investor relations contact on press releases announcing those financial results further

22   supports the scienter allegations."  Opposition at p. 36.  Plaintiff cites no authority for

23   the proposition that being identified as the press contact on press releases is akin to

24   signing financial statements or otherwise raises an inference of scienter.  Plaintiff also

25   cites to no facts alleged in the Complaint alleging Baumann's participation in the

26   preparation of the press releases, the preparation of the statements or numbers

27   presented in the press releases, or any other involvement in the press releases

28   whatsoever.

**RECYCLED PAPER**

**Defendant Baumann's Reply to Opposition to Motion to Dismiss**

1

## VII.   PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF

2

## LIMITATIONS

3      In his motion, Baumann noted that Plaintiff's Complaint specifically identifies

4   16 allegedly "manipulated" grants, and that *all* such grants occurred more than five

5   years prior to the filing of the initial complaint herein.  Complaint, ¶ 161.

6   Accordingly, the five-year limitations period imposed by 28 U.S.C. § 1658(b) bars all

7   of Plaintiff's claims.  *See Belova v. Sharp*, 2008 U.S. Dist. LEXIS 19880, at *27 (D.

8   Or. Mar. 13, 2008); *see also In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986,

9   1014 (N.D. Cal. 2007) ("the statute of limitations accrues as of when the violation

10  itself occurs, not when the last violation in a series of alleged violations occur").

11      In its opposition, Plaintiff characterizes this application of the five-year

12  limitations period as "odd and unreasonable," and baldly states that "nothing in the

13  relevant case law" supports it.  Plaintiff has deliberately **ignored** Baumann's citation to

14  *Belova*, which could not have been clearer in its application of the five-year limitations

15  period to options backdating cases:  "The initial Complaint in this case was filed on

16  February 28, 2007, so the shareholders cannot base a § 10(b) claim on alleged

17  backdating that occurred before February 28, 2002, regardless of when they first

18  learned of the alleged backdating scheme."  *Belova*, 2008 U.S. Dist. LEXIS 19880, at

19  *27.  In so holding, the *Belova* court reasoned that the five-year limitations period of

20  Section 1658(b)(2) serves as an absolute period of repose, in lieu of equitable tolling.

21  *Id.* at *26 (citing *Zoran* 511 F. Supp. 2d at 1013); *see also Lampf, Pleva, Lipkind,*

22  *Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363, 111 S. Ct. 2773, 115 L. Ed. 2d

23  321 (1991).

24      In its opposition, Plaintiff attempts to distinguish *Zoran* by arguing that the

25  Complaint herein does not seek relief "based on the backdating itself," but rather on

26  the basis of Defendants' allegedly false and misleading statements *pertaining to* the

27  backdating.  Opposition, p. 56.  The *Belova* complaint, however, alleged Section 10(b)

28

12                                    **RECYCLED PAPER**

**Defendant Baumann's Reply to Opposition to Motion to Dismiss**

1  violations based on false and misleading financial statements—just as does Plaintiff's

2  Complaint herein.  *Belova*, 2008 U.S. Dist. LEXIS 19880, at *16-18.

3        More fundamentally, Plaintiff again overlooks the simple fact that Baumann is

4  not alleged to have made *any* "false and misleading" statements:  Baumann is not

5  referenced a *single time* anywhere in the 71 paragraphs comprising the Complaint's

6  section entitled "Defendants' Materially False and Misleading Statements" (nor is any

7  misstatement attributed to him elsewhere in the Complaint).  Thus, in any event,

8  Plaintiff cannot escape the time-bar of Section 1658(b)(2) as to Baumann by

9  distinguishing between "backdating itself" and alleged misrepresentations relating

10  thereto.

11  **VIII.**  **PLAINTIFF HAS NOT ADEQUATELY ALLEGED A CLAIM FOR**

12         **CONTROL PERSON LIABILITY UNDER SECTION 20(a)**

13        In opposition to Baumann's motion to dismiss Plaintiff's Section 20(a) claim for

14  failure to allege any facts demonstrating that Baumann was a "controlling person,"

15  Plaintiff improperly groups all Individual Defendants together and repeats the

16  inadequate allegations in the Complaint that they all "held powerful positions at

17  Semtech" and "were each personally involved in the daily management," all "had

18  access to and control over the financial information, and all "engaged in the

19  preparation, signing and issuance of false and misleading financial statements."

20  Opposition at p. 58.  The Complaint, however, does not contains a single factual

21  allegation in support of any of these contentions as to Baumann.

22        Moreover, grouping the Individual Defendants together for purposes of "group

23  pleading" is not permitted in the Ninth Circuit.  *See In re Hansen Natural Corp. Sec.*

24  *Litig.*, 527 F. Supp. 2d 1142, 1153 (C.D. Cal. 2007).  Such grouping makes little sense

25  in any event when discussing the degree to which individuals of widely varying

26  authority in a corporation (CEO, CFO, Treasurer) controlled the daily management of

27  the company.  In the end, Plaintiff's allegations amount to nothing more than

28  "Baumann was an officer and so therefore was a control person."  However, merely

**Defendant Baumann's Reply to Opposition to Motion to Dismiss**

1   being an officer or director of a company is not sufficient to prove control. *Arthur*

2   *Children's Trust v. Keim*, 994 F.2d 1390, 1397 (9ᵗʰ Cir. 1993) (a person's position as a

3   director or officer does not create a presumption of control); *Paracor Fin., Inc. v. GE*

4   *Capital Corp.*, 96 F.3d 1151, 1163 (9ᵗʰ Cir. 1996).  Plaintiff cites to *In re Juniper*

5   *Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037, 1053 (N.D. Cal. 2008) where the

6   court ruled that the plaintiff adequately alleged that defendants "participated in the

7   operation and management of the company … [as well as] in the conduct of its

8   business affairs."  Opposition at p. 59 (citing *Juniper*, 542 F. Supp. 2d at 1053).

9   Plaintiff's Complaint here, however, contains no allegations upon which the Court can

10  reach a similar conclusion.  Plaintiff's bare conclusory allegations of control are

11  insufficient.

12  ## IX.    CONCLUSION

13       For all of the foregoing reasons, the Court should dismiss the entirety of

14  Plaintiff's Complaint against Baumann.  Moreover, Plaintiff's Complaint should be

15  dismissed with prejudice as to Baumann because amendment would be futile.

16  Plaintiff's allegations are based on the Special Committee's comprehensive

17  investigation, and the Committee concluded that no action should be taken against

18  Baumann, and so there are no facts that Plaintiff can add to its Complaint to state a

19  claim against Baumann.

20

21

22                                        Respectfully submitted,

23                                        K&L GATES LLP

24

25  Dated:  November 3, 2008          By:   /s/ Kevin S. Asfour
                                          Michael J. Quinn
26                                        Kevin S. Asfour
                                          Attorneys for John M. Baumann
27

28

                                          14                        **RECYCLED PAPER**
            **Defendant Baumann's Reply to Opposition to Motion to Dismiss**