1  THOMAS A. ZACCARO (SB# 183241)
   (thomaszaccaro@paulhastings.com)
2  PAUL, HASTINGS, JANOFSKY & WALKER LLP
   515 South Flower Street, Twenty-Fifth Floor
3  Los Angeles, CA  90071-2228
   Telephone:  (213) 683-6000
4  Facsimile:  (213) 627-0705

5  CHRISTOPHER H. McGRATH (SB# 149129)
   (chrismcgrath@paulhastings.com)
6  COLLEEN E. HUSCHKE (SB# 191402)
   (colleenhuschke@paulhastings.com)
7  PAUL, HASTINGS, JANOFSKY & WALKER LLP
   4747 Executive Drive, 12th Floor
8  San Diego, CA  92121
   Telephone:  (858) 458-3000
9  Facsimile:  (858) 458-3005

10 EDWARD HAN (SB# 196924)
   (edwardhan@paulhastings.com)
11 PAUL, HASTINGS, JANOFSKY & WALKER LLP
   55 Second Street, Twenty-Fourth Floor
12 San Francisco, CA  94105-3441
   Telephone:  (415) 856-7000
13 Facsimile:  (415) 856-7100

14 Attorneys for Defendants
   *Jason L. Carlson and Mohan R. Maheswaran*

15

16              UNITED STATES DISTRICT COURT

17            CENTRAL DISTRICT OF CALIFORNIA

18                    WESTERN DIVISION

19 | IN RE SEMTECH CORPORATION | CASE NO.  2:07-CV-07114-CAS(FMOx) |
   | SECURITIES LITIGATION | |
20 | | **REPLY BRIEF IN SUPPORT OF** |
   | | **MOTION TO DISMISS** |
21 | | **CONSOLIDATED AMENDED CLASS** |
   | | **ACTION COMPLAINT BY** |
22 | | **DEFENDANTS JASON L. CARLSON** |
   | | **AND MOHAN R. MAHESWARAN** |
23

24 | | Date:        December 8, 2008 |
   | | Time:        10:00 a.m. |
25 | | Ctrm.:       5, 2nd Floor |
   | | Judge:       Hon. Christina A. Snyder |
26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION ................................................................................................ 1

II.  THE SECTION 10(b) CAUSE OF ACTION AGAINST CARLSON
     AND MAHESWARAN SHOULD BE DISMISSED ...................................... 3

     A.   Whether The Allegations Are Considered Together Or
          Separately, Plaintiff Fails To Plead A Strong Inference Of
          Scienter ................................................................................................... 3

          1.   There Is A Temporal Disconnect Between The Last Grant
               Of The Allegedly Misdated Options And Carlson's And
               Maheswaran's Tenure As CEO ..................................................... 4

          2.   The May 2005 Article By Professor Lie Did Not Put
               Either Carlson Or Maheswaran On "Notice" Of Any
               Misdated Options At Semtech ....................................................... 6

          3.   Failure To Follow GAAP Does Not Support A Strong
               Inference Of Scienter .................................................................... 9

          4.   Carlson's And Maheswaran's Positions At The Company
               Do Not Support A Strong Inference Of Scienter........................ 10

          5.   Absence Of Alleged Stock Sales By Carlson And
               Maheswaran Negates Scienter ..................................................... 12

     B.   Plaintiff Fails To Plead Loss Causation .............................................. 13

          1.   Loss Causation Is Properly Considered On A Motion To
               Dismiss ........................................................................................ 13

          2.   Plaintiff's Loss Causation Allegations Are Insufficient As
               A Matter Of Law .......................................................................... 13

               a.   There Was No Alleged Class Period Disclosure
                    Sufficient To Demonstrate Loss Causation .................... 13

               b.   Disclosures Made After The End Of The Class
                    Period Do Not Establish Loss Causation ........................ 17

     C.   Carlson And Maheswaran Made No Actionable
          Misrepresentations ............................................................................... 17

     D.   Plaintiff Has Not Pled The Existence Of An Efficient Market .......... 18

III. THE SECTION 20(a) CAUSE OF ACTION AGAINST CARLSON
     AND MAHESWARAN SHOULD BE DISMISSED .................................... 20

IV.  CONCLUSION ................................................................................................ 22

# TABLE OF AUTHORITIES

**Page**

## CASES

*Basic, Inc. v. Levinson*,
485 U.S. 224, 99 L. Ed. 2d 194,
108 S. Ct. 978 (1988) ................................................................. 18

*Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955 (2007) ................................................................22

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) .......................................................10

*Binder v. Gillespie*,
184 F.3d 1059 (9th Cir. 1999)......................................................18

*Branch v. Tunnell*,
14 F.3d 449 (9th Cir. 1994).........................................................7

*Cammer v. Bloom*,
711 F. Supp. 1264 (D. N.J. 1989).......................................18, 19, 20

*Catogas v. Cyberonics, Inc.*,
2008 WL 4158923 (5th Cir. Sept. 8, 2008).....................................15

*Coates v. Heartland Wireless Commc'ns, Inc.*,
26 F. Supp. 2d 910 (N.D. Tex. 1998)..............................................18

*Dura Pharms. v. Broudo*,
544 U.S. 336 (2005) ...............................................13, 14, 15, 17

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*,
560 F. Supp. 2d 1221 (M.D. Fla. 2008) .........................................15

*Estate of Magnin v. Comm'r of Internal Revenue*,
184 F.3d 1074 (9th Cir. 1999)......................................................21

*Heliotrope Gen. Inc. v. Ford Motor Co.*,
189 F.3d 971 (9th Cir. 1999)........................................................21

*Howard v. Everex Sys.*,
228 F.3d 1057 (9th Cir. 2000)......................................................20

*In re 2TheMart.com Sec. Litig.*,
114 F. Supp. 2d 955 (C.D. Cal. 2000)......................................19, 20

*In re Amgen, Inc. Sec. Litig.*,
544 F. Supp. 2d 1009 (C.D. Cal. 2008).............................................4

*In re Bristol-Myers Squibb Sec. Litig.*,
No. 00-1990, 2005 U.S. Dist. LEXIS 18448 (D.N.J. Aug. 17, 2005) ..............14

*In re Ceridian Corp. Sec. Litig.*,
542 F.3d 240 (8th Cir. 2008).........................................................9

*In re Clearly Canadian Sec. Litig.*,
875 F. Supp. 1410 (N.D. Cal. 1995).................................................17

*In re CNET Networks, Inc., Deriv. Litig.*,
483 F. Supp. 2d 947 (N.D. Cal. 2007)................................................8

# TABLE OF AUTHORITIES
### (continued)

**Page**

*In re Daou Sys., Inc. Sec. Litig.*,
411 F.3d 1006 (9th Cir. 2005)................................................................14, 15, 17

*In re Gilead Sciences Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008)................................................................14, 15, 16

*In re Hansen Natural Corp. Sec. Litig.*,
527 F. Supp. 2d 1142 (C.D. Cal. 2007)..................................................10, 11, 21

*In re Harmonic, Inc., Sec. Litig.*,
2006 WL 3591148 (N.D. Cal. Dec. 11, 2006) ................................................ 18

*In re Infonet Servs. Corp. Sec. Litig.*,
310 F. Supp. 2d 1080 (C.D. Cal. 2003)........................................................... 18

*In re Juniper Networks, Inc. Sec. Litig.*,
542 F. Supp. 2d 1037 (N.D. Cal. 2008)......................................................11, 12

*In re LDK Solar Sec. Litig.*,
2008 U.S. Dist. LEXIS 42425 (N.D. Cal. May 29, 2008) .............................. 11

*In re Northpoint Commc'ns Grp., Inc., Sec. Litig.*,
221 F. Supp. 2d 1090 (N.D. Cal. 2002).......................................................... 11

*In re Philip Svcs. Corp. Sec. Litig.*,
383 F. Supp. 2d 463 (S.D.N.Y. 2004)............................................................ 21

*In re Quest Communications Int'l, Inc. Sec. Litig.*,
387 F. Supp. 2d 1130 (D. Col. 2005) .............................................................. 9

*In re Seitel Inc. Sec. Litig.*,
447 F. Supp. 2d 693 (S.D. Tex. 2006)............................................................ 14

*In re Silicon Graphics Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999)........................................................................... 4

*In re Take-Two Interactive Sec. Litig.*,
551 F. Supp. 2d 247 (S.D.N.Y. 2008)............................................................ 15

*In re Turbodyne Techs, Inc. Sec. Litig.*,
2002 U.S. Dist. LEXIS 25738 (C.D. Cal. Mar. 13, 2002) ................7, 18, 19, 20

*In re Zoran Corp. Deriv. Litig.*,
511 F. Supp. 2d 986 (N.D. Cal. 2007)........................................................5, 10, 12

*Jablon v. Dean Witter*,
614 F.2d 677 (9th Cir. 1980)......................................................................... 22

*Johnson v. Aljian*,
394 F. Supp. 2d 1184 (C.D. Cal. 2004)............................................................ 2

*Lee v. County of Los Angeles*,
250 F.3d 668 (9th Cir. 2001)........................................................................... 7

*Metzler Investment GmbH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008)...............................................................*passim*

*Middlesex Retirement Sys. v. Quest Software Inc.*,
527 F. Supp. 2d 1164 (C.D. Cal. 2007)......................................................5, 6, 21

1

2

## TABLE OF AUTHORITIES
### (continued)

**Page**

3

*Mizzaro v. Home Depot, Inc.,*
__F.3d__, 2008 WL 4498940 (11th Cir. Oct. 8, 2008)......................................13

4

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v.*
*America West Holding Corp.,*
320 F.3d 920 (9th Cir. 2003).............................................................................11

5

6

*Robbins v. Koger Props., Inc.,*
116 F.3d 1441 (11th Cir. 1997)........................................................................17

7

*Rudolph v. UTStarcom, et al.,*
2008 WL 4002855 (N.D. Cal. Aug. 21, 2008).............................................16, 17

8

*South Ferry LP, #2 v. Killinger,*
542 F.3d 776 (9th Cir. 2008)........................................................................3, 10

9

10

*Teachers Ret. Sys. of La. v. Hunter,*
477 F.3d 162 (4th Cir. 2007).......................................................................13, 15

11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
__ U.S. __, 127 S. Ct. 2499 (2007) .................................................................3, 13

12

*Weiss v. Amkor Tech. Inc.,*
527 F. Supp. 2d 938 (D. Ariz. 2007)..................................................................5

13

*Whirlpool Fin. Corp. v. GN Holdings, Inc.,*
873 F. Supp. 111 (N.D. Ill. 1995)......................................................................21

14

15

**STATUTES, RULES AND REGULATIONS**

16

15 U.S.C.

Section 78t .......................................................................................................22

17

Section 78u-4(b) ................................................................................................2

18

Section 78u-4(b)(2) ............................................................................................4

19

28 U.S.C.

Section 1658(b)..............................................................................................2, 9

20

17 C.F.R.

21

Section 230.405 ...............................................................................................21

22

Federal Rules of Civil Procedure

Rule 8...............................................................................................................22

23

Rule 8(a)(2)......................................................................................................15

24

Rule 9(b) .....................................................................................................15, 18

25

Rule 12(b)(6) ................................................................................................7, 22

Private Securities Litigation Reform Act of 1995.....................................2, 3, 4, 11

26

27

28

# TABLE OF AUTHORITIES
## (continued)

**Page**

Securities Exchange Act of 1934
    Section 10(b)..............................................................................*passim*
    Section 20(a).....................................................................2, 20, 21, 22
    Rule 10b-5 ........................................................................2, 6, 18, 20

## OTHER AUTHORITIES

9 LOUIS LOSS & JOEL SELIGMAN, SECURITIES REGULATION 4472 (3d ed.
    1992)...............................................................................................21

1  Defendants Jason L. Carlson and Mohan R. Maheswaran respectfully submit

2  the following reply brief in support of their Motion to Dismiss[1] the Consolidated

3  Amended Class Action Complaint ("CAC").

4  **I.   INTRODUCTION**

5  Plaintiff's wildly irreconciliable admissions and allegations concerning

6  defendants Carlson and Maheswaran make it clear there is no basis for plaintiff's

7  overreaching securities fraud claims.  In its Omnibus Opposition to Defendants'

8  Motions to Dismiss ("Opposition" or "Opp."), plaintiff concedes on the one hand

9  that it was essentially impossible for Carlson (who joined Semtech in October

10  2003) and Maheswaran (who joined Semtech in April 2006) to have participated in

11  any alleged backdating scheme that ended in 2002.  Opp. at 17 n.27; CAC ¶¶ 17-19,

12  161 (last allegedly backdated grant May 7, 2002).  Even the plaintiff's vaunted (but

13  irrelevant) statistical "expert" agrees that options were not intentionally misdated

14  during the CEO tenures of Carlson or Maheswaran.[2]

15  On the other hand, plaintiff posits that Carlson and Maheswaran are

16  somehow still liable under the federal securities laws for the alleged backdating

17  scheme.  As with the CAC, these two individuals are barely visible in the

18  Opposition, and plaintiff attempts to deflect attention from these troubling

19  contradictions by couching its arguments as applying to all "Defendants"

20  collectively, as if by so doing it need not explain the temporal disconnect between

21  the conduct at issue and the tenures of Carlson and Maheswaran or the disparate

22  roles of the various individuals.  Nonsense.  Such non-particularized pleading was

23  _____

24  [1]     The Memorandum Of Points And Authorities In Support Of Motion To Dismiss Consolidated Class Action Complaint By Defendants Jason L. Carlson And Mohan R. Maheswaran is referred to herein as "C&M MTD."

25  [2]     Opp. at 17 n.2 (conceding that grants after SOX was enacted in July 2002

26  were removed from the analysis because the new reporting regulations make it "essentially impossible" to backdate options).  Whether the last "backdated" option

27  allegedly occurred in June 2002 (CAC ¶ 161), July 2002 (Opp. at 17) or August 2002 (CAC ¶ 148), all predated by months or years the tenures of Carlson and

28  Maheswaran.

1

defective even before the passage of the Private Securities Litigation Reform Act of 1995 ("Reform Act").[3]  To state a claim under Section 10(b), plaintiff must, and has failed to, plead specific facts demonstrating that both Carlson and Maheswaran participated in or knew of intentional stock options backdating, and the effect of such backdating on the Company's financial statements.  Not surprisingly, nowhere does plaintiff plead facts establishing such knowledge or responsibility by Maheswaran or Carlson with respect to the option practices at issue, or any option-related accounting determinations relevant to the Company's SEC filings.

Although these deficiencies alone are fatal to plaintiff's action, an independent basis for dismissal is the CAC's failure to show that any purported misrepresentation caused a loss to the putative class.  Moreover, plaintiff concedes the core deficiencies in its reliance allegations by attempting to amend the CAC through the Opposition.  One cannot cure pleading deficiencies, however, by way of motion briefing.  Also, plaintiff's non-pleaded and newly asserted theory that all persons were on notice of purported option backdating at Semtech by May 2005 as a result of Professor Lie's generalized article on CEO Stock Option Awards in the academic journal "*Management Science*" (despite the fact it never mentioned Semtech or any specific company), in a vain attempt to impute "knowledge" to Carlson and Maheswaran, necessarily means that its claim *is time barred* under the two-year statute of limitations governing these securities fraud claims.  28 U.S.C. § 1658(b) (actions under Section 10(b), Rule 10b-5 and Section 20(a) must be brought within two years of discovery).[4]  Finally, plaintiff further fails to offer any basis for sustaining a controlling person claim against Carlson and Maheswaran under Section 20(a), because they were not in control of Semtech at the time of the

---

[3]     15 U.S.C. § 78u-4(b).

[4]     *See also Johnson v. Aljian*, 394 F. Supp. 2d 1184, 1188-89 (C.D. Cal. 2004) (Two-year statute applies to Sections 10(b) and 20(a)).  The initial complaint in this action *Middlesex County Retirement Systems v. Semtech Corp., et al.*, United States District Court for the Southern District of New York, Case No. 1:07-cv-07183-DC was not filed until August 10, 2007.  Opp. at 55.

2

1     alleged backdating scheme, which, according to plaintiff, ended in 2002.  For all of

2     these reasons, the CAC should be dismissed.

3     **II.     THE SECTION 10(b) CAUSE OF ACTION AGAINST CARLSON**

4            **AND MAHESWARAN SHOULD BE DISMISSED**

5          **A.     Whether The Allegations Are Considered Together Or Separately, Plaintiff Fails To Plead A Strong Inference Of Scienter**

6         "To determine whether the plaintiff has alleged facts that give rise to the

7     requisite 'strong inference' of scienter, a court must consider plausible nonculpable

8     explanations for the defendant's conduct, as well as inferences favoring the

9     plaintiff."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, __ U.S. __, 127 S. Ct. 2499,

10    2510 (2007).  The Supreme Court explained that the strength of an inference

11    depends on its particular context.  *Id.*  A complaint will survive a motion to dismiss

12    under the Reform Act "only if a reasonable person would deem the inference of

13    scienter cogent and at least as compelling as any opposing inference one could draw

14    from the facts alleged."  *Id.*  In evaluating the strength of any inference, a

15    complaint's allegations must be considered as a whole.  *South Ferry LP, #2 v.*

16    *Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).

17        Alone, or collectively, the allegations against Carlson and Maheswaran come

18    nowhere close to pleading scienter against either individual.  In arguing that

19    scienter is sufficiently pled as to Carlson and Maheswaran, plaintiff ignores the fact

20    that these two individuals:  (1) could not have granted or overseen the granting of

21    any intentionally backdated options; (2) are not alleged to have received any

22    misdated options; (3) are not alleged to have known of any intentionally misdated

23    options (which were granted months or years before either joined the Company);

24    (4) are not alleged to have known of any potential resulting effect such misdated

25    options could have on the Company's financial statements; and (5) are not alleged

26    to have sold any Semtech stock during the class period.

27        Rather than confront these fundamental contradictions to its theories, plaintiff

28    instead tries to obfuscate by conflating allegations against other individual

1  defendants with Carlson and Maheswaran.  In the Opposition, plaintiff repeatedly

2  lumps all of the defendants together, as opposed to separately addressing the

3  pleading sufficiency as to each defendant.[5]  For example, plaintiff generally claims

4  that the "Defendants" as a group "enjoy[ed] the fruits of their illegal profits" when

5  plaintiff concedes neither Carlson nor Maheswaran received any misdated options,

6  nor sold any stock.  Opp. at 2, 10.  In addition, the plaintiff argues that the

7  "Defendants" collectively "intentionally manipulated grant dates" and had "control

8  over the granting of options at Semtech" when plaintiff admits Carlson and

9  Maheswaran did not grant any allegedly intentionally backdated options, as the last

10  such option was granted prior to their tenures as CEO.  *Id.* at 12, 32, 17 n.27.  This

11  clumsy and disingenuous "group pleading" style of alleging scienter is simply

12  impermissible under the Reform Act.[6]  Even a cursory review of the handful of

13  allegations specific to Carlson and Maheswaran quickly demonstrates that there are

14  no facts establishing any inference of scienter, much less a strong inference.

15
16
   **1.    There Is A Temporal Disconnect Between The Last Grant
          Of The Allegedly Misdated Options And Carlson's And
          Maheswaran's Tenure As CEO**

17  The central premise of the Opposition, that "[b]ackdating, by its nature, is

18  intentional conduct that requires the backdater to review historical trading prices of

19  the company's securities, and then *intentionally* select an opportune date" with "the

20  *specific intent* to hide compensation expenses" (Opp. at 13 (emphasis in original)),

21  is inaccurate.[7]  As a case plaintiff relies upon states:  "[n]ot each and every single

22  _____

[5]    Plaintiff must "with respect to each act or omission … state with particularity
23  facts giving rise to a strong inference" that *each defendant* acted with intent to
    defraud or with deliberate recklessness.  *See* 15 U.S.C. § 78u-4(b)(2); *In re Silicon
24  Graphics Inc. Sec. Litig.*, 183 F.3d 970, 979 (9th Cir. 1999) (complaint must
    establish that each defendant acted with deliberate or conscious recklessness).

25  [6]    *See, e.g., In re Amgen, Inc. Sec. Litig.*, 544 F. Supp. 2d 1009 (C.D. Cal.
    2008) (group pleading did not survive the Reform Act).  *See* additional authorities
26  cited in C&M MTD at 15-16.

27  [7]    Six separate and distinct categories of Semtech stock option grants are
    discussed in the Form 10-K/A.  CAC ¶ 148; RJN, Exh. I at p.65-68.  The first two
28  categories of stock option grants identified by the Special Committee, "(A) Grants
    made by Former Chief Executive Officer John D. Poe ("Former CEO") from April

4

instance where a company has chosen the wrong measurement date is necessarily a
case of backdating.  Use of an incorrect measurement date for stock options could
be the result of innocent but sloppy accounting practices rather than a fraudulent
effort to retrospectively change grant dates." *In re Zoran Corp. Deriv. Litig.*, 511
F. Supp. 2d 986, 1004 (N.D. Cal. 2007) (citing the Office of the Chief Accountant
of the Securities and Exchange Commission, Sept. 9, 2006).  So as opposed to
simply asserting that backdating options "by its nature" is fraudulent, the plaintiff
must allege specific facts which demonstrate that Carlson or Maheswaran knew or
should have known of the misdated options *and* that certain options granted prior to
their respective tenure as CEO were intentionally misdated *and* they knew of the
effect of the misdating on the financial statements.  Plaintiff has not, and cannot,
meet this standard for Carlson and Maheswaran since they joined well after the last
alleged misdated option was issued. *See Middlesex Retirement Sys. v. Quest
Software Inc.*, 527 F. Supp. 2d 1164, 1191 (C.D. Cal. 2007); *see also Weiss v.
Amkor Tech. Inc.*, 527 F. Supp. 2d 938, 949 (D. Ariz. 2007) (no factual link could
be made between improperly backdated options and certain defendants because
those defendants were not even executives at the time of the grants).

In *Quest Software*, each of the individual defendants was employed by and
worked for the company at the time of the underlying activities leading to the
alleged fraud in that case, with the exception of one individual defendant. *Id.* at

---

1997 to May 2002 to continuing employees" and "(B) Grants to new employees,"
which concern "grant practices to new hires from April 1997 to August 2002,"
***predate*** Carlson and Maheswaran joining the Company.  Thus, these two categories
of allegedly misdated grants cannot implicate either individual.  Although the range
of dates involved in the remaining four categories is not clearly specified, the
Special Committee attributed the incorrect dating of three of the remaining four
stock option grant categories ("(C) Grant lacking evidence of Compensation
Committee approval"; "(D) Grants modified after ratification by the Compensation
Committee"; and "(F) Pricing exceptions") to "administrative issues" or
"administrative errors." *See* CAC ¶ 148.  As to the last stock option grant category
("(E) Post-termination arrangements"), the Special Committee was neutral on the
cause of the incorrect dating. *Id.*  Thus, there is nothing in the Form 10-K/A that
supports any claim that Defendants Carlson or Maheswaran knew of, or
participated in, any misdating of Semtech stock options.

1190-91.  The *Quest Software* court found the allegations against that individual

defendant **insufficient** due to the fact that he joined Quest **after** the last stock option

backdating event occurred, and that an "extended period of time" between the

individual joining the company and the last alleged backdating event made it

"unlikely that [he] knew of the backdating practices that had taken place a year and

a half before his arrival…."  *Id.* at 1191 (dismissing Section 10(b)/Rule 10b-5

claims against an individual defendant who joined the company after the alleged

backdating had ceased).

The result should be no different here.  Similar to *Quest Software*, Carlson

and Maheswaran both joined the Company well **after** the last of the option grants

alleged to be intentionally backdated were issued. *See*, *e.g.*, CAC ¶¶ 18 (Carlson

served as CEO and director beginning in October 2003), 17, 19 (Maheswaran

served as CEO and director beginning in April 2006), 142-150 (identifying alleged

backdated option grants in the time period 1997 through 2002).  There are no facts

alleged in the CAC to show that either Carlson or Maheswaran knew of any alleged

backdating that took place prior to their joining Semtech.  As with *Quest Software*,

the temporal disconnect between the complained of activity and Carlson and

Maheswaran's tenure with Semtech mandates dismissal.

### 2.     The May 2005 Article By Professor Lie Did Not Put Either Carlson Or Maheswaran On "Notice" Of Any Misdated Options At Semtech

Plaintiff's attempt to bridge this temporal chasm (between the last grant date

of the allegedly intentionally misdated options in August 2002, and Carlson and

Maheswaran joining Semtech in October 2003 and April 2006, respectively) does

not even pass the "red face test."  In the two scant paragraphs (of its 59-page

Opposition) devoted to supporting the scienter allegations against Carlson and

Maheswaran, plaintiff, for the first time, argues that they were on "notice" of the

alleged historical backdating.  Opp. at 27-28.  Plaintiff improbably cites a May

2005 article written by Professor Eric Lie for the journal *Management Science* to

6

1   argue that it would be "unreasonable" to suggest that neither Carlson nor

2   Masheswaran (or the investing public, apparently) were aware of the misdated

3   options when they signed the Company's public filings and attendant SOX

4   certifications a year or more after the last allegedly intentionally backdated option

5   was granted.  Opp. at 27-28.

6          As a threshold matter, this article was not pled in the CAC and should not be

7   considered in ruling on the pending C&M MTD.  *See In re Turbodyne Techs, Inc.*

8   *Sec. Litig.*, 2002 U.S. Dist. LEXIS 25738, at *36 (C.D. Cal. Mar. 13, 2002) (in

9   deciding motion to dismiss, court cannot consider facts asserted in plaintiff's

10  opposition brief); *see also Lee v. County of Los Angeles*, 250 F.3d 668, 688 (9th

11  Cir. 2001) ("as a general rule, 'a district court may not consider any material

12  beyond the pleadings in ruling on a 12(b)(6) motion.'") (citing *Branch v. Tunnell*,

13  14 F.3d 449, 453 (9th Cir. 1994)).  The CAC only alleges that an unnamed

14  "professor of finance" conducted "an analysis of Semtech's incentive stock option

15  grants between 1994 and 2007, based upon information available to Lead

16  Plaintiffs."  CAC ¶ 154.  Nowhere in the CAC does plaintiff name this professor,

17  identify this 2005 article, or allege that such an article could have put either Carlson

18  or Maheswaran on "notice" of any alleged improper backdating or the effect of

19  such backdating on the Company's earnings per share ("EPS").

20         Even if, however, the Lie article and notice "theory" were properly pled in

21  the CAC, it is ridiculous to suggest that the article provides "notice" to either

22  Carlson or Maheswaran of any alleged stock option backdating at Semtech.

23  (Maheswaran did not even join Semtech until almost a year after the article was

24  published.)  Plaintiff offers no explanation as to how or why Carlson and

25  Maheswaran should have even known about the magazine itself (*Management*

26  *Science* is not Forbes, Time or Business Week),[8] let alone have seen the article.

27  _____

[8]        According to the *Institute for Operations Research and the Management*
28  *Sciences* ("INFORMS"), the organization which publishes *Management Science*,
    the greatest circulation for any publication in the fields of operations research and

More importantly, Semtech is not even mentioned anywhere in the article – in fact, no specific corporation is named as being part of the "study."  Lead Plaintiff's RJN, Ex. 10.  Indeed, Professor Lie concedes in his article that "although I show aggregate evidence that retroactive timing occurs, it is difficult, if not impossible, to prove that such timing takes place in individual cases."  *Id.* at 68.  Plaintiff's attenuated theory that an article in an obscure journal which fails to mention any company by name should have put Carlson and Maheswaran on notice of activities which occurred before they assumed their positions as CEO of Semtech is absurd.[9]

Finally, plaintiff's argument in its Opposition that this 2005 article "uncorked [the] backdating scandals" (Opp. at 27) is also contradicted by the allegations in the CAC.  The CAC asserts that the so-called backdating "scheme" "began to unravel

---

the management science is 13,000 readers worldwide.  *See* http://lionhrtpub.com/adinfo/mediakits/ormsad.html (last visited October 31, 2008).

[9]      Professor Lie and this 2005 article appear, for the first time, in the Opposition.  The CAC is limited to allegations of a purported "statistical analysis" alleged to show intentional backdating of options by Semtech conducted by an unnamed "professor of finance" who authored several unidentified "articles on the subject of options manipulation."  *Compare* CAC ¶ 154 with Opp. at 16 n.26 (identifying Professor Lie and claiming, without support, that he is using "proven methods of statistical analysis of potentially backdated grants").  There is no indication in the CAC that this author is qualified to develop and implement a model to detect allegedly backdated options, whether the method used in the CAC had ever been used before, had been peer reviewed or had any indicia of reliability.  As such this court should not give any credence to the vague and opaque "findings" by this professor.  *See In re CNET Networks, Inc., Deriv. Litig.*, 483 F. Supp. 2d 947, 958 (N.D. Cal. 2007) (refusing to draw any inferences from a statistical analysis of allegedly backdated options where plaintiffs failed to plead "where their method came from, whether it was used by anyone else, or whether it was peer-reviewed or bore other indicia of academic approval").

Furthermore, plaintiff's reliance on the statistical analysis in the CAC is irrelevant to its allegations against Carlson and Maheswaran.  Opp. at 15-18.  Semtech's Form 10-K/A has explained that certain stock options were misdated.  Yet the Form 10-K/A also makes clear, and plaintiff concedes, that the allegedly intentionally backdated options grants ceased before either Carlson or Maheswaran assumed their position as Semtech's CEO.  Opp. at 17 n.27; CAC ¶ 161 (charts reflecting grants through June 2002); CAC ¶ 148 (Form 10-K/A's recitation of the Special Committee's finding that any "intentional" conduct ended in August 2002).  Neither of these defendants played any role whatsoever in the granting or oversight of any allegedly intentionally backdated options.  Thus, the statistical analysis designed to show the deliberate nature of the misdating does not bolster any inference of scienter as to Carlson and Maheswaran.

when, on May 16, 2006, the Center for Financial Research and analysis ("CFRA") published a research report on stock option backdating that listed Semtech as a company at risk for such practices."  CAC ¶ 7.  That is approximately one year after the publication of the May 2005 article by Professor Lie.  If, as plaintiff now argues, the May 2005 article truly provided public notice and "uncorked [the] backdating scandals," then plaintiff's claims are clearly time-barred by the two-year statute of limitations governing its claims, which were not initiated until August 2007.  28 U.S.C. § 1658(b); *see also In re Quest Communications Int'l, Inc. Sec. Litig.*, 387 F. Supp. 2d 1130, 1141-42 (D. Col. 2005) (securities fraud claims barred if brought later than two years from discovery).

### 3.    Failure To Follow GAAP Does Not Support A Strong Inference Of Scienter

Given the utter lack of involvement by Carlson and Maheswaran in the grant process or related accounting decisions during the relevant time frame, neither the "magnitude" of the restatement nor alleged violations of GAAP bear any relevance to those individuals.  Opp. at 30-31.  Tellingly, plaintiff ignores this disconnect again and advances the generic GAAP violation argument as to all "Defendants" collectively.  *Id*.  Once more, plaintiff offers no facts to suggest that either Carlson or Maheswaran knew or even suspected that the stock options granted prior to their joining Semtech were misdated.  Nor is there any allegation tying any (non-existent) knowledge of misdated stock options to any GAAP violations and their effect on the Company's financial statements.  *See Metzler Investment GmbH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1069 (9th Cir. 2008) (failure to raise a strong inference of scienter where the allegations fail to tie GAAP violations to the general theory of fraud); *In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240 (8th Cir. 2008) (opposing inference of non-fraudulent intent was more compelling where no facts about the contemporaneous knowledge of GAAP violations alleged – "[a]llegations that accounting errors were discovered months and years later do not

9

give rise to a strong inference that the [SOX] certifications were knowingly false when made").  Recognizing that stock options can be misdated for a variety of non-fraudulent reasons, as acknowledged by *Zoran*,[10] it is clear that the alleged GAAP violations offer no basis to infer scienter as to Carlson and Maheswaran.

### 4.    Carlson's And Maheswaran's Positions At The Company Do Not Support A Strong Inference Of Scienter

Plaintiff's scienter argument against Carlson and Maheswaran essentially boils down to mere reliance on their positions as CEO of Semtech.[11]  Yet the argument that scienter may be inferred because, "where the information at issue was critical to the company's core business, those in positions of responsibility and authority may be presumed to have knowledge of it" is misplaced and again ignores the post-2002 timeframe of their respective tenures at the Company.  Opp. at 32. *See In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1158 (C.D. Cal. 2007) (allegations of intentional backdating dismissed based in part because "the high rank" of various Individual Defendants was insufficient to infer a strong inference of scienter).

Moreover, plaintiff also grossly overstates the case law upon which it relies. In *Applied Signal*, the court found that the company's maintenance problems and the government's investigation into them were so important that it would be "absurd" for the Board of Directors not to know of the problems.  *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 988 (9th Cir. 2008).  Recently the Ninth Circuit has clarified that instances of mere "core operation" allegations satisfying the scienter requirement were exceedingly rare.  *South Ferry*, 542 F.3d at *5 n.3 (observing that the *Applied Signal* falls into the "exceeding rare" category of cases

---

[10]    *Zoran*, 511 F. Supp. 2d at 1003-04 (acknowledging, *inter alia*, the inherent subjectivity of applying APB 25 to the accounting of stock options); *see also* C&M MTD 6-7, 12.

[11]    Plaintiff concedes that its lone confidential "witness" bears no relevance to its allegations against Carlson and Maheswaran.  Opp. at 9.

1    where core operations would be sufficient under the Reform Act).[12]  This is not

2    such a case.  Granting stock options is an incidental compensation function of

3    virtually all public companies, not part of Semtech's "core business," nor is the

4    accounting for such options.  Semtech's business is as the "leading supplier of

5    analog and mixed-signal semiconductor products."  CAC ¶ 16.  Plaintiff offers no

6    precedent for the proposition that granting options, even where motivated to find

7    and retain employees, or the accounting for such options, constitutes a core

8    business operation.  To the contrary, this same argument has been rejected by this

9    Court in *Hansen* and also by the Northern District in *In re Juniper Networks, Inc.*

10   *Sec. Litig.*, 542 F. Supp. 2d 1037 (N.D. Cal. 2008).  *See Hansen*, 527 F. Supp. at

11   1158; *Juniper Networks*, 542 F. Supp. 2d at 1047 ("In the option backdating

12   context, allegations that a defendant holds a high executive position, without more,

13   do not support a strong inference of scienter.").

14          Plaintiff offers no additional facts other than Carlson's and Maheswaran's

15   titles from which to infer any knowledge of misdated options.  In fact, after

16   introducing Maheswaran and Carlson and their respective positions with the

17   Company, the only facts alleged specifically about either individual are that they

18   signed certain SEC filings and owned stock in the Company.  CAC ¶¶ 18, 19, 80,

19   84, 86, 90, 91, 94, 95, 99, 100, 103, 105, 109, 110, 114, 115, 123, 125, 188.  After

20   paragraph 22, Carlson is mentioned only 17 times over the remaining 130 pages,

21   and Maheswaran is mentioned only 3 times.  *Id.* at ¶¶ 24, 80, 84, 86, 90-91, 94-95,

---

[12]    The cases cited by plaintiff do not support the proposition that "core
operations" allegations without more satisfy the Reform Act's scienter pleading
standard.  *See In re LDK Solar Sec. Litig.*, 2008 U.S. Dist. LEXIS 42425 at *37-38
(N.D. Cal. May 29, 2008) (allegations of internal documents and telephone calls
which allegedly "notified [defendants] of the purportedly improper accounting
during the time of the misleading statements" sufficient); *In re Northpoint
Commc'ns Grp., Inc., Sec. Litig.*, 221 F. Supp. 2d 1090, 1104 (N.D. Cal. 2002)
(scienter allegations included confidential witness accounts and internal
documentation); *No. 84 Employer-Teamster Joint Council Pension Trust Fund v.
America West Holding Corp.*, 320 F.3d 920 (9th Cir. 2003) (allegations of
attendance at board and committee meeting coupled with additional scienter
allegations gave rise to inference of scienter).

99-100, 103, 105, 109-110, 114-115, 188.  Maheswaran, who joined Semtech in April 2006, had only been with the Company a few weeks before signing the 2006 Form 10-K, the only financial statement plaintiff alleges was false during his tenure.  *See* CAC ¶ 123 (2006 10-K was signed on April 14, 2006).  The complete lack of additional corroborating allegations distinguishes the cases plaintiff relies upon to demonstrate scienter.[13]

Again, neither Carlson nor Maheswaran joined Semtech until after the last of the allegedly backdated options had been granted in 2002.  CAC ¶¶ 18, 19, 22, 24; Opp. at 1 n.2, 17 n.27.  They did not provide "oversight" of the granting of these options.  They did not receive any of these options.  They merely signed financial statements and SOX certifications.  Plaintiff has failed to provide any basis for questioning their good faith belief in the accuracy of these financial statements or the underlying accountancy of the stock options the Company granted months or years before either individual joined Semtech.

### 5.   Absence Of Alleged Stock Sales By Carlson And Maheswaran Negates Scienter

Finally, undermining plaintiff's scienter argument is the simple fact that neither Carlson nor Maheswaran are alleged to have received any misdated options and neither is alleged to have sold any shares of Semtech stock.  CAC ¶¶ 40, 191; Opp. at 28.  The failure to sell stock to take advantage of the supposed "scheme" to artificially inflate the stock price undermines the theory that either defendant participated in such a scheme and actually negates any inference of scienter.  *See Corinthian Colleges*, 540 F.3d at 1067 (failure to sell stock "suggest[s] that there

---

[13]   In *Juniper Networks*, the CEO and CFO were alleged to have been in a position of oversight of the granting of the options and so knew or were reckless in not knowing that the options were being granted inconsistent with the representations in the financial documents. *Juniper Networks*, 542 F. Supp. 2d at 1048.  Likewise, plaintiff's reliance on *Zoran* to support scienter is misplaced. Opp. at 28.  In *Zoran*, the Court found that detailed allegations of the officer defendants' direct involvement in the options process, including that they "gave approval to options grants and oversaw the options-granting process" were sufficient to state a claim. *Zoran*, 511 F. Supp. 2d at 1013.

was no insider information from which to benefit."); *Mizzaro v. Home Depot, Inc.*, __F.3d__, 2008 WL 4498940, *20 (11th Cir. Oct. 8, 2008) (under *Tellabs* the fact that no suspicious stock sales are alleged "weighs against inferring scienter").

### B.   Plaintiff Fails To Plead Loss Causation

#### 1.   Loss Causation Is Properly Considered On A Motion To Dismiss

Loss causation is an element of a claim under Section 10(b) that must be properly pled in a complaint for the complaint to survive a motion to dismiss. Contrary to plaintiff's argument, allegations of loss causation must be addressed by the court at the pleading stage. *Dura Pharms. v. Broudo*, 544 U.S. 336, 346 (2005); *see also Teachers Ret. Sys. of La. v. Hunter*, 477 F.3d 162, 185 (4th Cir. 2007) ("Because the PSLRA explicitly requires that the plaintiff *prove* loss causation, the general rules of pleading require that the plaintiff also *plead* it in its complaint.") (emphasis in original).  As the plaintiff failed to allege the occurrence within the putative class period of corrective disclosures relating to the net income and EPS figures, plaintiff has also failed to plead loss causation.

#### 2.   Plaintiff's Loss Causation Allegations Are Insufficient As A Matter Of Law

##### a.   There Was No Alleged Class Period Disclosure Sufficient To Demonstrate Loss Causation

One of the critical weaknesses of the CAC is that plaintiff fails to allege any corrective disclosures ***within*** the class period that relate to the matters which allegedly inflated the stock price – the Company's EPS and net income.  C&M MTD at 17-21.  In order to sufficiently plead loss causation, the plaintiff must allege a disclosure of the purported fraud, which then impacted the Company's stock price. *See Corinthian Colleges*, 540 F.3d at 1062-63.

In *Corinthian Colleges*, the Ninth Circuit held that the plaintiffs were unable to adequately plead loss causation where the disclosures identified by the plaintiffs did not disclose to the market the fraud of which plaintiffs complained.  *Id*. at 1062-

13

63.  The plaintiffs in that case tried to connect a decline in stock price and the

disclosure of a Department of Education investigation, as well as an earnings

announcement.  *Id*. at 1062.  Because neither of those public announcements related

to the alleged fraud (a manipulation of enrollment figures to induce increased

federal funding to the defendant school), the Ninth Circuit dismissed plaintiffs'

complaint for failing to plead loss causation.  *Id*. at 1062-63.

Similarly, this Court should dismiss the CAC, as plaintiff fails to identify any

statement during the putative class period that reveals the alleged fraud of which the

plaintiff complains – the misrepresented net income and EPS figures.  C&M MTD

at 17-19.  "[N]either *Dura* nor *Daou* support the notion that loss causation is pled

where a defendant's disclosure reveals a 'risk' or 'potential' for widespread

fraudulent conduct."  *Corinthian Colleges*, 540 F.3d at 1064.  The disclosures

identified by plaintiff (announcements of government and internal investigations,

delisting notices, etc.) do not appear to do anything more than suggest a "'risk' or

'potential' for widespread fraudulent conduct."  *Id.*  Such disclosures are

insufficient to establish loss causation, especially since those disclosures do not

relate to the underlying alleged misrepresentations.[14]

Plaintiff's undue reliance on *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049

(9th Cir. 2008), does not alter the result here.  Opp. at 37-38, 41.  The *Gilead* court

focused on a fact-specific temporal relationship between a corrective disclosure and

a stock price drop which occurred many months later.  *Gilead*, 536 F.3d at 1058.

That temporal relationship issue is unique to *Gilead* and irrelevant here.  Moreover,

---

[14]    Plaintiff attempts to justify its use of post-class period disclosure as
"confirm[ation]" of loss causation.  Opp. at 43-44.  However, such an analysis
ignores the fact that the only disclosure that plaintiff identifies which refers in any
way to the injuries of which it complains is the July 20, 2006 disclosure.  The cases
that plaintiff cites both deal with multiple partial disclosures that occurred during
the class period, which did begin to reveal the alleged fraud.  *In re Seitel Inc. Sec.
Litig.*, 447 F. Supp. 2d 693, 711-13 (S.D. Tex. 2006); *In re Bristol-Myers Squibb
Sec. Litig.*, No. 00-1990, 2005 U.S. Dist. LEXIS 18448 at *58 (D.N.J. Aug. 17,
2005).  Similar partial disclosures are not present here.

1  *Gilead* did not change the law which requires plaintiffs to allege facts that establish

2  loss causation.[15]  *Dura*, 544 U.S. at 347; *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d

3  1006, 1026 (9th Cir. 2005).  Only if allegations set forth a plausible scenario for

4  loss causation, should a complaint be upheld.[16]  *Gilead*, 536 F.3d at 1057.  Here,

5  however, plaintiff has failed to do so.

6      In *Gilead*, a pharmaceutical company disclosed the receipt of a warning letter

7  from the Food and Drug Administration ("FDA"), indicating that the company was

8  improperly marketing certain pharmaceuticals for off-label uses – a practice

9  prohibited by FDA regulations.  *Id.* at 1052-53.  Not until the company released

10  lower than expected earnings several months later, however, did the company's

11  stock price drop.  *Id.* at 1053-54.  The *Gilead* court held that the plaintiff was able

12  to show alleged loss causation, even with this extended period of time between the

13  first corrective disclosure (the warning letter) and the later stock price drop after the

14  ─────────────
[15]      Plaintiff argues that Federal Civil Rule of Procedure 8(a)(2), rather than Rule

15  9(b), applies to pleading loss causation; however, neither the Supreme Court nor the
Ninth Circuit has ruled on that issue.  *See e.g.*, *Gilead*, 536 F.3d at 1056 (refusing to

16  decide the issue of whether Rule 8(a)(2) or Rule 9(b) applies to pleading loss
causation); *Hunter*, 477 F.3d at 185-86 ("Neither the PSLRA nor the Supreme

17  Court has established whether loss causation is a sufficient part of an 'averment of
fraud' to fall within the requirements of Federal Rule of Civil Procedure 9(b).").

18  Because a claim under Section 10(b) sounds in fraud, each element – including loss
causation – should be pled with the particularity required by Rule 9(b).  Regardless,

19  plaintiff fails to meet even the lower burden under Rule 8(a)(2), as none of the class
period disclosures identified by plaintiff relate to the underlying injury.  *See, e.g.*,

20  *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 560 F. Supp. 2d 1221,
1243-44 (M.D. Fla. 2008) (finding allegations of loss causation insufficient even

21  under the more relaxed pleading standards of Rule 8(a)(2)).
[16]      Holdings on loss causation are fact-specific.  *Gilead*, 536 F.3d at 1058

22  ("courts must engage in a 'fact-specific inquiry'").  Courts examining backdating
cases continue to come out on both sides of the loss causation argument, taking

23  each case on its individual facts.  *Compare Corinthian Colleges*, 540 F.3d at 1062-
63 (finding plaintiffs failed to plead loss causation); *Catogas v. Cyberonics, Inc.*,

24  2008 WL 4158923, *4-*5 (5th Cir. Sept. 8, 2008) (finding that plaintiffs failed to
plead loss causation because disclosures relating to stock option accounting did not

25  "significantly" affect the stock price); *Jabil Circuit*, 560 F. Supp. 2d at 1221
(examining alleged disclosures and stock price movement and finding that plaintiffs

26  failed to adequately plead loss causation) *with In re Take-Two Interactive Sec.
Litig.*, 551 F. Supp. 2d 247, 282-83 (S.D.N.Y. 2008) (finding that plaintiffs

27  adequately pled loss causation as to only one of the disclosures it identified, while
holding that the disclosure of a receipt of a government subpoena was insufficient

28  to establish loss causation).

1    earnings release, because the implications of the FDA warning letter were not
2    properly absorbed or understood by the market and the public. *Id.* at 1058.
3    Because of the ***complexity*** of the FDA warning letter and the implications that letter
4    had on the suitability of the pharmaceuticals at issue, the court reasoned that only
5    prescribing doctors – and not the investing public – understood the implications of
6    the warning letter from the FDA. *Id.* The court reasoned that the investing public
7    fully absorbed the impact of the FDA warning letter only when the company
8    released its lower earnings, due to a lower prescription rate by doctors. *Id.*

9          The complex issues unique to *Gilead* are not present here. None of
10   Semtech's disclosures identified by plaintiff involve any matter too complex for the
11   investing public to understand. Indeed, dozens of companies made similar
12   announcements of option–related investigations in the 2006 time frame. Glass,
13   Lewis & Co., LLC, "Yellow Card Trend Alert," Appendix A, available at
14   http://www.corporatecrimereporter.com/documents/glasslewis.pdf (last visited
15   November 3, 2008) ("At least 257 companies have announced internal reviews,
16   SEC inquiries, or Justice Department subpoenas related to their historial stock-
17   option grants. … (List as of March 26, 2007.)"). Semtech disclosed each
18   government inquiry that it received; it announced the anticipated delisting notice
19   and the actual delisting notice received from NASDAQ; and it announced both
20   internal investigations that it voluntarily initiated to assess its historical stock option
21   granting practices and related accounting. CAC ¶¶ 127-30; Opp. at 39. None of
22   these class period disclosures relied upon by plaintiff related to the EPS and net
23   income figures. *See* C&M MTD at 17-20.[17]

24   _____
     [17]    The plaintiff's reliance on *Rudolph v. UTStarcom, et al.*, 2008 WL 4002855
25   (N.D. Cal. Aug. 21, 2008) ("*Rudolph II*"), as support for its loss causation argument
     is misplaced. See Opp. at 37-38 n.49. As the discussion of *Gilead* makes clear, the
26   *Rudolph II* court stretched the holding in *Gilead* too far. In addition, unlike the
     allegations in *Rudolph II*, Semtech stock price did not drop significantly following
27   any of the options-related announcements. *Compare Rudolph II*, 2008 WL
     4002855, at *4 (noting stock drop of 9% from $10.23 to $9.32 after the
28   announcement of the internal investigation) *with* Carlson and Maheswaran MTD at
     17-19 (Semtech stock price hardly moved after the various announcements and, in

### b.      Disclosures Made After The End Of The Class Period Do Not Establish Loss Causation

Corrective statements after the end of a class period are insufficient to establish loss causation. *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1447 (11th Cir. 1997) (no loss causation where accounting errors that were the subject of plaintiff's fraud claim were revealed after the close of the Class Period); *In re Clearly Canadian Sec. Litig.*, 875 F. Supp. 1410 (N.D. Cal. 1995). This common sense principle applies because if the "truth" is not revealed during the class period, plaintiffs purchasing during the class period could not have suffered any loss. *Dura* 544, U.S. at 342-43 (an inflated purchase price alone will not itself constitute a "relevant economic loss"). Because the only corrective disclosure relating to the Company's EPS and net income was publicized ***after the end of the class period***, CAC ¶¶ 132-33, plaintiff has not pled any injury to the class members resulting from any related misrepresentations. Without citing any precedent, plaintiff blithely asserts that a post-class period disclosure is adequate for this purpose. Opp. at 41. Plaintiff, however, completely ignores the multiple contrary authorities cited by Carlson and Maheswaran on this issue. C&M MTD at 20-21. Plaintiff thus fails to demonstrate loss causation.

### C.      Carlson And Maheswaran Made No Actionable Misrepresentations

Plaintiff also fails to address the lack of any actionable misrepresentation attributable to Carlson or Maheswaran. *Compare* C&M MTD at 21-22 *with* Opp. at 27-28. Although plaintiff incorrectly argues that their signatures on financial statements support scienter,[18] *see* Section II.A., *supra*, it does not identify any

---

most cases, rose shortly following the announcements). So, even if the class period announcements did "put the market on notice that such [option backdating and adjustments to financials] disclosures might be forthcoming" (*Rudolph II*, 2008 WL 4002855, at *4), the requisite causal connection between the alleged fraud and the injury is still missing. *See Dura*, 544 U.S. at 347; *Daou*, 411 F.3d at 1025. Again, "[t]o 'touch upon' a loss is not to ***cause*** a loss, and it is the latter that the law requires." *Dura*, 544 U.S. at 343.

[18]       *See, e.g.*, *Robbins*, 116 F.3d 1441 (dismissing claims against individual

1   alleged misrepresentation sufficient to state a claim under Section 10(b).  By itself,

2   the signing of a financial statement does not constitute the making of a statement.

3   *See Coates v. Heartland Wireless Commc'ns, Inc.*, 26 F. Supp. 2d 910, 916 (N.D.

4   Tex. 1998).

5   **D.    Plaintiff Has Not Pled The Existence Of An Efficient Market**

6   "Reliance is an essential element of a Rule 10b-5 violation."  *Turbodyne*,

7   2002 U.S. Dist. LEXIS 25738, at *44.  "Rule 9(b) requires that reliance be pled

8   with particularity."  *Id.*  As noted in the C&M MTD, plaintiff attempted to allege

9   reliance in the CAC using two methods:  (1) direct reliance and (2) a presumption

10  of reliance under the fraud-on-the-market theory.  C&M MTD at 22-24.  In its

11  Opposition, plaintiff essentially concedes that it failed to allege direct reliance on

12  any purported misrepresentations, and instead depends solely upon the presumption

13  of reliance under the fraud-on-the-market theory to plead this element.  *See* Opp. at

14  44-47.  In attempting to salvage its reliance element, plaintiff ignores an opinion

15  from Judge Morrow of this Court, misapplies an opinion from Judge Carter of this

16  Court far beyond its holding, and also inappropriately attempts to amend the CAC

17  through the Opposition.

18  The presumption of reliance for allegations of fraud-on-the-market "is

19  available only when a plaintiff alleges that a defendant made material

20  representations or omissions concerning a security that is actively traded in an

21  'efficient market . . . .'"  *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999)

22  (citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 247, 99 L. Ed. 2d 194, 108 S. Ct. 978

23  (1988)).  As explained in the C&M MTD, the existence of an efficient market is

24  determined by review of five factors originally articulated in *Cammer v. Bloom*,

25  711 F. Supp. 1264, 1278, 1286-87 (D. N.J. 1989).  *See* C&M MTD at 22.  This five

26  _____

27  defendants despite the plaintiffs' allegations that the individual defendants signed a
prospectus which contained an alleged material misrepresentation); *In re Harmonic,
Inc., Sec. Litig.*, 2006 WL 3591148 (N.D. Cal. Dec. 11, 2006) (same); *In re Infonet

28  Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080 (C.D. Cal. 2003) (same).

1   factor analysis was reviewed and adopted by this Court in Judge Morrow's decision

2   in *Turbodyne*, 2002 U.S. Dist. LEXIS 25738, at *47-48.

3          In *Turbodyne*, Judge Morrow applied the *Cammer* test to determine the

4   existence of an efficient market and concluded the allegations there were

5   insufficient.  *Id.* at *47-52.  Similar to the allegations in the CAC, the *Turbodyne*

6   plaintiffs claimed that the complaint was sufficient because it alleged "that [the

7   defendant's] stock was actively traded on NASDAQ during the class period; that

8   [the defendant] was actively followed by numerous analysts; that [the defendant]

9   filed periodic reports with the SEC; and that the market promptly responded to both

10  negative and positive news regarding the company."  *Compare id.* at *49 *with* Opp.

11  at 46-47.  Judge Morrow of this Court held such allegations were insufficient.

12  *Turbodyne*, 2002 U.S. Dist. LEXIS 25738, at*53.

13         Although raised and discussed in the C&M MTD, the plaintiff, however,

14  completely ignores *Turbodyne* and instead relies on Judge Carter's earlier decision

15  in *In re 2TheMart.com Sec. Litig.*, 114 F. Supp. 2d 955 (C.D. Cal. 2000), as support

16  for its claim that its efficient market allegations are sufficient.[19]  Opp. at 45-46.

17  Plaintiff's reliance is misplaced.  In *2TheMart*, Judge Carter found that the

18  plaintiffs alleged sufficient facts to "establish the cause and effect relationship

19  described in the fifth factor noted in *Cammer*."  *Id.* at 964.  The plaintiffs in

20  *2TheMart*, however, pled far more details to establish that factor than the plaintiff

21  does in the CAC.  In *2TheMart*, the plaintiffs alleged particular announcements,

22  next day trading price movements, and the "heavy" volume of trading which

23  occurred after the various announcements.  *Id.* at 964-65 (stressing increased

24  trading volume that occurred after the various pled announcements).  Such details

25  _____

26  [19]    Carlson and Maheswaran **never** argued that the C&M MTD should be
    granted because of the plaintiff's failure to prove the existence of an efficient

27  market.  *Compare* C&M MTD at 22-23 *with* Opp. at 45 (emphasis in original).  The
    arguments on this issue went solely to pleading, not proof, standards, and plaintiff

28  simply has failed to plead the existence of an efficient market.

are noticeably absent here – instead, plaintiff lumps price movements over a series of days without any specifics as to how the trading volume increased compared to prior periods. *See* CAC ¶¶ 127-136. In fact, the price movement and actual low volume of trading raise questions concerning the existence of an efficient market (as well as loss causation). *See* C&M MTD at 16-19.

Moreover, the plaintiff has not reconciled the *2TheMart* decision with *Turbodyne*. As noted by Judge Morrow, "reliance [must] be pled with particularity." *Turbodyne*, 2002 U.S. Dist. LEXIS 25738, at *46. In light of that particularity requirement, Judge Morrow concluded that "satisfaction of only one *Cammer* factor is not sufficient as a matter of law to prove the existence of an efficient market." *Id.* at *52. The *Turbodyne* court further noted that an important factor in the efficient market analysis is whether the company is eligible to file a Form S-3. *Id.* Although plaintiff now claims that Semtech was "eligible to file Form S-3s from 1996 through the end of 2006," that allegation is ***nowhere found*** in the CAC and ***cannot be considered*** in ruling on the pending C&M MTD. *Turbodyne*, *supra*, at *36 ("In deciding a motion to dismiss, courts may not 'take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).'") (citations omitted). At the end of the day, plaintiff's allegations in the CAC (*see* CAC ¶ 198; Opp. at 46-47) do not demonstrate the existence of an efficient market, and the result here should be no different from *Turbodyne*.

## III.   THE SECTION 20(a) CAUSE OF ACTION AGAINST CARLSON AND MAHESWARAN SHOULD BE DISMISSED

To establish liability under Section 20(a), a plaintiff must demonstrate: (1) a primary violation of the securities laws, and (2) that the defendant exercised actual control over the primary violator. *Howard v. Everex Sys.*, 228 F.3d 1057, 1065 (9th Cir. 2000).[20] The CAC merely alleges, in group fashion, that "by virtue of their

---

[20]   Because plaintiff fails to state cognizable Section 10(b) and Rule 10b-5 claims against Semtech, the Section 20(a) claims must be dismissed on that ground.

high-level positions" as well as their "supervisory involvement in the day to day operations of the Company" that they should be considered control persons.  CAC ¶¶ 214-215.  Nearly identical allegations, however, in an alleged stock option backdating case have recently been rejected.  *Hansen*, 527 F. Supp. 2d at 1163 (finding similar "boilerplate allegations insufficient to state a claim for control person liability").

The control person claims against Carlson and Maheswaran independently fail because plaintiff does not allege that either individual controlled Semtech at the time of the alleged wrongdoing.  Where the corporation is the primary violator, control person liability attaches "only to a person *who was in control at the time that the liability of the controlled person accrued*, not to someone who later takes control."  *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 873 F. Supp. 111, 120 (N.D. Ill. 1995) (emphasis added) (citing 9 LOUIS LOSS & JOEL SELIGMAN, SECURITIES REGULATION 4472 (3d ed. 1992)); *see also In re Philip Svcs. Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 487 (S.D.N.Y. 2004) (dismissing Section 20(a) claim insofar as it was premised on holding defendants liable for conduct of company which occurred before defendants became directors of the company).[21]

The SEC defines control to be "the possession, direct or indirect, of the power to direct or cause the direction of management and policies of a person, whether through ownership of voting securities, by contract, or otherwise."  17 C.F.R. § 230.405.  Carlson and Maheswaran joined Semtech only months or years after the last alleged instance of backdating in August 2002.  Thus, neither had any control over the "management and policies" employed prior to 2002, and thus this

---

*Heliotrope Gen. Inc. v. Ford Motor Co.*, 189 F.3d 971, 978 (9th Cir. 1999) (because plaintiff failed to show primary liability under the Exchange Act, defendants could not be liable under Section 20(a)).

[21]     Plaintiff's reliance on *Quest Software* (Opp. at 58-59 n.67) is misplaced as that decision did not address the contrary authorities cited herein, but merely assumed Section 20(a) applied.  *See Estate of Magnin v. Comm'r of Internal Revenue*, 184 F.3d 1074, 1077 (9th Cir. 1999) ("when a case assumes a point without discussion, the case does not bind future" courts).

controlling person claim is too speculative to survive even under Rule 8.  *See Bell*
*Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (to survive a Rule
12(b)(6) motion, a complaint must contain factual allegations sufficient to "raise a
right to relief above the speculative level").[22]

## IV.     CONCLUSION

Based upon the foregoing reasons, Carlson and Maheswaran request that the
Court dismiss with prejudice the allegations against them.  Plaintiff has failed to
state a securities fraud or control person claim against these individuals, and its
claims cannot be corrected in good faith by an amended pleading.

DATED:  November 3, 2008            PAUL, HASTINGS, JANOFSKY
                                    & WALKER LLP


                                    By:_____/s/Christopher H. McGrath_____
                                        CHRISTOPHER H. McGRATH

                                    4747 Executive Drive, 12th Floor
                                    San Diego, CA  92121
                                    Telephone:  (858) 458-3000
                                    Facsimile:  (858) 458-3005


                                    Attorneys for Defendants
                                    *Jason L. Carlson and Mohan R. Maheswaran*

LEGAL_US_W # 60154057.3

---

[22]      Section 20(a) itself provides that an alleged controlling person cannot be
liable if that person acted in good faith and did not directly or indirectly induce the
act or acts constituting the violation or cause of action.  15 U.S.C. § 78t.  Plainly,
based upon plaintiff's admission that it would have been "impossible for Carlson
and Maheswaran to have participated in any backdating scheme, they cannot be
liable under Section 20(a).  *See Jablon v. Dean Witter*, 614 F.2d 677, 682 (9th Cir.
1980) (federal securities claim dismissed where affirmative defense apparent from
complaint).