THOMAS A. ZACCARO (SB# 183241)
(thomaszaccaro@paulhastings.com)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
515 South Flower Street, Twenty-Fifth Floor
Los Angeles, CA  90071-2228
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705

CHRISTOPHER H. McGRATH (SB# 149129)
(chrismcgrath@paulhastings.com)
COLLEEN E. HUSCHKE (SB# 191402)
(colleenhuschke@paulhastings.com)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
4747 Executive Drive, 12th Floor
San Diego, CA  92121
Telephone:  (858) 458-3000
Facsimile:  (858) 458-3005

EDWARD HAN (SB# 196924)
(edwardhan@paulhastings.com)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
55 Second Street, Twenty-Fourth Floor
San Francisco, CA  94105-3441
Telephone:  (415) 856-7000
Facsimile:  (415) 856-7100

Attorneys for Defendants
*Semtech Corporation*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IN RE SEMTECH CORPORATION SECURITIES LITIGATION | CASE NO.  2:07-CV-07114-CAS(FMOx) **REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT BY DEFENDANT SEMTECH CORPORATION** Date:         December 8, 2008 Time:         10:00 a.m. Ctrm.:        5, 2nd Floor Judge:       Hon. Christina A. Snyder |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   PLAINTIFF HAS NO STANDING TO PURSUE THESE
      DERIVATIVE ALLEGATIONS ........................................................ 4

      A.    Semtech Suffered Any Underlying Injury From Option
            Backdating ............................................................................. 4

      B.    Semtech Would Receive The Benefit Of Any Potential
            Recovery Based On Option Backdating Claims ..................... 7

III.  PLAINTIFF FAILS TO SUFFICIENTLY PLEAD A CAUSE OF
      ACTION AGAINST SEMTECH ....................................................... 7

IV.   CONCLUSION ................................................................................. 9

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>CASES</u>

*Estate of Magnin v. Comm'r of Internal Revenue*,
184 F.3d 1074 (9th Cir. 1999)................................................................3

*Feder v. Electronic Data Systems Corp.*,
429 F.3d 125 (5th Cir. 2005).................................................................8

*Hayes v. Gross*,
982 F.2d 104 (3d Cir. 1992) ..................................................................5

*In re Apple Computer, Inc. Sec. Litig.*,
243 F. Supp. 2d 1012 (N.D. Cal. 2002)................................................8

*In re Brocade Sec. Litig.*,
No. 05-2042 (N.D. Cal. Aug. 27, 2007) ...............................................6

*In re Brooks Automation, Inc. Sec. Litig.*,
2007 WL 4754051 (D. Mass. Nov. 6, 2007) ........................................6

*In re ICN Pharms., Inc. Sec. Litig.*,
299 F. Supp. 2d 1055 (C.D. Cal. 2004).................................................9

*In re Juniper Networks, Inc., Sec. Litig.*,
542 F. Supp. 2d 1037 (N.D. Cal. 2008).................................................6

*In re Monster Worldwide, Inc. Sec. Litig.*,
2008 WL 623339 (S.D.N.Y. Mar. 4, 2008) ..........................................6

*In re Openwave Sys. Sec. Litig.*,
528 F. Supp. 2d 236 (S.D.N.Y. 2007)...................................................6

*In re Paincare Holdings Sec. Litig.*,
541 F. Supp. 2d 1283 (M.D. Fla. 2008) ................................................6

*In re Salomon Analyst Metromedia Litig.*,
236 F.R.D. 208 (S.D.N.Y. 2006)...........................................................8

*In re UnitedHealth Group PSLRA Litig.*,
2007 WL 1621456 (D. Minn. June 4, 2007) .........................................6

*In re Vantive Corp. Sec. Litig.*,
283 F.3d 1079 (9th Cir. 2002)...............................................................9

*In re VeriSign, Inc. Options Litig.*,
Case No. 07-CV-085890 (Sup. Ct. Cal. Aug. 1, 2008)........................6

*Rolex Employees Retirement Trust v. Mentor Graphics Corp.*,
136 F.R.D. 658 (D. Or. 1991)................................................................8

*Schuster v. Gardner*,
127 Cal. App. 4th 305 (2005) ................................................................3

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
845 A.2d 1031 (Del. 2004)..........................................................2, 5, 6, 7

*Vogel v. Jobs*,
Case No. 5:06-CV-05208 JF (N.D. Cal. Nov. 14, 2007) .....................6

1

## <u>TABLE OF AUTHORITIES</u>
### (continued)

2

<u>Page</u>

3   *Weiss v. Amkor Tech., Inc.,*
      527 F. Supp. 2d 938 (D. Ariz. 2007) ....................................................... 8

4

5   **<u>STATUTES, RULES AND REGULATIONS</u>**

    15 U.S.C.

6       Section 78u-4(b) ..................................................................................... 3

7   Federal Rules of Civil Procedure

        Rule 12(f) ................................................................................................ 4

8       Rule 23(a)(3) .......................................................................................... 8

9   Securities Exchange Act of 1934

        Section 10(b) ...................................................................................... 3, 7

10  Private Securities Litigation Reform Act of 1995 ................................. 3, 8

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1       Defendant Semtech Corporation ("Semtech" or "Company") respectfully
2   submits the following reply brief in support of its Motion to Dismiss[1] the
3   Consolidated Amended Class Action Complaint ("CAC").

4   ## I.   INTRODUCTION

5       Plaintiff's belatedly filed option backdating-based claims,[2] which are
6   premised on the notion that Semtech inappropriately granted certain options to
7   employees **to purchase stock from Semtech** with an exercise price which was
8   allegedly lower than it should have been, are truly derivative in nature because any
9   alleged injury is necessarily to Semtech, not to the plaintiff.  Consequently, plaintiff
10  has no standing to pursue them as direct claims in this putative class action because
11  they belong solely to Semtech.  It is not a coincidence that numerous derivative
12  actions were filed on Semtech's behalf beginning in May 2006 in both state and
13  federal court asserting claims based on the **same alleged conduct** at issue here.  The
14  actions were ultimately consolidated before this Court as *In re Semtech*
15  *Corporation Derivative Litigation*, Master File No. CV-06-3510-CAS(FMOx), and
16  litigated until a settlement was reached.  This Court granted preliminary approval to
17  this settlement on October 6, 2008.  A final approval hearing is scheduled for
18  January 12, 2009.

19      Plaintiff concedes, as it must, in its Omnibus Opposition to Defendants'
20  Motions to Dismiss ("Opposition" or "Opp.") that whether the plaintiff's claims are
21  direct or derivative in nature is governed by a two-prong analysis.  *See* Opp. at 48.
22  That analysis requires courts to address:  (1) whether the injury was to the
23  corporation or the shareholder; and (2) whether the recovery goes to the corporation

---

24  [1]       The Memorandum Of Points And Authorities In Support Of Motion To
25  Dismiss Consolidated Amended Class Action Complaint By Defendant Semtech
     Corporation is referred to herein as "Semtech MTD."

26  [2]       Plaintiff did not initiate this action until August 2007, **more than fifteen**
27  **months after** potential issues related to Semtech's historic option granting practices
     were purportedly disclosed, and the first derivative complaints were filed in state
28  and federal court against Semtech (as a nominal defendant) and certain of its
     current and former directors and officers in 2006.

or the shareholder.  *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004).  Plainly, any injury arising from any eventual "underpayment" for stock options purchased from the Company is to Semtech, and Semtech would be the proper recipient of any associated recovery.  Thus, the claims are derivative in nature.

In an effort to end-run these basic precepts, plaintiff obfuscates that the "real harm" was not the alleged misconduct in granting options, but misrepresentations by the Company of its earnings per share ("EPS") and net income figures in certain financial statements issued during the putative class period to the "detriment" of shareholders, as a consequence of its failure to recognize certain compensation expenses at the time options were granted.  Opp. at 47-51.  Following an exhaustive investigation and analysis initiated by the Company, these financial statements were ultimately corrected by Semtech in the Company's March 29, 2007 Form 10-K/A for the fiscal year ending January 29, 2006 ("Form 10-K/A").  RJN Exh. I; Semtech MTD at 2-3, 7.  As plaintiff correctly observes, this ultimately resulted in recognition of $91 million in pre-tax adjustments by Semtech.  Opp. at 2.  Significantly, however, the shareholder public and stock markets were so ***underwhelmed*** by the initial disclosure of this $91 million pre-tax charge (reduced to a $62 million charge after corresponding tax benefits were realized)[3] that the stock remained effectively unchanged by this announcement and actually ***increased*** thereafter.  *See* Carlson and Maheswaran MTD at 20-21; RJN Exh. A. (Semtech shares dropped 1 cent from $13.49 to $13.48 after the March 29, 2007 press release, and climbed to $13.71 the next week).[4]  Consequently, plaintiff is utterly unable to demonstrate meaningful injury to shareholders associated with the purported backdating's "effect" on EPS or net income.

---

[3]    Form 10-K/A at 4.

[4]    Significantly, the adjustments had no effect on the Company's cash balances or reported revenues.  Form 10-K/A at 1.

1    Plaintiff's remaining attempt to prop up its lawsuit as a "direct" claim is to

2    report that certain other option backdating cases have been filed in the form of

3    direct claims.  Opp. 50-53 nn.60, 62.  Tellingly, at least 159 companies subjected to

4    lawsuits arising from allegations of option backdating **have been sued in derivative**

5    **fashion** since 2006.[5]  More importantly, the fact that other cases involving stock

6    option granting practices and alleged backdating may have been styled by plaintiffs

7    as direct claims has no bearing on the analysis and does not change the appropriate

8    end result here under the governing standards.[6]  If a putative direct complaint and a

9    derivative complaint contain essentially the same allegations, such that recovery for

10   the same injuries is sought, then an action must be **either** direct **or** derivative.  It

11   cannot be both.  *Schuster v. Gardner*, 127 Cal. App. 4th 305, 312 (2005).

12   Finally, even if plaintiff's lack of standing to pursue a direct claim were

13   ignored, the motion to dismiss should be granted independently because plaintiff

14   has failed to plead the required elements of its securities fraud claims with the

15   specificity required under the heightened pleading standards of the Private

16   Securities Litigation Reform Act of 1995 ("Reform Act")[7] and well-settled

17   controlling precedent.  The CAC lacks sufficient corroborating facts to plead a

18   securities fraud claim against any of the defendants, including Semtech.

19

20

21   [5]    *See* Declaration Of Kimberley A. Donohue In Support Of Reply Brief In

22   Support Of Motion To Dismiss Consolidated Amended Class Action Complaint By Defendant Semtech Corporation.

23   [6]    Plaintiff cites to a number of cases involving stock option granting cases that

24   were brought in both derivative and direct form.  *See* Opp. at 50-53 n.60, 62.  As discussed Section II.A., *infra*, *none of these cases involved any analysis* of a

25   plaintiff's standing to bring a direct claim under Section 10(b) when a parallel case has also been brought derivatively.  The decision by other defendants – for any

26   number of unknown reasons – not to raise the issue does not equate to a decision on the merits of this challenge.  *See, e.g., Estate of Magnin v. Comm'r of Internal*

27   *Revenue*, 184 F.3d 1074, 1077 (9th Cir. 1999) ("[w]hen a case assumes a point without discussion, the case does not bind future" courts).

28   [7]    15 U.S.C. § 78u-4(b).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.     PLAINTIFF HAS NO STANDING TO PURSUE THESE DERIVATIVE ALLEGATIONS

### A.     Semtech Suffered Any Underlying Injury From Option Backdating

No matter how the plaintiff now attempts to spin its allegations, any harm of the alleged backdated stock options was to Semtech.[8]  The vast majority of the CAC is spent discussing Semtech's option plans and the alleged inappropriate historic option granting practices.  *See* Semtech MTD at 7.  The underlying misrepresentations alleged by plaintiff, however, relate solely to the Company's EPS and net income figures.  *Id.*; *see also* Opp. at 49 (noting that the CAC "seeks redress for financial losses sustained by the putative class as a result of Defendants' affirmative misrepresentations *of Semtech's income and expenses*") (emphasis in original).  But there is no sufficiently pled loss or injury to the putative class even relating to those purported misrepresentations.  *See* Reply Brief In Support Of Motion To Dismiss Consolidated Amended Class Action Complaint By Defendants Jason L. Carlson And Mohan R. Maheswaran at 13-16.

In fact, and as noted in the Semtech MTD, the true injury in this case (if any) was the underpayment by stock option recipients for those stock options.  *See* Semtech MTD at 6-8.  Under plaintiff's theory, any purportedly misdated options exercised by those option recipients denied ***the Company*** of its fair consideration for those stock options – ***not*** the plaintiff or shareholders.  *Id.*  Any injury then was to Semtech and Semtech alone.  When a company suffers harm from an alleged

---

[8]     Statements attributed to Arthur Levitt in the CAC (Opp. at 48) are non-relevant hearsay that do not show the class suffered harm and should be stricken under Federal Rule of Civil Procedure 12(f).  Furthermore, plaintiff argues that the other "allegations" which Semtech moved to strike from the CAC "are relevant to whether the Defendants truthfully accounted for stock options, the materiality of these misrepresentations and each Defendant's state of mind."  Opp. at 6 n.10.  Simple logic, however, suggests that statements (1) made by unrelated third parties and (2) which make no mention of Semtech or any of the Individual Defendants, have no bearing whatsoever on the states of mind or accounting practices of the defendants in this case.  These irrelevant, immaterial allegations should be stricken.  *See* Semtech MTD at 11 n.8.

fraud, and where individual shareholders cannot allege the existence of an injury separate from that to the company, the claims are derivative in nature. *Tooley*, 845 A.2d at 1035.

Plaintiff cites to *Hayes v. Gross*, 982 F.2d 104 (3d Cir. 1992), to dispute the Company's argument that the claims are derivative in nature. Opp. at 49. For a number of reasons, *Hayes* is inapplicable here. First, *Hayes* does not involve claims arising from alleged option backdating and so is factually distinguishable. Second, it was decided ***prior*** to *Tooley* – the governing Delaware law on direct versus derivative claims. Third, the Third Circuit based its holding on a speculative reading of Florida state law in a pre-*Tooley* world. Fourth, the court specifically set aside the issue of duplicative recovery for a later date. The issue of duplicative recovery stands at the heart of this issue, *Tooley*, 845 A.2d at 1036, and the fact that the Third Circuit refused to address it as part of the standing analysis only serves to underscore why the analysis in *Hayes* is outdated and inapplicable to these circumstances.

Instead of directly addressing this issue, plaintiff attempts to mask its standing deficiency by jumping in the middle of an option backdating minority. Plaintiff cites to a limited number of other backdating cases that were brought as direct actions as support for its blanket assertion that the allegations in this case must be direct as opposed to derivative. Opp. at 50 n.60, 52 n.62. Such analysis is definitively superficial. Moreover, none of those cited cases supports the plaintiff's position because none even addressed the issue of standing by shareholders to assert a direct claim.[9] *See*, *e.g.*, *In re Brocade Sec. Litig.*, No. 05-2042 (N.D. Cal.

_____

[9] In fact, half of the cases that plaintiff cites were resolved through settlements which therefore never addressed the merits of the allegations in the various complaints, much less the issue of standing. *Grecian v. Meade Instruments Corp.*, No. 06-908, Exh. A-1 at 3 (C.D. Cal. filed Sept. 27, 2006) ("Defendants deny that they are liable to the Lead Plaintiffs or the Class and deny that Lead Plaintiffs or any other member of the Class has suffered any damages."); *In re KLA-Tencor Corp. Sec. Litig.*, No. 06-4065 (N.D. Cal. filed June 29, 2006) (finding that none of the terms of the parties' settlement, or any related documents "shall be construed as an admission or concession by KLA or the Individual Defendants of the truth of

-5-

Aug. 27, 2007) (no challenge to plaintiffs' standing to bring a claim under Section 10(b) was raised in the motion to dismiss); *In re Monster Worldwide, Inc. Sec. Litig.*, 2008 WL 623339 (S.D.N.Y. Mar. 4, 2008) (same); *In re Paincare Holdings Sec. Litig.*, 541 F. Supp. 2d 1283 (M.D. Fla. 2008) (same); *In re Brooks Automation, Inc. Sec. Litig.*, 2007 WL 4754051 (D. Mass. Nov. 6, 2007) (same); *In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236 (S.D.N.Y. 2007) (same); *In re UnitedHealth Group PSLRA Litig.*, 2007 WL 1621456 (D. Minn. June 4, 2007) (same); *In re Juniper Networks, Inc., Sec. Litig.*, 542 F. Supp. 2d 1037 (N.D. Cal. 2008) (same). On the other hand, there have been several options-related cases which were filed as direct actions where the plaintiffs' standings were successfully challenged. *See, e.g., Vogel v. Jobs*, Case No. 5:06-CV-05208 JF (N.D. Cal. Nov. 14, 2007) (option-backdating case styled as purported class action dismissed on grounds that the claims belonged to the company, not individual shareholders in unpublished order); *In re VeriSign, Inc. Options Litig.*, Case No. 07-CV-085890 (Super. Ct. Cal. Aug. 1, 2008) (Santa Clara County) (demurrer sustained to options-backdating claims styled as a class action on grounds claims were derivative in nature).

As Semtech suffered the underlying alleged injury, under *Tooley*, plaintiff lacks standing to pursue its derivative claims. That a limited number of option backdating cases were filed around the country in pleadings styling them as direct

any of the allegations in the Litigation, or of any liability, fault, or wrongdoing of any kind."); *Grasso v. Vitesse Semiconductor Corp.*, No. 2:06-cv-02639-R-CT (C.D. Cal. filed May 1, 2006) (finding that none of the terms of the parties' settlement, or any related documents, amounted to "an admission of, or evidence of, the validity of any [claim], or of any wrongdoing or liability of the [defendants]…"); *In re Wireless Facilities, Inc. Sec. Litig. II*, No. 3:07-cv-00482-NLS (S.D. Cal. filed Mar. 15, 2007) ("liability remains uncertain"); *In re Am. Tower Corp. Sec. Litig.*, No. 06-cv-10933 (MLW) (D. Mass. filed May 26, 2006) (preliminarily approving settlement without addressing the merits of the plaintiffs' complaint); *In re HCC Ins. Holdings, Inc. Sec. Litig.*, No. 4:07-cv-00801 (S.D. Tex. filed Mar. 8, 2007) ("The parties disagree on both liability and damages…."); *In re Newpark Res., Inc. Sec. Litig.*, No 2:06-cv-02150-ML-KWR (E.D. La. filed Apr. 21, 2006) (holding that none of the terms of settlement between the parties should "be construed as an admission or concession by Defendants of the truth of the allegations in the Litigation, or of any liability, fault, or wrongdoing of any kind.").

actions does not change that result here.

### B. Semtech Would Receive The Benefit Of Any Potential Recovery Based On Option Backdating Claims

The plaintiff not only fails to allege a separate injury to the putative class, any recovery for the alleged option-related issues would go to Semtech, satisfying the second prong of the analysis. *Tooley*, 845 A.2d at 1035. As this Court is well aware, in the settlement of virtually identical claims (including for alleged Section 10(b) violations) in the parallel derivative action pending before it, the Company (not the shareholders) is the recipient of "a substantial benefit." *In re Semtech Corp. Derivative Litig.*, Case No. 2:06-cv-03510-CAS-FMO (C.D. Cal.) (filed June 7, 2006) (Order Preliminarily Approving Derivative Settlement). The settlement agreement provided corporate "governance reforms, internal control measures, and equity award procedures and practices," as well as bringing an end to the significant expense and distraction of litigation, all of which benefit the Company as a result of that settlement. *Id.*

As is recognized in the parallel derivative action, and despite the plaintiff's efforts to claim some non-existent direct injury, any recovery for the underlying options-related allegations should go to Semtech. Plaintiff's efforts to twist those allegations into a direct injury based on inflated purchase price ignores the central theme of, and vast majority of the allegations in, the CAC. *See* Semtech MTD at 9-10. Simply put, the plaintiff shareholder is not the proper recipient of any such damages.

### III. PLAINTIFF FAILS TO SUFFICIENTLY PLEAD A CAUSE OF ACTION AGAINST SEMTECH

As demonstrated in the motions to dismiss filed by the individual defendants, and the Company's Motion to Dismiss, plaintiff has failed to sufficiently allege its Section 10(b) cause of action against any of the defendants, including Semtech. [10]

---

[10] Plaintiff makes an argument in a footnote that its post-disclosure purchases of Semtech stock do not create reliance issues. Opp. at 42 n.52. The cases cited by plaintiff, however, all deal with motions for class certification, and not motions to

1    *See* Semtech MTD at 10-13.

2         Again, specifically as to Semtech, "a defendant corporation is deemed to

3    have the requisite scienter for fraud only if the individual corporate officer making

4    the statement has the requisite level of scienter."  *In re Apple Computer, Inc. Sec.*

5    *Litig.*, 243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002).  "The Ninth Circuit has

6    rejected the concept of 'collective scienter' in attributing scienter to a corporation."

7    *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 952 (D. Ariz. 2007).  While

8    plaintiff effectively relies entirely upon the Special Committee conclusions reported

9    in Semtech's Form 10-K/A regarding certain former Semtech executives (Opp. at

10   18-20), courts do not automatically deem such references or characterizations of

11   conduct in such reports as sufficient to satisfy the rigorous pleading standards

12   dictated by the Reform Act.  *See id.* at 956 (holding that a Special Committee's

13   "finding" of misconduct as to former executives did not automatically give rise to

14   securities law claim).

15        Plaintiff's related allegations are also insufficient in that they do not allege

16

17   dismiss.  *Id.*  In addition, the issue of whether post-class period purchases can
     negate reliance is not as clear-cut as the plaintiff would have the Court believe.  *See*

18   *e.g.*, *Rolex Employees Retirement Trust v. Mentor Graphics Corp.*, 136 F.R.D. 658
     (D. Or. 1991) (because Rolex continued to trade in Mentor stock after the

19   misrepresentations, Rolex could not meet Rule 23(a)(3) standards).  The Ninth
     Circuit has not ruled on the issue.  In fact, as plaintiff's own cases recognize, such a

20   factual setting "presents a more difficult issue" with "disagreement among the
     courts regarding whether additional purchases of a company's stock by a putative

21   class representative after the public correction of alleged misrepresentations defeats
     typicality by raising individualized ***issues of reliance***."  *In re Salomon Analyst*

22   *Metromedia Litig.*, 236 F.R.D. 208, 216 (S.D.N.Y. 2006) (emphasis added); *see*
     *also Feder v. Electronic Data Systems Corp.*, 429 F.3d 125, 137 n.9 (5th Cir. 2005)

23   (identifying cases accepting and rejecting typicality defense for proposed class
     representative who made post-disclosure purchases of securities).  Plaintiff has not

24   identified controlling authority, or even any decisions from any District in
     California, where reliance would not be negated by such post-class period

25   purchases in the motion to dismiss stage.  Moreover, although such an analysis in
     the class certification stage involves a fact intensive review of the reasons why such

26   a representative purchased securities after the "truth" was revealed, as plaintiff's
     leading case notes, "[w]hen an investor purchases stock even after learning that

27   issuers and/or analysts have been distorting market information so as to inflate the
     stock's value, it may be reasonable to infer that the investor ***was not relying heavily***

28   on the integrity of the price in the first place."  *Salomon Analyst Metromedia*, 236
     F.R.D. at 217 (emphasis added).

1  contemporaneous knowledge by the Individual Defendants of the accounting

2  consequences of any alleged option backdating, whether intentional or not.  *See In*

3  *re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1090-91 (9th Cir. 2002) (dismissing

4  claim for failure to allege contemporaneous knowledge of accounting consequences

5  resulting from GAAP violations); *In re ICN Pharms., Inc. Sec. Litig.*, 299 F. Supp.

6  2d 1055, 1065 (C.D. Cal. 2004) (dismissing complaint for failure to plead both an

7  accounting violation and "contemporaneous decision-making" to show that

8  defendants understood the accounting consequences).

9  **IV.    CONCLUSION**

10         For the foregoing reasons, the CAC should be dismissed.  Plaintiff lacks

11  standing to assert these derivative claims and should not be permitted to proceed

12  with direct claims.  In addition, the allegations against Semtech are insufficiently

13  pled.

14

15  DATED:  November 3, 2008          PAUL, HASTINGS, JANOFSKY
16                                                        & WALKER LLP

17
                                                   By:_____/s/Christopher H. McGrath_____
18                                                           CHRISTOPHER H. McGRATH

19                                                   4747 Executive Drive, 12th Floor
20                                                   San Diego, CA  92121
                                                     Telephone:  (858) 458-3000
21                                                   Facsimile:  (858) 458-3005

22                                                   Attorneys for Defendant
23                                                   *Semtech Corporation*

24

25

26
    LEGAL_US_W # 60154094.5
27

28