UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|---|---|---|---|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | MARGARET BABYKIN | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Mark Labaton
J. Allen Carney
Eric Brown

Attorneys Present for Defendants:

Christopher McGrath
Thomas Zaccaro
Robert Brownlie
Michael Quinn
Kevin Asfour

**Proceedings:**     **DEFENDANT JOHN POE'S MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** (filed 08/18/08 - Dkt #61)

**DEFENDANT JOHN POE'S MOTION TO DISMISS CASE** (filed 08/18/08 - Dkt #62)

**DEFENDANT DAVID FRANZ, JR.'S MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** (filed 08/18/08 - Dkt #56)

**DEFENDANT JOHN BAUMANN'S MOTION TO DISMISS** (filed 08/18/08 - Dkt #57)

**DEFENDANT SEMTECH CORP'S MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** (filed 08/18/08 - Dkt #59)

**DEFENDANTS JASON CARLSON & MOHAN MAHESWARAN'S MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** (filed 08/18/08 - Dkt #59)

## I.    INTRODUCTION

On March 31, 2008, this Court consolidated related actions and appointed the Mississippi Public Employees' Retirement System as lead plaintiff for a class of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|---|---|---|---|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

purchasers of the securities of defendant Semtech Corp. ("Semtech").  On May 30, 2008, plaintiff filed a consolidated amended class action complaint ("CAC") against defendants Semtech, John D. Poe, Jason L. Carlson, Mohan R. Maheswaran, David G. Franz, Jr., and John M. Baumann.  Plaintiff alleges that Semtech's senior officers engaged in a scheme to backdate Semtech's stock options, the discovery of which negatively impacted the price of Semtech's stock.  CAC ¶¶ 3-10.

Specifically, plaintiff alleges claims for (1) violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b) ("Exchange Act") and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against all defendants; and (2) violation of § 20(a) of the Exchange Act against the individual defendants.  Plaintiff alleges that the defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of Semtech's securities in an effort to maintain artificially high market prices for Semtech's securities.  CAC ¶ 203.

On August 18, 2008, Semtech and individual defendants Baumann, Franz, Poe, Carlson, and Maheswaran filed motions to dismiss the CAC.  On October 6, 2008, plaintiff filed a consolidated opposition to defendants' motions.  On November 3, 2008, defendants filed their respective replies.  The Court held a hearing on December 15, 2008.  After carefully considering the parties' arguments, the Court finds and concludes as follows.

## II.   BACKGROUND

Semtech describes itself as "a leading supplier of analog and mixed signal semiconductor products."  CAC ¶ 16.  Plaintiff alleges that Semtech manipulated the terms of thousands of its stock options to ensure that they were "in the money" when granted and failed to properly account for these options.  Id. ¶¶ 4-6.  Plaintiff identifies sixteen specific option grants, which were issued between January 1994 and May 2002, that it alleges were manipulated.  Id. ¶ 161.  Plaintiff alleges that Poe, Franz, and Baumann each received backdated stock options that were improperly accounted for.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|---|---|---|---|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

Opp'n at 4-5 (citing Plaintiff's RJN Exs 2-8).[1]

Plaintiff alleges that the class period began on August 27, 2002, the day Semtech filed its Form 8-K with the Securities and Exchange Commission ("SEC") and issued a press release announcing its earnings figures for the quarter ending July 28, 2002, which were repeated in Semtech's Form 10-Q for the quarter ending July 28, 2002.  Id. ¶ 56. Plaintiff alleges that the class period ended on July 19, 2006, the day before Semtech (1) filed a Form 8-K with the SEC disclosing that it anticipated recording a material, noncash compensation expense and restating its financial results for fiscal years 2002 through 2006 to correct violations of generally accepted accounting principles ("GAAP") pertaining to stock options granted in fiscal years 1998 to 2003; and (2) issued a press release announcing that it received a delisting notice from the NASDAQ due to the company's failure to timely file its April 30, 2006 Form 10-Q.  Id. ¶ 132.

Plaintiff further alleges that Semtech's July 28, 2002 Form 10-Q was signed by Poe and Franz, chief executive officer and chief financial officer of Semtech, respectively, who certified, pursuant to Sarbanes-Oxley ("SOX"), that the Form 10-Q did "not contain any untrue statement of a material fact, or omit to state a material fact necessary to make the statements made . . . not misleading."  Id. ¶ 58.  Plaintiff further alleges that the statements in the Form 10-Q were materially false and misleading because the options backdating scheme caused Semtech to underreport its expenses and overstate its net income and exposed Semtech to material liabilities.  Id. ¶ 59.

Plaintiff also alleges that the following SEC filings by Semtech, and the related press releases, were false and misleading for the same reasons: (1) Form 10-Q for the quarter ending October 27, 2002; (2) Form 10-K for 2002; (3) Form 10-Q for the quarter ending April 27, 2003; (3) Form 10-Q for the quarter ending July 27, 2003; (4) Form 10-

---

[1] Plaintiff uses exhibits two through eight of its request for judicial notice to argue that Poe received 375,685 backdated options, Franz received 164,446 backdated options, and Baumann received 18,722 backdated options.  However, these exhibits appear to list total number of options that these defendants received and it is unclear how plaintiff reached the conclusion that all of these options were intentionally backdated.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|----------|------------------------|------|-------------------|

| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] |
|-------|------------------------------------------------------------------------------|

Q for the quarter ending October 26, 2003; (5) Form 10-K for 2003; (6) Form 10-Q for the quarter ending April 25, 2004; (7) Form 10-Q for the quarter ending July 25, 2004; (8) Form 10-Q for the quarter ending October 31, 2004; (9) Form 10-K for 2004; (10) Form 10-Q for the quarter ending May 1, 2005; (11) Form 10-Q for the quarter ending July 31, 2005; (12) Form 10-Q for the quarter ending October 30, 2005; and (13) Form 10-K for 2005.

Plaintiff alleges that Poe signed Semtech's SEC filings during the time periods in which he served as CEO: from October 1985 to October 2003 and from September 2005 to April 2006. Id. ¶ 17. Plaintiff further alleges that Carlson signed Semtech's SEC filings while he served as CEO from October 2003 to October 2005. Id. ¶ 18. Plaintiff additionally alleges that Maheswaran has signed all of Semtech's SEC filings since 2006 in his capacity as president, CEO, and director of Semtech. Id. ¶ 19. Plaintiff further alleges that Franz signed all of Semtech's SEC filings during the class period in his capacity as Semtech's vice president of finance and CFO.

Plaintiff alleges that the first indication that Semtech engaged in fraud in reporting its compensation expense and net income came on May 16, 2006, when the Center for Financial Research and Analysis ("CFRA") published a research report listing Semtech as a company "at risk" for improper options backdating practices. CAC ¶¶ 7, 127. Plaintiff further alleges that the CFRA report and the following disclosures by Semtech regarding options backdating negatively impacted its stock price: (1) on May 22, 2006, Semtech issued a press release announcing that the SEC had requested information regarding stock options that it had granted since January 1, 1997, and that it intended to fully cooperate with the SEC inquiry; (2) on June 9, 2006, Semtech filed a Form 12b-25 with the SEC announcing that, in addition to the SEC investigation, it was conducting its own internal review; and (3) on June 14, 2006, Semtech issued a press release announcing that the filing of its April 30, 2006 Form 10-Q would be delayed, that it might be delisted from the NASDAQ, that it had launched its own internal investigation, and that it had received a subpoena from the U.S. Attorney for the Southern District of New York with respect to the production of documents relating to its stock option

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|---|---|---|---|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

practices.[2]  CAC ¶¶ 128-31.

Defendants argue that the price of Semtech's stock responded to these disclosures as follows: (1) on May 16, 2006, Semtech's stock price increased over the prior day's closing price; (2) on May 22, 2006, Semtech's stock price decreased by 4.3%; (3) on June 9, 2006, Semtech's stock price decreased by 0.38%; and (4) on June 14, 2006, Semtech's stock price decreased by 0.07%; on June 20, 2006, Semtech's stock price decreased by 1.75%.  Poe Mot. Ex. P at 261-62.

Plaintiff alleges that following the filing of its Form 8-K on July 19, 2006, Semtech's stock price closed at $12.37, down from the prior day's close of $13.19, and closed at $11.60 on July 21, 2006.  Id. ¶¶ 134-37.  Plaintiff further alleges that Semtech's stock lost 27.73% of its value between May 21, 2006, and July 21, 2006.  Id.  ¶¶ 7-10, 134-36.

Following Semtech's restatement of earnings, beginning in May 2006, derivative actions were filed in both state and federal court, including the consolidated case In re Semtech Corporation Derivative Litigation, Master File No. CV 06-3510 CAS (FMOx), which is currently pending before this Court.[3]

Plaintiff alleges that on March 29, 2007, Semtech filed a Form 10-K/A with the SEC which disclosed the extent of the options backdating scheme and the findings of a Special Committee appointed by Semtech.  Id. ¶ 141.  Plaintiff further alleges that the Form 10-K/A revealed over 2,000 stock option manipulations that resulted in $91 million in inflated income.  Id.  Plaintiff alleges that had these backdated options been properly accounted for, Semtech would have recognized additional expenses of $36.4 million, $13.4 million, $9.2 million, $5.6 million, and $1.5 million for fiscal years 2002 through

---

[2] While not discussed in either parties' briefs, it appears that the investigation of the U.S. Attorney did not result in any formal charges.

[3] The parties to that derivative action have reached a proposed settlement, which this Court preliminarily approved on October 6, 2008.  A final approval hearing is scheduled for January 12, 2009.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|----------|----------------------|------|-------------------|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

2006, respectively. Opp'n at 8. Plaintiff further alleges that the Special Committee, appointed by the board of directors in response to the companion derivative litigation against the company, found that (1) Poe, as CEO of Semtech, intentionally manipulated stock options and (2) Franz, as CFO of Semtech, and Baumann, as treasurer of Semtech, knew or should have known of the manipulation and initiated or participated in some manipulative acts. Id. ¶ 142. Plaintiff alleges that ultimately, the Special Committee cancelled and rescinded all of the outstanding options held by Poe, cancelled one of Franz's grants, and re-priced the remaining options grants. Opp'n at 9.

Plaintiff has also proffered the account of a confidential witness to corroborate the findings of the Special Committee. CAC ¶¶ 185-86. Plaintiff alleges that the confidential witness, a court reporter and legal secretary responsible for preparing paperwork for Semtech's options grants, stated that Poe and Semtech's human resources personnel ordered her to date stock options using the date of hire instead of the grant date as approved by the board of directors. Id. Additionally, plaintiff has proffered a statistical analysis performed by Professor Erik Lie, allegedly demonstrating that it is statistically impossible that Semtech's option grant dates between 1994 and 2002 were selected without manipulation.[4] CAC ¶¶ 154-61.

Plaintiff further alleges that during the class period (1) Poe sold 812,122 shares of stock for total proceeds of $17,466,467.80; (2) Franz sold 132,000 shares of stock for total proceeds of $2,895,655.00; and (3) Baumann sold 35,000 shares of stock for total proceeds of $728,162.57. Opp'n at 10.

## III.   LEGAL STANDARD

### A.   Fed. R. Civ. P. 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

---

[4] Professor Lie determined that there was a 1 in 35,184,372,088,332 chance that Semtech's option grant dates were selected without manipulation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|---|---|---|---|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

In considering a motion pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). However, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. Sprewell, 266 F.3d at 988; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|---|---|---|---|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

## B.  Fed. R. Civ. P. 9(b)

Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting a claim for fraud be pled with particularity.  Federal Rule of Civil Procedure 9(b) applies not just where a complaint specifically alleges fraud as an essential element of a claim, but also where the claim is "grounded in fraud" or "[sounds] in fraud."  Vess v. Ciba-Geigy Corp. U.S.A., 317 F.3d 1097, 1103-04 (9th Cir. 2003).  A claim is said to be "grounded in fraud" or "'sounds in fraud'" where a plaintiff alleges that defendant engaged in fraudulent conduct and relies on solely on that conduct to prove a claim.  Id.  "In that event, . . . the pleading of that claim as a whole must satisfy the particularity requirement of [Fed. R. Civ. P.] 9(b)."  Id.  However, where a plaintiff alleges claims grounded in fraudulent and non-fraudulent conduct, only the allegations of fraud are subject to heightened pleading requirements.  Id. at 1104.

A pleading is sufficient under Fed. R. Civ. P. 9(b) if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."  Walling v. Beverly Enterprises, 476 F.2d 393, 397 (9th Cir. 1973).  This requires that a false statement must be alleged, and that "circumstances indicating falseness" must be set forth.  In re GlenFed Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994).  Thus, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct alleged."  Vess, 317 F.3d at 1106 (internal quotation marks and citations omitted).  It is not sufficient to merely identify the transaction.  Rather "[t]he plaintiff must set forth what is false or misleading about a statement and why it is false."  Id. (citations omitted).

## C.  Rule 10b-5 Claim

The basic elements of a Rule 10b-5 claim are (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance or "transaction causation"; (5) economic loss; and (6) loss causation or a causal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|---|---|---|---|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

connection between the material misrepresentation and the loss. Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 341-42 (2005).

Notwithstanding the relatively liberal pleading standards in federal courts, federal securities fraud suits are subject to the demanding pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). Enacted by Congress in 1995 to provide "protections to discourage frivolous [securities] litigation," H.R. Conf. Rep. No. 104-369, 104th Cong., 1st Sess. at 32 (Nov. 28, 1995), the PSLRA strengthened the already-heightened pleading requirements of Fed. R. Civ. P. 9(b) applicable to fraud-based claims. Under the PSLRA, private actions based on allegations of material misstatements or omissions must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). In addition, the PSLRA imposes strict requirements for pleading scienter in actions brought pursuant to Section 10(b) and Rule 10b-5, requiring that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

The Ninth Circuit, in interpreting the PSLRA, has held that "a private securities plaintiff proceeding under the [PSLRA] must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." In re Silicon Graphics Inc., 183 F.3d 970, 974 (9th Cir. 1999). In determining whether a plaintiff has sufficiently pled scienter, a court must consider "whether the total of plaintiffs' allegations, even though individually lacking, are sufficient to create a strong inference that defendants acted with deliberate or conscious recklessness." Nursing Home Pension Fund, Local 144 v. Oracle Corp., 380 F.3d 1226, 1230 (9th Cir. 2004) (quoting No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp., 320 F.3d 920, 938 (9th Cir. 2003)).

Moreover, "[t]o determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2510 (2007). While the inference of scienter need not be irrefutable, it "must be more than merely 'reasonable' or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|---|---|---|---|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

'permissible' -- it must be cogent and compelling, thus strong in light of other explanations." Id. In other words, "[a] complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Id.

**D.      Section 20(a) of the Exchange Act**

Section 20(a) of the 1934 Act provides:

[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person . . . is liable unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).  To establish control liability under §20(a), a plaintiff must prove: "(1) a primary violation of federal securities laws . . .; and (2) that the defendant exercised actual power or control over the primary violator."  Howard v. Everex Systems, Inc., 228 F.3d 1057, 1065 (9th Cir. 2000); In re Surebeam Corp. Sec. Litig., 2004 U.S. Dist. LEXIS 26951, at *71 (S.D. Cal. 2004).  "Plaintiff need not show that the defendant was a culpable participant in the violation, but defendant may assert a 'good faith' defense."  Howard, 228 F.3d at 1065.  Thus, "to establish the liability of a controlling person, the plaintiff does not have the burden of establishing that person's scienter distinct from the controlled corporation's scienter."  Arthur Children's Trust v. Keim, 994 F.2d 1390, 1398 (1993).  Additionally, a claim under these sections must be pled in accordance with Fed. R. Civ. P. 8(a)(2), requiring that the plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief."  Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 446 F. Supp. 2d 163, 190 (S.D.N.Y.) (2006) (claim under § 20(a) must be pleaded in accordance with Rule 8(a)); In re Initial Pub. Offering Sec. Litig., 241 F. Supp. 2d 281, 352 (S.D.N.Y. 2003) ("Section 15 claims need only be pleaded under Rule 8; a defendant is only entitled to notice that she allegedly controlled an entity that violated Section 11.").

The determination of who is a controlling person is "an intensely factual question,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|---|---|---|---|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions."  Howard, 228 F.3d at 1065.  "The traditional indicia of control are: having a prior lending relationship, owning stock in the target company, or having a seat on the board."  In re Surebeam, 2004 U.S. Dist. LEXIS 26951, at *72.

**IV.    DISCUSSION**

    **A.    Section 10(b) of the Securities Exchange Act**

        **1.    Defendant Semtech**

    In order to distinguish between direct and derivative actions, a court must ask two questions: "[w]ho suffered the alleged harm – the corporation or the suing stockholder individually – and who would receive the benefit of the recovery or other remedy?"  Tooley v. Donaldson, Lufkin, & Jenrette, Inc., 845 A.2d 1031, 1035 (Del. 2004)).  To be a direct action, the "stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing any injury to the corporation."  Id. at 1039. The duty of the court is to look at the nature of the wrong alleged and not merely at the form of the words used in the complaint.  "A claim is not 'direct' simply because it is pleaded that way . . . the court must look to all the facts of the complaint and determine for itself whether a direct claim exists."  In re Syncor International Corp. Shareholders Litig., 857 A.2d 994, 997 (Del. 2004).

    Semtech argues that plaintiff does not have standing to pursue its claims because its claims are derivative in nature.  Mot. at 4.  Semtech argues that plaintiff's alleged injuries were suffered by Semtech and not its shareholders.  Id. at 6.  Semtech contends that the CAC focuses on Semtech's historic option granting practices rather than the restatement of earnings per share and net income figures.  Id.  Semtech argues that "although the plaintiff attempts to focus its injury claim on its acquisition of Semtech stock at 'artificially high prices,' the gravamen of the harm alleged here was to Semtech since the Company purportedly received less than it should have for the options grants when they were exercised."  Id. at 7-8 (citing CAC ¶¶ 141, 209; Schuster v. Gardner, 127 Cal. App. 4th 305, 313 (2005); Tooley, 845 A.2d at 1035).  Semtech contends that under

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|---|---|---|---|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

the allegations in the CAC, any harm to plaintiff or Semtech's shareholders is incidental to, and dependent upon, the underlying harm to Semtech. Id. at 8. (citing Schuster, 127 Cal. App. 4th at 316; Smith v. Waste Management, Inc., 407 F.3d 381, 384 (5th Cir. 2005)). Semtech further argues that the CAC is similar to complaints filed in the related federal and state derivative actions. Id. at 6. Semtech contends that "the pendency of these parallel derivative lawsuits . . . illustrates that this case is . . . a derivative action." Id. (citing Schuster, 127 Cal. App. 4th at 312 (holding that direct and derivative actions are mutually exclusive)).

Semtech further argues that even assuming arguendo that plaintiff did suffer harm, any relief based on plaintiff's allegations would be granted to Semtech and not the shareholders. Id. at 8. Semtech contends that if, as plaintiff alleges, options were granted inappropriately at a lower value, any alleged damages from this "underpayment" of the exercise price belong to Semtech. Id. Semtech argues that the shareholders would not receive any damages from such a claim. Id. (citing Kramer v. W. Pac. Indus., Inc., 546 A.2d 348, 352-53 (Del. 1988)).

Additionally, Semtech argues that plaintiff's attempt to plead a direct injury by alleging that the putative class purchased shares at inflated prices based on inaccurate statements regarding earnings per share and net income figures is unavailing. Id. at 9. Semtech contends that its stock price did not significantly react to the restatement announcement, but reacted instead to announcements relating to the options backdating. Id. (citing Manzo v. Rite Aid, 2002 WL 31926606, at *6 (Del. Ch. Dec. 19, 2002)). Moreover, Semtech argues that in options-related cases "[a]ny devaluation of stock is shared collectively by all the shareholders, rather than independently by the plaintiff or any other individual shareholder. Thus, the wrong alleged is entirely derivative in nature." Id. at 10 (quoting Kramer, 546 A.2d at 352). Semtech further argues that if plaintiff's claims are construed as direct, plaintiff would "benefit . . . at the expense of all other shareholders who are similarly situated." Id. (citing Smith, 407 F.3d at 385).

Moreover, Semtech argues that plaintiff cannot state a claim pursuant to Section 10(b) against Semtech because it has not adequately pled a securities fraud claim against the individual defendants. Id. at 10-11 (citing In re Impact Mortgage Holdings, Inc. Sec. Litig., 554 F. Supp. 2d 1083, 1101 n. 12 (C.D. Cal. 2008); In re Apple Computer, Inc. Sec. Litig., 243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002)). Semtech further argues that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|---|---|---|---|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

plaintiff's continued share purchases in 2006 "moots its own claim." Id. at 13. Semtech contends that if its disclosures "were corrective in nature and revealed a 'fraud' had been perpetrated upon the market, plaintiff's continued share purchases prove it did not rely upon the Company's prior financial statements and was in no way deterred by the alleged fraud." Id. (citing Basic, Inc. v. Levinson, 485 U.S. 224, 248-49 (1988)). Semtech further contends that if its disclosures were not corrective, "plaintiff cannot establish any 'loss' or damages during the class period, as the plaintiff cannot demonstrate that any artificial inflation of Semtech's share price was corrected during the class period." Id. (citing Dura, 544 U.S. at 344).

Plaintiff responds that under Delaware law, its claims are direct. Id. at 48. Plaintiff contends that the class has suffered harm because the disclosure of defendants' allegedly fraudulent conduct caused the price of Semtech's stock to fall. Id. As a result, plaintiff argues, the class suffered significant financial losses while defendants reaped benefits, "including over $21 million in Class Period stock sales, the receipt of hundreds of thousands of backdated options, and the ability to attract, retain, and motivate its officers and key employees through an undisclosed measure of compensation." Id. at 49. Plaintiff further argues that it is irrelevant that Semtech suffered harm because it is only seeking redress for the harm suffered by the class. Id.

Plaintiff further responds that a plaintiff adequately pleads scienter against a corporate defendant by sufficiently pleading the scienter of any employee or agent of the corporation. Opp'n at 28 (citing In re Int'l Rectifier Corp. Sec. Litig., No. 97-2544, 2008 U.S. Dist. LEXIS 44872, at *66 (C.D. Cal. May 23, 2008); Apple, 243 F. Supp. 2d at 1023; Glazer Capital Mgmt., LP v. Magistri, 2008 WL 5003306, at *6-7 (9th Cir. Nov. 26, 2008). Therefore, plaintiff argues, if the Court finds that plaintiff has adequately alleged that any of the individual defendants acted with scienter, it must find that Semtech also acted with scienter. Id.

Moreover, plaintiff argues that given that the harm complained of was suffered by the class, the benefit of any recovery will go to the class. Id. at 51. Plaintiff contends that it is only seeking to recover for damages suffered by the class as a direct and proximate result of defendants' false and misleading statements and its purchase of Semtech's artificially inflated stock. Id. at 51-52. Plaintiff further argues that derivative and direct actions are not mutually exclusive. Id. at 52.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|---|---|---|---|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

Semtech responds that plaintiff's citations to several options backdating cases that were brought as direct actions are unavailing because the defendants in those cases the defendants did not challenge the plaintiffs' standing to bring a 10b-5 claim. Reply at 5-6. Semtech argues that there have been "several" options-related cases which were filed as direct actions where the plaintiff's standing was successfully challenged. Id. at 6 (citing Vogel v. Jobs, Case No. 5:06-CV-05208 JF (N.D. Cal. Nov. 14, 2007)).

The Court concludes that plaintiff has properly alleged a direct claim against Semtech. Plaintiff is alleging a claim under Rule 10(b) and therefore federal law applies to determine whether plaintiff's claim is direct or derivative. J.I. Case Co. v. Borak, 377 U.S. 426, 431-32 (1964) (overruled on other grounds). Here, plaintiff, and not Semtech, purchased securities at an allegedly inflated price and therefore suffered a direct injury. Even if state law applies, the Court concludes that plaintiff's claim is direct. Plaintiff's claim is for a distinct injury suffered by the shareholders – overpaying for artificially inflated Semtech stock. Therefore, any resulting damages from this claim belong to the shareholders who purchased stock during the class period and not Semtech. Tooley, 845 A.2d at 1035. The fact that Semtech also suffered injury is irrelevant to this case because plaintiff's claims are distinct and any injury to Semtech from the backdating is being addressed in the parallel derivative action.[5] See In re Semtech Corporation Derivative Litigation, Master File No. CV-06003510-CAS (FMOx). Furthermore, plaintiff has adequately pled scienter against Semtech because, as the Court concludes infra, it has adequately pled scienter against some of the individual defendants. See Part IV(A)(5); Glazer Capital Mgmt., LP v. Magistri, 2008 WL 5003306, at *6-7 (9th Cir. Nov. 26, 2008); Apple, 243 F. Supp. 2d at 1023.

**2.      Defendants Baumann, Franz, and Poe**

---

[5] Semtech's argument that derivative and direct actions are mutually exclusive is unavailing. See Far West Federal Bank, S.B. v. Office of Thrift Supervision-Director, 119 F.3d 1358, 1364 (9th Cir. 1997) ("It is well settled that an individual cause of action can be asserted when the wrong is both to the stockholder as an individual and to the corporation."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|---|---|---|---|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

Defendants argue that plaintiff has failed to state a claim against them pursuant to Section 10(b). Defendants argue that the CAC does not allege any specific conduct on their part. Defendants contend that the CAC merely contains conclusory statements that they "directly participated in, approved, and concealed the options backdating scheme at issue in this case, and assisted in the preparation of Semtech's proxy statements, and its quarterly and annual reports." CAC ¶ 21. Defendants argue that no specific facts are pled to support these conclusory allegations. Id. Defendants Baumann and Franz further argue that the sole basis for alleging claims against them appears to be language in Semtech's 2006 form 10-K/A noting that the Special Committee asked them to resign and concluded that they "knew or should have known of the manipulation and initiated or participated in some manipulative acts." CAC ¶¶ 143, 150. Defendant Poe argues that Special Committee concluded that he intentionally manipulated stock option grants between April 1997 and May 2002 and that the first alleged misstatement that plaintiff identifies was made on August 27, 2002. Therefore, Poe argues, the CAC is "devoid of any contemporaneous factual allegations even suggesting that [he] knew that the August 2002 to April 2006 statements were false or misleading when the Company made them."

Defendants further contend that plaintiff's allegations against the "generic" group of "Individual Defendants" in ten paragraphs of the CAC do not attribute any misrepresentations to them individually. Defendants argue that the CAC fails to specify why each statement is alleged to have been misleading and instead quotes large blocks of text from Semtech's press releases, SEC filings, and SOX certifications. Defendants contend that such "group pleading" contravenes the PSLRA because it does not allege misstatements with the requisite particularity. In re Hansen Natural Corp. Sec. Litig., 527 F. Supp. 2d 1142 (C.D. Cal. 2007).

Defendants further argue that plaintiff has failed to plead facts giving rise to a strong inference of scienter under the PSLRA. In re Silicon Graphics, Inc. Sec. Litig., 183 F.3d 970, 979 (9th Cir. 1999). Defendants contend that plaintiff has not alleged how each of them participated in the backdating scheme, approved of the alleged scheme, or concealed the alleged scheme. Hansen, 527 F. Supp. 2d at 1153. Defendants further contend that plaintiff cannot rely on their positions as executives of Semtech as a substitute for scienter. CAC ¶¶ 23, 25, 207, 215. Defendants contend that referencing their corporate rank and extrapolating from it a presumption of "awareness" does not satisfy the scienter requirement. Hansen, 527 F. Supp. 2d at 1159. Defendants further

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|---|---|---|---|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

argue that their alleged access to "adverse undisclosed information" and "confidential proprietary information" is too vague to provide a "strong inference" of scienter.

Similarly, defendants argue that plaintiff's allegations that "[d]efendants wholly failed to adopt sound accounting policies and to maintain internal controls designed to ensure that the Company's public filings were fairly presented" do not support a strong inference of scienter. DSAM Global Value Fund v. Altris Software, Inc., 288 F.3d 385, 390 (9th Cir. 2002); Weiss v. Amkor, 527 F. Supp. 2d 938, 949 (D. Ariz. 2007)). Defendants further argue that allegations based on the conclusions of the Company's Special Committee are inadequate to support a finding of scienter because they are conclusions and not facts. Baumann and Franz further contend that the Special Committee's finding that they "knew or should have known" describes negligence rather than deliberateness, and indicates that plaintiff is "simply speculating." Defendants also argue that the Special Committee's findings regarding their state of mind were restricted to "the time the Special report was issued," which was after the class period ended. In re Bally Total Fitness Sec. Litig., 2006 U.S. Dist. LEXIS 93986, at *23 (N.D. Ill. Jul. 12, 2006).

Moreover, defendants argue that their signatures on SEC filings and SOX certifications do not give rise to a strong inference of scienter. Hansen, 527 F. Supp. 2d at 1159. Defendants contend that plaintiff fails to allege that they knew the SEC filings contained misstatements at the time they signed them and that without such allegations, their signatures on the SEC filings and SOX certifications do not give rise to a strong inference of scienter. Id.

Additionally, defendants argue that their stock sales and option grants do not give rise to a strong inference of scienter. Defendants argue that the CAC does not allege when the sales occurred or the number of transactions that they encompassed and therefore it is impossible to ascertain whether the stock sales were "dramatically out of line" or conducted "at times calculated to maximize [their] personal benefit." Hansen, 527 F. Supp. 2d at 1160. Defendants further argue that their receipt of stock options provides no inference of scienter because the CAC alleges that only 5% of the intrinsic value of Semtech's grants to executives were realized through the exercise of options. CAC ¶¶ 150-51. Defendants contend that this allegation is "directly at odds with the notion that defendants conspired to perpetrate a 'scheme' to backdate options for personal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|----------|----------------------|------|-------------------|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

gain, and certainly cannot give rise to a 'strong inference' that they did so."

Defendants further argue that plaintiff has failed to establish loss causation as to any of the putative class period disclosures. Defendants contend that plaintiff has failed to establish that any of the announcements made during the putative class period address or correct Semtech's prior disclosures. Hansen, 527 F. Supp. 2d at 1162. Defendants further contend that plaintiff fails to allege that the modest stock price movement on the disclosure dates was caused by Semtech's announcement as opposed to broader market or industry news.

Moreover, defendants argue that plaintiff fails to demonstrate that the alleged misrepresentations caused any loss. Basic, Inc. v. Levinson, 485 U.S. 224, 248 (1998). Defendants contend that plaintiff continued to purchase Semtech stock after the supposed disclosures and therefore did not rely on the alleged misrepresentations in purchasing the stock. Id.

Furthermore, defendants argue that although intentional backdating of stock options may suggest that the backdater appreciates certain implications of doing so, it does not demonstrate an understanding of the relevant accounting rules. In re Amtel Deriv. Litig., No. CV 06-4592, 2007 U.S. Dist. LEXIS 54058, at *18 (N.D. Cal. July 16, 2007). Moreover, defendants argue that the Special Committee's findings contain a number of exculpatory conclusions, including that (1) some misdated options were unfavorably priced; (2) some options were misdated as a result of administrative errors; and (3) some options were determined to have been intentionally manipulated without any "specific documentary evidence of manipulation." CAC ¶ 148.

Lastly, defendants argue that plaintiff's claims are time-barred. Defendants contend that the initial complaint in this action was filed on August 10, 2007 and therefore plaintiff's claims relating to conduct that occurred prior to August 10, 2002, are time barred. 28 U.S.C. § 1658(b); Betz v. Trainer Wortham & Co., 519 F.3d 863, 869 (9th Cir. 2008); Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 363 (1991). Defendants argue that plaintiff only identifies 16 manipulated grants, all of which occurred before August 10, 2002. CAC ¶ 161.

Plaintiff responds that backdating stock options is an intentional act that by itself

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|----------|------------------------|------|-------------------|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

demonstrates scienter. Opp'n at 13. Plaintiff argues that the statistical improbability that defendants selected the "fortunate" grant dates by chance provides a strong inference of scienter. Id. at 15 (citing Middlesex Retirement Sys. v. Quest Software, Inc., 527 F. Supp. 2d. 1164, 1181 (C.D. Cal. 2007)). Plaintiff further argues that although the Special Committee's findings were made in hindsight, they were based on "contemporaneous evidence of defendants' fraud." Id. at 19.

Plaintiff further responds that the Special Committee did not find that Baumann and Franz were merely negligent because it concluded that they "initiated or participated in some manipulative acts." Opp'n at 25. Plaintiff also argues that the Special Committee's finding that Baumann and Franz "knew or should have known" about the scheme is sufficient to support a finding of scienter. Id. (citing In re McKesson HBOC, Inc. Sec. Litig., 126 F. Supp. 2d 1248, 1273-74 (N.D. Cal. 2000)). Plaintiff further argues that Baumann received roughly 19,000 backdated options and that "[h]is receipt of these backdated options, particularly in light of his role as Semtech's Treasurer, strongly suggests his knowledge of the backdating fraud and its intended impact." Id. (citing Quest, 527 F. Supp. 2d at 1183-84). Plaintiff contends that Baumann was required to sign each stock certificate and that Franz signed several of the misleading financial statements.

Plaintiff further argues that all of the defendants' stock sales support a strong inference of scienter. Id. at 28. Plaintiff contends that it does not have to allege that defendants' stock sales were unusual or suspicious in number or timing relative to their past trading behavior because this case involves backdating. Id. (citing Quest, 527 F. Supp. 2d at 1184-87). Plaintiff argues that it is not relevant whether defendants' stock sales amounted to a large percentage of their Semtech holdings and that the only relevant consideration is whether the sales are large enough to raise suspicion. Id. at 29 (citing Quest, 527 F. Supp. 2d at 1185). Plaintiff further argues that defendants' "entire trading history has been influenced by the backdating fraud, rendering any comparison to their pre-class period trading histories irrelevant." Id. at 30.

Moreover, plaintiff argues that defendants' violation of GAAP standards intentionally increased reported income and hid compensation expenses. Id. at 31. Plaintiff contends that its allegations of fraudulent accounting "augment the totality of [its] scienter allegations." Id. Plaintiff further contends that it is not relying solely on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|---|---|---|---|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

defendants' positions as executives of Semtech to prove scienter.  Id. at 32.  Rather, plaintiff argues, defendants' positions help "demonstrate their control over the granting of options at Semtech."  Id.  (citing Juniper Networks, 542 F. Supp. 2d at 1047).

Plaintiff further argues that its claims are not time-barred because they were brought within the two year limitations period provided by 28 U.S.C. § 1658(b)(1).  Plaintiff contends that defendants Poe and Baumann assert, without any evidence, that plaintiff was on "inquiry notice" of defendants' misrepresentations years before the backdating scheme was revealed.  Id. at 54.  Plaintiff further contends that the first indication that Semtech engaged in fraud in reporting its compensation expense and net income came on May 16, 2006, when the CFRA issued its report listing Semtech as a company "at risk" for improper options backdating.  Id. at 55.  Plaintiff argues that based on this disclosure, a reasonable investor could not have discovered these misrepresentations until the second half of 2006, at the earliest.  Id.  Plaintiff further argues that it brought suit on August 10, 2007, well within the two-year limitations period of 28 U.S.C. § 1658(b)(1).

Furthermore, plaintiff argues that its claims are not time-barred because they were brought within the five-year limitations period provided by 28 U.S.C. § 1658(b)(2).  Id. at 56.  Plaintiff contends that for the purposes of section 1658(b)(2), the "violation" is the false representation, and "[s]uch a violation is considered to have occurred on the date of the conduct which gave rise to the representation."  Id. (citing In re Maxim Integrated Prods., Inc., No. 06-3344, 2008 WL 4061075 (N.D. Cal. Aug. 27, 208)). Plaintiff argues that it is not seeking relief for the backdating, but rather for failure to account for the backdating and misrepresenting financials to the market, which occurred within five years of the filing of this suit.  Id.

Plaintiff further argues that it has adequately alleged loss causation against all defendants by alleging that "[d]efendants' stock option backdating and accounting fraud inflated the value of Semtech shares during the Class Period, and that the revelation of their fraud removed that inflation."  Id. at 36.  Plaintiff contends that it must only allege "facts that, if taken as true, plausibly establish loss causation" and that so long as it "alleges facts to support a theory that is not facially implausible," a motion to dismiss must be denied.  Id. at 37(citing In re Gilead Scis Sec. Litig., 536 F.2d 1049 (9th Cir. 2008); In re Daou Sys. Inc., 411 F.3d 1006, 1026 (9th Cir. 2005)).  Plaintiff argues that it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|----------|----------------------|------|-------------------|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

has met this standard by alleging that (1) Semtech's failure to properly account for the backdating caused Semtech to misrepresent its income and expenses in statements to the public; (2) Semtech issued several corrective disclosures as a result of the backdating, which are connected to the alleged misstatements and deceptive conduct; and (3) Semtech's stock dropped following successive corrective disclosures. Id. at 38-39 (citing CAC ¶¶ 127-36).

Plaintiff further argues that the CAC identifies partial disclosures on May 22, 2006, June 9, 2006, June 14, 2006, and July 20, 2006, that provided information to the market regarding Semtech's exposure due to options backdating. Id. at 40 (citing CAC ¶¶ 127-132). Plaintiff contends that the CAC details the effect that these partial disclosures had on Semtech's stock price as follows: (1) Semtech's stock price dropped on May 22 and 23, 2006 by $0.78 compared to its closing on May 19, 2006, as a result of the May 22, 2006 disclosure; (2) Semtech's stock price dropped on June 13-16, 2006, by $0.76 as compared to its closing on June 12, 2006, as a result of the June 9 and 14, 2006 disclosures; (3) Semtech's stock price dropped on July 20-21, 2006, by $1.59 as compared to its closing on June 19, 2006, as a result of the July 20, 2006 disclosure. Id. at 41 (citing CAC ¶¶ 134-36). Plaintiff argues that these allegations "plainly demonstrate that each partial disclosure of Defendants' fraud caused a decrease in Semtech's stock price." Id.

Moreover, plaintiff argues that its purchases of Semtech stock on June 19 and 27, 2006, after Semtech's partial disclosures, do not undermine its showing of loss causation. Id. at 41. Plaintiff contends that many investors purchase stock after fraud is disclosed when a company's future profitability appears promising. Id. Plaintiff further contends that the insignificant reaction of Semtech's stock, a drop of $0.01, to Semtech's March 29, 2007 announcement regarding the restatement of its financial statements is irrelevant because Semtech's earlier disclosures "fully corrected Defendants' prior statements concerning the accuracy and completeness of Semtech's financial statements." Id. at 43.

The Court concludes that plaintiff has properly stated a claim against defendants Baumann, Franz and Poe. Looking at the totality of plaintiff's allegations, plaintiff has provided enough evidence to support a "strong inference" of scienter. Nursing Home Pension Fund, 380 F.3d at 1230. The Special Committee's conclusions that Baumann and Franz "initiated or participated in some manipulative acts" and "knew or should

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|---|---|---|---|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

have known" about option improprieties supports a finding of scienter.[6] McKesson, 126 F. Supp. 2d at 1274 ("It is certainly not routine to state that the terminated employees 'knew or should have known' about accounting improprieties. One can only assume that [the company] had a factual basis for such statements.").[7] The Special Committee's conclusion that Poe "intentionally manipulated" stock options also supports a finding of scienter.[8]

The Special Committee's conclusions are bolstered by defendants' positions as

---

[6] At oral argument, counsel for Baumann argued that plaintiff has not pled sufficient facts to support a strong inference of scienter against Baumann because he did not sign any of Semtech's financial statements and was not otherwise involved in their preparation. However, this contention is belied by the fact that Baumann was listed as the press contact for the allegedly misleading financial statements.

[7] At oral argument, counsel for Franz argued that the facts of McKesson were very different than the facts of this case. Counsel argued that the plaintiff in McKesson provided facts to support an inference of scienter as to each individual defendant. McKesson, 126 F. Supp. 2d at 1274. While the pleadings in McKesson may have been more detailed than the instant pleadings, plaintiff's allegations that Franz "initiated or participated in some manipulative acts" and "knew or should have known" about option improprieties, combined with his position as CFO and his certifications regarding the allegedly misleading financial statements, are sufficient to support a "strong inference" of scienter. Tellabs, 127 S. Ct. at 2510 ("The inference that the defendant acted with scienter need not be irrefutable, i.e., of the 'smoking-gun' genre, or even the 'most plausible of competing inferences.'").

[8] At oral argument, counsel for Poe argued that plaintiff fails to allege that Poe had the requisite state of mind when the allegedly misleading financial statements were issued. However, the Court concludes that the Special Committee's conclusion that Poe intentionally manipulated stock options, combined with his certifications that the allegedly misleading financial statements were accurate, support a "strong inference" of scienter. Tellabs, 127 S. Ct. at 2510 ("The inference that the defendant acted with scienter need not be irrefutable, i.e., of the 'smoking-gun' genre, or even the 'most plausible of competing inferences.'").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|---|---|---|---|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

executives of Semtech, the fact that they received options during the class period, and the statistical improbability that the option grant dates were selected at random.  Quest, 527 F. Supp. 2d at 1182 ("Given the extremely beneficial option grant dates, the Individual Defendants' respective executive positions in the Company, and the substantial number of shares awarded to the various Defendants during and before the Class Period, the Court finds that Plaintiff has sufficiently pled a 'strong inference' that Defendants knew or were deliberately reckless in not knowing that the purported option grant dates were improper").  The Special Committee's conclusions are further bolstered by Semtech's GAAP violations.[9]  McKesson, 126 F. Supp. 2d at 1273 ("[W]hen significant GAAP violations are described with particularity in the complaint, they may provide powerful indirect evidence of scienter.").

Moreover, plaintiff has adequately pled loss causation. "So long as the complaint alleges facts that, if taken as true, plausibly establish loss causation, a Rule 12(b)(6) dismissal is inappropriate."  In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1057 (9th Cir. 2008).  Plaintiff alleges that (1) Semtech's failure to properly account for its stock options in accordance with GAAP caused Semtech to misstate several of its financial statements; (2) Semtech issued several corrective disclosures as a result of these GAAP violations; and (3) Semtech's stock fell following these corrective disclosures.  These allegations provide "sufficient detail to give defendants ample notice of [its] loss causation theory, and to give us some assurance that the theory has a basis in fact."  Gilead, 536 F.3d at 1056 (internal citations omitted).

Furthermore, plaintiff's claims are not time-barred pursuant to 28 U.S.C. §1658(b)(1).  Section 1658(b)(1) provides that a private securities action must be brought within two years "after the discovery of the facts constituting the violation."  This period begins when plaintiff has actual knowledge of the fraud or should have, in the exercise of

---

[9] The Special Committee's findings are not undermined by the fact that stock option accounting rules are complex because the defendants knew that backdating options was favorable to them and to Semtech.  Quest, 527 F. Supp. 2d at 1183 ("Here the Individual Defendants reaped substantial rewards as a result of the backdating, and thus they knew how favorable the option grant dates were, such that they didn't need to understand the process and methodology to know that the dates were improper.")

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
| --- | --- | --- | --- |
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

reasonable diligence, discovered the fraud.  <u>Betz v. Trainer Wortham & Co., Inc.</u> 519 F.3d 863, 871 (9th Cir. 2008).  Plaintiff was not put on "inquiry notice" of defendants' alleged backdating scheme until, at the earliest, when the CFRA issued its report on May 16, 2006.  Plaintiff brought suit on August 10, 2007, well within the two-year limitations period provided by §1658(b)(1).  <u>Id.</u> at 871.

Similarly, plaintiff's claims are not time-barred pursuant to 28 U.S.C. §1658(b)(2). Section 1658(b)(2) provides that a private securities action must be brought within five years of the violation. This statute of limitations "accrues as of when the violation itself occurs."  <u>In re Zoran Corp. Deriv. Litig.</u>, 511 F. Supp. 2d 986, 1014 (N.D. Cal. 2007). The gravamen of plaintiff's claims is not Semtech's  backdating of options, but rather Semtech's failure to account for the backdating and its misrepresentations to the market. These misrepresentations occurred between August, 27, 2002, and July 19, 2006. Plaintiff filed suit on August 10, 2007, which is within the five year limitations period provided by § 1658(b)(2).

Lastly, the fact that plaintiff purchased Semtech stock after Semtech's partial disclosures does not undermine its showing of reliance as a matter of law.  Plaintiff has adequately alleged that Semtech's stock trades in an efficient market by alleging that Semtech's stock trades on the NASDAQ, research analysts report on the stock, the stock reacted quickly in response to announcements regarding the backdating, and Semtech was eligible to file a Form S-3 from 1996 to 2006.  <u>Binder v. Gillespie</u>, 184 F.3d 1059, 1064 (9th Cir. 1999). Therefore, plaintiff is entitled to a presumption of reliance pursuant to the "fraud on the market" doctrine.  <u>Id.</u>  This presumption is not rebutted as a matter of law by plaintiff's purchase of Semtech stock on June 19 and June 27, 2006, after Semtech's partial disclosures.  Those purchases, made after the alleged fraud had been eradicated, do not, as a matter of law, sever the link between the alleged misrepresentations and the price plaintiff paid for Semtech stock during the class period. <u>Basic, Inc. v. Levinson</u>, 485 U.S. 224, 248 (1998).

**6.     Defendants Maheswaran and Carlson**

Defendants Maheswaran and Carlson argue that plaintiff has failed to state a Section 10(b) claim against them because the CAC does not establish a strong inference that they acted with scienter.  Mot. at 6.  Defendants argue that plaintiff does not allege

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|----------|------------------------|------|-------------------|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

that they were involved in any decision making concerning the relevant stock option grants.  Id.  Defendants further argue that the CAC is devoid of any allegations that they knew of any GAAP violations when they signed Semtech's SEC filings.  Id. at 7. Moreover, defendants argue that neither of them served as CEO when the stock options at issue were granted.  Id. at 8.  Defendants further argue that the Special Committee did not identify either of them as having any link to the misdating of options.  Id. at 9. Additionally, defendants argue that their status as officers of Semtech does not provide a strong inference of scienter.  Id. at 10.  Defendants contend that merely signing financial statements and SOX certifications does not give rise to a strong inference of scienter.  Id. at 10-11.

Defendants further argue that purported violations of GAAP and allegations regarding Semtech's lack of internal controls do not support a strong inference of scienter.  Id. at 12. Defendants contend that they are not alleged to have sold any stock during the class period or to have received any allegedly misdated options.  Id. at 13. Defendants further contend that the statement of plaintiff's confidential witness is insufficient to establish scienter.  Defendants argue that (1) recent court decisions have cast doubt upon whether anonymous confidential witnesses can be relied upon for purposes of the PSLRA; (2) no dates for the confidential witness supposed tenure at Semtech are provided, making her account inherently unreliable; and (3) there is no way of knowing if the confidential witness's employment with Semtech overlapped with the defendants.  Id. at 14 (citing Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc., 1008 WL 2894793 (5th Cir. July 29, 2008) ("Following Tellabs, courts must discount allegations from confidential sources"); Higgonbotham v. Baxter Int'l Inc., 495 F.3d 753 (7th Cir. 2007) ("hard to see how information from anonymous sources could be deemed compelling under Tellabs.").

Moreover, defendants argue that plaintiff fails to demonstrate that the alleged misrepresentations caused any loss.  Id. at 16 (citing CAC ¶¶ 196-97).  Defendants contend that plaintiff continued to purchase Semtech stock after the supposed disclosures. Id. at 19.  Defendants further contend that plaintiff cannot establish causation by relying on post-class period statements.  Id. at 21.

Additionally, defendants argue that plaintiff has not adequately alleged that it relied on any misrepresentations.  Id. at 22.  Defendants contend that plaintiff cannot rely

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|---|---|---|---|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

on the "fraud on the market" doctrine because plaintiff has not sufficiently alleged that Semtech's stock is traded in an "efficient market." Id. (citing Binder v. Gillespie, 184 F.3d 1059, 1064). Defendants argue that plaintiff only alleges that Semtech stock "was listed and traded on the NASDAQ, a highly efficient market" and that Semtech filed public reports with the SEC and NASDAQ. Id. (citing CAC ¶¶ 198(a)-(b); In re Turbodyne Techs., Inc. Sec. Litig., 2002 U.S. Dist. LEXIS 25738, at *4 (C.D. Cal. Mar. 13, 2002)).

Plaintiff responds that its allegations raise a strong inference that Carlson and Maheswaran acted with scienter. Opp'n at 27. Plaintiff argues that Maheswaran, as Semtech's CEO, signed and certified Semtech's Annual Report for 2005. Id. Plaintiff contends that "[c]onsidering the degree to which Semtech engaged in backdating fraud, the many backdated grants, the statistical improbability that those grant dates were selected at random (1 in 35 trillion), and the Restatement resulting from the admission of backdating by Semtech executives ($91 million), one can strongly infer that Defendant Maheswaran knew of the backdating fraud when he issued the 2005 annual report." Id.

Plaintiff similarly argues that Carlson signed and certified eight annual and quarterly reports during his tenure as Semtech's CEO that included millions of dollars in inflated income and hidden expenses. Id. at 28. Plaintiff contends that at least two of these reports were issued after Professor Lie's statistical analysis and it is "unreasonable" to suggest that Carlson was not aware of the backdating fraud when he issued the aforementioned reports. Id.

Plaintiff further argues that it has sufficiently alleged reliance. Plaintiff contends that it only needs to allege that an efficient market exists at this stage. Id. at 44-45 (citing Basic Inc. v. Levinson, 485 U.S. 224, 249 n. 29 (1988)). Nevertheless, plaintiff argues that it has adequately alleged an efficient market by alleging that (1) Semtech's stock is traded on the NASDAQ; (2) security analysts cover Semtech's stock; (3) Semtech's stock reacted swiftly in direct response to Semtech's annoucements regarding backdating; (4) Semtech regularly communicated with public investors; (5) Semtech filed periodic reports with the NASDAQ and the SEC; (6) Setmech traded in an efficient market; and (7) the market for Semtech securities promptly reacts to current information from public sources. Id. at 46-47 (citing CAC ¶¶ 8-10, 134-36, 198-99).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|----------|----------------------|------|-------------------|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

Defendants respond that stock options can be misdated for a variety of non-fraudulent reasons and that GAAP violations offer no basis to infer scienter as to them. Id. at 10 (citing In re Zoran Corp. Deriv. Litig., 511 F. Supp. 2d 986, 1004 (N.D. Cal. 2007). Defendants further argue that they are not alleged to have received any misdated options or to have sold any shares of Semtech stock. Id.

Moreover, defendants argue that loss causation must be addressed at the pleading stage. Id. at 13 (citing Dura, 544 U.S. at 346; Teachers Ret. Sys. of La. v. Hunter, 477 F.3d 162, 185 (4th Cir. 2007)). Defendants contend that plaintiff has failed to adequately plead loss causation because it fails to allege that any of the corrective disclosures within the class period related to the matters that allegedly inflated Semtech's stock price – earnings per share and net income. Id. (citing Metzler Investment GmbH v. Cornithian Colleges, Inc., 540 F.3d 1049, 1062-63 (9th Cir. 2008)). Defendants further contend that corrective statements after the end of the class period are insufficient to establish loss causation. Id. at 17 (citing Robbins v. Koger Props, Inc., 116 F.3d 1441, 1447 (11th Cir. 1997); In re Clearly Canadian Sec. Litig., 875 F. Supp. 1410 (N.D. Cal. 2005)).

The Court concludes that plaintiff has failed to state a Rule 10(b) claim against defendants Maheswaran and Carlson. Unlike the other individual defendants, Maheswaran and Carlson are not mentioned in the Special Committee's report and they are not alleged to have sold any stock during the class period or received any backdated options. Without these additional allegations, Maheswaran and Carlson's status as executives of Semtech, combined with the lack of internal controls and GAAP violations, is insufficient to support a "strong inference" of scienter. See Hansen, 527 F. Supp. 2d at 1157 ("Plaintiff's failure to plead any facts related to the role or knowledge of any of the Individual Defendants or any Individual Defendant's involvement in the alleged backdating scheme is fatal to Plaintiff's showing of scienter ."). Furthermore, there is no reason to believe that defendants saw Professor Lie's May 2005 article or that the article put them on notice that Semtech backdated stock options.

**B.     Section 20(a) of the Exchange Act**

Plaintiff argues that the individual defendants are secondarily liable for Semtech's alleged Rule 10b-5 violations because they qualify as "controlling persons" under Section 20(a) of the Exchange Act. Section 20(a) provides

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|---|---|---|---|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).  To state a claim under Section 20(a), a plaintiff must allege (1) a primary violation of federal securities laws; and (2) that the defendant exercised actual power or control over the primary violator.  Howard v. Everex Systems, Inc., 228 F.3d 1057, 1065 (9th Cir. 2000).

Defendants argue that plaintiff has failed to state a claim for a primary violation of federal securities laws because they have not adequately pleaded a violation of Rule 10b-5.  Defendants further argue that plaintiff vaguely alleges that their liability under Section 20(a) stems from (1) their positions as high-level executives and/or directors during the Class Period; (2) their responsibilities and activities as senior officers and/or directors; (3) their personal contact and familiarity with the other defendants and access to other members of the management team; and (4) their knowledge that the information that Semtech disseminated to the public was false.  Defendants contend that merely being an officer or director is not sufficient to prove control.  Arthur Children's Trust v. Keim, 994 F. 2d 1390, 1397 (9th Cir. 1993); Paracor Fin., Inc. v. GE Capital Corp., 96 F.3d 1151, 1163 (9th Cir. 1996).

Plaintiff responds that the individual defendants held powerful positions at Semtech and had the power to oversee and direct the management and policies of Semtech – including the stock options practices and public filing.  Opp'n at 59.  Therefore, plaintiff argues, each individual defendant is "presumptively a control person under Section 20(a)." Id. (citing Juniper, 542 F. Supp. 2d at 1053; Howard v. Everex, 228 F. 3d 1057, 1066 (9th Cir. 2000)).  Plaintiff further argues that the Special Committee's findings that Poe intentionally manipulated options and that Franz and Baumann knew or should have known of the manipulation and initiated or participated in some manipulative acts, demonstrate that the individual defendants controlled the backdating scheme.  Id.

The Court concludes that plaintiff has sufficiently alleged that all of the individual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|---|---|---|---|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

defendants may be held secondarily liable for Semtech's alleged Rule 10b-5 violations because they may qualify as "controlling persons" under Section 20(a). Plaintiff has sufficiently alleged that defendants Baumann, as treasurer, and Franz, as chief financial officer, may qualify as controlling persons because plaintiff has alleged that they initiated or participated in some of the backdating. Everex, 228 F.3d at 1066. Furthermore, plaintiff alleges that defendant Franz signed all of the allegedly misleading financial statements and certified that they were accurate. Quest, 527 F. Supp. 2d at 1193. Similarly, plaintiff has alleged that defendant Poe intentionally manipulated stock options and signed several of the allegedly misleading financial statements and certified that they were accurate. Id.

Plaintiff has also sufficiently alleged that defendants Maheswaran and Carlson may qualify as controlling persons under Section 20(a) because plaintiff alleges that they signed and certified some of the allegedly misleading financial statements. Id. Defendants cite to Paracor for the proposition that a CEO is not automatically a control person under Section 20(a). 96 F.3d at 1163. However, in Paracor, the CEO did not review or sign an allegedly improper debenture offering, did not exercise direct or indirect control over the debenture offering, and was not authorized to act for the company on the debenture offering. Id. at 1163-64. By contrast, plaintiff alleges that Maheswaran and Carlson certified the allegedly misleading financial statements and represented that they fairly presented, in all material respects, the financial condition of Semtech.[10]

## V.   CONCLUSION

In accordance with the foregoing, the Court hereby DENIES defendants Semtech, Baumann, Franz, and Poe's motions to dismiss plaintiff's claims.

---

[10] Defendants Carlson and Maheswaran have not met their burden, at this stage of the proceedings, of establishing a defense of good faith. Hollinger v. Titan Capital Corp., 814 F.2d 1564, 1575 (9th Cir. 1990). Defendants certified that Semtech's financial statements were accurate and therefore cannot show that they "did not directly or indirectly induce the act or acts constituting the violation or cause of action." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-7114 CAS (FMOx) | Date | December 15, 2008 |
|---|---|---|---|
| Title | IN RE: SEMTECH CORPORATION SECURITIES LITIGATION [c/w: CV07-7939-CAS(FMOx)] | | |

The Court further DENIES defendants Maheswaran and Carlson's motion to dismiss as to plaintiff's second claim pursuant to Section 20(a). However, the Court GRANTS defendants Maheswaran and Carlson's motion to dismiss as to plaintiff's first claim pursuant to Section 10(b) with leave to amend. Plaintiff may file a second amended complaint curing the defects noted herein within 20 days after the filing of this order.

IT IS SO ORDERED.

|  | 00 | : | 30 |
|---|---|---|---|
| Initials of Preparer | | mdm | |