1  THOMAS A. ZACCARO (SB# 183241)
   (thomaszaccaro@paulhastings.com)
2  PAUL, HASTINGS, JANOFSKY & WALKER LLP
   515 South Flower Street, Twenty-Fifth Floor
3  Los Angeles, CA  90071-2228
   Telephone:  (213) 683-6000
4  Facsimile:  (213) 627-0705

5  CHRISTOPHER H. McGRATH (SB# 149129)
   (chrismcgrath@paulhastings.com)
6  MORGAN J. MILLER (SB# 207896)
   (morganmiller@paulhastings.com)
7  KIMBERLEY A. DONOHUE (SB# 247027)
   (kimberleydonohue@paulhastings.com)
8  PAUL, HASTINGS, JANOFSKY & WALKER LLP
   4747 Executive Drive, 12th Floor
9  San Diego, CA  92121
   Telephone:  (858) 458-3000
10 Facsimile:  (858) 458-3005

11 Attorneys for Defendants
   *Semtech Corporation, Jason L. Carlson,*
12 *and Mohan R. Maheswaran*

13                    UNITED STATES DISTRICT COURT

14                   CENTRAL DISTRICT OF CALIFORNIA

15                          WESTERN DIVISION

16

17 | IN RE SEMTECH CORPORATION    | CASE NO.  2:07-cv-07114-CAS (FMOx)
   | SECURITIES LITIGATION
18 |                              | **SEMTECH'S SUPPLEMENTAL MEMORANDUM OF LAW IN
19 |                              | SUPPORT OF ITS MOTION TO QUASH AND/OR MODIFY
20 |                              | SUBPOENA ISSUED BY PLAINTIFF TO ERNST & YOUNG LLP
21 |                              | PURSUANT TO LOCAL RULE 37-2**

22
                                    Date:    September 9, 2009
23                                  Time:    10:00 a.m.
                                    Ctrm.:   F
24                                  Judge:   Hon. Fernando M. Olguin

25                                  Discovery Cut-Off:  August 9, 2010
                                    Pre-Trial Conf.:    February 28, 2011
26                                  Trial Date:         March 29, 2011

27

28

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................ 1

II. THE SPECIAL COMMITTEE AND SPECIAL LITIGATION COMMITTEE MATERIALS PRODUCED TO ERNST & YOUNG RETAIN THEIR PROTECTIONS ................................................................ 2

III. THE SPECIAL COMMITTEE MATERIALS PRODUCED TO SECURITIES REGULATORS RETAIN THEIR PROTECTIONS .............. 2

IV. THE SPECIAL LITIGATION COMMITTEE MATERIALS FILED UNDER SEAL IN THE DERIVATIVE LITIGATION RETAIN THEIR PROTECTIONS ................................................................................ 4

V. CONCLUSION ........................................................................................... 5

## I. INTRODUCTION

Plaintiff does not dispute that the attorney-client and attorney work product protections attached to the Special Committee[1] and Special Litigation Committee materials at issue. Nor does Plaintiff even attempt to demonstrate a "compelling need" for information it is otherwise free to assemble on its own. Likewise, Plaintiff makes no effort to dispute the prevailing view that sharing protected documents with an outside auditor during the course of an internal investigation does not result in waiver.

With respect to the Special Committee materials, Plaintiff makes only a haphazard argument that the protections afforded to these materials were waived by its production to the securities regulators. The Special Committee's production was in response to threats of increased scrutiny, being delisted from the stock exchange and possible criminal indictment. The productions to the government were made pursuant to confidentiality agreements, and do not constitute the "voluntary" or adversarial nature required to find a waiver. Plaintiff cites no authority to the contrary, and resorts to misrepresenting the facts.[2]

The bulk of Plaintiff's response incorrectly attacks the filing under seal of the Special Litigation Committee materials in connection with Semtech's motion to terminate the derivative litigation. Plaintiff's authority is wholly misplaced, however, because it deals solely with the discoverability of special litigation materials in the derivative lawsuit – *by the derivative plaintiffs themselves* – not plaintiffs in a separate securities lawsuit asserting class action claims. Semtech does not dispute that the derivative plaintiffs in the now-settled action were entitled to receive the Morrison Report in the motion to terminate – that is recognized by

---

[1] The defined terms appearing in the Joint Stipulation of Parties Pursuant to Local Rule 37-2 ("Stip.") are used in this Supplemental Memorandum of Law.

[2] Plaintiff's claim that Semtech made a voluntary production to the government because it was never under a Grand Jury subpoena is flatly wrong. *See* Stip. at 39. As Semtech stated, "[a] grand jury subpoena [was issued by the USAO] notifying the Company of its parallel investigation." *Id.* at 12.

-1-

Delaware law and was done under seal for that purpose. Plaintiff's lone remaining authority is an unreported decision which misapplied established Delaware precedent. Under that precedent, Semtech's sealed use of the Morrison Report does not constitute a waiver with respect to Plaintiff in this action. *Zapata Corp. v. Maldonado*, 430 A.2d 779, 788 (Del. 1981); *Kaplan v. Wyatt*, 484 A.2d 501, 507 (Del. Ch. 1984), *aff'd*, 499 A.2d 1184 (Del. 1985); Stip. at § IV.G.1. The Court should quash Plaintiff's subpoena to E&Y with respect to these documents and require it to litigate its own case.

## II. THE SPECIAL COMMITTEE AND SPECIAL LITIGATION COMMITTEE MATERIALS PRODUCED TO ERNST & YOUNG RETAIN THEIR PROTECTIONS

Sharing protected documents with E&Y during the course of an internal investigation does not result in a waiver. *See, e.g.*, *In re JDS Uniphase Corp., Sec. Litig.*, 2006 WL 2850049, at *1 (N.D. Cal. Oct. 5, 2006). The productions to E&Y were "not inconsistent with the maintenance of secrecy" because E&Y was not a potential adversary and there is no basis to suggest it was unreasonable for either the Special Committee or the Special Litigation Committee to expect E&Y would maintain confidentiality. *See United States v. Deloitte & Touche USA LLP*, 2009 WL 1606501, at *1 (D.D.C. June 8, 2009). Plaintiff does not dispute, and cites no case law contrary to the prevailing principle that a company and its outside auditor have a common interest sufficient to permit the sharing of privileged materials without constituting a waiver. Whether Semtech was "compelled by court order" is inapposite under relevant authority. *See id.*; Stip. at § IV.E.

## III. THE SPECIAL COMMITTEE MATERIALS PRODUCED TO SECURITIES REGULATORS RETAIN THEIR PROTECTIONS

Under the relevant policies of the SEC and USAO at the time, the Special Committee was effectively compelled to produce Fenwick's investigative work product to the securities regulators. *See* Stip. at § IV.F.1. As numerous courts have recognized, productions made under these coercive policies and intense pressure by

1  regulators to "cooperate" with their investigations do not constitute a voluntary
2  disclosure resulting in a waiver. *See*, *e.g.*, *Regents of the University of California v.*
3  *Superior Court*, 165 Cal. App. 4th 672 (Cal. Ct. App. 2008) (no waiver because
4  government coercion "more powerful than a court order"); *Transamerica Computer*
5  *Co., Inc. v. Int'l Bus. Mach. Corp.*, 573 F.2d 646 (9th Cir. 1978) (disclosure of
6  confidential information only a waiver if voluntary and not compelled).

7        Plaintiff's reliance on *Westinghouse Electric Corporation v. Republic of the*
8  *Philippines*, 951 F.2d 1414 (3d Cir. 1991), merely articulates one side of a split
9  among Circuits considering the selective waiver doctrine. Stip. at 38-39. The
10 Ninth Circuit's decision in *United States v. Bergonzi*, 403 F.3d 1048, 1050 (9th Cir.
11 2005), clearly recognized the possibility that a corporation can "selectively waive"
12 the attorney-client privilege by producing the results of an internal investigation to
13 an investigating government agency without waiving the privilege or work product
14 protection to third parties. In *McKesson*, the Northern District of California held
15 that disclosure of privileged materials to the government pursuant to a
16 confidentiality agreement was only a "selective waiver" as to the government
17 agency *and not a waiver as to third parties*. *In re McKesson HBOC, Inc. Sec.*
18 *Litig.*, 2005 WL 934331, at *10 (N.D. Cal. Mar. 31, 2005) (permitting disclosure to
19 government under confidentiality agreement does not undermine work product
20 doctrine). Like McKesson, the Special Committee produced Fenwick's
21 investigative materials to the government pursuant to a confidentiality agreement
22 which recognized the common interests between the parties and sought to minimize
23 the potential for disclosure to Semtech's adversaries. *See* Stip. at 14, § IV.F.3.[3]

---

[3] Plaintiff attempts to distinguish the Special Committee's production to NASDAQ, but suspension of trading is a "quintessentially" regulatory function. *Sparta Surgical Corp. v. Nat'l Assoc. of Sec. Dealers, Inc.*, 159 F.3d 1209, 1214-15 (9th Cir. 1998) ("When it acts in this capacity to suspend trading, NASD is performing a regulatory function . . . ."). As NASDAQ effectively stands "in the shoes of the SEC" while conducting a delisting hearing, the analysis applicable to the government applies equally. *Weissman v. Nat'l Assoc. of Sec. Dealers, Inc.*, 468 F.3d 1306, 1312 (11th Cir. 2006) ("In listing and de-listing companies . . . NASDAQ clearly does 'stand in the shoes of the SEC.'"). The Special Committee

## IV. THE SPECIAL LITIGATION COMMITTEE MATERIALS FILED UNDER SEAL IN THE DERIVATIVE LITIGATION RETAIN THEIR PROTECTIONS

Plaintiff's claim that the "overwhelming weight of authority" supports a waiver when a corporation submits a special litigation committee report in support of its motion to terminate is wholly misleading and unsupported. Stip. at § V.C. The derivative litigation authorities cited by Plaintiff concern an entirely different issue – whether special litigation committee materials are discoverable by the derivative plaintiffs *in the derivative litigation itself* where a motion to terminate the litigation has been brought. Semtech does not dispute that proposition as it proceeded in accordance with Delaware law in furnishing these materials under seal and pursuant to a confidentiality order. Plaintiff's cited authority, however, does *not* hold that mere use in connection with a motion to terminate rendered these materials discoverable by *third party plaintiffs* bringing securities class action claims against the company.[4]

Delaware law unequivocally requires corporations to produce special litigation committee reports in support of motions to terminate derivative litigation. *See Kaplan*, 484 A.2d at 506 (citing *Zapata*, 430 A.2d at 779) (holding that a motion to terminate "*must* be supported by a thorough written record," which describes the special litigation committee's investigation, findings, and recommendation) (emphasis added). The filing of these reports permits courts to inquire "into the independence and good faith of the [special litigation] committee,"

---

likewise sought to maintain the confidentiality of the documents produced to NASDAQ. Stip. at 16, n.9.

[4] Specifically, *Zitin v. Turley* merely concerned "the extent of discovery available to the *plaintiffs in a shareholders derivative suit* . . . ." 1991 WL 283814, at *2 (D. Ariz. June 20, 1991) (emphasis added). *Joy v. North* involved an appeal by the *derivative plaintiff* seeking reversal of summary judgment in the *derivative litigation*. 692 F.2d 880 (2d Cir. 1982). In *In re Continental Illinois Securities Litigation*, a case in which non-party media outlets sought the disclosure of a special litigation committee report, the court declined to hold whether the privileges were waived with respect to that report. 732 F.2d 1302, 1314 (7th Cir. 1984). Finally, in *Dreiling v. Jain*, the Washington Supreme Court expressly refused to "reach . . . federal theories." 93 P.3d 861, 870 n.6 (Wash. 2004).

-4-

1  as required by *Zapata*. 430 A.2d at 787. Delaware's requirement that courts
2  consider special litigation committee reports in their analysis, therefore, places the
3  legal advice of the committee's independent counsel squarely at issue. *See In re*
4  *Oracle Sec. Litig.*, 829 F. Supp. 1176, 1187-88 (N.D. Cal. 1993).

5  Plaintiff's claim that Semtech's mere filing of the Special Litigation
6  Committee materials under seal in the derivative litigation constituted a waiver due
7  to a "voluntary" production is thus incorrect. The single unreported case cited by
8  Plaintiff, *In re Oracle Securities Litigation*, 2005 U.S. Dist. LEXIS 46931 (N.D.
9  Cal. Aug. 5, 2005), found waiver reasoning that production of the report was
10 "voluntary" but had simply failed to consider *Zapata* or any of the Delaware
11 authority requiring the production of a special litigation committee's findings and
12 recommendations in connection with a motion to terminate. *Id.* at *22, *31.[5]
13 Semtech's obligation to produce the Special Litigation Committee material in the
14 derivative litigation did not constitute a "voluntary" production under controlling
15 Delaware law, and did not result in a waiver as to Plaintiff in this action.

16 **V.   CONCLUSION**

17 For all of the foregoing reasons, and those reasons previously articulated by
18 Semtech, this Court should grant Semtech's motion to quash.

---

[5] Both *Oracle* and *Perrigo* specifically rejected Plaintiff's final argument that the mere filing under seal subjected the report to an automatic right of public access. *In re Perrigo Co.*, 128 F.3d 430, 440 (6th Cir. 1997) (holding that the mere filing of the report does not automatically place the report in the public domain; rather, the court should balance the public's interest only after the court decides "to rely on the Report in making a decision in [the] case"); *Oracle*, 2005 U.S. Dist. LEXIS 46931, at *61 ("The Court here does not base its holding on the mere fact that the SLC report and memoranda were filed in the derivative action."). The *Oracle* court also found waiver because defendants failed to object or move to seal references to the special litigation committee's findings in the transcript of the summary judgment hearing. *Id.* at *35. Further, in order for a right of public access to attach, the court actually must have relied on the report in making a decision in the case. *Cont'l Ill. Sec. Litig.*, 732 F.2d at 1304 (finding a presumption of public access only where "the court expressly relied on the Report in reaching a tentative disposition of the motion"). Semtech's derivative litigation was settled before the Court reached a decision on the motion to terminate; therefore, the Court never relied on the Morrison Report, and no public right of access attached. *See In re Semtech Corp. Derivative Litig.*, CV-06-03510-CAS (FMOx) (C.D. Cal.), Docket Nos. 90-91 (Order taking Semtech's Motion to Terminate off calendar).

DATED: August 26, 2009

CHRISTOPHER H. McGRATH
MORGAN J. MILLER
KIMBERLEY A. DONOHUE
PAUL, HASTINGS, JANOFSKY
  & WALKER LLP


By: /s/Christopher H. McGrath
          CHRISTOPHER H. McGRATH

4747 Executive Drive, 12th Floor
San Diego, CA 92121
Telephone: (858) 458-3000
Facsimile: (858) 458-3005

THOMAS A. ZACCARO
PAUL, HASTINGS, JANOFSKY
  & WALKER LLP
515 South Flower Street, Twenty-Fifth Floor
Los Angeles, CA 90071-2228
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

Attorneys for Defendants
*Semtech Corporation, Jason L. Carlson, and Mohan R. Maheswaran*

LEGAL_US_W # 62478263.7