# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

In Re SEMTECH CORPORATION SECURITIES LITIGATION

NO. CV 07-7114 CAS (FMOx)

**ORDER Re: DISCOVERY MOTION**

The court has reviewed all the briefing filed with respect to plaintiff's Motion to Compel Discovery Pursuant to the Subpoena Issued by Plaintiff to Ernst & Young LLP ("Motion" or "Joint Stip.") and concludes that oral argument is not necessary to resolve this matter. See Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001, as amended Mar. 27, 2001).

## BACKGROUND[1]

On May 16, 2006, a published report suggested that certain stock option grants by defendant Semtech Corporation ("Semtech" or "defendant") may have been retroactively priced or backdated. (See Joint Stip. at 22-23; Declaration of Morgan J. Miller in Support of Semtech

---

[1] The court hereby incorporates the Background section set forth in the Court's Order of December 15, 2008, as well as the description of the various claims set forth in the Order.

1  Corporation's Motion to Quash and/or Modify Subpoena Issued by Plaintiff to Ernst & Young LLP
2  ("Miller Decl.") at ¶ 2).[2]  On May 18, 2006, the Securities and Exchange Commission ("SEC")
3  informed Semtech that it had initiated an investigation into its stock option practices.  (See Joint
4  Stip. at 23; Miller Decl. at ¶ 3).  Thereafter, a grand jury subpoena was issued by the United States
5  Attorney's Office for the Southern District of New York ("USAO") notifying Semtech of a parallel
6  investigation.  (See id.).  Federal and state court shareholder actions against Semtech and certain
7  of it officers and directors followed, including the instant action.  (See Joint Stip. at 23; Miller Decl.
8  at ¶ 4).

9  On July 12, 2006, the Semtech Board of Directors ("Semtech Board") appointed a
10  committee of independent directors ("Special Committee") with authority to conduct an internal
11  investigation into Semtech's stock option grant practices and related accounting issues.  (See
12  Joint Stip. at 23-24; Miller Decl. at ¶ 5; Declaration of Emmett C. Stanton in Support of Defendant
13  Semtech Corporation's Motion to Quash Subpoena Issued by Plaintiff to Ernst & Young LLP
14  ("Stanton Decl.") at ¶¶ 4-5).  Fenwick & West LLP ("Fenwick") was retained as outside counsel to
15  assist in the investigation and provide legal advice.  (See Joint Stip. at 23; Stanton Decl. at ¶ 2).
16  Fenwick attorneys interviewed Semtech directors, employees and consultants, and prepared
17  memoranda describing the interviews.  (See Joint Stip. at 24; Stanton Decl. at ¶ 6).  Fenwick
18  retained Navigant Consulting, Inc. ("Navigant") to provide expert accounting advice and analysis.
19  (See Joint Stip. at 23; Stanton Decl. at ¶ 2).  The interview memoranda, Navigant's accounting
20  analysis and other investigative work product formed part of the basis for the report provided by
21  Fenwick to the Special Committee ("Fenwick Report").  (See Joint Stip. at 24; Stanton Decl. at ¶
22  9).

23  In October 2006, the Semtech Board established a committee of disinterested directors to
24  assess the claims in the shareholder derivative actions ("Special Litigation Committee").  (See
25  Joint Stip. at 26; Declaration of Darryl P. Rains in Support of Semtech Corporation's Motion to

---

27  [2] The Miller Decl., along with the declarations of Emmett C. Stanton, Matthew Snow and Darryl
   P. Rains are attached at Exhs. A through D to the Declaration of Kimberley A. Donahue in Support
28  of Semtech Corporation's Opposition to plaintiff's Motion.

Quash Subpoena Issued by Plaintiff to Ernst & Young LLP ("Rains Decl.") at ¶¶ 2-4). The Special Litigation Committee retained Morrison & Foerster LLP ("Morrison") to conduct an investigation and prepare findings. (See Joint Stip. at 26; Rains Decl. at ¶¶ 5-6). Morrison's investigation included a review of the Fenwick Report, along with Fenwick's interview memoranda and other materials prepared by Fenwick and Navigant. (See Joint Stip. at 26; Rains Decl. at ¶ 8). "In addition, Morrison conducted its own interviews of current and former Semtech employees and directors, collected and reviewed documents relevant to the shareholder derivative suits, and performed legal analysis concerning the derivative claims." (Joint Stip. at 26; see Rains Decl. at ¶ 8). In March 2007, Morrison prepared a report of its investigation ("Morrison Report"). (See Joint Stip. at 26; Rains Decl. at ¶ 9).

## DISCUSSION

The Joint Stip. concerns Document Request Nos. 1, 3-10, 12-13, 16-20 and 22-23, in plaintiff's subpoena to nonparty Ernst & Young LLP. (Joint Stip. at 1-2 & 6-13). Defendants do not dispute that the Requests are relevant. (See id. at 11-12). In addition, plaintiff does not dispute that the attorney-client privilege and/or attorney work product protections attach to the materials at issue. (See id. at 2-3 & 12-22). Instead, the parties dispute whether defendants have waived the attorney-client privilege and work-product protection by producing the protected documents to third parties.[3] (See id. at 2-6 & 13-48).

/ / /

/ / /

---

[3] These are the only arguments plaintiff discusses in the Joint Stip. (See, generally, Joint Stip. at 2-3 & 13-22). Thus, any belated declarations or arguments the parties may seek to present to the District Judge in the first instance may be found to have been waived. See 14 Moore's Federal Practice § 72.11[1][a], at 72-52 (3d ed. 2009) ("A party's failure to present timely arguments, case law, or evidentiary materials to a magistrate judge prior to the magistrate's ruling, thereby depriving the magistrate of the opportunity to rectify any alleged errors, waives that party's right to present those arguments or materials to the district court on appeal from the magistrate's nondispositive order."); Seven For All Mankind, LLC v. GenX Clothing, Inc., 2006 WL 5720346, at *3 (C.D. Cal. 2006) ("The district judge will normally not consider arguments, case law, or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance.") (internal quotation marks and citation omitted).

I.   STANDARD OF REVIEW.

A party can discover any nonprivileged information which is relevant to the claims or defenses of any other party. Fed. R. Civ. P. 26(b)(1). Relevant information does not have to be admissible so long as it appears calculated to lead to the discovery of admissible evidence. Id. "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party. A request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party." McCormick v. City of Lawrence, 2005 WL 1606595, at *5 (D. Kan. 2005) (citations omitted); see also Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 635 (9th Cir. 2005) ("Litigants may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Relevant information for purposes of discovery is information reasonably calculated to lead to the discovery of admissible evidence.") (internal quotation marks and citations omitted). "The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." Keith H. v. Long Beach Unified Sch. Dist., 228 F.R.D. 652, 655-56 (C.D. Cal. 2005) (citation omitted); see also Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

II.   PRODUCTION TO ERNST & YOUNG.

Ernst & Young LLP ("E&Y") has served as Semtech's outside auditor since 2003 and was Semtech's auditor with respect to the restatement of the financial statements in question. (Joint Stip. at 27; Declaration of Matthew Snow in Support of Defendant Semtech Corporation's Motion to Quash Subpoena Issued by Plaintiff to Ernst & Young LLP ("Snow Decl.") at ¶¶ 2-3). "Based upon E&Y's statement that its consideration of the internal investigations was necessary to complete its audit of Semtech's restatement, the Special Committee provided [E&Y with the] Fenwick Report, Fenwick's interview memoranda[, and] . . . the Morrison Report and its related exhibits[.]" (Joint Stip. at 27; see Stanton Decl. at ¶ 18; Snow Decl. at ¶¶ 4-5; Rains Decl. at ¶ 10).

Plaintiff contends that "Semtech's production to E&Y was voluntary, and constituted a waiver of any privileges that may have applied to the produced documents." (Joint Stip. at 17). As an initial matter, plaintiff provides no argument or case law, (see, generally, id. at 2-3 & 17), to dispute the prevailing view that a company and its outside auditor share a common interest sufficient to justify the sharing of privileged materials. See, e.g., In re JDS Uniphase Corp. Sec. Litig., 2006 WL 2850049, at *1 (N.D. Cal. 2006) (agreeing with the view that "work product protection was not waived with respect to documents disclosed to outside auditor acting as a consultant where there was not a substantial danger that the documents would be disclosed to an adversary, and the company kept all communications with the auditor confidential and took steps to guarantee that the documents would not be given to an adversary"); United States v. Deloitte & Touche USA LLP, 623 F.Supp.2d 39, 41 (D.D.C. 2009) (finding work product privilege intact despite disclosure to outside auditor "because Deloitte USA, as Dow's independent auditor, was not a potential adversary, and no evidence suggests that it was unreasonable for Dow to expect Deloitte USA to maintain confidentiality[]"); Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc., 237 F.R.D. 176, 183 (N.D. Ill. 2006) (because "[d]isclosing documents to an auditor does not substantially increase the opportunity for potential adversaries to obtain the information[,]" no waiver of work product protection occurred).

Further, plaintiff has not identified anything about E&Y's and Semtech's relationship that was adversarial. (See, generally, Joint Stip. at 2-3 & 17). That E&Y was defendant's outside auditor does not create an adversarial relationship. See Merrill Lynch & Co. v. Allegheny Energy, Inc., 229 F.R.D. 441, 448 (S.D.N.Y. 2004) ("[A]ny tension between an auditor and a corporation that arises from an auditor's need to scrutinize and investigate a corporation's records and book-keeping practices simply is not the equivalent of an adversarial relationship contemplated by the work product doctrine."). Semtech has a reasonable expectation that E&Y would maintain the confidentiality of its work product. See id. (auditors are "under an ethical and professional obligation to maintain materials received from its client confidential, unless disclosure was required by law or accounting standards[]"). Further, "E&Y holds these documents as confidential pursuant to its ethical duties, and has not disclosed them to any third parties." (Joint Stip. at 28; see Snow

Decl. at ¶ 9; Stanton Decl. at ¶ 19; Rains Decl. at ¶ 10). Under the circumstances, Semtech's production of the subject documents to E&Y did not waive the attorney-client privilege or work-product protection.

III.   PRODUCTION TO THE SEC AND USAO.

As part of its investigation into defendant's stock option practices, the SEC and the USAO demanded that the Special Committee produce documents related to its internal investigation, including Fenwick's work product. (See Joint Stip. at 24; Stanton Decl. at ¶ 10). Before producing any documents, the Special Committee entered into confidentiality agreements with each agency. (See Joint Stip. at 25; Stanton Decl. at ¶¶ 10-14). "The confidentiality agreements precluded disclosure to third parties except to the extent necessary for the two agencies to discharge their duties, a standard condition required by each agency to enter into the agreements." (Joint Stip. at 26; see Stanton Decl. at ¶ 12). Thereafter, the Special Committee produced the Fenwick Report, the Fenwick interview memoranda and compilations of selected underlying documents identified by Fenwick's attorneys.[4] (See Joint Stip. at 25; Stanton Decl. at ¶ 14).

Plaintiff contends that "[i]n its voluntary production to the SEC and USAO, Semtech waived any attorney-client privileges that may have attached to the produced documents." (Joint Stip. at 15). Further, plaintiff asserts that "Semtech waived any work product protection that may have attached to the produced documents because the SEC and USAO are adversaries to Semtech." (Id. at 16). Plaintiff requests that the court reject the "selective" or "limited" waiver theory, (see Joint Stip. at 13-15), which "recognize[s] a form of 'selective' or 'partial' waiver that would allow a corporation to disclose the results of an internal investigation to an investigating government agency without waiving attorney client privilege or work product protection as to the outside world." United States v. Bergonzi, 403 F.3d 1048, 1050 (9th Cir. 2005) (per curiam). Semtech argues that "Fenwick's investigative materials produced to the SEC and USAO retain their attorney-client privilege and attorney work product protections for several independent reasons: (1) the Special

---

[4] Neither the Morrison Report nor the Morrison attorneys' work product was requested or produced to the SEC or the USAO. (See Joint Stip. at 27; Miller Decl. at ¶ 10).

Committee was effectively compelled to 'cooperate' consistent with the SEC and USAO guidelines at the time for determining whether to charge a corporation, which expressly considered whether the corporation produced privileged materials; (2) the Special Committee and the SEC and USAO shared a common interest in analyzing the evidence and identifying potential wrongdoers; and (3) the Special Committee produced its attorneys' work product to the government pursuant to a confidentiality agreement." (Joint Stip. at 37).

Federal courts are split as to whether a party may disclose privileged documents to a government agency without waiving the attorney-client privilege or work-product protection. For example, some courts have found that selective waiver is always permissible. See, e.g., Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 611 (8th Cir. 1977) (en banc) (in considering "whether Diversified waived its attorney-client privilege with respect to the privileged material by voluntarily surrendering it to the SEC pursuant to an agency subpoena[, because] Diversified disclosed these documents in a separate and nonpublic SEC investigation, we conclude that only a limited waiver of the privilege occurred[]"); In re von Bulow, 828 F.2d 94, 103 (2d Cir. 1987) ("[W]here . . . disclosures of privileged information are made extrajudicially and without prejudice to the opposing party, there exists no reason in logic or equity to broaden the waiver beyond those matters actually revealed."). Other courts have found that selective waiver is permissible only when the government has signed a confidentiality agreement. See In re McKesson HBOC, Inc. Sec. Litig., 2005 WL 934331, at *9 & *10 (N.D. Cal. 2005) ("taking into consideration the benefit to the public of permitting disclosure of work product to the government" and "recognizing a distinction between disclosure to a private entity (resulting in waiver) and disclosure to a government entity pursuant to a confidentiality agreement (maintaining work product protection)[]"); Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc., 244 F.R.D. 412, 430 & 433 (N.D. Ill. 2006) (where defendants produced documents to the SEC pursuant to a confidentiality agreement, court "agrees with those cases finding that selective waiver may be appropriate where the disclosing party took steps to preserve its privilege[]"); In re Cardinal Health, Inc. Sec. Litig., 2007 WL 495150, at *9 (S.D.N.Y. 2007) (finding that a nonparty's confidentiality agreement with the SEC precluded waiver of work product protections).

Finally, some courts have found that selective waiver is never permissible. See, e.g., Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1425 (3d Cir. 1991) ("[S]elective waiver does not serve the purpose of encouraging full disclosure to one's attorney in order to obtain informed legal assistance; it merely encourages voluntary disclosure to government agencies, thereby extending the privilege beyond its intended purpose."); In re Oracle Sec. Litig., 2005 U.S. Dist. LEXIS 46931, at *27-28 (N.D. Cal. 2005) (finding the reasoning of Westinghouse persuasive, rejecting the limited waiver doctrine of Diversified and concluding that "submission of privileged materials to a federal regulatory agency amounts to a waiver of the privilege with respect to a plaintiff in a subsequent civil trial[]"); In re Columbia/HCA Healthcare Corp. Billing Practices Litig., 293 F.3d 289, 304 (6th Cir. 2002), cert. dismissed, 539 U.S. 977, 124 S.Ct. 27 (2003) ("Just as the attorney-client privilege itself provides certainty to litigants that information relayed to one's attorney will not be disclosed, rejection of selective waiver provides further certainty that waiver of the privilege ensures that the information will be disclosed."); McMorgan & Co. v. First Cal. Mortgage Co., 931 F.Supp. 703, 708 (N.D. Cal. 1996) (finding Westinghouse persuasive and declining to follow Diversified); see also Lawrence E. Jaffe Pension Plan, 244 F.R.D. at 430-32 (collecting cases).

The Ninth Circuit has not ruled on the application of the selective waiver doctrine. See Bergonzi, 403 F.3d at 1050 ("Given our finding of mootness, we do not reach [the nonparty's] argument that we should recognize a form of 'selective' or 'partial' waiver that would allow a corporation to disclose the results of an internal investigation to an investigating government agency without waiving attorney client privilege or work product protection as to the outside world. Whether the sort of selective waiver [the nonparty] seeks is available in this Circuit is an open question.") (footnote omitted). Nevertheless, under the circumstances here, the court is persuaded that applying the selective waiver doctrine is appropriate because Semtech took affirmative steps to preserve its privilege by entering into confidentiality agreements with both the SEC and the USAO. (See Joint Stip. at 25; Stanton Decl. at ¶¶ 10-14). This approach favors public policy considerations by encouraging cooperation with government agencies without having

to sacrifice privileges as to all future adversaries.[5] See In re Grand Jury Subpoena Dated July 13, 1979, 478 F.Supp. 368, 372-73 (E.D. Wis. 1979) ("[V]oluntary cooperation with the [government] would be substantially curtailed if such cooperation were deemed to be a waiver of a corporation's attorney-client privilege."); McKesson, 2005 WL 934331, at *10 ("taking into consideration the benefit to the public of permitting disclosure of work product to the government[,]" the court found that disclosure to the government did not waive privileges as to other parties); see also Cardinal Health, 2007 WL 495150, at *9 (finding no waiver where company and government "shared a common interest in developing legal theories and analyzing information concerning potential financial irregularities at Cardinal and authorized sharing of documents with the [government]") (internal quotation marks and citation omitted).

IV.   PRODUCTION TO THE DERIVATIVE PLAINTIFFS.

On July 17, 2007, Semtech filed a motion to dismiss in the consolidated derivative litigation, In re Semtech Corp. Derivative Litig., Case No. CV 06-3510 ("Motion to Terminate"), which was pending in this court. (See Joint Stip. at 27 n. 12). In connection with the Motion to Terminate, Semtech filed the Morrison Report and certain exhibits, including a portion of the Fenwick Report and excerpts from certain Fenwick interview memoranda. (See id.). These materials were filed under seal and pursuant to a protective order. (See id.).

Plaintiff maintains that by submitting the Morrison Report in support of its Motion to Terminate, Semtech waived the attorney-client privilege and work product protection for the Morrison Report and all related memoranda. (See Joint Stip. at 17-22). Defendant asserts that "[w]hen a company files a motion to terminate derivative litigation, Delaware law requires the company to produce a thorough written record of the investigation and its findings and recommendations in order to sustain its burden of proving the independence and good faith of the

---

[5] Plaintiff also contends that Semtech's production to NASDAQ as part of a delisting inquiry amounted to waiver. (See Joint Stip. at 16-17). However, because NASDAQ effectively "stand[s] in the shoes of the SEC" when conducting a delisting hearing, see Weissman v. Nat'l Ass'n of Sec. Dealers, Inc., 468 F.3d 1306, 1312 (11th Cir. 2006) ("In listing and de-listing companies . . . , NASDAQ clearly does 'stand in the shoes of the SEC.'"), no waiver occurred in Semtech's production to NASDAQ. Further, the Special Committee sought to maintain the confidentiality of documents provided to NASDAQ. (See Joint Stip. at 27 n. 13; Stanton Decl. at ¶ 15).

special litigation committee, as well as the reasonableness of its investigation." (Id. at 44) (internal quotation marks and citation omitted). Thus, defendant contends that "[p]roducing the special litigation committee report and supporting documents is required by the unique nature of the special litigation committee process and does not amount to a voluntary waiver of protected information, such that plaintiffs in subsequent lawsuits may demand production of that information." (Id.).

Semtech is incorporated under Delaware law. (See Consolidated Amended Class Action Complaint at ¶ 16). A special litigation committee has the power to terminate a derivative action to the extent allowed by the law of the state of incorporation. See Burks v. Lasker, 441 U.S. 471, 486, 99 S.Ct. 1831, 1841 (1979); accord Johnson v. Hui, 811 F.Supp. 479, 483 (N.D. Cal. 1991). Nevertheless, while state substantive law governs a derivative claim, a federal court will apply its own procedural law. Cf. Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 555, 69 S.Ct. 1221, 1230 (1949) ("in diversity cases the federal court administers the state system of law in all except details related to its own conduct of business[]").

As an initial matter, none of the parties addressed the threshold question as to whether the asserted waiver of attorney-client privilege and work-production protection in this derivative litigation is governed by Delaware or Ninth Circuit law. (See, generally, Joint Stip. at 17-22 & 44-47); see Burlington N. & Santa Fe Ry. v. U.S. Dist. Ct., 408 F.3d 1142, 1145 & 1147-50 (9th Cir.) cert. denied, 546 U.S. 939, 126 S.Ct. 428 (2005) (applying the federal rules of civil procedure in a diversity case to determine when the attorney-client privilege is waived) Further, Delaware law is unclear as to whether attaching Special Litigation Committee reports to a motion to terminate constitutes waiver. Compare Oracle, 2005 U.S. Dist. LEXIS, at *33 (finding nothing in Delaware law that requires a Special Litigation Committee to rely on attorney communications or work product in support of its motion to terminate) with In re Perrigo Co., 128 F.3d 430, 441 (6th Cir. 1997) (disclosure of the report is essentially involuntary).

In any event, the court does not need to address that question because, even assuming there was no requirement that a Special Litigation Committee report be attached to a motion to terminate, there was no waiver here because the protected materials – the Morrison Report and

1 | related documents – were not made public, as they were filed under seal pursuant to a protective
2 | order.  (See Joint Stip. at 27 n. 12); Perrigo Co., 128 F.3d at 440-41 (ruling that production of a
3 | special litigation committee report pursuant to a protective order and filing them under seal did not
4 | act as a waiver to "plaintiffs in a hostile securities action"); Ross v. Abercrombie & Fitch Co., 2008
5 | WL 1844357, at *2 & *5 (S.D. Ohio 2008) (where special litigation report was filed under seal, the
6 | court ruled that "the report remains privileged and therefore not subject to discovery by the private
7 | securities plaintiffs[]").  Further, the Motion to Terminate was taken off calendar before it was
8 | heard, and the case was subsequently settled.  (See Joint Stip. at 27 n. 12; In re Semtech Corp.
9 | Derivative Litig., Case No. CV 06-3510, Court's Order of January 7, 2008).  The Motion to
10 | Terminate was never ruled on by the court.  (See, generally, In re Semtech Corp. Derivative Litig.,
11 | Case No. CV 06-3510; Miller Decl. at ¶ 9).  Therefore, the Motion to Terminate did not constitute
12 | a dispositive motion, which carries a strong presumption in favor of public access of all documents
13 | attached to the dispositive motion.  See Foltz v. State Farm Auto. Ins. Co., 331 F.3d 1122, 1136
14 | (9th Cir. 2003) ("once the sealed discovery documents are made part of a dispositive motion[,]
15 | e.g., a summary judgment motion ruled upon by the court[,] they lose their status of being raw
16 | fruits of discovery, and no longer enjoy protected status without some overriding interests in favor
17 | of keeping the discovery documents under seal[]") (internal quotation marks, brackets, ellipses and
18 | citation omitted) (emphasis added).
19 |       Plaintiff contends that "[t]he overwhelming weight of authority states that where a Defendant
20 | voluntarily submits [a special litigation] report to support a motion to terminate – as the
21 | Defendants did here – the attorney-client privilege and attorney work product protection for the
22 | report and all related memoranda are waived for all purposes."  (Joint Stip. at 17).  However,
23 | simply attaching a Special Litigation Committee report to a nondispositive motion, as Semtech did
24 | here, is insufficient to waive the  attorney-client privilege or work-product protection.  (See id. at
25 | 17-22); Oracle, 2005 U.S. Dist. LEXIS, at & *61 (noting that the court did "not base its holding on
26 | the mere fact that the [special litigation committee] report and memoranda were filed in the
27 | [derivative a]ction[]").  The cases finding waiver require something more than simply attaching a
28 |

1  Special Litigation Committee report to a motion to terminate.[6]  See, e.g., Joy v. North, 692 F.2d

2  880, 884 & 893-94 (2d Cir. 1982), cert. denied, 460 U.S. 1051, 103 S.Ct. 1498 (1983) (protected

3  documents attached to summary judgment motion, which the court ruled on); Zitin v. Turley, 1991

4  WL 283814, at *1 & *5 (D. Ariz. 1991) (same); In re Cont'l Ill. Sec. Litig., 732 F.2d 1302, 1314-16

5  (7th Cir. 1984) (company voluntarily offered the report into evidence at a public hearing and had

6  publicly discussed the report's contents at that hearing); Oracle, 2005 U.S. Dist. LEXIS, at *32-36

7  (company filed protected documents in support of dispositive motion, voluntarily disclosed

8  documents to plaintiffs in other actions, and allowed reference to contents of documents in open

9  court without objection or moving to seal).

**This Order is not intended for publication.  Nor is it intended to be included or submitted to any online service such as Westlaw or Lexis.**

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's Motion to Compel Discovery Pursuant to the Subpoena Issued by Plaintiff to Ernst & Young LLP **(Document No. 145)** is **denied**.

2. The subpoena issued by plaintiff to Ernst & Young LLP is **quashed** with regard to the document requests at issue in the Joint Stip.

Dated this 11th day of January, 2010.

/s/
Fernando M. Olguin
United States Magistrate Judge

---

[6] Defendant also argues that the court should deny the Motion because it places an undue burden on E&Y. (See Joint Stip. at 47-48).  Given the court's finding that no waiver has occurred, the court declines to address this issue.