MARK I. LABATON (SB# 159555)
(mlabaton@kreindler.com)
KREINDLER & KREINDLER LLP
707 Wilshire Blvd., Suite 4100
Los Angeles, CA 90017
Telephone: (213) 622-6469
Facsimile: (213) 622-6019

J. ALLEN CARNEY
(acarney@carneywilliams.com)
MARCUS N. BOZEMAN
(mbozeman@carneywilliams.com)
RANDALL K. PULLIAM
(rpulliam@carneywilliams.com)
CARNEY WILLIAMS BATES
   BOZEMAN & PULLIAM, PLLC
11311 Arcade Drive, Suite 200
P.O. Box 25438
Little Rock, AR 72212
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

*Local and Lead Counsel for Plaintiff
and the Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| IN RE SEMTECH CORPORATION SECURITIES LITIGATION | CASE NO. 2:07-cv-07114-CAS (FMOx) **PLAINTIFF'S OBJECTIONS AND MOTION FOR REVIEW OF MAGISTRATE JUDGE'S ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY REQUESTED IN THE SUBPOENA ISSUED BY PLAINTIFF TO ERNST & YOUNG LLP** **ORAL ARGUMENT REQUESTED** Date : Feb. 22, 2010 Time : 10 :00 a.m. Dept. : 5 (Hon. Christina A. Snyder) |

# I.   TABLE OF CONTENTS

Page No.

I.     TABLE OF CONTENTS .................................................................................. i

II.    TABLE OF AUTHORITIES ........................................................................... ii

III.   INTRODUCTION ........................................................................................ 1

IV.    STATEMENT OF THE ISSUES .................................................................. 3

V.     FACTUAL BACKGROUND ........................................................................ 3

VI.    SUMMARY OF ARGUMENT ..................................................................... 7

VII.   ARGUMENT ............................................................................................... 12

       A.    Request for Oral Argument ................................................................. 12

       B.    Standard of Review ............................................................................. 13

       C.    The Magistrate Judge Erred by Applying a Blanket Assertion of
             Selective Waiver for All "Privileged" and "Protected" Materials
             Semtech Produced to the SEC and USAO ......................................... 13

       D.    The Magistrate Judge Erred by Ruling that Semtech's filing the
             Motion to Terminate under seal precluded waiver ............................ 17

       E.    The Magistrate Judge Erred by Ruling that Semtech's Motion to
             Terminate Did Not Constitute a Dispositive Motion ........................ 18

       F.    The Magistrate Judge Erred by Ruling that Semtech's Waiver
             Would Require More Than a Filing of Reports with Semtech's
             Motion to Terminate ........................................................................... 20

VIII.  CONCLUSION ............................................................................................ 23

## II.   **TABLE OF AUTHORITIES**

**Case**                                                                                    **Page No.**

*Clarke v. Am. Commerce Nat'l Bank,*
    974 F.2d 127 (9th Cir. 1992) ......................................................................1

*Diversified Indus., Inc. v. Meredith,*
    572 F.2d 596 (8th Cir. 1977) ........................................................... 14, 15

*Foltz v. State Farm Mut. Auto. Ins. Co.,*
    331 F.3d 1122 (9th Cir. Or. 2003) ......................................................... *passim*

*Foltz v. State Farm Mutual, et. al.,*
    (D. Ore.) Case No. 94-06293-HO, Doc. #401 ............................... *passim*

*Genentech, Inc. v. U.S. Int'l Trade Comm'n,*
    122 F.3d 1409 (Fed. Cir. 1997) ..............................................................14

*Grimes v. City and County of San Francisco,*
    951 F.2d 236 (9th Cir. 1991) ..................................................................13

*Holmgren v. State Farm Mut. Auto Ins. Co.,*
    No. 91-35350 1992 U.S. App. LEXIS 29008 at *5-6
    (9th Cir. Nov. 9, 1992) ...........................................................................15

*In re Columbia/HCA Healthcare Corp. Billing Practices Litig.,*
    293 F.3d 289 (6th Cir. 2002) ...............................................................9, 14

*In re Cont'l Ill. Sec. Litig.,*
    732 F.2d 1302 (7th Cir. 1984) ................................................................18

*In re Grand Jury Proceedings,*
    867 F.2d 539 (9th Cir. 1989) ..................................................................15

*In re Initial Pub. Offering Sec. Litig.,*
    249 F.R.D. 457 (S.D.N.Y. 2008) ............................................................16

*In re Martin Marietta Corp.,*
    856 F.2d 619 (4th Cir. 1988) ..................................................................14

*In re Oracle Sec. Litig.,*
    No. C-01-0988 MJJ (JCS) 2005 U.S. Dist. LEXIS 46931,
    at *33-34 (N.D. Cal. Aug. 5, 2005) .................................................. *passim*

*In re Qwest Commc'ns Int'l, Inc.,*
    450 F.3d 1179 (10th Cir. 2006) ..............................................................14

*In re Perrigo Co.,*
    128 F.3d 430 (6th Cir. 1997) ....................................................................9

*In re Syncor ERISA Litig.,*
    229 F.R.D. 636 (C.D. Cal. 2005) ..............................................................8

*Joy v. North,*
    692 F.2d 880 (2d Cir. 1982) ................................................ 11, 20, 21

*McMorgan & Co. v. First Cal. Mort. Co.,*
    931 F.Supp. 703 (N.D. Cal. 1996) .......................................... 8, 15

*Permian Corp. v. United States.,*
    665 F.2d 1214 (D.C. Cir. 1981) ................................................ 14

*Ross v. Abercrombie & Fitch & Co.,*
    2008 WL 1844357 (S.D. Ohio 2008) ........................................ 9

*United States v. Howell,*
    231 F.3d 615 (9th Cir. Nev. 2000) ........................................... 1

*United States v. Martin,*
    278 F.3d 988 (9th Cir. Cal. 2002) ........................................... 1

*United States v. Mass. Inst. of Tech.,*
    129 F.3d 681 (1st Cir. 1997) .................................................. 14

*United States v. McConney,*
    728 F.2d 1195 (9th Cir. 1984) ............................................... 13

*United States v. Osborn,*
    561 F.2d 1334 (9th Cir. 1977) ................................................. 1

*United States v. Reyes,*
    239 F.R.D. 591 (N.D. Cal. 2006) .......................................... 8, 14

*Westinghouse Elec. Corp. v. Republic of the Philippines,*
    951 F.2d 1414 (3d Cir. 1991) ............................................. 14, 16

*Zitin v. Turley,*
    No. CIV 89-2061-PHX-CAM  1991 U.S. Dist. LEXIS 10084
    at *15 (D. Ariz. June 20, 1991) .......................................... 11, 21

**Other Authority**                                                    **Page No.**

Fed. R. Civ. P. 72(a).................................................................13

Corporations Committee, Business Law Section, The State Bar of California, Selective Waiver of Attorney-Client Privilege and Work Product Protection, Public Comment 06-EV-053 (January 31, 2007).................................16

### III.   **INTRODUCTION**

Lead Plaintiff Mississippi Public Retirement System ("Lead Plaintiff") hereby objects to the January 11, 2010 ruling of the honorable Magistrate Judge denying Plaintiff's Motion to Compel Discovery Pursuant to a Subpoena Issued by Plaintiff to Ernst and Young LLP ("E&Y") (Declaration of Randall K. Pulliam in Support of Plaintiff's Objections and Motion for Review of Motion of Magistrate Judge's Order Denying Plaintiff's Motion to Compel Discovery Pursuant to Subpoena Issued by Plaintiff to Ernst & Young, LLP ("Pulliam Decl.") at ¶2, Exh. A.)("Magistrate Judge's Order")[1] Lead Plaintiff's Motion to Compel sought the production of certain documents[2] that Defendant Semtech Corporation ("Semtech" or the "Company") provided to E&Y, for which Semtech claimed attorney-client privilege and work product protection.   The central dispute between the parties is whether Semtech waived the attorney-client privilege and work product protection for these documents.[3]

---

[1] The honorable Magistrate Judge concluded that oral argument was not necessary to resolve this matter.

[2] The documents at issue are the Fenwick Report and the Morrison Report, which are described in more detail herein. *See* Part VI infra.

[3] As an initial matter, the Magistrate Judge committed error by holding that Lead Plaintiff waived any argument over whether Semtech's claim of attorney client privilege or work production protection was inadequate. The Ninth Circuit held "a district court has discretion, but is not required, to consider evidence presented for the time in a party's objection to a magistrate judge's recommendation." *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. Nev. 2000). Semtech failed to satisfy its burden for claiming the attorney client privilege by failing to identify specific communications over which each privilege is asserted. *See United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. Cal. 2002) (citing *United States v. Osborn*, 561 F.2d 1334, 1339 (9th Cir. 1977)) ("A party claiming the privilege must identify specific

-1-

In the Motion to Compel Discovery and Joint Stipulation ("Joint Stip.") (Doc. #146), Lead Plaintiff argued that Semtech waived attorney-client privilege and work product protection when it produced the pertinent materials to various third parties, including the Securities and Exchange Commission ("SEC") and United States Attorney's Office ("USAO"). Additionally, Lead Plaintiff argued that Semtech waived privileges and protections when it filed the materials with its motion to dismiss the consolidated derivative litigation (The "Motion to Terminate"), *In re Semtech Corp. Derivative Litig.*, Case No. CV 06-3510 ("Motion to Terminate"), which was pending in this Court. The honorable Magistrate Judge rejected both of these arguments and denied the Plaintiff's Motion to Compel.

Lead Plaintiff respectfully submits that the Magistrate Judge committed error by misconstruing the law in ruling that (1) Semtech's production to the SEC and USAO did not constitute waiver because of the application of the doctrine of selective waiver, (2) Semtech's filing its Motion to Terminate under seal precluded waiver, (3) Semtech's Motion to Terminate was not a dispositive motion because it was never ruled upon, and (4) Semtech's waiver would require more than filing the reports with the Motion to Terminate. Accordingly, Lead Plaintiff respectfully objects to the Magistrate Judge's ruling, seeks review of the rulings of the

communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted.")  Blanket assertions of the attorney client privilege and work-product protection, as Semtech made here, are "extremely disfavored." *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992).

Magistrate Judge, and asks this Court to reverse the Magistrate Judge's order as clearly erroneous and contrary to law.

## IV.   STATEMENT OF THE ISSUES

(1)   Whether the Magistrate Judge committed error by ruling Semtech's production to the SEC and USAO did not constitute waiver by applying the doctrine of selective waiver.

(2)   Whether the Magistrate Judge committed error by ruling Semtech's filing the Motion to Terminate under seal precluded waiver.

(3)   Whether the Magistrate Judge committed error by ruling that Semtech's Motion to Terminate was not a dispositive motion.

(4)   Whether the Magistrate Judge committed error by ruling that Semtech's waiver would require more than the filing of the reports with Semtech's Motion to Terminate.

## V.   FACTUAL BACKGROUND

On May 16, 2006, a third-party research report was published suggesting that certain stock option grants by Semtech and other public companies may have been retroactively priced or backdated.   (Joint Stip. at 22-23.) On May 18, 2006, Semtech received a letter from the SEC notifying the Company of the initiation of an investigation into Semtech's historical stock option practices.   (*Id.* at 23.) Thereafter, the USAO issued a grand jury subpoena notifying Semtech of a parallel investigation.   (*Id.*)  A flood of federal and state court shareholder actions against Semtech and certain of its officers and directors followed, including the instant action.   (*Id.*)

Shortly after learning of the governmental inquiries, on or about June 7,

2006, Semtech's Board of Directors charged the Company's Audit Committee with undertaking an internal investigation of Semtech's stock option grant practices and related accounting. (Joint Stip. at 23.)   On June 9, 2006, the Audit Committee retained outside counsel, Fenwick & West LLP ("Fenwick"), to assist in its investigation and report to the Audit Committee its recommendations, findings and advice. (*Id.*)  Fenwick in turn retained Navigant Consulting, Inc. ("Navigant") to provide expert accounting advice and analysis in connection with the investigation. (*Id.*)

Thereafter, on July 12, 2006, the Board appointed a committee purportedly comprised solely of independent directors (the "Special Committee"), providing the Special Committee with the full authority and resources to continue the investigation.   (Joint Stip. at 23-24).   As part of the investigation, Fenwick conducted 26 interviews of 17 Semtech directors, employees and consultants, and prepared interview memoranda describing those interviews. (Joint Stip. at 24). The interview memoranda were provided to Navigant for its comments and review as part of Navigant's role providing expert accounting advice to Fenwick.  (*Id.*) Navigant also prepared accounting analyses of the relevant stock option grants at the direction of Fenwick.  (*Id.*)  Ultimately, Fenwick's interview memoranda, Navigant's accounting analysis, and other investigation material formed part of the basis for the report provided by Fenwick to the Special Committee (the "Fenwick Report".) (*Id.*)

In response to the demands by the SEC and USAO, the Special Committee produced the Fenwick Report, the Fenwick interview memoranda and compilations of selected underlying documents identified by Fenwick attorneys. (Joint Stip. at 25.) These documents were produced pursuant to the Special Committee's agreements with the SEC and USAO for confidential treatment. (*Id.* at 26.) The confidentiality agreements precluded disclosure to third parties except to the extent necessary for the two agencies to discharge their duties, a standard condition required by each agency to enter into agreements of that nature. (*Id.*)

In October 2006, Semtech's Board established a Special Litigation Committee of purported disinterested directors to assess the claims in the shareholder derivative suits seeking recovery on the Company's behalf as a result of the stock option situation. (Joint Stip. at 26.) The Special Litigation Committee retained Morrison & Foerster LLP ("Morrison") to conduct an investigation concerning the derivative claims and to report to the Special Litigation Committee its recommendations, findings and advice. (*Id.*) Morrison's investigation included an analysis of the record previously compiled by Fenwick and Navigant on behalf of the Special Committee, including the Fenwick Report and Fenwick's interview memoranda. (*Id.*) In addition, Morrison conducted its own interviews of current and former Semtech employees and directors, collected and reviewed documents relevant to the shareholder derivative suits, and performed legal analysis concerning the derivative claims. (*Id.*) On or about March 7, 2007, Morrison prepared a report

of its investigation on behalf of the Special Litigation Committee (the "Morrison Report"). (*Id.*)

Ernst & Young LLP ("E&Y") has served as Semtech's outside auditor since 2003, and was Semtech's outside auditor with respect to the restatement of the financial statements in question – which was filed on March 29, 2007. (Joint Stip. at 27.)   E&Y did not participate in the Special Committee's investigation but requested information about the investigation in connection with its preparation of the restatement. (*Id.*) Based upon E&Y's representation that its consideration of the internal investigations was necessary to complete its review of Semtech's restatement, the Special Committee provided to the accountants the Fenwick Report, Fenwick's interview memoranda and other investigative materials previously produced to the government, as well as the Morrison Report and its related exhibits. (*Id.*)  The Special Committee also provided the Fenwick Report to Paul, Hastings, Janofsky & Walker LLP, the Company's outside counsel, Nasdaq, and certain members of Semtech's Board and senior management to whom disclosure was necessary for the Company to complete its restatement and related disclosures. (Joint Stip. at 27, fn 13.)

On July 17, 2007, Semtech filed a motion to dismiss the derivative complaints, or in the alternative, a motion for summary judgment in the consolidated derivative litigation, *In re Semtech Corporation Derivative Litigation,* Case No. CV-06-03510, which was pending before this Court. (Joint Stip. at 27, fn

12.) In support of the Motion to Terminate, Semtech filed the Morrison Report and certain of the exhibits thereto, including portions of the Fenwick Report and excerpts from certain of Fenwick's interview memoranda. Prior to the adjudication of the Motion to Terminate, the parties in the derivative litigation reached settlement. (*Id.*) In support of the settlement, the derivative plaintiffs filed their Memorandum of Points and Authorities in Support of its Motion for Final Approval of Derivative Settlement (the "Memorandum") with this Court. (Case No. CV-06-03510, Doc #113.) In the Memorandum, the derivative plaintiffs explained that settlement "was negotiated by the parties with a thorough understanding of the strength and weaknesses of the cases" and that derivative plaintiff's counsel "had the benefit of the legal and factual arguments raised in the individual defendants' motions to dismiss and the Motion to Terminate." (*Id.* at 13.) This Court approved the derivative settlement and ordered final judgment and dismissal of the derivative claims. (Case No. CV-06-03510, Doc #116.)

## VI.   SUMMARY OF THE ARGUMENT

Lead Plaintiff seeks to compel the production of the Fenwick Report and the Morrison Report, along with the related memoranda and materials supporting those reports (collectively referred to as "the reports") that no longer are protected by attorney client privilege and/or work product protections because Semtech waived any privileges and protections: (1) when Semtech produced the reports to the SEC and USAO, and (2) when Semtech filed  the reports in support of its Motion to

1   Terminate in the derivative action.

2          In ruling that Semtech's production to the SEC and USAO did not constitute

3   a waiver, the Magistrate Judge endorsed a blanket assertion of selective waiver – a

4   first for any court within the Ninth Circuit.   While the Ninth Circuit has not

5   definitively spoken on the issue of selective waiver, "every appellate court that has

6   considered the issue in the last twenty-five years" has found that parties "cannot

7   waive the attorney-client selectively."   *United States v. Reyes*, 239 F.R.D. 591, 603

8   (N.D. Cal. 2006) (holding that parties surrendered whatever privileges may have

9   attached to the subpoenaed materials when they shared their contents with the

10  government.)   Federal law almost uniformly rejects selective waiver for corporate

11  disclosures made to the government in connection with investigations.   *See, e.g.,*

12  *McMorgan & Co. v. First Cal. Mort. Co.*, 931 F. Supp. 703 (N.D. Cal. 1996)

13  (declining to expand the attorney-client privilege to include selective waiver)[4].   As

14  this Court has recognized, "[s]elective waiver . . . merely encourages voluntary

15  disclosure to government agencies, thereby extending [the] privilege beyond its

16  intended purpose."   *In re Syncor ERISA Litig.*, 229 F.R.D. 636, 647 (C.D. Cal.

17  2005).   With all due respect, Lead Plaintiff asserts that the Magistrate Judge's

---

[4] The court in *McMorgan* expressly declined to follow the single case originating from The United States Court of Appeals for the Eighth Circuit, upholding selective waiver of privilege for documents produced to the government, *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1977).   The *Diversified* decision "still 'stands alone' in recognizing an exception to traditional waiver doctrine for voluntary disclosures made to the [government] in connection with [government] investigations."   *McMorgan*, 931 F. Supp. at 708.

blanket application of selective waiver to Semtech's production to the SEC and USAO is contrary to the law and defies the sound logic applied by the vast majority of federal courts, while going beyond the policies underlying the attorney-client privilege.

On the issue of whether the sealing of Court filed documents protects them from waiver, Lead Plaintiff respectfully submits that the Magistrate Judge erroneously followed two cases from the Sixth Circuit, *In re Perrigo Co.*, 128 F.3d 430 (6th Cir. 1997), and *Ross v. Abercrombie & Fitch & Co.*, 2008 WL 1844357 (S.D. Ohio 2008),[5] which are at odds with the presumption of public access espoused by the Ninth Circuit's holding in *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1136 (9th Cir. 2003) ("[W]e follow the lead of the Fourth Circuit and hold that the presumption of access is not rebutted where, as here, documents subject to a protective order are filed under seal as attachments to a dispositive motion.").

Inherent in the Magistrate Judge's ruling that Semtech did not commit a waiver when it provided the reports to the derivative plaintiffs is the erroneous

---

[5] Semtech relied heavily on both of these Sixth Circuit cases for the proposition that the filing of materials with a Motion to Terminate does not waive privileges and protections. Ironically, if this Court were to apply Sixth Circuit law to the entirety of Plaintiff's Motion to Compel, materials Semtech produced to the other third parties, including the SEC and USAO, would have to be turned over to Plaintiff because the Sixth Circuit flatly rejects the doctrine of selective waiver. *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 302 (6th Cir. 2002) ("[A]fter due consideration, we reject the concept of selective waiver, in any of its various forms.")

determination that Semtech's Motion to Terminate was not a dispositive motion. Lead Plaintiff maintains that had the Magistrate Judge correctly determined that Semtech's Motion to Terminate was a dispositive motion, the analysis of Lead Plaintiff's Motion to Compel would be drastically different.   Lead Plaintiff respectfully submits that the Magistrate Judge misconstrued the law to be that a Motion to Terminate could only be a dispositive motion if it were ruled upon. The Magistrate's ruling is contrary to the law of the Ninth Circuit in *Foltz*, which allowed public access to the materials filed with a motion for summary judgment, even though **the motion was never ruled upon**.   *See Foltz v. State Farm Mutual, et. al.,* (D. Ore.) Case No. 94-06293-HO, Doc. #401, Order Vacating Defendants' Motion for Summary Judgment.   The procedural history of the district court in *Foltz* is virtually identical to the relevant procedural history of *In re Semtech Corp. Deriv. Litig.* – the defendant filed a motion seeking to resolve the entire action via dismissal or summary judgment, the motion was never ruled upon, and the parties subsequently reached a settlement.

Lead Plaintiff respectfully submits that the Magistrate Judge's ruling that Semtech's filing of its Motion to Terminate did not waive the attorney client privilege and work product protection is clearly erroneous and contrary to law. The Magistrate Judge's ruling includes the erroneous and legally incorrect statement that Semtech would need to do something more than file the Motion to Terminate for waiver to be effective.   With all due respect, the Magistrate Judge misconstrued

10

the holdings of multiple courts that analyzed several factors on the issue of waiver and found a waiver based merely on the fact that the disputed documents were filed with a dispositive motion. *See Joy v. North,* 692 F.2d 880, 893 (2d Cir. 1982)("[I]f the special litigation committee recommends termination and a motion for judgment follows, the committee must disclose to the court and the parties not only its report but all underlying data. To the extent that communications arguably protected by the attorney-client privilege may be involved in that data, a motion for judgment based on the report waives the privilege."); *Zitin v. Turley*, No. CIV 89-2061-PHX-CAM, 1991 U.S. Dist. LEXIS 10084 at *15 (D. Ariz. June 20, 1991)("[B]y filing its motion for summary judgment based on the report of the [Special Litigation] Committee, the Corporation has waived any claims of privilege and any work product immunity to the extent that counsel communicated the information or documents to the committee."); *In re Oracle Sec. Litig.,* No. C-01-0988 MJJ (JCS), 2005 U.S. Dist. LEXIS 46931, at *33-*34 (N.D. Cal. Aug. 5, 2005) ("Allowing Defendants to disclose privileged communications to these derivative plaintiffs, while withholding that information from the instant Plaintiffs does nothing to encourage open communication with an attorney for the purpose of obtaining legal advice… Thus, ***based on this action alone***, Oracle waived any attorney-client privilege over the SLC report and the supporting memoranda, allowing Plaintiffs in instant suit to discover them." (emphasis added)).

11
--

## VII.   ARGUMENT

A.   Request for Oral Argument

Lead Plaintiff requests oral argument on its Objections and Motion for Review due to the import of the issues presented.  The reports sought are highly relevant to Lead Plaintiff's claims, as they contain information that served as the basis for Semtech's admission that option grants were intentionally manipulated.[6] The reports purportedly contain interview memoranda from Semtech employees that were captured at a time at which the recollections of the interviewed employees were assuredly more accurate than those recollections would be today. Additionally, information that bears on the Defendants' scienter and knowledge of the options backdating practices is likely contained within these reports.  While Lead Plaintiff is able to conduct discovery on these issues, Plaintiff is unable to weigh any current statement against a prior inconsistent statement or refresh a witness' recollection based on a prior statement without the reports.  Indeed, Lead Plaintiff subpoenaed at least one witness who has taken the Fifth Amendment in response to any question regarding her employment at Semtech. (Pulliam Decl. at ¶3, Exh. B.)  Lead Plaintiff respectfully requests for this Court to conduct oral argument so it can render its decision after having engaged in a full dialogue with counsel regarding their positions.

---

[6] Lead Plaintiff deposed General John Piotrowski on January 20, 2010, and will supplement this Motion with excerpts from General Piotrowski's deposition when the transcript of the deposition testimony is received by Lead Plaintiff.

B.     Standard of Review

Pursuant to Fed. R. Civ. P. 72(a), a party may file objections to a magistrate judge's non-dispositive order within 14 days, and "[t]he district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).  Rule 72-2.1 of the Local Rules sets forth the same standard. *See Grimes v. City and County of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991). The Magistrate Judge's legal conclusions are freely reviewable *de novo* to determine whether they are contrary to law.  *United States v. McConney*, 728 F.2d 1195, 1200-01 (9th Cir. 1984).

C.     The Magistrate Judge Erred by Applying a Blanket Assertion of Selective Waiver for All "Privileged" and "Protected" Materials Semtech Produced to the SEC and USAO.

In order to find that Semtech had not waived any privileges or protections when it voluntarily produced materials to the SEC and USAO, the Magistrate Judge applied a blanket assertion of the selective waiver doctrine – a first for any court within the Ninth Circuit. (Magistrate Judge's Order at 8.) ("Nevertheless, under the circumstances here, the court is persuaded that applying the selective doctrine is appropriate because Semtech took affirmative steps to preserve its privilege by entering into confidentiality agreements with both the SEC and the USAO.")   Lead Plaintiff respectfully submits that the Magistrate Judge's ruling is clearly erroneous and contrary to law because it ignores the almost uniform rejection of selective

waiver in federal law, and fails to serve the purposes of the attorney-client privilege and work product doctrine.

While the Ninth Circuit has not ruled definitively on the issue of selective waiver, "every appellate court that has considered the issue in the last twenty-five years" has found that parties "cannot waive the attorney-client selectively." *United States v. Reyes*, 239 F.R.D. at 591. Aligning itself with the First, Second, Third, Fourth, Tenth, D.C. and Federal Circuits, the Sixth Circuit has explained that "[a]ny form of selective waiver, even that which stems from a confidentiality agreement, transforms the attorney-client privilege into merely another brush on an attorney's palette, utilized and manipulated to gain tactical or strategic advantage." *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 302 (6th Cir. 2002).[7] The one circuit court opinion to uphold the selective waiver doctrine, *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1977), has been correctly characterized by district courts in this Circuit as a case that "'stands alone'

_____

[7] *See, e.g., United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 686 (1st Cir. 1997) ("[W]ith rare exceptions, courts have been unwilling to start down this [selective waiver] path—which has no logical terminus—and we join in this reluctance."); *Steinhardt Partners*, 9 F.3d at 234 (2d. Cir. 1993) (voluntary, as opposed to compelled, disclosure of documents to the SEC waived the company's work-product privilege as to other parties); *Westinghouse Elec. Corp. v. Republic of the Phil.*, 951 F.2d 1414, 1431 (3d Cir. 1991) ("Westinghouse waived the attorney-client privilege and the work-product doctrine when it [voluntarily] disclosed otherwise protected documents to the SEC and to the DOJ."); *In re Martin Marietta Corp.*, 856 F.2d 619, 625 (4th Cir. 1988) (similar); *In re Qwest Commc'ns Int'l, Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006) ("[O]ur review of the opinions of other circuits, however, indicates there is almost unanimous rejection of selective waiver."); *Permian Corp. v. United States*, 665 F.2d 1214, 1222 (D.C. Cir. 1981)(Corporation waived any applicable attorney-client privilege when it disclosed documents to the SEC); *Genentech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d 1409, 1417 (Fed. Cir. 1997) ("[T]his court . . . has never recognized such a limited waiver.")

14
--

in recognizing an exception to traditional waiver doctrine for voluntary disclosures made to the government." *McMorgan*, 931 F.Supp. at 708 (rejecting the limited waiver doctrine from *Diversified*); *see also In re Oracle Sec. Litig.*, No. C-01-0988 MJJ (JCS), 2005 U.S. Dist. LEXIS 46931 at *33-34 (rejecting the limited waiver doctrine from *Diversified* and concluding that "submission of privileged materials to a federal regulatory agency amount to a waiver of the privilege with respect to a plaintiff in a subsequent civil trial").

The purpose of the attorney-client privilege is "to encourage clients to communicate freely and completely with their attorney." *In re Grand Jury Proceedings*, 867 F.2d 539, 541 (9th Cir. 1989). The work product doctrine prevents the "exploitation of a party's efforts in preparation for litigation" and "encourages efficient development of facts and issues." *Holmgren v. State Farm Mut. Auto Ins. Co.*, No. No. 91-35350, 1992 U.S. App. LEXIS 29008, at *5-*6. (9th Cir. Nov. 9, 1992). At first glance, the limited waiver doctrine would seem to serve the purposes of the attorney-client privilege and work-product doctrine, but in practice, these purposes are undermined by its application.

Although the selective waiver doctrine may reduce the risk of waiver, it also reduces the ability of defendants to resist the demands of government agencies, which logically results in the production of more attorney-client communications and attorney work product to government agencies. Were selective waiver the prevailing standard, there would be some certainty that attorney-client

communications and work product may likely be produced to the government, and

corporate counsel might therefore be less inclined to conduct a thorough

investigation or memorialize facts that could result in corporate liability from

government agencies. *See e.g. In re Initial Pub. Offering Sec. Litig.,* 249 F.R.D.

457, 463 (S.D.N.Y. 2008) ("Faced with the possibility or expectation of such

disclosure, attorneys performing internal investigations of wrongdoing might be

reluctant to memorialize facts that substantiated liability.")[8] The Corporations

Committee for the California State Bar acknowledged these issues with the

application of selective waiver and expressed a concern that "officers and

employees lose a key incentive to be candid with corporate counsel, even in

situations where an officer or employee has no risk of personal liability but wishes

to protect the corporation's interests."   Corporations Committee, Business Law

Section, The State Bar of California, *Selective Waiver of Attorney-Client Privilege

and Work Product Protection,* Public Comment 06-EV-053 (January 31, 2007).

With this much established, and taken to its logical end, selective waiver does not

serve the interests of public policy, encourage corporate governance, or protect the

purposes of the attorney-client privilege and work-product doctrine; therefore Lead

---

[8] As the Third Circuit in *Westinghouse* reasoned, "If internal investigations are undertaken with an eye to later disclosing the results to a government agency, the outside counsel conducting the investigation may hesitate to pursue unfavorable information or legal theories about the corporation. Thus, allowing a party to preserve the doctrine's protection while disclosing work product to a government agency could actually discourage attorneys from fully preparing their cases." *Westinghouse Elec. Corp. v. Republic of Phil.,* 951 F.2d 1414, 1429-30 (3d Cir. 1991)

Plaintiffs respectfully submit that this Court should not condone its application.

D.   The Magistrate Judge Erred by Ruling that Semtech's filing the Motion to Terminate under seal precluded waiver.

In ruling that Semtech did not waive the attorney client privilege and work product protection when Semtech filed its Motion to Terminate, the Magistrate Judge concluded:

> "In any event, the court does not need to address that question because, even assuming there was no requirement that a Special Litigation Committee report be attached to a motion to terminate, there was no waiver here because the protected materials – the Morrison Report and related materials – were not made public as they were filed under seal pursuant to a protective order."

(Magistrate Judge's Order at 10-11.)  Lead Plaintiff respectfully suggests that the Magistrate Judge misapplied the law regarding the sealing of documents in contravention of clear Ninth Circuit precedent requiring the production of materials despite the fact that the materials were filed under seal.  *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1136 (9th Cir. 2003) (holding waiver even though documents filed under seal); *In re Oracle Sec. Litig.*, No. C-01-0988 MJJ (JCS), 2005 U.S. Dist. LEXIS 46931, at *33-*34 (N.D. Cal. Aug. 5, 2005) (same). The mere act of filing documents under seal does not preclude waiver, especially when the filing supports a dispositive motion, and there is a strong presumption in

favor of public access. *Foltz*, 331 F.3d at 1136 ("[W]e follow the lead of the Fourth Circuit and hold that the presumption of access is not rebutted where, as here, documents subject to a protective order are filed under seal as attachments to a dispositive motion.")  Indeed, by including the materials in a motion to terminate the litigation, Semtech necessarily provided the materials to the derivative plaintiffs and their counsel.  Having used these materials affirmatively in seeking to dismiss the derivative litigation – Semtech should not seek refuge in  a privilege to hide production in this case.

   E.   The Magistrate Judge Erred by Ruling that Semtech's Motion to Terminate Did Not Constitute a Dispositive Motion

A motion to terminate is a dispositive motion in that "it is a motion designed to result in the dismissal of claims against several defendants."  *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1309 (7th Cir. 1984).  In ruling that the privileges and protections were not waived when Semtech filed its Motion to Terminate, the Magistrate Judge stated:

> "The Motion to Terminate was never ruled upon by the court. (See, generally, In re Semtech Corp. Derivative Litig., Case No. CV 06-3510; Miller Decl. at ¶9). Therefore, the Motion to Terminate did not constitute a dispositive motion, which carries a strong presumption in favor of public access of all documents attached to the dispositive motion. See Foltz v. State Farm Auto Ins. Co., 331 F.3d 1122, 1136

(9th Cir. 2003)("once the sealed discovery documents are made part of a dispositive motion[,] e.g. a summary judgment motion ruled upon by the court[,] they lose their status of being the raw fruits of discovery, and no longer enjoy protected status without some overriding interests in favor of keeping the discovery documents under seal[]")(internal quotation marks, brackets, ellipses and citation omitted)(emphasis added)." (Magistrate Judge's Order at 11.).

Lead Plaintiff respectfully submits that the Magistrate Judge's ruling defies common sense and simply misconstrues the holding in *Foltz* by deciding that a Motion to Terminate only becomes dispositive once it has been ruled upon. The Ninth Circuit's holding in Foltz includes no analysis as to whether the dispositive motion in question, a motion for summary judgment, was ruled upon, and followed the lead of the Fourth Circuit in *Rushford v. The New York Magazine* to hold that the presumption of access applies whenever a party attaches materials. *Foltz*, 331 F.3d at 1136 ("In short, we follow the lead of the Fourth Circuit and hold that the presumption of access is not rebutted where, as here, documents subject to a protective order are filed under seal as attachments to a dispositive motion."). The procedural history of the district court in *Foltz* shows that the defendant's motion for summary judgment in that action was vacated. *See Foltz v. State Farm Mut.*, (D. Ore.) Case No. 94-06293-HO, Doc. #401, Order Vacating Defendants' Motion for Summary Judgment. As such, the lack of analysis over whether the defendant's

19

summary judgment motion was ruled upon cannot have been an oversight by the Ninth Circuit, but instead indicative of the fact that there is no such requirement. Therefore, the Ninth Circuit in *Foltz* allowed public access to the materials filed with a motion for summary judgment, even though **the motion was never ruled upon**. The procedural history of the district court in *Foltz* is virtually identical to the operative procedural history of *In re Semtech Corp. Deriv. Litig.* – the defendant filed a motion to dismiss that was never ruled upon, and the parties subsequently reached a settlement. Lead Plaintiff respectfully submits that the Magistrate Judge's ruling was clearly erroneous, considering that the Ninth Circuit in *Foltz* held a motion for summary judgment to be dispositive even though it was never ruled upon. Simply put, whether a motion is considered to be a dispositve motion is determined by the nature of the motion and not by its outcome. Having sought to end the litigation through the motion to terminate – Semtech undeniably intended to make a dispositive motion.

F. <u>The Magistrate Judge Erred by Ruling that Semtech's Waiver Would Require More Than the Filing of Reports with Semtech's Motion to Terminate.</u>

When a party files a dispositive motion, such as a Motion to Terminate, waiver of attorney client privilege and work product protection occurs when the dispositive motion is filed. *Joy v. North,* 692 F.2d 880, 893 (2d Cir. 1982)(" [I]f the special litigation committee recommends termination and a motion for judgment follows, the committee must disclose to the court and the parties not only its report

but all underlying data. To the extent that communications arguably protected by the attorney-client privilege may be involved in that data, a motion for judgment based on the report waives the privilege.").

Here, the Magistrate Judge based his ruling on the erroneous premise that Semtech's Motion to Terminate was a non-dispositive motion and stated "simply attaching a Special Litigation Report to a nondispositive motion, as Semtech did here, is insufficient to waive the attorney-client privilege or work-product protection." (Magistrate Judge's Order at 11.)

Lead Plaintiff has addressed the Magistrate Judge's erroneous finding regarding the nature of the motion above.  To the extent that the Magistrate Judge's ruling indicates that something more than attaching a copy of the supposedly privileged material is required for a party to waive privileges and protections, Lead Plaintiff respectfully submits that such a ruling is clearly erroneous and contrary to law.  Even beyond the presumption of public access to all documents attached to dispositive motions, the mere act of filing the materials with a dispositive motion constitutes a waiver. *See Zitin v. Turley*, No. CIV 89-2061-PHX-CAM, 1991 U.S. Dist. LEXIS 10084, at *15 (by filing the Committee materials with defendants motion for summary judgment, the Company waived attorney client privileges and work product protections for the materials filed.); *In re Oracle Sec. Litig.,* No. C-01-0988 MJJ (JCS), 2005 U.S. Dist. LEXIS 46931 at *33-*34 (same); *Joy v. North,* 692 F.2d 880, 893 (2d Cir. 1982) (same). When the requesting party is another

Plaintiff, as it is here, the Court should find waiver to avoid the inherent unfairness that would occur by allowing a defendant to select which plaintiff group to favor. *See, e.g., In re Oracle Sec. Litig.,* No. C-01-0988 MJJ (JCS), 2005 U.S. Dist. LEXIS 46931, at *33-*34 ("Allowing Defendants to disclose privileged communications to these derivative plaintiffs, while withholding that information from the instant Plaintiffs does nothing to encourage open communication with an attorney for the purpose of obtaining legal advice....Thus, based on this action alone, Oracle waived any attorney-client privilege over the SLC report and the supporting memoranda, allowing Plaintiffs in instant suit to discover them." (emphasis added).)

Although Lead Plaintiff contends that, as a matter of law, Semtech waived the privileges and protections when it filed the reports at issue, there are additional facts that support a waiver. After the parties in the derivative litigation reached a settlement, the derivative plaintiff filed with this Court its Memorandum of Points and Authorities in Support of its Motion for Final Approval of Derivative Settlement. (Case No. CV-06-03510, Doc #113) (the "Memorandum"). In the Memorandum, the derivative plaintiffs explained that settlement "was negotiated by the parties with a thorough understanding of the strength and weaknesses of the cases" and that derivative plaintiffs counsel "had the benefit of the legal and factual arguments raised in the individual defendants' motions to dismiss and the Motion to Terminate." (Memorandum at 13). Although this Court did not rule on the Motion

to Terminate, the parties discussed the merits of the Motion to Terminate and the materials submitted with the motion during settlement negotiations. Indeed, following that submission this Court determined that the derivative settlement was fair and reasonable.    This fact further demonstrates that the Motion to Terminate and related materials were at least partly relied upon by the parties in the derivative litigation to arrive at a final disposition of that case, giving more support to a presumption in favor of Plaintiff's requested access, and highlights the inherent unfairness that occurs when defendants are allowed to selectively disclose materials to certain plaintiffs.

## IX.    Conclusion

Plaintiff respectfully submits that the Magistrate Judge's order is clearly erroneous and contrary to law.  For the foregoing reasons, Plaintiff requests that this Court should reverse and/or modify the Magistrate Judge's order.


DATED:  January 25, 2009          MARK I. LABATON
                                  KREINDLER & KREINDLER LLP


                                  By:   /s/ Mark I. Labaton
                                            MARK I. LABATON

                                  707 Wilshire Blvd., Suite 4100
                                  Los Angeles, CA  90017
                                  Telephone:  (213) 622-6469
                                  Facsimile:  (213) 622-6019

ALLEN CARNEY
MARCUS BOZEMAN
RANDALL PULLIAM
CARNEY WILLIAMS BATES
    BOZEMAN & PULLIAM, PLLC
11311 Arcade Drive, Suite 200
P.O. Box 25438
Little Rock, AR  72212
Telephone:  (501) 312-8500
Facsimile:   (501) 312-8505

BURTON LEBLANC
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas  75219
Telephone:  (214) 521-3605
Facsimile:  (214) 520-1181

JONATHAN GARDNER
BRIAN PENNY
LABATON & SUCHOROW LLP
140 Broadway
New York, New York  10005
Telephone:  (212) 907-0700
Facsimile:  (212) 818-0477

*Local and Lead Counsel for Plaintiff and the Class*

24