1    THOMAS A. ZACCARO (SB# 183241)
     (thomaszaccaro@paulhastings.com)
2    PAUL, HASTINGS, JANOFSKY & WALKER LLP
     515 South Flower Street, Twenty-Fifth Floor
3    Los Angeles, CA  90071-2228
     Telephone:  (213) 683-6000
4    Facsimile:  (213) 627-0705

5    CHRISTOPHER H. McGRATH (SB# 149129)
     (chrismcgrath@paulhastings.com)
6    MORGAN J. MILLER (SB# 207896)
     (morganmiller@paulhastings.com)
7    KIMBERLEY A. DONOHUE (SB# 247027)
     (kimberleydonohue@paulhastings.com)
8    PAUL, HASTINGS, JANOFSKY & WALKER LLP
     4747 Executive Drive, 12th Floor
9    San Diego, CA  92121
     Telephone:  (858) 458-3000
10   Facsimile:  (858) 458-3005

11   Attorneys for Defendants
     *Semtech Corporation, Jason L. Carlson,*
12   *and Mohan R. Maheswaran*

13                  UNITED STATES DISTRICT COURT

14                 CENTRAL DISTRICT OF CALIFORNIA

15                        WESTERN DIVISION

16

17   IN RE SEMTECH CORPORATION          CASE NO.  2:07-cv-07114-CAS (FMOx)
     SECURITIES LITIGATION
18                                       **MEMORANDUM OF POINTS AND
                                         AUTHORITIES OF DEFENDANT
19                                       SEMTECH CORPORATION IN
                                         OPPOSITION TO PLAINTIFF'S
20                                       MOTION FOR REVIEW OF
                                         MAGISTRATE JUDGE OLGUIN'S
21                                       ORDER DENYING PLAINTIFF'S
                                         MOTION TO COMPEL DISCOVERY
22                                       REQUESTED IN THE SUBPOENA
                                         ISSUED BY PLAINTIFF TO ERNST
23                                       & YOUNG LLP**

24                                       Date:      February 22, 2010
25                                       Time:      10:00 a.m.
                                         Ctrm.:     5, 2nd Floor
26                                       Judge:     Hon. Christina A. Snyder

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   STATEMENT OF THE ISSUES ...................................................... 4

III.  BACKGROUND ................................................................................ 4

    A.   Procedural Posture ............................................................... 4

    B.   Factual Background ............................................................... 4

IV.  ARGUMENT ..................................................................................... 8

    A.   Standard Of Review .............................................................. 8

    B.   Judge Olguin Correctly Ruled In Applying Selective Waiver To
         The Production Of Protected Materials Under Confidentiality
         Agreements To The SEC And USAO .................................... 9

         1.   The Special Committee Had No Effective Choice But To
              Cooperate With The Government's Requests ..................... 11

         2.   The Special Committee And The Government Shared A
              Common Interest Sufficient To Maintain The Attorney-
              Client And Work Product Privileges ................................ 14

         3.   Semtech Preserved The Protections By Entering Into
              Confidentiality Agreements With The SEC And USAO ......... 15

    C.   Judge Olguin Correctly Ruled That Filing Protected Materials
         Under Seal Did Not Constitute A Waiver ............................. 17

         1.   The Protective Order And Filing Of The Morrison Report
              Under Seal Preclude Waiver .......................................... 17

         2.   The Semtech Derivative Litigation Was Settled Before
              Briefing On The Motion Was Ever Completed ................... 19

V.   CONCLUSION .............................................................................. 24

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bowne, Inc. v. AmBase Corp.*,
    150 F.R.D. 465 (S.D.N.Y. 1993)........................................................................14

*Cook v. Yellow Freight Sys., Inc.*,
    132 F.R.D. 548 (E.D. Cal. 1990)........................................................................23

*DeFazio v. Wallis*,
    459 F. Supp. 2d 159 (E.D.N.Y. 2006)..................................................................8

*Diversified Indus., Inc. v. Meredith*,
    572 F.2d 596 (8th Cir. 1977)..............................................................................10

*Estate of Gonzalez v. Hickman*,
    2007 WL 3231956 (C.D. Cal. Apr. 18, 2007)......................................................8

*Farber v. Publ. Svc. Co. of New Mexico*,
    1991 WL 208460 (D.N.M. Apr. 4, 1991)..............................................................3

*Foltz v. State Farm Mut. Aut. Ins. Co.*,
    331 F.3d 1122 (9th Cir. 2003)..............................................................19, 20, 21

*Foltz v. State Farm Mut. Aut. Ins. Co.*,
    Case No. 94-06293-HO (D. Or.)..........................................................19, 20, 21

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*,
    332 F.3d 976 (6th Cir. 2003)..............................................................................23

*Grimes v. City & County of San Francisco*,
    951 F.2d 236 (9th Cir. 1991)................................................................................9

*Guth v. Loft, Inc.*,
    5 A.2d 503 (Del. 1939)......................................................................................12

*Handgards, Inc. v. Johnson & Johnson*,
    413 F. Supp. 926 (N.D. Cal. 1976),
    *aff'd*, 2005 WL 1403508 (C.D. Cal. May 10, 2005)..........................................15

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Harrington v. Scribner,*
  2009 WL 1032858 (E.D. Cal. Apr. 16, 2009)..............................................1, 8, 9

*In re Broadcom Corp. Sec. Litig.,*
  2005 WL 1403513 (C.D. Cal. Apr. 7, 2005)......................................................15

*In re Cardinal Health Inc. Sec. Litig.,*
  2007 WL 495150 (S.D.N.Y Jan. 26, 2007).................................................*passim*

*In re Cont'l Ill. Sec. Litig.,*
  732 F.2d 1302 (7th Cir. 1984)..........................................................................18

*In re First Am. Corp. ERISA Litig.,*
  258 F.R.D. 610 (C.D. Cal. 2009) .......................................................................8

*In re Grand Jury Subpoena Dated July 13, 1979,*
  478 F. Supp. 368 (E.D. Wis. 1979) ...............................................................9, 15

*In re KLA-Tencor Corp. S'holder Deriv. Litig.,*
  2008 WL 2073936 (N.D. Cal. May 14, 2008) ..................................................22

*In re McKesson HBOC, Inc. Sec. Litig.,*
  2005 WL 934331 (N.D. Cal. Mar. 31, 2005) .............................................*passim*

*In re Natural Gas Commodity Litig.,*
  2005 WL 1457666 (S.D.N.Y. June 21, 2005)...............................................2, 16

*In re Oracle Sec. Litig.,*
  2005 U.S. Dist. LEXIS 46931 (N.D. Cal. Aug. 5, 2005)..................................18

*In re Perrigo Co.,*
  128 F.3d 430 (6th Cir. 1997)..................................................................3, 17, 22

*In re Steinhardt Partners, L.P.,*
  9 F.3d 230 (2d Cir. 1993) ................................................................................14

*In re Subpoena Duces Tecum,*
  738 F.2d 1367 (D.C. Cir. 1984) .......................................................................16

*In re Syncor Erisa Litig.,*
  229 F.R.D. 636 (C.D. Cal. 2005) .....................................................................16

## TABLE OF AUTHORITIES
### (continued)

Page

*Johnson v. Hui*,
811 F. Supp. 479 (N.D. Cal. 1991)...................................................................22

*Joy v. North*,
692 F.2d 880 (2d Cir. 1982), cert denied,
460 U.S. 1051, 103 S. Ct. 1498 (1983) ..........................................................18

*Kamakana v. City & County of Honolulu*,
447 F.3d 1172 (9th Cir. 2006)..........................................................................19

*Kaplan v. Wyatt*,
484 A.2d 501 (Del. 1984)..................................................................................22

*Kaplan v. Wyatt*,
499 A.2d 1184 (Del. 1985)................................................................................22

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
244 F.R.D. 412 (N.D. Ill. 2006) ...............................................................10, 16

*Maruzen Co. v. HSBC USA, Inc.*,
2002 WL 1628782 (S.D.N.Y. Jul. 23, 2002) ..................................................16

*McCarthy v. Middle Tenn. Elec. Membership Corp.*,
466 F.3d 399 (6th Cir. 2006)............................................................................22

*Modesto Irrigation Dist. v. Gutierrez*,
2007 WL 763370 (E.D. Cal. Mar. 9, 2007) ...................................................14

*Nassirpour v. FDIC*,
2008 WL 5412432 (C.D. Cal. Dec. 29, 2008) ...................................................1

*Osband v. Woodford*,
290 F.3d 1036 (9th Cir. 2002)............................................................................8

*Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*,
951 F. Supp. 679 (W.D. Mich. 1996)...........................................................3, 23

*Regents of the University of California v. Superior Court*,
165 Cal. App. 4th 672 (Cal. Ct. App. 2008)....................................................13

**TABLE OF AUTHORITIES**
(continued)

Page

*Rivera v. NIBCO, Inc.*,
   364 F.3d 1057 (9th Cir. 2004) ............................................................. 9

*Ross v. Abercrombie & Fitch Co.*,
   2008 WL 1844357 (S.D. Ohio 2008) ..................................... 3, 18, 22

*Saito v. McKesson HBOC, Inc.*,
   2002 WL 31657622 (Del. Ch. Nov. 13, 2002),
   *aff'd*, 870 A.2d 1192 (Del. 2005) ..................................................... 16

*Seven For All Mankind, LLC v. GenX Clothing, Inc.*,
   2006 WL 5720346 (C.D. Cal. 2006) .................................................... 8

*Transamerica Computer Co., Inc. v. Int'l Bus. Mach. Corp.*,
   573 F.2d 646 (9th Cir. 1978) ...................................................... 11, 22

*United States v. Am. Tel. & Tel. Co.*,
   642 F.2d 1285 (D.C. Cir. 1980) ......................................................... 14

*United States v. Bergonzi*,
   216 F.R.D. 487 (N.D. Cal. 2003) ....................................................... 16

*United States v. Bergonzi*,
   403 F.3d 1048 (9th Cir. 2005) ................................................. 2, 10, 15

*United States v. Contra Costa County Water Dist.*
   678 F.2d 90, 92 (9th Cir. 1982),
   *overruled on other grounds by Jaffe v. Redmond*, 518 U.S. 1 (1996) .............. 23

*United States v. Reyes*,
   239 F.R.D. 591 (N.D. Cal. 2006) ....................................................... 16

*United States v. Stein*,
   435 F. Supp. 2d 330 (S.D.N.Y. 2006),
   *aff'd*, 541 F.3d 130 (2d Cir. 2008) .................................................... 13

*Weinberger v. UOP, Inc.*,
   457 A.2d 701 (Del. 1983) .................................................................. 12

*Wilson v. Airborne, Inc.*,
   2007 WL 5010297 (C.D. Cal. Oct. 23, 2007) ...................................... 1

1

## TABLE OF AUTHORITIES
**(continued)**

2

**Page**

3

*Wolpin v. Philip Morris, Inc.*,
  189 F.R.D. 418 (C.D. Cal. 1999) ........................................................ 8

4

5

*Zapata Corp. v. Maldonado*,
  430 A.2d 779 (Del. 1981) ................................................................ 22

6

7

*Zitin v. Turley*,
  1991 WL 283814 (D. Ariz. 1991) ..................................................... 18

8

9

**STATUTES, RULES AND REGULATIONS**

10

28 U.S.C.
  § 636(b)(1)(A) ................................................................................... 8

11

12

Federal Rules of Civil Procedure
  Rule 72(a) .......................................................................................... 8

13

Local Rules of the U.S.D.C. (C.D. Cal.)

14

  Rule 7-3 .............................................................................................. 1

15

  Rule 37-2 ................................................................................ 4, 5, 6, 7

16

**OTHER AUTHORITIES**

17

MOORE'S FEDERAL PRACTICE § 72.11[1][a] (3d ed. 2009) ......................... 8

18

19

20

21

22

23

24

25

26

27

28

1    Defendant Semtech Corporation ("Semtech" or the "Company") respectfully

2    submits this Memorandum of Points and Authorities in Opposition to Plaintiff's

3    Motion for Review of Magistrate Judge's Order Denying Plaintiff's Motion to

4    Compel Discovery Requested in the Subpoena Issued by Plaintiff to Ernst & Young

5    LLP ("Pl. Rev. Mot."). [1]

6    **I.    INTRODUCTION**

7    By this motion, Plaintiff impermissibly seeks to invade judicially sanctioned

8    attorney-client and work product privileges belonging to Semtech, rather than

9    independently litigate its own allegations of securities fraud.  As the Honorable

10   Magistrate Judge Fernando M. Olguin recognized in his carefully reasoned twelve-

11   page discovery order issued January 11, 2010,[2] and consistent with ample

12   applicable precedent, Plaintiff is not entitled to shortcut the discovery process and

13   obtain privileged Special Committee and Special Litigation Committee materials

14   relating to the Company's internal analysis of its historical option grant processes

15   where Semtech took every reasonable step necessary to preserve those privileges

16   and confidentiality.  Because Judge Olguin's discovery ruling is ably supported by

17   relevant precedent and is not "contrary to law"[3] nor error, the Order should be

18   affirmed, and Plaintiff's attempt to "shop" for a different outcome here should be

19   denied.

20

21   [1]    As a threshold matter, Plaintiff's failure to comply with Local Rule 7-3
22   precludes consideration of this motion.  Local Rule 7-3 requires a moving party "to
     contact opposing counsel to discuss thoroughly, preferably in person, the substance
23   of the contemplated motion and any potential resolution" and to include a statement
     to that effect in the motion.  Courts in this district have denied subsequent motions
24   simply for failure to include the required statement.  *See*, *e.g.*, *Nassirpour v. FDIC*,
     No. 08-7164, 2008 WL 5412432, at *3 (C.D. Cal. Dec. 29, 2008); *Wilson v.
25   Airborne, Inc.*, No. 07-770, 2007 WL 5010297, at *2 (C.D. Cal. Oct. 23, 2007).

     [2]    *See* Order Re:  Discovery Motion dated January 11, 2010 (Docket No. 156)
26   (the "Order").

27   [3]    A magistrate judge's legal conclusions are contrary to law only where they
28   fail "to apply or misapply[y] relevant statutes, case law or rules of procedure."
     *Harrington v. Scribner*, 2009 WL 1032858, at *1 (E.D. Cal. Apr. 16, 2009).

-1-

1    In the underlying motion to compel, Plaintiff made a number of arguments in

2 its attempt to bypass the privilege, but now has abandoned all but two of these

3 theories.  First, Plaintiff argues that production of the Special Committee materials

4 under confidentiality agreements to the Securities and Exchange Commission

5 ("SEC") and U.S. Attorney's Office for the Southern District of New York

6 ("USAO") constitutes a waiver of the privilege and work product protections.[4]

7 Unfortunately for Plaintiff, as Judge Olguin recognized, in view of the strong public

8 policies encouraging cooperation of companies with the government, many courts

9 have held that where confidentiality agreements are used, such productions do not

10 constitute a waiver.  *See* Order at 7:7-9:10 (carefully analyzing body of relevant

11 precedent); *see also*, *e.g.*, *In re McKesson HBOC, Inc. Sec. Litig.*, 2005 WL

12 934331, at *9 (N.D. Cal. Mar. 31, 2005) ("taking into consideration the benefit to

13 the public of permitting disclosure of work product to the government" disclosure

14 to government pursuant to a confidentiality agreement did not waive privilege).[5]

15 While the Ninth Circuit has not ruled on the application of the "selective waiver"

16 doctrine, it has recognized the probability that a corporation can "selectively waive"

17 the attorney-client privilege by "disclos[ing] the results of an internal investigation

18 to an investigating government agency without waiving attorney-client privilege or

19 work product protection as to the outside world."  *United States v. Bergonzi*, 403

20 F.3d 1048, 1050 (9th Cir. 2005); *see also* Order at 8:17-26.

21    Plaintiff's sole remaining argument is that filing of the Special Litigation

22 Committee report under seal and pursuant to a protective order in this Court in

23 connection with a motion to terminate prior pending derivative litigation constitutes

24

25 [4]    *See* Pl. Rev. Mot. at 7-8.

26 [5]    Numerous other federal court decisions are consistent with *McKesson*.  *See*,
*e.g.*, *In re Cardinal Health Inc. Sec. Litig.*, 2007 WL 495150, at *9 (S.D.N.Y Jan.
27 26, 2007) (company's confidentiality agreement with the SEC precluded waiver of
work product protections); *In re Natural Gas Commodity Litig.*, 2005 WL 1457666,
28 at *8 (S.D.N.Y. June 21, 2005) (same); *see* additional authorities *infra* at pp. 15-17.

1  a waiver.[6]  Judge Olguin's Order correctly found that such filing under seal in

2  connection with the derivative case motion did not render these materials available

3  to a third-party plaintiff in this action.  Order at 9:11-12:9; *see*, *e.g.*, *In re Perrigo*

4  *Co.,* 128 F.3d 430, 440 (6th Cir. 1997) (ruling that production of a special litigation

5  committee report pursuant to a protective order and filing under seal did not act as a

6  waiver to "plaintiffs in a hostile securities action"); *Ross v. Abercrombie & Fitch*

7  *Co*., 2008 WL 1844357, at *2 & *5 (S.D. Ohio 2008) (where special litigation

8  report was filed under seal, the court ruled that "the report remains privileged and

9  therefore not subject to discovery by the private securities plaintiffs").  First,

10  because judicial review of these materials is mandatory for any judicial

11  consideration of this type of derivative case motion, courts have recognized that

12  such compelled filings do not constitute a waiver.[7]  Second, Plaintiff's reliance on

13  authorities concerning the public's right to access materials which are dispositive to

14  an adversarial judicial determination is misplaced.  As Judge Olguin recognized, the

15  motion to terminate the derivative litigation was never even opposed, fully briefed

16  or argued nor advanced for ruling by this Court – as the parties took the motion off

17  calendar prior to the opposition filing and proceeded to settle the case without any

18  decision on the motion.[8]  As Judge Olguin observed, the motion thus was in no way

19  dispositive to the case because it was never briefed by the derivative plaintiff nor

20  submitted for a ruling.  *See* Order at 11:7-11:18.  For all of these reasons and as

21  detailed more fully herein, Judge Olguin's Discovery Order was consistent with

22  _____

[6]      *See* Pl. Rev. Mot. at 9-11.

23
[7]      *See Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F. Supp. 679,
24  687 (W.D. Mich. 1996) (denying class action plaintiffs access to special litigation
    committee report from an earlier derivative action); *see also Farber v. Publ. Svc.*
25  *Co. of New Mexico*, 1991 WL 208460, at *1 (D.N.M. Apr. 4, 1991) (protecting
    special litigation committee materials and communications "on the basis of work
26  product or applicable privilege").

[8]      *See* Order Taking Off Calendar The Semtech's Motion To Terminate And
27  For Providing For Joint Status Report Regarding The Parties' Progress Towards
    Settlement (Docket No. 91) *In re Semtech Corp. Derivative Litig.*, Case No. CV-
28  06-03510-CAS (FMOx) ("Semtech Deriv. Litig.").

-3-

1    well established precedent and should be affirmed.

2    **II.    STATEMENT OF THE ISSUES**

3        1.    Whether Judge Olguin was correct in holding that the compelled

4    production of privileged materials to the SEC and USAO under confidentiality

5    agreements with each government entity per *McKesson* did not constitute a waiver.

6        2.    Whether Judge Olguin was correct in holding that the filing of

7    privileged materials under seal by this Court's order as required in connection with

8    Semtech's motion to terminate prior pending derivative litigation that was never

9    briefed nor ruled upon did not constitute a waiver.

10   **III.   BACKGROUND**

11       **A.    Procedural Posture**

12       The parties filed briefing on the Motion by Plaintiff to Compel Discovery

13   Pursuant to the Subpoena Issued by Plaintiff to Ernst & Young LLP; Joint

14   Stipulation of Parties Pursuant to Local Rule 37-2 ("Motion to Compel" or "Joint

15   Stip.") on October 6, 2009, and Semtech filed supplemental briefing on October 11,

16   2009.  (Docket Nos. 146, 153.)[9]  Judge Olguin took the matter under submission

17   and later entered the twelve-page Order denying Plaintiff's motion to compel, and

18   quashing those challenged portions of the third party subpoena.  (Docket No. 156.)

19   Plaintiff filed the present Motion for Review on January 25, 2010.

20       **B.    Factual Background**[10]

21       On May 18, 2006, Semtech received a letter from the SEC notifying the

22   Company that it had initiated an investigation into Semtech's historical stock option

23   practices.  (Joint Stip. at 23.)  A grand jury subpoena also was issued by the USAO

24   notifying the Company of its parallel investigation.  *Id.*  Federal and state court

25   _____

26   [9]    All references to declarations herein refer to those declarations filed as
     exhibits to the Joint Stip.  (Docket No. 148.)

27   [10]    This Factual Background section includes only those facts relevant to the
     Motion for Review.  Semtech incorporates by reference the facts and background as
28   more fully articulated in the underlying Joint Stip.  (Docket No. 146, at 22-28.)

1  shareholder actions against Semtech and certain of its officers and directors

2  followed, including the instant action.  *Id.*

3      Shortly after learning of the government inquiries, on or about June 7, 2006,

4  the Board of Directors charged the Audit Committee with undertaking an internal

5  investigation of Semtech's stock option grant practices and related accounting.  *Id.*

6  On June 9, 2006, the Audit Committee retained outside counsel, Fenwick & West

7  LLP ("Fenwick"), to assist in its investigation and report to the Audit Committee its

8  recommendations, findings and advice.  *Id.*  Fenwick retained Navigant Consulting,

9  Inc. ("Navigant") to provide expert accounting advice and analysis in connection

10  with the investigation.  *Id.*  Thereafter, on July 12, 2006, the Board appointed a

11  committee comprised solely of independent directors (the "Special Committee"),

12  providing the Special Committee with the full authority and resources to continue

13  the investigation.  *Id.* at 23-24.  Fenwick's investigation was undertaken in

14  anticipation of litigation; in fact, the related shareholder lawsuits and government

15  investigations were pending when Fenwick's investigation began.  *Id.* at 24.

16      Upon completion of its investigation, Fenwick issued a report to the Special

17  Committee with its findings and recommendations (the "Fenwick Report").  *Id.*

18  Ultimately, Fenwick's interview memoranda, Navigant's accounting analysis, and

19  other investigative work product formed part of the basis for the Fenwick Report.

20  *Id.*

21      Similar to the Special Committee's investigation, the SEC and USAO

22  investigated the facts and circumstances surrounding Semtech's historical stock

23  option grant practices.  *Id.*  The SEC and USAO demanded that the Special

24  Committee produce documents related to its investigation, specifically including

25  Fenwick's work product.  *Id.*  The Special Committee notified the SEC and USAO

26  that it sought to protect attorney-client and work product privileges as to third

27  parties; however, it effectively had no choice but to acquiesce to the government's

28  demand.  *Id.*  The policies of the SEC and USAO at the time were articulated in the

SEC's October 31, 2001 "Seaboard Report"[11] and the Department of Justice's January 20, 2003 "Thompson Memorandum."[12]  *Id.* at 24-25.  These policies effectively required the Special Committee to demonstrate its cooperation by agreeing to produce materials otherwise protected by the attorney-client privilege or attorney work product doctrine, under threat of indictment or increased sanctions by the government.  *Id.* at 25.

In determining to cooperate with the SEC and USAO, and predicated on the common interests shared between the Special Committee and the government in investigating and uncovering potential wrongdoing, the Special Committee utilized the available safeguards to selectively disclose its work product to the government by first entering into a confidentiality agreement with each agency.  *Id.*  The agreements were consistent with the standard confidentiality and non-waiver agreements routinely executed by the SEC and USAO, and provided that the government would maintain the confidentiality of the documents and not assert that the Special Committee's production constituted a waiver of any attorney-client privileges or attorney work product protections as to any third party.  *Id.*  These agreements also expressed the mutual interests of the government and the Special Committee in investigating and analyzing the events at issue.  *Id.*

In response to the demands by the SEC and USAO, the Special Committee produced the Fenwick Report, the Fenwick interview memoranda and compilations of selected underlying documents identified by Fenwick attorneys.  *Id.*  These documents were produced pursuant to the Special Committee's agreements with the SEC and USAO for confidential treatment.  *Id.* at 26.  The confidentiality

---

[11]     SEC "Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934 and Commission Statement on the Relationship of Cooperation to Agency Enforcement Decisions" (the "Seaboard Report").  Miller Decl., Exhibit C.

[12]     Department of Justice memorandum regarding the "Principles of Federal Prosecution of Business Organizations" (the "Thompson Memorandum").  Miller Decl., Exhibit D.

1   agreements precluded disclosure to third parties except to the extent necessary for
2   the two agencies to discharge their duties, a standard condition required by each
3   agency to enter into the agreements.  *Id.*  Neither the SEC nor USAO have notified
4   Semtech that it was a target or subject of the Grand Jury Subpoena.  *Id.*  Similarly,
5   there has been no indication to date that either the SEC or USAO intends to
6   prosecute Semtech or to seek disgorgement or penalties from Semtech.  *Id.*

7   　　　Consistent with the recommendations of the Special Committee, in October
8   2006, Semtech's Board established a Special Litigation Committee of disinterested
9   directors to assess the claims in the shareholder derivative suits.  *Id.*  The Special
10  Litigation Committee retained Morrison & Foerster LLP ("Morrison") to conduct
11  an investigation concerning the derivative claims and to report to the Special
12  Litigation Committee its recommendations, findings and advice.  *Id.*

13  　　　Morrison's investigation included an analysis of the record previously
14  compiled by Fenwick and Navigant on behalf of the Special Committee, including
15  the Fenwick Report and Fenwick's interview memoranda.  *Id.*  In addition,
16  Morrison conducted its own interviews of current and former Semtech employees
17  and directors, collected and reviewed documents relevant to the shareholder
18  derivative suits, and performed legal analysis concerning the derivative claims.  *Id.*
19  On or about March 7, 2007, Morrison prepared a report of its investigation on
20  behalf of the Special Litigation Committee (the "Morrison Report").  *Id.*  The
21  Morrison Report was accompanied by two binders of supporting exhibits and
22  reflected Morrison attorneys' mental impressions, thoughts, and legal analysis of
23  the legal and factual issues presented in the investigation and related derivative
24  claims.  *Id.* at 26-27.  Neither the Morrison Report nor the work product of the
25  Morrison attorneys have been requested by or produced to the SEC or USAO.  *Id.*
26  at 27.

27  　　　On July 17, 2007, Semtech filed a Motion to Dismiss the Derivative
28  Complaints Pursuant to Rule 23.1 or in the Alternative Motion for Summary

1   Judgment in the consolidated derivative litigation, *In re Semtech Corporation*

2   *Derivative Litigation*, Case No. CV-06-03510, which was pending in the United

3   States District Court for the Central District of California.  In connection with the

4   motion, Semtech filed the Morrison Report and certain of the exhibits thereto,

5   including portions of the Fenwick Report and excerpts from certain of Fenwick's

6   interview memoranda.  These materials were filed under court-ordered seal and

7   pursuant to a protective order.  (Docket No. 57.)  Filing of these materials was

8   required under applicable Delaware law for the Court to adjudicate the motion.

9   This litigation was subsequently settled prior to any further briefing and hearing on

10   the motion.  (Joint Stip. at n.12.)

11   **IV.   ARGUMENT**

12       **A.   Standard Of Review**

13       A district court should modify or set aside a magistrate judge's non-

14   dispositive order only where it is "clearly erroneous or contrary to law."  28 U.S.C.

15   § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *see also Osband v. Woodford*, 290 F.3d 1036,

16   1041 (9th Cir. 2002); *Wolpin v. Philip Morris, Inc.*, 189 F.R.D. 418, 422-23 (C.D.

17   Cal. 1999).  While a magistrate judge's legal conclusions are reviewed *de novo*,

18   they are contrary to law only where they "fail[] to apply or misappl[y] relevant

19   statutes, case law, or rules of procedure."  *Harrington*, 2009 WL 1032858, at *1

20   (citing *DeFazio v. Wallis*, 459 F. Supp. 2d 159, 163 (E.D.N.Y. 2006)).[13]  District

---

21   [13]   District courts do not consider evidence that was not presented to a
22   magistrate judge in a non-dispositive motion.  28 U.S.C. sec. 636(b)(1)(A); *In re First Am. Corp. ERISA Litig.*, 258 F.R.D. 610, 624 (C.D. Cal. 2009) ("[P]arties
23   objecting to a magistrate judge's order may not present affidavits containing evidence not presented below."); *see also Estate of Gonzalez v. Hickman*, 2007 WL
24   3231956, at *3 (C.D. Cal. Apr. 18, 2007) (identifying the distinction between dispositive and non-dispositive rulings by magistrate judges for purposes of a
25   district court's review, and holding that a district court may not consider new information on review of a non-dispositive motion).  As Judge Olguin specifically
26   emphasized in his Order (in bold text), failure to advance arguments or present facts waives those arguments upon review by the District Court.  Order at n.3 (citing
27   MOORE'S FEDERAL PRACTICE § 72.11[1][a] (3d ed. 2009); *Seven For All Mankind, LLC v. GenX Clothing, Inc.*, 2006 WL 5720346, at *3 (C.D. Cal. 2006)).  This
28   Court should not, therefore, consider Exhibit B to the Pulliam Declaration as well as the additional "facts" relating to the settlement of the derivative litigation or any

1    courts give great deference to magistrate judges' rulings on discovery motions, and

2    should not "simply substitute [their] judgment for that of the" magistrate judge.

3    *Grimes v. City & County of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991); *see*

4    *also Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (a district court

5    "may not overturn [a magistrate judge's] order simply because it might have

6    weighed differently the various interests and equities").  Clearly, Judge Olguin's

7    ruling relied upon and is consistent with established precedent.

8         **B.    Judge Olguin Correctly Ruled In Applying Selective Waiver To**
            **The Production Of Protected Materials Under Confidentiality**
9            **Agreements To The SEC And USAO**

10   Judge Olguin did not fail to apply or misapply relevant statutes, case law or

11   rules of procedure.  *See Harrington*, 2009 WL 1032858, at *1.  As such, it is not

12   contrary to law.  In finding Semtech did not waive the protections over the Fenwick

13   Report, Judge Olguin considered the arguments and authorities presented by both

14   Plaintiff and Semtech, considered other case law independent of that cited by the

15   parties, and carefully considered approaches to selective waiver taken by courts

16   across the nation.  Order at 7-9.[14]

17   Although Plaintiff asserts that Judge Olguin's application of selective waiver

18   to production of the disputed materials to the SEC and USAO was "a first for any

19   _____

20   additional materials Plaintiff may improperly seek to submit with its reply brief.
     *See* Motion for Review at 7, 22-23.  It should also ignore Plaintiff's novel legal

21   arguments, presented here for the first time.  *See id.* at 14:4-14:16 (citing, for the
     first time, authorities regarding application of selective waiver); 15:11-17:1

22   (asserting new policy arguments underlying selective waiver doctrine); 22:14-23:12
     (arguing that the Court's final approval of the settlement in derivative litigation

23   constitutes waiver).

24   [14]    Plaintiff also appears to challenge the Order on the newly argued ground that
     public policy does not support the application of selective waiver to productions of

25   privileged materials to government entities.  (Pl. Rev. Mot. at 14-16.)  This new
     argument should not be considered by this Court, as it was not presented below to

26   Judge Olguin.  Regardless, the Order clearly addressed the public policies
     underlying selective waiver in productions of documents to the government, and

27   deemed that selective waiver encourages cooperation in government investigations,
     in the public interest.  (Order at 8-9 (citing *In re Grand Jury Subpoena Dated July*

28   *13, 1979*, 478 F. Supp. 368, 372-73 (E.D. Wis. 1979); *McKesson*, 2005 WL
     934331, at *10; *Cardinal Health*, 2007 WL 495150, at *9).)

1    court in the Ninth Circuit," Plaintiff is simply wrong and ignores the authority cited

2    by Judge Olguin and by Semtech in the Joint Stip. *See McKesson*, 2005 WL

3    934331, at *9, *10 (permitting disclosure to the government without waiver based

4    on "a distinction between disclosure to a private entity (resulting in waiver) and

5    disclosure to a government entity pursuant to a confidentiality agreement

6    (maintaining work product protection)"); *see also Bergonzi*, 403 F.3d at 1050

7    (recognizing the possibility that a corporation can "selectively waive" the attorney-

8    client privilege by "disclos[ing] the results of an internal investigation to an

9    investigating government agency without waiving attorney client privilege or work

10   product protection as to the outside world").  Moreover, this doctrine is well

11   developed in other jurisdictions. *See Diversified Indus., Inc. v. Meredith*, 572 F.2d

12   596, 611 (8th Cir. 1977) (*en banc*) (selective waiver approved where defendant

13   disclosed documents to the SEC "in a separate and nonpublic SEC

14   investigation");[15] *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 244

15   F.R.D. 412, 430, 433 (N.D. Ill. 2006) (holding that, where defendants produced

16   documents to the SEC pursuant to a confidentiality agreement, "selective waiver

17   may be appropriate where the disclosing party took steps to preserve its privilege");

18   *Cardinal Health*, 2007 WL 495150, at *9 (finding that a nonparty's confidentiality

19   agreement with the SEC precluded waiver of the work product protection).

20        Semtech did not waive the protections over the Fenwick Report and related

21   materials by producing them to the SEC and USAO for several independent

22   reasons: (1) the Special Committee was effectively compelled to "cooperate"

23   consistent with the SEC and USAO guidelines at the time for determining whether

24   to charge a corporation, which expressly considered whether the corporation

_____

[15]      In *Diversified*, the Eight Circuit upheld the selective waiver doctrine even in
the absence of a confidentiality agreement with the government agency.  As
described *supra*, *McKesson* and numerous other courts have upheld the selective
waiver doctrine where the documents in question were produced pursuant to a
confidentiality agreement, such as the agreements reached here between Semtech
and the SEC and USAO.

produced privileged materials; (2) the Special Committee and the SEC and USAO shared a common interest in analyzing the evidence and identifying potential wrongdoers; and (3) the Special Committee produced its attorneys' work product to the government pursuant to a confidentiality agreement.

### 1.   The Special Committee Had No Effective Choice But To Cooperate With The Government's Requests

An involuntary or compelled production does not waive the attorney-client privilege. *Transamerica Computer Co., Inc. v. Int'l Bus. Mach. Corp.*, 573 F.2d 646, 650-52 (9th Cir. 1978) (recognizing that "disclosure of confidential material constitutes a waiver of the attorney-client privilege only if it is voluntary and not compelled").  The Special Committee's production of Fenwick's investigative work product to regulators under extraordinary pressure to "cooperate" with their investigations constituted an involuntarily disclosure, and does not result in a waiver.

In 2006, at the time of the Special Committee's production to the SEC and USAO, federal prosecutors evaluated a corporation's cooperation pursuant to the SEC's Seaboard Report and the DOJ's Thompson Memorandum.  Among other factors, these guidelines effectively required corporations under investigation to demonstrate their cooperation by agreeing to produce relevant materials irrespective of privilege.  Specifically, the Thompson Memorandum required criminal prosecutors to consider "the willingness of a corporation to waive [the attorney-client privilege and work product protection] when necessary to provide timely and complete information" as a factor in evaluating the company's cooperation.  Miller Decl., Exhibit C at § VI.B.  The SEC's Seaboard Report similarly provided that production of privileged materials was a factor in evaluating a corporation's level of cooperation with its investigation.  Miller Decl., Exhibit D at n.3.  In practice, companies under threat of being labeled uncooperative have no real choice but to produce the requested documents to the government regardless of whether the

-11-

documents are privileged.  This is particularly true in the context of a special

committee in which a board member exercising his or her fiduciary duty to the

corporation is more likely to acquiesce to the government's pressure to waive rather

than put the company at risk of increased government scrutiny.  *See Weinberger v.*

*UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983) (quoting *Guth v. Loft, Inc.*, 5 A.2d 503,

510 (Del. 1939)) ("'[P]ublic policy . . . has established a rule that demands of a

corporate officer or director, peremptorily and inexorably, the most scrupulous

observance of his duty, not only affirmatively to protect the interests of the

corporation committed to his charge, but also to refrain from doing anything that

would work injury to the corporation . . . .'").

      The subsequent policies of the DOJ recognize the coercive nature of the

directives under the Thompson Memorandum.[16]  Following the lead of the DOJ, the

SEC revamped its guidelines in October 2008 in a revision of its Enforcement

Manual, which directed its staff not to ask a company to waive its privileges.

Miller Decl., Exhibit G at § 4.3.  The Enforcement Manual now dictates that "the

staff should not ask a party to waive attorney-client or work product privileges and

is directed not to do so."  *Id.*  The Enforcement Manual also provides that a

company's decision to assert privilege "will not negatively impact [its] claim of

credit for cooperation."  *Id.*  The sea change associated with the publication of the

Filip Memorandum and the SEC Enforcement Manual evidenced a significant

departure from the pressure to produce privileged documents that had been imposed

---

[16]    Following a deluge of criticism that the DOJ's guidelines exerted undue pressure on corporations to waive privilege, the DOJ replaced the Thompson Memorandum with the December 12, 2006 Paul McNulty memorandum (the "McNulty Memorandum").  Miller Decl., Exhibit E.  The McNulty Memorandum significantly reduced the pressure imposed on corporations to produce privileged materials by limiting the "cooperation credit" that could be afforded to a company for producing privileged documents.  Miller Decl., Exhibit E at § VII.B.2. Recognizing that the McNulty Memorandum did not go far enough, the latest iteration of the DOJ's guidelines, the August 28, 2008 Mark Filip memorandum (the "Filip Memorandum"), mandates that federal prosecutors now may not even request that a corporation produce privileged materials.  Miller Decl., Exhibit F at § 9-28.710.  These developments, however, post-dated the Special Committee's production to the government.

on companies such as Semtech under the prior policies of the SEC and USAO contemporaneous with Semtech's production in 2006 to the government.

The California Court of Appeal's recent decision in *Regents of the University of California v. Superior Court*, 165 Cal. App. 4th 672 (Cal. Ct. App. 2008), recognized the coerciveness of the policies under the Thompson Memorandum. The Court of Appeal held that the corporate defendants' production of privileged material to a government agency operating under the Thompson Memorandum constituted coercion under California law, and thus did not result in a waiver of the privilege. *Id.* at 683.

> [W]hen privileged documents have been disclosed either in response to the request of a government agency or inadvertently in the course of civil discovery, no waiver of the privilege will occur if the holder of the privilege has taken reasonable steps under the circumstances to prevent disclosure.  The law does not require that the holder of the privilege take "strenuous or Herculean efforts" to resist disclosure.

*Id.*  In *United States v. Stein*, the Southern District of New York found that the cooperation factor in the Thompson Memorandum required a corporation to comply "because the government held the proverbial gun to its head."  435 F. Supp. 2d 330, 336 (S.D.N.Y. 2006), *aff'd*, 541 F.3d 130 (2d Cir. 2008).

Here, the regulators demanded that the Special Committee produce documents related to its investigation, specifically including privileged documents. Stanton Decl. at ¶ 10.  Against the backdrop of the Thompson Memorandum and the Seaboard Report, the Special Committee was effectively required to produce the requested documents to the regulators or risk increased scrutiny, delisting from the market, and possible prosecution.  Accordingly, the Special Committee's production was not voluntary and cannot be deemed a waiver of the attorney-client privilege or work product protections.

1

2

**2.     The Special Committee And The Government Shared A Common Interest Sufficient To Maintain The Attorney-Client And Work Product Privileges**

3      Disclosure of work product to another person who has an interest in the

4  information but is not reasonably viewed as a "conduit" to a potential adversary is

5  not deemed to be a waiver of the attorney work product protections.  *McKesson*,

6  2005 WL 934331, at *6 (quoting *Bowne, Inc. v. AmBase Corp.*, 150 F.R.D. 465,

7  479 (S.D.N.Y. 1993)).  If two parties share a common interest, a party does not

8  waive the work product protections by disclosing documents.  *United States v. Am.*

9  *Tel. & Tel. Co.*, 642 F.2d 1285, 1300 (D.C. Cir. 1980) (finding no waiver of work

10 product protections by sharing documents with the government due to the common

11 interest with the government "in developing legal theories and analyses of

12 documents").  A common interest can occur even when the parties' interests are

13 adverse in "substantial respects."  *See, e.g.*, *Modesto Irrigation Dist. v. Gutierrez*,

14 2007 WL 763370, at *15 (E.D. Cal. Mar. 9, 2007) ("The [common interest]

15 privilege does not require a complete unity of interests among the participants, and

16 it may apply where the parties' interests are adverse in substantial respects.").

17     The Special Committee and the SEC and USAO shared a common interest in

18 investigating and uncovering any potential wrongdoing associated with Semtech's

19 stock option grants.  *See Cardinal Health*, 2007 WL 495150, at *9 (denying

20 plaintiff's motion to compel on the grounds that the government and a board

21 committee shared a "common interest in developing legal theories and analyzing

22 information" regarding potential financial irregularities) (internal citation omitted).

23 Courts have recognized that strong public policy considerations underlie the

24 application of the common interest doctrine between a board committee conducting

25 an internal investigation and the government, and thus work product should be

26 "*protect[ed] . . .  in these circumstances to encourage cooperation between the*

27 *private and public sectors acting with a common interest.*"  *Id.* (emphasis added)

28 (citing *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 236 (2d Cir. 1993) (adopting a

-14-

case-by-case approach to the selective waiver doctrine, and recognizing the applicability of the doctrine when the corporation and the government have a common interest)).  To date, the SEC and USAO have not brought any civil, criminal, or administrative proceedings against Semtech or its board.  Miller Decl. at ¶ 10.  Nor has either agency ever notified Semtech that it was a target or subject of the Grand Jury Subpoena.  *Id.*  In the past forty-four months since Semtech was notified of these investigations, the relationship between the government and Semtech was cooperative and consistent with the common interests of the parties. *Id.*

### 3.    Semtech Preserved The Protections By Entering Into Confidentiality Agreements With The SEC And USAO

Semtech maintains that the Special Committee's production of the Fenwick Report to the SEC and USAO did not constitute waiver.  To the extent that production would have constituted a waiver, however, the waiver was limited to the government and not a waiver as to third parties.  While the Ninth Circuit has not ruled on the application of the "selective waiver" doctrine, it has recognized the possibility that a corporation can "selectively waive" the attorney-client privilege by "disclos[ing] the results of an internal investigation to an investigating government agency without waiving attorney client privilege or work product protection as to the outside world."  *Bergonzi*, 403 F.3d at 1050.[17]  This view is consistent with the strong public policy considerations served by encouraging companies to cooperate with government investigations without having to choose between exercising good corporate citizenship and waiving privileges as to all future adversaries.  *See, e.g., In re Grand Jury Subpoena*, 478 F. Supp. at 372-73

---

[17]    Even assuming, *arguendo*, that the attorney-client privilege was waived, which it was not, it does not follow that the attorney work product protection also was waived.  *In re Broadcom Corp. Sec. Litig.*, 2005 WL 1403513, at *3 (C.D. Cal. Apr. 7, 2005) (citing *Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 929-30 (N.D. Cal. 1976) ("Since protections afforded work product and attorney-client communications address different goals, it does not follow that a waiver of one automatically results in a waiver of the other."), *aff'd*, 2005 WL 1403508 (C.D. Cal. May 10, 2005).

("[V]oluntary cooperation with [the government] investigation would be substantially curtailed if such cooperation were deemed to be a waiver of a corporation's attorney-client privilege."); *Saito v. McKesson HBOC, Inc.*, 2002 WL 31657622, at *10-11 (Del. Ch. Nov. 13, 2002) (invoking the selective waiver doctrine with respect to an investigative report and related documents based on the "strong public interest such a rule would serve"), *aff'd*, 870 A.2d 1192 (Del. 2005); *Cardinal Health*, 2007 WL 495150, at *9 (finding no waiver of the work product protection under a common interest theory).

Several courts have upheld the selective waiver doctrine in the context of a confidentiality agreement between the parties, such as the agreements reached here between the Special Committee and the SEC and USAO. *See McKesson*, 2005 WL 934331, at *9 (permitting disclosure to the government, without waiver, where documents are produced pursuant to a confidentiality agreement, because disclosure in this manner "[does] not undermine the underlying principles of the work product doctrine"); *Cardinal Health*, 2007 WL 495150, at *9 (finding that a company's confidentiality agreement with the SEC precluded waiver of the work product protections); *In re Natural Gas Commodity Litig.*, 2005 WL 1457666, at *8 (same); *Lawrence E. Jaffe Pension Plan*, 244 F.R.D. at 433 (same); *Maruzen Co. v. HSBC USA, Inc.*, 2002 WL 1628782, at *2 (S.D.N.Y. Jul. 23, 2002) (same); *see also In re Subpoena Duces Tecum*, 738 F.2d 1367, 1375 (D.C. Cir. 1984) (finding that a party can avoid waiver by "insist[ing] on a promise of confidentiality before disclosure to the SEC").[18]

---

[18]     Certain other California District Court cases considered but did not adjudicate the merits of the selective waiver doctrine, finding the attorney-client and work product privileges did not attach. *See, e.g., In re Syncor Erisa Litig.*, 229 F.R.D. 636 (C.D. Cal. 2005) (finding no privilege ever attached to the documents in the first instance); *United States v. Bergonzi*, 216 F.R.D. 487 (N.D. Cal. 2003) (same).  Plaintiff's reliance on *United States v. Reyes*, 239 F.R.D. 591, 603 (N.D. Cal. 2006) is similarly misplaced.  *Reyes* involved an indicted former company executive attempting to obtain his non-party employer's investigative findings and conclusions in order to prepare his criminal defense.  *Id.* at 596.  The court did not permit the company to withhold this information from its former CEO.  *Id.*  The relevant posture and legal duties in *Reyes* are thus fundamentally distinct from

In *McKesson*, the Northern District of California held that disclosure of privileged materials to the government pursuant to a confidentiality agreement was only a "selective waiver" as to the government agency and not as to all future adversaries.  2005 WL 934331, at *10.  Judge Whyte found that "taking into consideration the benefit to the public of permitting disclosure of work product to the government," it did not result in a broader waiver as to third parties.  *Id.*

Under circumstances similar to those facing *McKesson*, the Special Committee utilized the available protections to comply with the government's request, while minimizing the potential for disclosure to Semtech's adversaries. The confidentiality agreements reached with the SEC and USAO provided that the government would maintain the confidentiality of the documents and would not assert that the Special Committee's production constituted a waiver of any attorney-client privileges or work product protections.  Stanton Decl. at ¶¶ 11-12. "Permitting disclosure to the government under a confidentiality agreement [does] not undermine the underlying principles of the work product doctrine." *McKesson*, 2005 WL 934331, at *9 ("The work product privilege rests on the belief that . . . promotion of adversary preparation ultimately furthers the truth-finding process.") (internal citation omitted).  Accordingly, the Special Committee never waived the privilege as to Plaintiff.

**C.    Judge Olguin Correctly Ruled That Filing Protected Materials Under Seal Did Not Constitute A Waiver**

**1.    The Protective Order And Filing Of The Morrison Report Under Seal Preclude Waiver**

As Judge Olguin recognized, filing the Special Litigation Committee report, and related documents under seal pursuant to a protective order maintains the confidentiality of the documents.  Order at 10:26-11:7; *see also Perrigo*, 128 F.3d at 440-41 (holding that production of a special litigation committee report pursuant

---

Semtech where this third-party plaintiff had no involvement with the underlying facts nor is it being prosecuted.

to a protective order, and filing of the report under seal, provided the parties in the

derivative case access to the protected materials, but did not act as a waiver which

would give confidential report information to the public domain, including

"plaintiffs in a hostile securities action"); *Abercrombie*, 2008 WL 1844357, at *4-5

(applying Delaware law to hold that privilege was not waived as to securities

plaintiffs who sought a special litigation committee report that was filed under seal

in a related derivative action); *In re Oracle Sec. Litig.*, 2005 U.S. Dist. LEXIS

46931 (N.D. Cal. Aug. 5, 2005) ("The Court here does not base its holding on the

mere fact that the [special litigation committee] report and memoranda were filed in

the derivative action.").[19]

Judge Olguin recognized that the authorities relied upon by Plaintiff:

> finding waiver require something more than simply
> attaching a Special Litigation Committee report to a
> motion to terminate. *See e.g.*, *Joy v. North*, 692 F.2d 880,
> 884 & 893-94 (2d Cir. 1982), cert denied, 460 U.S. 1051,
> 103 S. Ct. 1498 (1983) (protected documents attached to
> summary judgment motion, which the court ruled on);
> *Zitin v. Turley*, 1991 WL 283814, at *1 & *5 (D. Ariz.
> 1991) (same); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302,
> 1314-16 (7th Cir. 1984) (company voluntarily offered the
> report into evidence at a public hearing and had publicly
> disclosed the report's contents at that hearing); *Oracle*,
> 2005 U.S. Dist. LEXIS 46931, at *32-36 (company filed
> protected documents in support of dispositive motion,
> voluntarily disclosed documents to plaintiffs in other
> actions, and allowed reference to contents of documents in
> open court without objection or moving to seal).

Order at 11-12; Pl. Rev. Mot. at 20-22.  Each of these cases required something

more, such as a ruling from the court on the dispositive motion or voluntary

disclosure of the materials to third parties without efforts to maintain them in

confidence.  Judge Olguin correctly held that the motion to terminate was never

---

[19]     The Morrison Report's filing in connection with the Motion to Terminate
was governed by protective order and made under seal pursuant to orders by this
Court.  *See Semtech Deriv. Litig.*, Docket No. 57.

-18-

ripe for decision by this Court and found that Semtech took the necessary steps to maintain the confidentiality of the Morrison Report.

### 2. The Semtech Derivative Litigation Was Settled Before Briefing On The Motion Was Ever Completed

Plaintiff's remaining argument relies entirely on the notion that the public has a right of access to materials submitted in connection with a "dispositive" motion. Pl. Rev. Mot. at 18-20. That argument has no application here as the derivative case motion did not prove to be dispositive and the public policy consideration never materialized. *See Foltz v. State Farm Mut. Aut. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003) ("*Foltz II*")[20] (presumption in favor of public access is rebutted if motion is non-dispositive).[21]

As Judge Olguin correctly held, Semtech's motion to terminate was non-dispositive, given that the parties settled the case before it was completely briefed or this Court considered the motion, or had an opportunity to resolve any dispute. (Order at 11.) "[T]he strong presumption of access to judicial records applies fully to dispositive pleadings . . . because the *resolution* of a dispute on the merits, *whether by trial or summary judgment*, is at the heart of the interest in ensuring the public's understanding of the judicial process and of significant public events." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (citing *Foltz II*, 331 F.3d at 1135-36) (emphasis added; internal quotations and citations omitted). This presumption in favor of public access to materials attached to dispositive motions is based on the adversarial resolution of a dispute. Absent resolution, however, a motion is not dispositive, and these policy interests are not

---

[20]    To avoid confusion, Semtech designates this case as "*Foltz II*," as the underlying district court decision, *Foltz v. State Farm Mutual Automobile Insurance Company*, is also discussed herein and referred to as "*Foltz I*."

[21]    Moreover, the presumption in favor of public access to materials filed in support of a dispositive motion is not absolute. *Foltz II*, 331 F.3d at 1135. Where a party seeking to seal materials attached to a dispositive motion from public access provides compelling reasons for doing so, a court may order those materials sealed. *Id.*

1   implicated.  In the *Semtech Derivative Litigation*, the derivative plaintiffs were

2   never obligated to nor did they file an opposition to the motion.  After Semtech

3   filed the motion to terminate, the parties stipulated to taking the motion off calendar

4   while reaching a settlement.  *Semtech Deriv. Litig.*, Docket No. 91.  Because this

5   Court was never in a position to rule on the motion, the policy interests underlying

6   the presumption in favor of public access never came into play.  This is particularly

7   true in the context of a derivative plaintiff that purportedly stands in the shoes of

8   Semtech.

9       Plaintiff's reliance upon *Foltz II* is misplaced and of no avail in challenging

10  the Order.  Pl. Rev. Mot. at 19-20 (citing *Foltz v. State Farm Mut. Aut. Ins. Co.*,

11  Case No. 94-06293-HO (D. Or.) ("*Foltz I*"); *Foltz II*, 331 F.3d at 1122.)  In fact, if

12  anything, the analysis underlying *Foltz* decisions bolsters Judge Olguin's Order.

13  As a threshold matter, it should be recognized that *Foltz I* and *II* did not involve

14  special committee materials, or derivative litigation; instead they involved a third

15  party's attempt to undo a global seal of the court's docket in a business lawsuit, and

16  in particular materials relating to a summary judgment motion and a motion to

17  disqualify counsel.  *Foltz II*, 331 F.3d at 1127, 1136, 1138.  The summary judgment

18  materials were sealed on the basis they contained trade secret and confidential

19  business information.  *Id.* at 1136.  Significantly, the materials underlying the

20  motion to disqualify counsel were sealed because of their attorney-client privileged

21  nature.  *Id.* at 1138.

22      While Plaintiff cites the *Foltz* decisions for the proposition that the court

23  ultimately unsealed the trade secret information (not the privileged material)

24  associated with the yet "unheard" summary judgment motion (Pl. Rev. Mot. 17-20),

25  plaintiff ignores fundamental differences between the proceedings there and in the

26  Semtech derivative action.  First, the summary judgment motion in *Foltz*, unlike

27  Semtech, was ripe for adjudication by the Court and merely held in abeyance

28  pending an arbitration ruling.  Indeed the *Foltz I* docket reveals that the Court

1   ordered the motions for summary judgment back on calendar for hearing after the

2   ruling.[22]  They were not withdrawn by the parties and in that sense remained before

3   the court and "dispositive" to the case.[23]  Thus, Plaintiff's suggestion that Semtech

4   and *Foltz* are "identical" is a non-starter.

5       The second key distinction overlooked by Plaintiff is that *Foltz II* rejected the

6   application to unseal privileged material.  As the Ninth Circuit Court observed in

7   *Foltz II*, certain types of motions require parties "to produce attorney-client

8   communications and possibly work product that are traditionally protected from

9   disclosure.  Neither the public *nor collateral litigants* have any apparent right to or

10  interest in such disclosure.  *This does not foreclose independent discovery in any*

11  *collateral litigation.*  We see no conceivable policy reason to serve up such

12  information on a silver platter." *Foltz II*, 331 F.3d at 1138 (emphasis added).  The

13  *Foltz II* court thus denied motions to unseal attorney-client privileged and work

14  product materials filed in support of a motion to disqualify opposing counsel on the

15  grounds that the motion required the filing of such documents.  *Id.*  Again, while

16  the *Foltz II* court unsealed other materials that were filed in connection with

17  motions for summary judgment, those materials were not attorney-client privileged

18  communications or work product.  *Id.* at 1136 (unsealing "confidential financial

19  information, third-party medical records, personnel files, and trade secrets").

20      Semtech was similarly required to file under seal the Morrison Report in

21  connection with its Motion to Terminate just as the party in *Foltz II* was required to

22  attach privileged materials to its motion for disqualification of opposing counsel.

23  When a company files a motion to terminate derivative litigation, Delaware law

24  requires the company to file "a thorough written record of the investigation and its

25  _____

26  [22]    *Foltz I*, Case No. 94-06293-HO, Docket Nos. 401, 439.

27  [23]    Unlike the circumstances surrounding Semtech's motion to terminate,
    however, all the parties in *Foltz I* had fully briefed their positions on summary
    judgment and submitted their arguments to the district court for adjudication and
28  resolution.  (*Foltz I*, Case No. 94-06293-HO, Docket Nos. 300, 350.)

findings and recommendations" in order to sustain its burden of proving the independence and good faith of the special litigation committee, as well as the reasonableness of its investigation. *Zapata Corp. v. Maldonado*, 430 A.2d 779, 788 (Del. 1981);[24] *see also Abercrombie*, 2008 WL 1844357, at *3 (citing *Perrigo*, 128 F.3d at 441, for the proposition that "disclosure of the report . . . is essentially involuntary, at least in the sense that once the corporation chooses to take advantage of the statutory procedure and move to dismiss the derivative case, it must . . . disclose it to the derivative plaintiffs"); *Kaplan v. Wyatt*, 484 A.2d 501, 506 (Del. 1984) (citing *Zapata*, 430 A.2d 779) (holding that a corporation's motion to terminate derivative litigation "*must* be supported by a thorough written record," which describes the special litigation committee's investigation, findings, and recommendation) (emphasis added).  In the Ninth Circuit, such compelled production is thus not a waiver.  *See Transamerica*, 573 F.2d at 650-52 (recognizing that compelled production of confidential material does not constitute a waiver of the attorney-client privilege).

Producing the special litigation committee report and supporting documents is required by the unique nature of the judicially prescribed special litigation committee process and does not amount to a voluntary waiver of protected information such that plaintiffs in subsequent lawsuits may demand production of

---

[24]	Judge Olguin indicated that the parties did not address whether Delaware law or Ninth Circuit law applies to this analysis.  (Order at 10.)  To clarify Semtech's position, Delaware law governs.  *See Johnson v. Hui*, 811 F. Supp. 479, 483-84 (N.D. Cal. 1991) (applying Delaware law to a Delaware corporation's motion to terminate derivative litigation); *Abercrombie*, 2008 WL 1844357, at *2 (same); *In re KLA-Tencor Corp. S'holder Deriv. Litig.*, 2008 WL 2073936, at *1 (N.D. Cal. May 14, 2008) (holding that, where nominal defendant KLA-Tencor was a Delaware corporation, "[u]nder Delaware law – which is controlling here – discovery in connection with a motion to terminate is 'not by right, but by order of the Court . . . . '") (quoting *Kaplan v. Wyatt*, 499 A.2d 1184 (Del. 1985)).  Moreover, federal courts frequently look to Delaware for precedent relating to corporate derivative litigation.  *See, e.g., McCarthy v. Middle Tenn. Elec. Membership Corp.*, 466 F.3d 399, 408 (6th Cir. 2006) (characterizing plaintiffs' claims as derivative under Delaware law because "Delaware's judiciary are recognized as specialists in the field of corporate law.  Courts of other states consider the decisions of Delaware courts on corporate matters to be instructive.") (internal quotation marks and citation omitted).

that information.  *See Picard*, 951 F. Supp. at 687 (noting that disclosure of a special litigation committee report in a derivative action did not require disclosure in subsequent class action since the class action plaintiffs had no need to rebut the presumption that the special litigation committee acted in good faith and made a reasonable investigation; furthermore, because production of the report was compelled in the derivative action, there was no waiver of the attorney-client privilege or work product protections).  Because the Special Litigation Committee's disclosure of otherwise privileged documents to the Court and plaintiffs in the derivative litigation was compelled by Delaware law, the Special Litigation Committee's production also falls within the compelled disclosure exception and does not waive the privilege with respect to any other entities or individuals in subsequent litigation, including this matter.  Judge Olguin's Order is thus fully consistent with well-established precedent.  Order at 9-12.[25]

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[25]     Finally, Plaintiff argues unconvincingly that the approval of the derivative settlement involved materials that it seeks to access here; however, it cites no authority that extends the public right of access in the settlement context.  (Pl. Rev. Mot. at 22-23.)  The authorities addressing the policies underlying the confidential nature of settlement negotiations militate against access to those materials.  *See e.g.*, *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003) ("Parties are unlikely to propose the types of compromises that most effectively lead to settlement unless they are confident that their proposed solutions cannot be used on cross examination, under the ruse of 'impeachment evidence,' by some future third party."); *Cook v. Yellow Freight Sys., Inc.*, 132 F.R.D. 548 (E.D. Cal. 1990) (citing *United States v. Contra Costa County Water Dist.*, 678 F.2d 90, 92 (9th Cir. 1982) in denying discovery of settlement materials and articulating that settlement negotiations are "motivated by a desire for peace rather than from a concession of the merits of the claim"), *overruled on other grounds by Jaffe v. Redmond*, 518 U.S. 1 (1996).  Furthermore, Plaintiff failed to raise this argument in front of Judge Olguin, precluding it from consideration now.  *See* n.13, *supra*.

1   **V.      CONCLUSION**

2          For the reasons articulated above, this Court should deny Plaintiff's motion

3   for review.

4   DATED:  February 1, 2010          CHRISTOPHER H. McGRATH
                                      MORGAN J. MILLER
5                                     KIMBERLEY A. DONOHUE
                                      PAUL, HASTINGS, JANOFSKY
6                                         & WALKER LLP

7

8                                     By:    /s/Christopher H. McGrath
                                              CHRISTOPHER H. McGRATH
9
                                      4747 Executive Drive, 12th Floor
10                                    San Diego, CA  92121
                                      Telephone:  (858) 458-3000
11                                    Facsimile:  (858) 458-3005

12                                    THOMAS A. ZACCARO
                                      PAUL, HASTINGS, JANOFSKY
13                                        & WALKER LLP
                                      515 South Flower Street, Twenty-Fifth Floor
14                                    Los Angeles, CA  90071-2228
                                      Telephone:  (213) 683-6000
15                                    Facsimile:  (213) 627-0705

16                                    Attorneys for Defendants
                                      *Semtech Corporation, Jason L. Carlson,*
17                                    *and Mohan R. Maheswaran*

18

19

20

21

22

23

24

25

26

27   LEGAL_US_W # 63773139.2

28

                                      -24-