MARK I. LABATON (SB# 159555)
(mlabaton@kreindler.com)
KREINDLER & KREINDLER LLP
707 Wilshire Blvd., Suite 4100
Los Angeles, CA 90017
Telephone: (213) 622-6469
Facsimile: (213) 622-6019

J. ALLEN CARNEY
(acarney@carneywilliams.com)
MARCUS N. BOZEMAN
(mbozeman@carneywilliams.com)
RANDALL K. PULLIAM
(rpulliam@carneywilliams.com)
CARNEY WILLIAMS BATES
   BOZEMAN & PULLIAM, PLLC
11311 Arcade Drive, Suite 200
P.O. Box 25438
Little Rock, AR 72212
Telephone: (501) 312-8500
Facsimile: (501) 312-8505

*Local and Lead Counsel for Plaintiff and the Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IN RE SEMTECH CORPORATION SECURITIES LITIGATION | CASE NO. 2:07-cv-07114-CAS (FMOx)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITY TO DEFENDANT SEMTECH'S OPPOSITION TO PLAINTIFF'S OBJECTIONS AND MOTION FOR REVIEW**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date:  February 22, 2010<br>Time:  10:00 a.m.<br>Ctrm:  5, 2nd Floor<br>Judge:  Hon. Christina A. Snyder |

# TABLE OF CONTENTS

Page No.

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ....................................................................................................... 3

    A. Standard of Review ................................................................................... 3

    B. The Magistrate Judge Erred by Applying a Blanket Assertion of Selective Waiver to All "Privileged" and "Protected" Materials Semtech Produced to Third Parties ........... 4

    C. The Magistrate Judge Erred by Ruling that Semtech's Filing the Motion to Terminate Did Not Constitute Waiver .......... 8

        1. Semtech's Motion to Terminate was a dispositive motion ........ 8

        2. Semtech waived any "privileges" or "protections" when the Motion to Terminate was filed and Lead Plaintiff is entitled to their discovery ................................................................. 9

            a. Under Delaware law, Semtech's Special Litigation Committee had no reasonable expectation that its investigation would remain confidential ............................. 9

            b. Semtech's filing of the Motion to Terminate provided the "privileged" or "protected" materials to the derivative plaintiffs and constituted waiver at the time it was filed .................................................................... 11

            c. Semtech's filing of the Motion to Terminate under seal does not shield the materials filed from discovery by Lead Plaintiff ................................................................... 12

III. CONCLUSION .................................................................................................. 14

## II. TABLE OF AUTHORITIES

**Case**                                                                                                      **Page No.**

*Clarke v. Am. Commerce Nat'l Bank,*
    974 F.2d 127 (9th Cir. 1992)..................................................................4

*Diversified Indus., Inc. v. Meredith,*
    572 F.2d 596 (8th Cir. 1977)..........................................................4, 7, 8

*Foltz v. State Farm Mut. Auto. Ins. Co.,*
    331 F.3d 1122 (9th Cir. Or. 2003) ....................................................*passim*

*In re Cardinal Health, Inc. Sec. Litig.,*
    No. 04 Civ. 575, 2007 U.S. Dist. LEXIS 36000
    2007 WL 495150 (S.D.N.Y. Jan. 26, 2007) ...........................................7, n. 7

*In re Initial Pub. Offering Sec. Litig.,*
    249 F.R.D. 457 (S.D.N.Y. 2008) ......................................................7, n. 7

*In re Natural Gas Commodity Litig.,*
    No. 03 Civ. 6186, 2005 U.S. Dist. LEXIS 11950
    2005 WL 1457666 (S.D.N.Y. June 21, 2005) .........................................7, n. 7

*In re Oracle Sec. Litig.,*
    No. C-01-0988 MJJ (JCS)
    2005 U.S. Dist. LEXIS 46931 (N.D. Cal. Aug. 5, 2005) ......................*passim*

*Joy v. North,*
    692 F.2d 880 (2d Cir. 1982).........................................................11, 12, 13

*Maruzen Co. v. HSBC USA, Inc.,*
    No. 03 Civ. 6186, 2005 U.S. Dist. LEXIS 11950
    2005 WL 1457666 (S.D.N.Y. June 21, 2005) .........................................7, n. 7

*McMorgan & Co. v. First Cal. Mort. Co.,*
    931 F.Supp. 703 (N.D. Cal. 1996) .........................................................6, 8

*Picard Chem. Inc. Profit Sharing Plan v. Perrigo.,*
    951 F. Supp. 679 (W.D. Mich. 1996))..................................................10

*Tennenbaum v. Deloitte & Touche,*
    77 F.3d 337 (9th Cir. 1996)......................................................................... 4

*United States v. Bauer,*
    132 F.3d 504 (9th Cir. 1997)........................................................................ 3

*United States v. Bergonzi,*
    403 F.3d 1048 (9th Cir. 2005).............................................................. 5, n. 5

*United States v. Mass. Inst. of Tech.,*
    129 F.3d 681 (1st Cir. 1997)......................................................................... 6

*United States v. McConney,*
    728 F.2d 1195 (9th Cir. 1984)...................................................................... 3

*United States v. Reyes,*
    239 F.R.D. 591 (N.D. Cal. 2006)......................................................... 5, 7, 8

*Westinghouse Elec. Corp. v. Republic of the Philippines,*
    951 F.2d 1414 (3d Cir. 1991)..................................................................... 13

*Zitin v. Turley,*
    No. CIV 89-2061-PHX-CAM  1991
    U.S. Dist. LEXIS 10084 (D. Ariz. June 20, 1991) ................................ 11, 12

Lead Plaintiff Mississippi Public Retirement System ("Lead Plaintiff") respectfully submits this Reply Memorandum to Defendant Semtech Corporation's ("Semtech" or the "Company") Opposition to Plaintiff's Objections and Motion for Review. ("Opp.")[1]

## I.  INTRODUCTION

In its Opposition to Plaintiff's Objections and Motion for Review, Semtech claims that there are only two issues before this Court – (1) whether Semtech's production to the Securities and Exchange Commission ("SEC") and United States Attorneys Office ("USAO") constituted a waiver and (2) whether Semtech's filing of the Motion to Terminate in the derivative litigation constituted a waiver. (Opp. at 4). However, in its Motion to Compel, Lead Plaintiff asserts that Semtech waived the attorney-client privilege and work-product protections by producing materials to five different third parties – Ernst & Young LLP, the SEC, the USAO, the National Association of Securities Dealers Automated Quotations (the "NASDAQ"), and the derivative plaintiffs. (Joint Stip. at 2). Each of these productions constitute waiver and are sufficient to allow Lead Plaintiff access to the materials sought in its Motion to Compel. More particularly, the Magistrate Judge improperly applied the doctrine of selective waiver to each of Semtech's third party productions. (Order at 6-9). This blanket application of selective waiver for attorney-client privilege and work-product

---

[1]  As a threshold matter, Semtech argues that Lead Plaintiff's failure to comply with Local Rule 7-3 precludes this Court's consideration of this motion. (Opp. at 1, n. 1). Local Rule 7-3 expressly excludes discovery motions, which are governed by Local Rule 37. As stated in detail within Lead Plaintiff's Motion to Compel Discovery and Joint Stipulation of Parties Pursuant to Local Rule 37-2 (Doc. 146) ("Joint Stip."), the parties have already engaged in extensive pre-filing conferences on the discovery issues currently before the Court in this motion. (Joint Stip. at 1-2.) Even if the parties were required to conference again on these issues, Plaintiff respectfully submits that any such conference would be inefficient and futile as the parties are, at this juncture, powerless to reach any resolution of this dispute inapposite to the ruling of the Honorable Magistrate Judge Fernando M. Olguin issued January 11, 2010 (the "Order").

protection was a first for any court in this Circuit. Ostensibly, the Magistrate Judge relied on *In re McKesson HBOC, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 7098 (N.D. Cal. Mar. 31, 2005) in support of his decision. However, the district court in *McKesson* allowed selective waiver of only the work-product protection, and only where the production was made solely to a government agency pursuant to a confidentiality agreement. Permitting Semtech to selectively reveal the purportedly confidential report when it suits its purpose, for example, in support of a dispositive motion to dismiss, while simultaneously allowing its protection from discovery in other proceedings is inconsistent with the law.

In the matter presented here, the Magistrate Judge erred by expanding application of the selective waiver doctrine to Semtech's production to the NASDAQ (Order at 9, n. 5). In its Opposition, Semtech argues that it was "compelled" to produce to the SEC and USAO and discusses at length the process by which it engaged in confidentiality agreements with these government agencies (Opp. at 11-13), but Semtech submitted no evidence that a similar confidentiality agreement was signed with the NASDAQ.[2] Notwithstanding errors made on the blanket application of the doctrine of selective waiver, the evidence before the Magistrate Judge was insufficient to find that Semtech's production to the NASDAQ constituted selective waiver. In denying Lead Plaintiff's Motion to Compel, Lead Plaintiff respectfully submits that the Magistrate Judge committed error and accordingly, this Court should reverse the underlying decision.

Additionally, the Magistrate Judge based his ruling that Semtech's filing of the Motion to Terminate did not constitute waiver on the flawed premise that a motion to terminate is not a dispositive motion. (Order at 11). The Magistrate Judge committed

---

[2] Notwithstanding the fundamental differences between a government agency, the SEC, and a self-regulatory organization, the NASDAQ, the Magistrate Judge found no waiver occurred because the NASDAQ effectively "stands in the shoes of the SEC" when conducting delisting proceedings. (Order at 9, n. 5). However, Semtech submitted no evidence of a written confidentiality agreement with the NASDAQ, and only briefly explained that there was an "understanding" that materials produced to the NASDAQ would remain confidential. (*See* Joint Stip. at 27, n. 13; Stanton Decl. at ¶15).

plain error by ruling that a motion was not dispositive unless it was ruled upon by the court. (*Id.*) Semtech attempts to mend the Magistrate Judge's error through the assertion that a motion only becomes dispositive once it is fully briefed, adding a new legal standard for dispositive motions that is not supported by law and does not exist in the Order. (Opp. at 3). Contrary to Semtech's assertion, a motion is considered dispositive by the nature of the relief sought, not whether the motion was fully briefed, and certainly not whether the motion was ruled upon. By holding that a motion only becomes dispositive once it is ruled upon, the Magistrate Judge committed error and erroneously ruled that Semtech's Motion to Terminate was a non-dispositive motion. Had the Magistrate Judge correctly applied the law, Semtech's Motion to Terminate would be dispositive, constituting a waiver of all privileges and protections that may have attached to the materials filed. Under the Ninth Circuit's holding in *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003), there is a strong presumption for public access to materials attached to dispositive motions that can only be rebutted by asserting compelling reasons. *Foltz*, 331 F.3d at 1135. Semtech has provided no compelling reasons to rebut the right of public access to materials Semtech filed with its Motion to Terminate.

Lead Plaintiff respectfully submits that the Magistrate Judge committed clear error and asserts that it is entitled to the materials Semtech produced to numerous third parties and filed with this Court in its Motion to Terminate.

## II.   ARGUMENT

### A.   Standard of Review

As Semtech agrees, the Magistrate Judge's legal conclusions are freely reviewable *de novo* to determine if they are contrary to law. *United States v. McConney*, 728 F.2d 1195, 1200-1201 (9th Cir. 1984). Rulings on the scope of the attorney-client privilege are reviewed de novo. *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997). Whether a holder has waived the right to claim the attorney-client

privilege is a mixed question of law and fact which is likewise subject to de novo review. *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996). Waiver under the work product doctrine is also a mixed question of law and fact which is likewise subject to de novo review. *McKesson,* 2005 U.S. Dist. LEXIS 7098 at *21 ("Because the court finds that the magistrate judge's order relied on determinations regarding the scope of the attorney-client privilege and finding that McKesson had waived protection under the work product doctrine, the court conducts a de novo review of the order.")

**B.    The Magistrate Judge Erred by Applying a Blanket Assertion of Selective Waiver to All "Privileged" or "Protected" Materials Produced to Third Parties**

Here, issues concerning the application of the attorney-client privilege and work-product doctrine are governed by federal common law. *Clarke v. American Commerce National Bank*, 974 F.2d 127, 129 (9th Cir. 1992). Contrary to Semtech's assertions[3], the Magistrate Judge erred when he inconsistently applied the law from district courts in this Circuit, ignored the well founded reasoning of the majority of federal circuits rejecting selective waiver, and followed the lead of the much maligned *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1977), a case that hasn't been followed by any appellate court outside the Eighth Circuit for over 30 years. Specifically, the

---

[3]    Semtech argues that it did not waive the "protections" over the Fenwick report when it produced materials to the SEC and USAO because it (1) was compelled to cooperate, (2) shared a common interest, and (3) engaged in confidentiality agreements. (Opp. at 10-11). Without any analysis or findings whether Semtech made a compelled or voluntary production, or shared a common interest with the government agencies, the Magistrate Judge held that waiver did not occur because Semtech engaged in confidentiality agreements with the government agencies. (Magistrate Judge's Order at 8).

application of selective waiver to all "privileged" or "protected" materials produced to the SEC and USAO was in error.[4]

The precedent that Semtech asserts in its Opposition, and that the Magistrate Judge followed from this Circuit to apply a blanket assertion of selective waiver, is essentially <u>one</u> case – *In re McKesson* HBOC, *Inc. Secs. Litig.*, 2005 U.S. Dist. LEXIS 7098, 2005 WL 934331 (N.D. Cal. Mar. 31, 2005).[5] When compared with the other authority in this Circuit, *McKesson* is clearly an outlier decision, and the reasoning adopted therein is flawed. *See United States v. Reyes*, 239 F.R.D. 591, 603 (N.D. Cal. 2006) (rejecting the limited waiver doctrine); In *re Oracle Sec. Litig.*, 2005 U.S. Dist. LEXIS 46931 at *27-28. (N.D. Cal. 2005) (same); *In re McMorgan & Co. v. First Cal. Mortgage Co.*, 931 F. Supp. 703, 708 (N.D. Cal. 1996) (same).

Moreover, the McKesson decision itself does not support a blanket application of selective waiver and was not properly applied to the events presented in the matter at bar. As a threshold matter, *McKesson* only preserved the application of the work-

---

[4] The Magistrate Judge applied his ruling with equal weight to Semtech's production to NASDAQ because it effectively "stands in the shoes of the SEC" when conducting delisting proceedings. (Magistrate Order at 9, n. 5). While the NASDAQ is allowed to perform certain functions by the SEC, it is <u>not</u> a government agency, but a private, self-regulatory organization ("SRO"). Semtech submitted no authority to the Magistrate Judge that would support the application of the selective waiver doctrine to an SRO. Indeed, Semtech did very little to refute the claim that the production to the NASDAQ constituted waiver in the Joint Stipulation, and only made a passing reference to the NASDAQ production. (Joint Stip. at 27, n. 13). Semtech merely stated that production to the NASDAQ was made under a general "understanding" that the materials would be kept confidential, and Semtech submitted no evidence of a written confidentiality agreement with NASDAQ. (*Id.*; Stanton Decl. at ¶ 15). Plaintiff maintains that a general "understanding" of confidentiality is insufficient for this Court to apply the doctrine of selective waiver.

[5] In its Opposition, Semtech also cites *United States v. Bergonzi*, 403 F.3d 1048 (9th Cir. 2005) for support in this Circuit, but *Bergonzi* did not reach the argument of the application of selective waiver. See *Bergonzi*, 403 F.3d at 1050.

product doctrine, not the attorney-client privilege[6]. In allowing the selective waiver of the work-product protection to the government, *McKesson* recognized "a distinction between disclosure to a private entity (resulting in waiver) and disclosure to a government entity pursuant to a confidentiality agreement (maintaining work product protection)." *McKesson*, 2005 U.S. Dist. LEXIS 7098 at *45. The distinction between production to an adverse private entity and an adverse government agency was pivotal in the district court's application of the selective waiver doctrine to McKesson's work-product protections. Indeed, the "disclosure to an actual or potential adversary waives work product protection as to the material disclosed." *McKesson*, 2005 U.S. Dist. LEXIS 7098 at *32 (citing *United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 687 (1st Cir. 1997)). Lead Plaintiff submits that had the *McKesson* court reviewed Semtech's third party productions, there would be no work-product protection because Semtech produced the materials to additional private adversaries, and not only to the government. Put simply, *McKesson* only applies to the work product doctrine and only applies where a party discloses documents solely to government entities pursuant to confidentiality agreements. Unlike the defendant in *McKesson*, who only produced materials to the government, Semtech produced "protected" materials to the derivative plaintiffs by filing the materials with this Court – a fact Semtech cannot and does not dispute. Lead Plaintiff respectfully submits that the Magistrate Judge committed error by applying the limited waiver doctrine to Semtech even though the materials were produced to adversary third parties.

Moreover, the Magistrate Judge erred by following the much maligned and seldom followed Eighth Circuit holding in Diversified. Semtech mischaracterizes the

---

[6] The *McKesson* court affirmed the magistrate judge's ruling that there was no attorney-client privilege because "McKesson agreed to disclose the disputed materials in advance of the communications having been made. Thus, because they were not made in confidence between the client and attorney, a critical element of the attorney-client privilege is absent." *In re McKesson HBOC, Inc. Secs. Litig.*, 2005 U.S. Dist. LEXIS 7098 at *23.

state of the federal common law in its assertion that "numerous" other federal court decisions follow the doctrine of selective waiver. (Opp. at 2, 15-17).[7] As observed by the U.S. District Court for the Northern District of California, "[i]n accord with every appellate court that has considered the issue in the last twenty-five years, this Court holds that … [a party] cannot waive the attorney-client privilege selectively." *United States v. Reyes*, 239 F.R.D. 591, 603 (N.D. Cal. 2006). Although Semtech attempted in its Opposition to distinguish the facts in *Reyes*, those facts do not bear on the federal common law observation reached by *Reyes* – the vast majority of federal circuit courts stand against the selected waiver doctrine and no other appellate court has followed the Eighth Circuit's holding in *Diversified* since that ruling was made in 1977. Indeed, *Reyes* is not alone in this Circuit in its analysis, as other district courts have observed that *Diversified* is a case that "'stands alone' in recognizing an exception to the traditional waiver doctrine for voluntary disclosures made to the government." *McMorgan*, 931 F. Supp. At 708; *see also Oracle*, 2005 U.S. Dist. LEXIS at *33-34 (rejecting limited waiver doctrine in *Diversified*). Semtech's suggestion that the selected waiver doctrine is applied frequently in federal court (Opp. at 2.) or any suggestion that the selective waiver doctrine is "well developed" in the federal circuits (Opp. at 10.) is misplaced. To the contrary, the selective waiver doctrine is widely disfavored, and has not spread to any other appellate court since the *Diversified* decision was made over ***thirty*** years ago.

---

[7] In support of the application of selective waiver, Semtech cites three district court cases from the Southern District of New York, *In re Cardinal Health, Inc. Sec. Litig.*, No. 04 Civ. 575, 2007 U.S. Dist. LEXIS 36000, 2007 WL 495150 (S.D.N.Y. Jan. 26, 2007), *In re Natural Gas Commodity Litig.*, No. 03 Civ. 6186, 2005 U.S. Dist. LEXIS 11950, 2005 WL 1457666 (S.D.N.Y. June 21, 2005), and *Maruzen Co. v. HSBC USA, Inc.*, Nos. 00 Civ. 1079, 00 Civ. 1512, 2002 U.S. Dist. LEXIS 13288, 2002 WL 1628782 (S.D.N.Y. July 23, 2002). All three of these cases were criticized and correctly rejected by the Honorable Judge Shira A. Scheindlin in her decision *In re Initial Pub. Offering Sec. Litig.*, 249 F.R.D. 457, 462-464 (S.D.N.Y. 2008) (rejecting the selective waiver doctrine as contrary to public policy because of its ultimately coercive effect.) (*See also* Pl.'s Mot. for Rev. at 15-17).

C.  **The Magistrate Judge Erred by Ruling that Semtech's Filing the Motion to Terminate Did Not Constitute Waiver.**

1.  **Semtech's Motion to Terminate was a dispositive motion**

The Magistrate Judge held that Semtech's Motion to Terminate was not a dispositive motion because "it was never ruled upon." (Order at 11.) The Magistrate Judge's ruling is contrary to the Ninth Circuit's decision in *Foltz*, holding that a motion for summary judgment ***was dispositive even though it was never ruled upon***. (Pl's Mot. for Rev. at 19-20). Semtech tries to distinguish *Foltz*, but it cannot refute the simple fact that the Ninth Circuit held a motion to be dispositive regardless of whether it was ever ruled upon.

Because it cannot refute that a motion does not need to be ruled upon to be dispositive, Semtech attempts to create its own requirement, found nowhere in the law, that a motion must be fully briefed before it is dispositive. (Opp, at 20-21). At the same time, Semtech argues that the privileges and protections for materials attached to the non-dispositive motion to disqualify counsel in *Foltz* were held not to be waived. If anything, Semtech's analysis advances Lead Plaintiff's arguments as it highlights the difference between dispositive and non-dispositive motions, and concedes that the Ninth Circuit made a careful analysis of the difference between these types of motions in *Foltz*. There were two motions at issue in *Foltz* – a dispositive motion for summary judgment, and a non-dispositive motion to disqualify opposing counsel. *See Foltz*, 331 F.3d at 1136-1138.[8] The motion for summary judgment was held dispositive because it sought to dispose of the case, unlike the motion to disqualify counsel, which

---

[8]   Semtech quotes *Foltz* for the proposition that collateral litigants are not entitled to materials protected for disclosure and there is no policy reason to "serve up such information on a silver platter" (Opp. at 21.), but this reasoning only applies to <u>non-dispositive motions</u>. *Foltz*, 331 F.3d at 1138 (applying quotation to materials attached to non-dispositive motion to disqualify opposing counsel).

- 8 -

involved a collateral issue not related to the ultimate disposition of the case. (*Id.*) Indeed, the Ninth Circuit made a clear distinction between these motions, applied a presumption of public access to the dispositive motion for summary judgment, and unsealed the documents attached to the motion. (*Id.*)

Semtech does not dispute that the Magistrate committed error by applying a requirement unsupported and contrary to law - that a motion is not dispositive unless it is ruled upon. Instead, Semtech has resorted to the makeshift argument that the motion in *Foltz* was "ripe for adjudication," but never ruled upon. (Opp. at 20). In doing so, Semtech has abandoned the argument that the motion must be ruled upon to be dispositive, and now advances the farce that a motion must be fully briefed before it is dispositive. (Opp. 20-21, fn. 23). Semtech makes this assertion without supporting law. Simply put, whether a motion is considered to be dispositive is a function of the type of relief sought, not whether the motion was briefed, and certainly not whether the motion was ruled upon. Having sought to end the derivative litigation through its Motion to Terminate – Semtech undeniably made a dispositive motion.

2. **Semtech waived any "privileges" or "protections" when the Motion to Terminate was filed and Lead Plaintiff is entitled to their discovery.**

a. **Under Delaware law, Semtech's Special Litigation Committee had no reasonable expectation that its investigation would remain confidential**

Semtech concedes that Delaware law governs this Court's analysis of its Motion to Terminate. (Opp. at 22, fn. 24.) Under Delaware law, there is no requirement that a company retain outside counsel to investigate and draft a Special Litigation Committee ("SLC") report. *Oracle*, 2005 U.S. Dist. LEXIS 46931 at *33 ("The motion to terminate a shareholder's derivative suit pursuant to *Delaware Code Annotated title 8,*

*Section 141* does not automatically place at issue attorney communications or work product.") Indeed, as a preliminary matter, an SLC is formed by a company with the duty to investigate and make a report recommending the type of action the Company should take on the derivative plaintiff's claims. As Semtech concedes, under Delaware law, the SLC must file "a thorough written record of the investigation and its findings and recommendations." *Zapata v. Maldonado*, 430 A.2d 779, 788 (Del. 1981) (Opp. at 21-22.)[9] Considering that the SLC takes on its duties with the foreknowledge that it must make a full written record of its investigation, findings, and recommendations, the SLC cannot in good faith argue that it takes on those duties with an expectation that the SLC can maintain the confidentiality of its investigation. Likewise, the SLC cannot in good faith expect to delegate its duties by retaining outside counsel to investigate on its behalf and maintain the confidentiality of its investigation.

    Here, Semtech formed an SLC that was charged with the duty, under Delaware law, to investigate the derivative plaintiff's claims, and make a complete written report, describing in detail its investigation, findings and recommendations. After being charged with those duties, the SLC made the decision to delegate its duties to Morrison & Foerster ("Morrison"), although there was no requirement under Delaware law to do so. Likewise, the SLC made the decision to share the Fenwick Report with Morrison, although there was no requirement under Delaware law to do so. Given the duty to make a full written report on its investigation, findings, and recommendations, the SLC cannot have an expectation that the materials generated by Morrison, or given to

---

[9] Semtech's reliance on *Picard Chem. Inc. Profit Sharing Plan v. Perrigo*, 951 F. Supp. 679 (W.D. Mich. 1996) is misplaced on the issue of access to the report and supporting materials filed by an SLC. The report at issue in *Picard* was made in response to a demand, and was not an SLC report. Also, *Picard* was governed by Michigan law, not Delaware law. Michigan law "does not compel a corporation to file a motion to dismiss even if its independent director recommends such a course of action." *Picard*, 951 F. Supp. at 685. In contrast, an SLC formed under Delaware law cannot believe in good faith that its report and internal investigation will remain confidential.

Morrison, would retain their confidentiality. Moreover, Semtech's SLC cannot inject an expectation of confidentiality or create secrecy in the SLC's investigation by delegating its duties to outside counsel.

### b. Semtech's filing of the Motion to Terminate provided the "privileged" or "protected" materials to the derivative plaintiffs and constituted waiver at the time it was filed.

Semtech improperly relies upon and mischaracterizes the findings of several cases in this district, *Oracle* and *Zitin*, as well as cases outside this district, *Joy v. North*, for the unfounded proposition that something more is required beyond the mere filing of a Motion to Terminate to constitute waiver. Semtech repeatedly quotes language from *Oracle* that states "[t]he Court here does not base its holding on the mere fact alone that the [special litigation committee] report and memoranda were filed in the litigation." *Oracle*, 2005 U.S. Dist. LEXIS 46931 at *61. However, this quote does not relate to whether waiver occurs at the time of filing, but rather whether there is a presumptive right to public access to materials filed under seal. Indeed, the full *Oracle* quote reads as follows:

> "In contrast to *Perrigo*, the Court here does not base its holding on the mere fact that the SLC report and memoranda were filed in the Delaware Action. Rather, the Court has conducted the appropriate balancing in determining that there is a public right of access to these documents. Defendants themselves took the steps that gave rise to this right: **they filed the documents**. Accordingly, Defendants are in no position to assert that copies of the documents in their possession may be withheld on the basis of privilege or work product."

*Oracle*, 2005 U.S. Dist. LEXIS at *61. (emphasis added.) Earlier in its decision, the *Oracle* court explained that privileges and protections are waived as soon as the SLC files the report with a motion to terminate,

"First, Oracle filed the special litigation committee report and memoranda in support of its motion to terminate the Delaware Plaintiffs' shareholder's derivative suit. This action waived the attorney-client privileges and work product protection over those documents."

*Oracle*, 2005 U.S. Dist. LEXIS 46931 at *31-32. Semtech curiously relies on *Zitin*, as it accords with *Oracle*, but the Court there made clear that, "**By filing its motion for summary judgment** based on the report of the Committee, the Corporation has waived any claims of privilege and any work product immunity to the extent that counsel communicated 'the information or documents to the committee." *Zitin v. Turley*, 1991 U.S. Dist. LEXIS at *15. (emphasis added). Likewise, Semtech cites *Joy v. North*, which also supports Lead Plaintiff's position, holding, "if the special litigation committee recommends termination and a motion for judgment follows, the committee must disclose to the court and the parties not only its report but all underlying data. To the extent that communications arguably protected by the attorney-client privilege may be involved in that data, **a motion for judgment** based on the report waives the privilege." *Joy v. North*, 692 F.2d at 893.

There simply is no requirement in the cases cited by Semtech and relied upon by the Magistrate Judge that a motion must be ruled upon before it constitutes a waiver. Contrary to the Magistrate Judge's Order, the law is clear that Semtech waived any privileges and protections that may have attached to certain materials, at the time it **filed** those materials with its Motion to Terminate.

    **c.   Semtech's filing of the Motion to Terminate under seal does not shield the materials filed from discovery by Lead Plaintiff.**

Semtech's filing of the Motion to Terminate under seal does not preclude waiver, nor does it provide a basis for shield such materials from discovery by Lead Plaintiff. The Ninth Circuit makes clear that there is a strong presumption of public

- 12 -

access to materials filed with dispositive motions, regardless of whether the filing was made under seal. *Foltz*, 331 F.3d at 1136. ("In short, we follow the lead of the Fourth Circuit and hold that the presumption of access is not rebutted where, as here, documents subject to a protective order are filed under seal as attachments to a dispositive motion.") Under *Foltz*, once the strong presumption of public access to materials is established, the party seeking to keep the materials confidential bears the burden of overcoming the presumption by asserting sufficiently compelling reasons for keeping the materials under seal. *Foltz*, 331 F.3d at 1135. ("The common law right of access, however, is not absolute and can be overridden given sufficiently compelling reasons for doing so.")

Semtech has provided no authority or argument that rebuts the presumption of public access to these documents, let alone sufficient compelling reasons for keeping the materials sealed. If this Court were to engage in balancing the presumption of the public and Lead Plaintiff's access to the materials filed with Semtech's rebuttal of the presumption, Lead Plaintiff respectfully submits that it is clearly entitled to access the documents.

There is an inherent unfairness in allowing Semtech to produce documents to certain adversaries and withhold them from Lead Plaintiff. To allow this selective production and waiver to private adversaries undermines the purposes of the attorney client privilege. *See Oracle*, 2005 U.S. Dist. LEXIS 46931 at *33-34 ("Allowing Defendants to disclose privileged communications to these derivative plaintiffs, while withholding that information from the instant Plaintiffs does nothing to encourage open communication with an attorney for the purpose of obtaining legal advice.") Likewise, the selective production to an adversary undermines and waives the work product doctrine. *See Westinghouse Elec. Corp. v. Republic of Phil.*, 951 F.2d 1414, 1428 (3d Cir. N.J. 1991) ("Most courts hold that to waive the protection of the work-product doctrine, the disclosure must enable an adversary to gain access to the information.")

Semtech should not be allowed to file these materials to assert its defense in the derivative litigation, while simultaneously keeping them secret in the litigation with Lead Plaintiff.[10]  Semtech bears the burden, and has done nothing to provide compelling reasons to rebut the strong presumption of the right of public access to its Motion to Terminate. Therefore, the general public, including and especially Lead Plaintiff, have a presumptive right of access to the materials Semtech filed with its Motion to Terminate.

### III.  CONCLUSION

Plaintiff respectfully submits that the Magistrate Judge's order is clearly erroneous and contrary to law.  For the foregoing reasons, Plaintiff requests that this Court should reverse and/or modify the Magistrate Judge's order.

DATED: February 8, 2010

MARK I. LABATON
KREINDLER & KREINDLER LLP

BY:   /s/ Mark I.Labaton
          MARK I. LABATON

ALLEN CARNEY
MARCUS BOZEMAN
RANDALL PULLIAM
CARNEY WILLIAMS BATES
   BOZEMAN & PULLIAM, PLLC
11311 Arcade Drive, Suite 200
P.O. Box 25438
Little Rock, AR  72212
Telephone:  (501) 312-8500
Facsimile:   (501) 312-8505

---

[10]  Lead Plaintiff presumes that Semtech will not waste the time of the parties and the Court in litigating this discovery matter, then at a later time use these materials in its defense in this litigation.

- 14 -

JONATHAN GARDNER
BRIAN PENNY
LABATON & SUCHOROW LLP
140 Broadway
New York, New York  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477


BURTON LEBLANC
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas  75219
Telephone: (214) 521-3605
Facsimile: (214) 520-1181

*Local and Lead Counsel for Plaintiff and the Class*